UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIE DILLON RIPLEY MILLER,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>- against -<br><br>MERRILL LYNCH CREDIT CORPORATION,<br><br>    Defendant and Counterclaimant. | NO. 3:03-CV-1016 (RNC)(DFM)<br><br><br>October 14, 2003 |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO COMPEL**

## I. INTRODUCTION

Merrill Lynch Credit Corporation ("MLCC") respectfully submits this Memorandum of Law in support of its motion, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Rule 37 of the Local Civil Rules of the District of Connecticut, to compel Plaintiff Julie Dillon Ripley Miller to provide discovery responsive to Defendant's First Request for Production of Documents and First Set of Interrogatories.

On July 23, 2003, MLCC served its First Requests for Production of Documents, and on August 12, 2003, MLCC served its First Set of Interrogatories. Plaintiff served her Responses to the First Request for Production of Documents on August 25, 2003, and her Responses to the First Set of Interrogatories on September 12, 2003. On September 19, 2003, Thomas P. Friedman, on behalf of MLCC, participated in an extended teleconference with Plaintiff's counsel, Patrick W. Begos, to discuss the inadequacies in Plaintiff's discovery responses, and to attempt to reach mutually acceptable resolutions to the outstanding discovery

issues. Following this teleconference, Plaintiff did not produce additional documents, supplement her answers to the interrogatories or follow-up with regard to any of the proposed resolutions. See Affidavit of Thomas P. Friedman, Esq. (attached hereto as Exhibit A).

Despite this good faith effort to reach agreement on these outstanding discovery items, counsel have been unable to resolve Plaintiff's objections and/or failure to provide adequate responses. As such, MLCC now moves to compel responses to selected interrogatories and document requests.[1]

## II. FACTUAL BACKGROUND

### A. The Construction Loan

This dispute arises out of a construction loan transaction closed on or about December 7, 1999, whereby MLCC provided Plaintiff Julie Dillon Ripley Miller ("Miller") approximately $7,500,000 (the "Construction Loan"). Amended Complaint at ¶3. Miller purchased the property at issue, located at 21 Point Road in Rowayton, Connecticut, through a mortgage loan from MLCC for approximately $1,350,000 million in or about November of 1997. Following the purchase and prior to the Construction Loan, Miller expended at least $3,800,000 million on reconstructing and renovating the property.

In part, to continue funding the reconstruction, Miller personally applied and was approved for a construction to permanent loan by MLCC. To consummate the Construction Loan, Miller executed a power of attorney ("POA") in favor of her attorney-in-fact. Amended Complaint at ¶3. According to Miller, she withheld the authority to pledge securities, and

---

[1] A true copy of MLCC's First Request for Production of Documents and First Set of Interrogatories and are attached as Tabs 1 and 2 to the Affidavit of Thomas P. Friedman, Esq., and Plaintiff's Responses are attached as Tabs 3 and 4.

therefore, her attorney-in-fact was not authorized to pledge a securities account as security for the Construction Loan. Id.

On the closing date, Plaintiff's attorney-in-fact executed an agreement, which, on its face, pledges Plaintiff's securities account held by Merrill, Lynch, Pierce, Fenner & Smith, Inc. ("MLPF&S") as security for the Construction Loan. ("Pledge Agreement") Id. at ¶6. The account was eventually liquidated and it is MLCC's position that the sale of those securities and the continued possession of the proceeds by MLPF&S is authorized by the Pledge Agreement executed by Plaintiff's attorney-in-fact.[2] Id. at ¶¶3,14. .

### B. Plaintiff Concedes that Nearly all of the Discovery at Issue is Relevant

Plaintiff's Amended Complaint alleges ten causes of action arising from MLCC's purported failure to notify Miller that the POA was defective, and in exercising its rights under the Pledge Agreement. These claims include, *inter alia*, violations of CUTPA and Intentional Infliction of Emotional Distress. Id. at. ¶¶31-44. Plaintiff alleges that she incurred damages as a result of the liquidation in that she has (i) suffered "the loss of stocks and cash in her Account"; (ii) been exposed to substantial capital gains tax liability; and (iii) suffered severe emotional distress. Id. at ¶15, 44.

As Plaintiff's various allegations and discovery responses make clear, she has placed three non-excusive and broad categories of information at issue. Nearly all of MLCC's discovery applies to the period from January 1, 1997 through the date of Plaintiff's response. During the parties conference on September 19, 2003, counsel conceded that the following areas of discovery are relevant (i) Plaintiff's use of, and access to, financial resources; (ii) Plaintiff's

---

[2] While MLCC does hold this position, it is not the only ground upon which MLCC claims a right to the proceeds of the pledged account.

3

alleged emotional distress; and (iii) discovery relating to causation and mitigation efforts by Plaintiff. See Friedman Aff. at ¶6.

