UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

------------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,

    Plaintiff,

– against –

MERRILL LYNCH CREDIT CORPORATION,

    Defendant.
------------------------------------------------------------------x

Case No. 3:03CV1016 (RNC)(DFM)

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

Plaintiff, Julie Dillon Ripley Miller, by her attorneys, Begos & Horgan, LLP, submits this brief in opposition to defendant's motion to compel additional discovery.

**NATURE OF THE CASE**

Ms. Miller asserted this action to recover damages flowing from the misconduct of defendant, Merrill Lynch Credit Corporation ("MLCC"), in connection with an alleged "construction loan" (the "Loan") in December 1999. That misconduct centers around two issues.

First, MLCC asserted that a pledge agreement executed by Ms. Miller's then-accountant (Barry Newman), allegedly as her attorney-in-fact, gave MLCC an interest in approximately $5.5 million in securities belonging to Ms. Miller; MLCC subsequently sold those securities, resulting in substantial capital gains liability for Ms. Miller. Ms. Miller has alleged that the power of attorney ("POA") under which Mr. Newman purported to act was either void, or, if it had *any* vitality, did not authorize Mr. Newman to pledge securities (a copy of the POA is annexed to the Declaration of Patrick W. Begos as Exhibit A):

▸      After the POA was signed and acknowledged, it was substantially changed at least twice by Jay Falini, a stockbroker employed by MLCC's affiliate, Merrill Lynch, Pierce Fenner &

- Smith. Mr. Falini's changes purported to expand the authority given to Mr. Newman. Plaintiff contends that the post-execution changes voided the POA. (Copies of Mr. Falini's faxes showing his changes are annexed to the Begos Declaration as Exhibits B and C).

- Even if those changes did not void the POA, the document (as changed by Mr. Falini), still *withheld* any authority for Mr. Newman to pledge Ms. Miller's stocks. It did so by deleting the power to enter into "bond, share and commodity transactions," which is statutorily construed to cover the power to pledge securities (C.G.S.A. § 1-46).

Because Mr. Newman did not have the authority to pledge Ms. Miller's stock to MLCC, MLCC's subsequent actions in freezing the account in which those securities were held, and subsequently selling them, was a conversion.

Second, the evidence shows that MLCC approved the $7,500,000 Loan even though it knew that: (i) the house, after completion, would be worth, at most, $3,800,000; and (ii) Ms. Miller did not have sufficient income to make the loan payments (Begos Dec., ¶ 5, Ex. D). Thus, MLCC knew, when it approved the loan, that Ms. Miller would default, and that it would be seizing, and selling, the collateral. Moreover, Mr. Falini (the broker who changed the POA) told MLCC not to communicate directly with Ms. Miller concerning the Loan, and insisted that the Loan closing go forward while Ms. Miller was out of the country (necessitating the POA). Under applicable law, these factors make the loan transaction unconscionable, and therefore unenforceable.

## THE DISPUTED REQUESTS

At the outset, we must take issue with MLCC's assertion that "Plaintiff concedes that nearly all of the discovery at issue is relevant" (MLCC Br. At 3). Obviously, Ms. Miller's objections contradict that conclusion. Ms. Miller's position on the discovery requests is set forth in her responses and objections to those requests, and below.

Second, Local Rule 37(a)(3) required MLCC's brief to contain "a specific verbatim listing of each of the items of discovery sought or opposed, and immediately following each specification shall set forth the reason why the item should be allowed or disallowed." Though the rule goes on to encourage grouping the items into categories, we submit that MLCC has, in many cases, grouped together requests that should be distinct. We will respond to MLCC's motion, according to the categorization MLCC has chosen; should MLCC choose to discuss specific requests at a later date, we reserve our right to respond more specifically.

**Discovery Concerning Ms. Miller's Use of, And Access To, Financial Resources**

This dispute, which encompasses numerous requests, appears to concern two main issues: (i) should plaintiff be required to produce tax returns; and (ii) what, if any, documents relating to family trusts and estates in which Ms. Miller might be a beneficiary can she be compelled to produce.

MLCC already has in its possession Ms. Miller's tax returns for the years 1995 through 1999 (Begos Dec., ¶ 6, Ex. E). Ms. Miller's tax returns for 2002 have not yet been filed. Thus, the tax return issue concerns production of returns for 2000 and 2001. MLCC has the burden of establishing the relevance of tax returns. *Hamm v. Potamkin*, 1999 U.S. Dist. Lexis 5948, 6-7 (S.D.N.Y. 1999). And "it is well-settled that a court should only order their disclosure where it finds both that the returns are relevant to the subject-matter of the action and that there is a compelling need therefor because the information contained therein is not 'otherwise readily obtainable.'" *Id.*, *quoting S.E.C. v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985). MLCC has not made any effort to satisfy its burden.[1]

---

[1] *Hamm* ordered production of financial statements as an alternative. In our case, however, MLCC already has five years of tax returns, and Ms. Miller has produced all financial statements in
(continued...)