### (1) *Plaintiff's Use of, and Access to, Financial Resources are at Issue*

Plaintiff alleges that, via a MLPF&S stock broker, MLCC "knew that the Account was Plaintiff's primary source of income and that liquidating the stocks would expose Plaintiff to substantial capital gains tax liability." Amended Complaint at ¶5. In support of this allegation, Plaintiff must prove (i) the Account was in fact her "primary source of income;" (ii) MLCC knew detailed information regarding her potential capital gains tax liability; and (iii) Plaintiff would in fact incur substantial capital gains tax liability upon liquidation. MLCC's right to review Plaintiff's federal tax returns is clear from the face of her Amended Complaint. MLCC cannot reasonably be expected to defend itself from allegations that it caused substantial capital gains taxes without reviewing the relevant tax returns, which Plaintiff has failed to produce. Finally, Plaintiff concedes that she has "disputes with her sisters in connection with her parents' estates . . . ." (Plaintiff's Responses to Defendant's First Set of Interrogatories attached as Tab 7 to Friedman Aff., at 5.) Accordingly, there are legitimate questions regarding the existence, causation and mitigation of Plaintiff's alleged financial damages, and other sources of income based on her own allegations, the discovery of which is likely to lead to admissible evidence. Furthermore, it is MLCC's position that her anticipation, stated or otherwise, of other sources of future income, bear on her claims that MLCC acted unreasonably. Thus, despite the fact that, pursuant to subpoena served by Mrs. Miller's own counsel on her former accountants, Plaintiff has failed to provide tax returns for the years 2000 through 2002.

### (2) *Plaintiff's Mental State and Emotional Distress are at Issue*

Plaintiff alleges that she has suffered severe emotional distress and is seeking compensatory and punitive damages from MLCC for causing this distress. Amended Complaint at 7-8, 9. Thus, MLCC is entitled to discovery regarding this alleged emotional distress. Plaintiff has elected to bring a Motion for Prejudgment Remedy in an attempt to attach MLCC's assets. In her Affidavit, Plaintiff claims that "MLCC's actions have caused me such sever anxiety that I have not slept in a long time. Every minute of every day I worry that my creditors will take everything I own and that my family and I will be put out on the street." Affidavit of Applicant attached as Tab 6 to Friedman Aff., at ¶13). These allegations, and her admissions regarding disputes with her sisters over her parents estates that have caused her emotional distress, are clearly relevant to MLCC's involvement, or lack thereof, in causing Plaintiff her alleged distress. While Plaintiff claims that MLCC has caused her emotional distress, she concedes that "dealings and disputes with her sisters in connection with her parents' estates caused significant emotional distress." (Plaintiff's Responses to Defendant's First Set of Interrogatories, attached as Tab 4 to Friedman Aff., at 5.) Accordingly, there are legitimate questions regarding the existence, causation and mitigation of Plaintiff's emotional distress, the discovery of which is likely to lead to admissible evidence.

### (3) *Plaintiff's Mitigation Efforts Are at Issue*

Moreover, Plaintiff's partial document production appears to indicates that she opted to spend substantial funds on the renovation of the interior of her home rather than make her Construction Loan payments to MLCC. Moreover, Plaintiff states that although she has suffered severe emotional distress, she has not provided any documents regarding her treatment for such distress. These issues raise legitimate questions regarding Plaintiff's mitigation efforts and the true cause of her alleged damages, emotional or financial.

### III. ARGUMENT

The items and information requested in the discovery at issue are all relevant to Plaintiff's claims in this action. As stated in Schwartz v. Marketing Publishing Co., 153 F.R.D. 16, 18 n.1 (D. Conn. 1994), "[i]t is well established that the Federal Rules of Civil Procedure allow parties broad discovery[.]" (citing Oppenheimer Fund Inc. v. Sanders, 437 U.S. 340, 351 (1978)). Specifically, "Rule 26(b)(1) authorizes discovery of 'any matter, not privileged, which is relevant to the subject matter involved in the pending action,' . . . [and] 'appears reasonably calculated to lead to the discovery of admissible evidence.'" Id. As discussed below, all of the outstanding discovery requested by MLCC meets this standard and should be produced.

### A. The Outstanding Document Requests are Reasonably Calculated to Lead to the Discovery of Admissible Evidence and Should Be Produced

As discussed in Section I.B(1) above, documents relating to Plaintiff's financial affairs and decisions are relevant to this dispute. Document Request Nos. 4 through 13, 16, 18, 22, 34, 36, 41, 42, 43, 46 and 55 are reasonably calculated to lead to admissible evidence

regarding either Plaintiff's financial affairs and decisions and/or her knowledge regarding same.[3] With respect to its defenses such as waiver, estoppel, laches and ratification, MLCC is entitled to documents, such as those at issue in these requests, demonstrating when Plaintiff did in fact know that her securities were pledged. Notwithstanding Plaintiff's repetitive and unsubstantiated objections that these and other requests are over-broad and unduly-burdensome, the document requests are relevant, narrowly tailored and should be produced.