MLCC claims it needs the tax returns to ascertain Ms. Miller's capital gains liability, but the sale of securities in question occurred in 2003, for which year returns have not yet been filed. Thus, production of tax returns for 2000 and 2001 would not shed light on that subject. Moreover, determining Ms. Miller's capital gains liability does not require the production of an entire tax return.

With respect to the trusts and/or estates in which Ms. Miller is a beneficiary, MLCC seeks information far beyond what is relevant. Arguably at issue is Ms. Miller's income – Ms. Miller could easily provide information regarding her income for appropriate years without being required to produce, for example, "all documents concerning or reflecting any source of [plaintiff's] income or distributions to [her] of money or property of any kind" (Document Request 8), or "all documents concerning the disposition of [plaintiff's parents] estate[s], including but not limited to documents concerning [her] entitlement to assets, income or any form of property interest or inheritance." (Document Requests 11, 12).

Second, MLCC seeks documents and information concerning these trusts and estates up to the present. MLCC claims it needs this information to see whether Ms. Miller could have paid the construction loan. Even if the information demanded were relevant, there is no question that documents concerning events in family trusts or estates that occurred after Ms. Miller defaulted on the loan, and after this litigation was commenced, have no bearing on that issue.[2]

---

[1](...continued)
her possession. To the extent that MLCC claims that, say, Ms. Miller's income for 2000 or 2001 is relevant, Ms. Miller should be permitted to affirm that her income in those years was consistent with prior years (or whatever description would be accurate under the circumstances).

[2] MLCC's assertions on this point are disingenuous, at best. It would have the Court believe
(continued...)


In an effort to resolve the dispute about the trusts, we proposed producing documents relating to trusts and estates created on or before December 31, 2001. MLCC rejected that offer. We believe that this proposal gives MLCC *more* than it is actually entitled to.

**Discovery Concerning Emotional Distress**

The parties have recently agreed to a resolution of any discovery dispute concerning this subject. Therefore, there is no need to discuss MLCC's arguments on this point.

**Discovery Concerning Plaintiff's "Mitigation Efforts"**

MLCC has propounded eight separate document requests (Requests 23-30) seeking all manner of documents pertaining to "any renovation, improvement or upgrade" to Ms. Miller's property, the house, or "the furnishings and/or interior of the Residence, including but not limited to furniture purchases, wall and window treatments, carpeting, major appliance purchases and/or any remodeling projects." (*See* Request 25). As this action concerns a *construction* Loan, Ms. Miller agreed to produce -- and has produced -- all documents "concerning improvements up to the time the alleged '1999 Loan' was allegedly converted from 'construction' to 'permanent'" (*i.e.*, when construction was completed).

Moreover, as part of our efforts to resolve this dispute, Ms. Miller went farther, and produced documents concerning "significant" expenses incurred, or purchases made, after construction was complete. Thus, MLCC's motion concerns only documents relating to *insignificant* expenses

---

[2](...continued)
that Ms. Miller had substantial income with which to make the payments on the Loan. However, MLCC investigated Ms. Miller's income when it approved the Loan, and, when Ms. Miller asked MLCC to refinance the Loan in 2001, MLCC rejected that application because "Your income is insufficient to sustain payments of the amount of credit requested." (Begos Dec., Ex. F).

incurred, or purchases made, after construction was completed. MLCC cannot possibly justify its claim to such documents.

**Interrogatory 3**

This interrogatory concerns the emotional distress issue, which has been resolved.

**Interrogatory 6**

This interrogatory seeks an identification of, and information about, "all sources of income" from January 1, 1999 until the date of response. The discussion of Ms. Miller's tax returns and financial information, *supra*, applies here. Moreover, even if Ms. Miller's income in years after 1999 were relevant, MLCC has no need to specifics as to each source of any income. At most, a statement of Ms. Miller's total income for relevant periods would suffice.

**Interrogatory 7**

This interrogatory seeks an identification of the portions of the POA that were whited-out. Ms. Miller provided a description of what occurred, and referred MLCC to the original POA, on which the white-outs are obvious. MLCC claims this is insufficient because "nobody evidently has the original on which this whiting out allegedly occurred." (MLCC Br. At 9). This is incorrect; undersigned counsel has the original. MLCC's counsel has long known this, because we brought the original POA – white-outs and all – to the initial conference with the Court, and showed it to all who were present. Where one can look at the document and see where the white-out is, it is rather pointless to attempt to provide a narrative description of that information.

6

## CONCLUSION

For the reasons set forth above, MLCC's motion should be denied in its entirety.

Dated:   Westport, Connecticut
         November 6, 2003

                                         BEGOS & HORGAN, LLP

                                         By: /s/ Patrick W. Begos
                                             Patrick W. Begos (ct19090)
                                         Attorneys for Plaintiff
                                         327 Riverside Avenue
                                         Westport, CT 06880
                                         (203) 226-9990
                                         (203) 222-4833 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on November 6, 2003 to:

Thomas P. Friedman, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

                                         /s/ Patrick W. Begos
                                         Patrick W. Begos