As discussed in Section I.B(2) above, documents relating to Plaintiff's mental state and alleged emotional distress are clearly at issue. Thus Request No. 54 is clearly permissible. Plaintiff has also failed to provide documents in response to Request No. 44. Requests Nos. 39 and 40 are also relevant to this issue, as Plaintiff admits to having disputes with her sisters that have caused her significant emotional distress. Accordingly, Plaintiff should produce documents in response to these requests

As discussed in Section I.B(3) above, Plaintiff's mitigation efforts and the cause of her financial troubles are at issue. Plaintiff objected to Request Nos. 23, 24, 25, 27, 29 and 30 to the extent they seek documents following the conversion of the Construction Loan to permanent status. Requests Nos. 26, 31, 32, 33, 39, 40 and 45 also relate to Plaintiff's knowledge of and involvement with the renovation of the property, additional expenditures on items such as interior furnishings and decoration which were evidently substantial, as well as her failure to follow the advice of consultants regarding the administration of her assets and estate. Again, with respect to MLCC's defenses such as waiver, estoppel, laches, ratification, causation and failure to mitigate, Plaintiff's total expenditures on the property during the entire renovation

---

[3] By agreement with Plaintiff's counsel, Request Nos. 6, 8 and 10 were limited to "significant" sources of income or funds, subject to the agreement that Plaintiff would not object on the
(continued...)

project and failure to take the advice of consultants during the period when she was to be making payments on the Construction Loan are relevant and should be produced. Obviously, if Plaintiff was making such expenditures at the expense of her overall financial well-being and ability to make mortgage payments, that information is highly probative.

### B. Plaintiff's Interrogatory Responses Are Insufficient and Should Be Supplemented

A shown below, Plaintiff's Interrogatory Responses are also insufficient.

**INTERROGATORY NO. 3:**
Please identify all persons who have witnessed you under severe emotional distress, whether caused by MLCC or otherwise, and identify persons with whom you had any communication regarding your severe emotional distress and the date, time, place and substance of such communication (other than for those persons or entities listed in Response to Interrogatory No. 1).

**Response** Plaintiff objects to this interrogatory as over-broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff additionally objects on the ground that plaintiff can only identify people with whom she interacted while under distress; plaintiff cannot say whether any such people observed behavior they considered indicative of "severe emotional distress" (to the extent there is behavior that objectively indicates, to a layperson, the presence of emotional distress). Subject to her objections, plaintiff responds that the following are some people who witnessed plaintiff under severe emotional distress: Rosalie Chanler, Virginia Kamsky, Tom Velotti, and Larry Greco.

**Argument**: Plaintiff has failed to provide the information requested by MLCC to sufficiently identify the individuals named.

---

(...continued)
ground that such a narrowing rendered the requests vague.

8

**INTERROGATORY NO. 6:**
For the period from January 1, 1999 until the date on which you respond to these Interrogatories, please identify all sources of income received by you from any source, including but not limited to allowances, stipends, governmental benefits, disability benefits, salaries and wages, and, with respect to each such source, state the amount of income received from that source and identify the period during which you received income from that source.

**Response** Plaintiff objects to this interrogatory as over-broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.

**Argument:** Plaintiff has conceded that her financial affairs are at issue. Counsel agreed to narrow this Interrogatory to "significant" sources of income. It is not over-broad or unduly burdensome.

**INTERROGATORY NO. 7:**
If you claim that any portion(s) of the Power of Attorney form where whited-out (or otherwise manipulated), please describe (a) which portions you claim were whited-out or manipulated; (b) who whited-out or manipulated any such portions; (c) whether you consented to any such whiting-out or manipulation, and if so, to which portions; and (d) who was present during the whiting-out or manipulation.

**Response** The Power of Attorney was whited-out, and the portions that were whited-out are obvious on the face of the document (to attempt to describe, in narrative fashion, the location of white-out on a paper would be nonsensical). All of the white-out was applied by Jay Falini. Mr. Falini did not ask for plaintiff's consent to his actions, and therefore plaintiff did not consent. Mr. Falini whited-out the document in plaintiff's house; plaintiff was with Mr. Falini at the time. Various other people, including plaintiff's husband and various contractors, were in the house at the same time. Plaintiff does not presently recall whether anyone else observed Mr. Falini adding the white-out to the power of attorney.

**Argument:** Plaintiff has not shown that the description requested is nonsensical. On the contrary, it is perfectly within the bounds of Plaintiff's capacity to describe the portions of the POA which she claims were whited out by Mr. Falini since nobody evidently has the original on which this whiting out allegedly occurred.

9

## IV. CONCLUSION

For all the foregoing reasons, MLCC motion to compel discovery should be granted in its entirety. As such, MLCC respectfully requests that the Court compel production of the documents requested and further responses to Interrogatories.

Dated: October 14, 2003
Stamford, Connecticut

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _/s/ Thomas P. Friedman_____
Douglas C. Conroy, ct11555
Thomas P. Friedman, ct24947
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email: douglasconroy@paulhastings.com
thomasfriedman@paulhastings.com

Counsel for Defendant and Counterclaimant
MERRILL LYNCH CREDIT CORPORATION

## CERTIFICATE OF SERVICE

  This is to certify that on this 14th day of October, 2003, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL was delivered via U.S. first class mail to:

    Patrick W. Begos, Esq.
    BEGOS & HORGAN, LLP
    327 Riverside Avenue
    Westport, CT 06880

                 Thomas P. Friedman

STM/260870.3
11413.00021