UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 NOV 19  A  9: 46

U.S. DISTRICT COURT
HARTFORD CT

JULIE DILLON RIPLEY MILLER,

        Plaintiff and Counterclaim
        Defendant,

    - against -

MERRILL LYNCH CREDIT CORPORATION,

        Defendant and Counterclaimant.

NO. 3:03-CV-1016 (WWE)

November 18, 2003

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL

        Defendant and Counterclaimant Merrill Lynch Credit Corporation ("MLCC")
respectfully submits this reply memorandum in support of its motion to compel Plaintiff and
Counterclaim Defendant Julie Dillon Ripley Miller ("Plaintiff") to provide responses to MLCC's
First Requests for Production of Documents and First Set of Interrogatories (the "Motion").
Plaintiff's Opposition, while colorful and assertive, fails to recognize that this litigation is in the
discovery phase, and that the relief MLCC is seeking via this Motion (and through its other
discovery) is necessary and appropriate to investigate any remaining genuine issues of material
fact related to Plaintiff's eleven count Amended Complaint, MLCC's Counterclaim for
foreclosure and the parties' various defenses.

        Since the filing of Defendant's Motion to Compel, the parties entered into a
stipulation to dismiss Plaintiff's emotional distress claims "solely to narrow issues and expedite
the prosecution of this action." See Stipulation of 11/5/03 at 2. As shown below, Plaintiff's
positions related to the remaining discovery have been (i) inconsistent, (ii) unreasonable or
(iii) implausible. This Court's intervention is therefore necessary.

                                     **ORAL ARGUMENT REQUESTED**

**NATURE OF THE DISPUTE**

In or about October of 1997, Plaintiff signed an application for a Mortgage 100 loan from MLCC. Under the Mortgage 100 program, borrowers are required to pledge an account of securities in lieu of making a down payment. MLCC provided Plaintiff with a Mortgage 100 Loan in an amount of $1,350,000 to purchase the property at issue. Following her purchase, and before the consummation of the loan at issue, Plaintiff spent at least $3,800,000 on renovations and reconstruction using margin loans. In or about December of 1999, Plaintiff signed an application for a $6,200,000 loan under the Mortgage 100 program, in part, to pay for additional expenses for reconstruction (the "Loan"). During the loan processing stage, the loan amount increased to $7,500,000, an amount which Plaintiff does not contest. See Dep. Transcript of J. Miller of 10/20/03 at 71, attached as Ex. 1 to Supplemental Affidavit of Thomas P. Friedman in Support of Defendant's Motion to Compel ("Supp. Aff. of T. Friedman."). The balance of the Loan proceeds were used to pay off her $1,350,000 mortgage on the property and to extinguish the margin debt she had been amassing. In December of 1999, Plaintiff's account with Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S") alone was valued at over $8,100,000. See Supp. Aff. of T. Friedman at Ex. 2. Plaintiff was also a beneficiary to numerous trusts and estates involving millions of dollars. Plaintiff has evidently had difficulty accessing these funds as a result of disputes with her sisters and the delayed closing of her mother's estate.

Plaintiff's "Nature of the Dispute" section focuses on the execution of the power of attorney used to consummate the Loan and the alleged unconscionable nature of the Loan. Only after MLCC exercised its rights under the pledge agreement to liquidate the sub-account did Plaintiff complain to MLCC regarding the nature of the Loan. Plaintiff now claims that

MLCC caused her economic damages and sets forth various causes of action based on MLCC's alleged conduct.  With these facts in mind, MLCC addresses why this Motion is necessary.

### (i) **An Example of the Inconsistent**

Plaintiff alleges that Mr. Falini, her broker at MLPF&S at the time the loan was closed, whited-out portions of the power of attorney used to consummate the Loan. Nevertheless, Plaintiff refused to fully answer Interrogatory No. 7, which seeks Plaintiff's verified version of the facts surrounding this alleged incident.  Plaintiff finds her current version of the facts sufficiently important to base a substantial portion of her "Nature of the Claim" section of her Opposition on them.  Opp. at 1-2.  The Opposition cites to various "faxes" allegedly sent by Mr. Falini from Pennsylvania involving the power of attorney on the date and about the time the document was executed.  See Opp. at 1-2.  Yet, during her deposition, Plaintiff testified that the "whiting-out" occurred at her house in Norwalk, Connecticut with Mr. Falini present at the same time he was purportedly sending these forms from Pennsylvania to the title company in Connecticut.  See Dep. Transcript of J. Miller of 10/21/03 at 299, attached as Ex. 3 to Supp. Aff. of T. Friedman.  MLCC is entitled to Plaintiff's *final* version of the facts surrounding the formulation and execution of the Power of Attorney form.

### (ii) **An Example of the Unreasonable**

On one hand, Plaintiff claims that her tax returns for the years 2000 and 2001 are not discoverable.  Opp. at 4.  On the other hand, Plaintiff is seeking approximately $1,250,000 in damages for capital gains tax liability allegedly caused by MLCC.  See, e.g., Amended Complaint at ¶3; see also Affidavit of Joseph L.A. Tesoriere Filed in Support of Plaintiff's

Motion for Prejudgment Remedy at ¶3, attached as Ex. 4 to the Supp. Aff. of T. Friedman.[1]

While MLCC addresses the misguided nature of this legal position below, Plaintiff's position

obviously undermines MLCC's ability to assess her alleged tax liability without viewing her tax

returns in full. There can hardly be a privacy interest involved here -- Plaintiff's tax returns from

1995 to 1999 have already been disclosed. See Aff. of P. Begos at Ex. F.

### (iii) An Example of the Implausible

MLCC's Document Request No. 33 seeks "all documents concerning or reflecting

any appraisals of the Land, the Residence, or the Property." In this foreclosure action, Plaintiff

objected to this request on the grounds that it is "over-broad, unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence." See Plaintiff's Responses

to Defendants First Set of Interrogatories attached to Aff. of T. Friedman as Ex. 3 at 12.

Notwithstanding these inapplicable, yet unequivocal, objections, Plaintiff produced two

appraisals in her initial production. Following counsels' meet and confer, and without producing

any additional appraisals, Plaintiff claims to have provided all documents responsive to Request

No. 33. See Letter from P. Begos to T. Friedman of 10/15/03, attached to Supp. Aff. of T.

Friedman as Ex. 5 at 3 ("**Requests 31, 32, 33, 36 and 43.** Ms. Miller has produced all

documents responsive to these requests.") & Letter from T. Friedman to P. Begos of 10/27/03,

attached to Supp. Aff. of T. Friedman as Ex. 6 (drafted in response). During her deposition,

Plaintiff testified that she "had so many appraisals done of this property, they could fill a book."

See Dep. Transcript of J. Miller of 10/21/03 at 250, attached as Ex. 7 to Supp. Aff. of T.

Friedman. These appraisals should be produced.

---

[1] The parties agreed to resolve Plaintiff's Motion for Prejudgment Remedy without the need for
Court intervention and are finalizing a Stipulation and Consent Order for the Court's approval.

## THE DISPUTED REQUESTS

Tellingly, Plaintiff's Opposition did not, and could not, dispute the truth of

Paragraph 6 of the Affidavit of Thomas P. Friedman filed in support of the Motion, which stated

that:

> During the September 19, 2003 [meet and confer] teleconference,
> counsel agreed on a number of basic premises regarding the proper
> scope of discovery in this matter. Specifically, counsel agreed that
> (i) Plaintiff had placed her finances at issue by making allegations
> in this litigation that MLCC's alleged wrongdoing has impacted
> her finances and credit; (ii) Plaintiff had placed her mental state at
> issue by making allegations in this litigation that MLCC's alleged
> wrongdoing caused her emotional distress; and (iii) discovery
> regarding Plaintiff's mitigation efforts and causation were
> generally proper given the allegations in the lawsuit and her
> discovery responses to date.

Aff. of T. Friedman in Support of Motion to Compel at ¶6.; cf Opp. at 2 (disputing assertion that

"Plaintiff concedes that nearly all of the discovery is relevant" but not that paragraph 6 of the

Friedman Affidavit is inaccurate).

**Discovery Concerning Ms. Miller's Use of, and Access to, Financial Resources**

Plaintiff contends that this dispute concerns "two main issues (i) should Plaintiff

be required to produce tax returns; and (ii) what, if any, documents relating to family trusts and

estates in which Ms. Miller might be a beneficiary can she be compelled to produce." Opp. at 3.

Defendant maintains that there are more than these two issues in dispute – specifically, as the

heading to this section suggests, MLCC is entitled to discovery regarding Miller's use of, and

access to, financial resources up to and including any period for which she claims damages.

With respect to tax returns, Plaintiff clearly must produce her tax returns for 2000 and 2001. As an initial matter, Plaintiff did not raise a claim of privilege for her tax returns in her Response to Defendant's First Request for Production of Documents. See Ex. 3 to Aff of T. Friedman. at 17 (Request No. 55). Thus, any claimed privilege has been waived. Moreover, MLCC is entitled to determine damages with specificity and cannot do so without Plaintiff's tax returns. Calculations of tax liability can be complex – Plaintiff herself has hired an expert on the issue. See Aff. of J. Tesoriere, attached to Supp. Aff. of T. Friedman as Ex. 4 (opining that Plaintiff's capital gains tax liability is "*approximately* $1,250,000." (emphasis added.). MLCC is entitled to access the same information as Plaintiff's expert to determine alleged damages with specificity.

To the extent Plaintiff asserts that information provided to, or created by, Mr. Tesoriere, or his firm, Omni Solo, is privileged, that privilege has also been waived. Mr. Tesoriere has testified as an expert in this matter by submitting an affidavit regarding capital gains liability and therefore no privilege can possibly attach to his work product. This Court should therefore order disclosure of the 2000 and 2001 tax returns and all information and documentation provided to, or created by, Omni Solo or its agents.

With respect to documents relating to the family trusts and estates, MLCC need only show that disclosure is reasonably calculated to lead to the discovery of admissible evidence. Here, Plaintiff's financial situation and her knowledge regarding her financial situation are clearly at issue. Documents relating to her family trusts and estates bear on the issue of causation, mitigation and quite possibly her knowledge of the terms of the Loan. The trustees, her sisters or another entity may be an intervening cause for her damages. Of course, MLCC must review the requested discovery to evaluate these issues. Further, Plaintiff could

6

have cured her defaults, but did not. She admits that she has had disputes with her sisters regarding trust funds. See Plaintiff's Response to Defendant's First Set of Interrogatories, attached as Ex. 4 to Aff. of T. Friedman at 5 ("[plaintiff] had dealings and disputes with her sisters regarding her parents' estates . . . ."). MLCC is entitled to determine if another individual or entity caused, or contributed to, Plaintiff's failure to cure. MLCC is also entitled to inspect documents which are reasonably likely to contain information about Plaintiff's financial status throughout the period that she maintains MLCC caused her damages. Documents concerning the trusts and estates are likely to contain such information. Document Request Nos. 4 through 13, 16, 18, 22, 34, 36, 41, 42, 43, 46 and 55 are reasonably calculated to lead to admissible evidence regarding either Plaintiff's financial affairs and decisions and/or her knowledge regarding same. With respect to its defenses such as waiver, estoppel, laches and ratification, MLCC is entitled to documents, such as those at issue in these requests, demonstrating Plaintiff's financial position and knowledge of the terms of the Loan.

**Discovery Concerning Plaintiff's "Mitigation Efforts"**

Plaintiff argues that requests directed to the period after the Loan converted from construction to permanent are not discoverable because "this action concerns a *construction* loan[.]" Opp. at 5 (emphasis added). This glib response fails to account for the fact that this action involves Plaintiff's failure to make payments on the Loan once it converted to permanent status. Thus, Plaintiff's use of funds during that period is discoverable and her assertion that it has produced the relevant documents "concerning improvements up to the time of the alleged '1999 loan'" is insufficient. Opp. at 5.

MLCC has reason to believe that Plaintiff continued to spend her disposable income on lavish interior decorations and furnishings, rather than her mortgage payments, which is probative of the causation of Plaintiff's financial difficulties and her failure to mitigate damages, if any. It would also demonstrate that she disregarded advice testified to by her MLPF&S broker, Mr. Falini, in connection with the Loan, that she shut off the spigot with respect to such additional costs, see Deposition Transcript of J. Falini at 71, attached as Ex. 8 to Supplemental Affidavit of T. Friedman, which we believe discovery will show were a continuing draw on her asset base after the construction Loan was approved. See, e.g., Ex. 9 to Supp. Aff of T. Friedman (showing Plaintiff's expenses for window treatments for a single invoice to be $42,598.22.) Requests Nos. 26, 31, 32, 33, 39, 40 and 45 also relate to Plaintiff's knowledge of and involvement with the renovation of the property, additional expenditures on items such as interior furnishings and decoration which were evidently substantial, as well as her failure to follow the advice of consultants regarding the administration of her assets and estate. Again, with regard to MLCC's defenses such as waiver, estoppel, laches, ratification, causation and failure to mitigate, Plaintiff's total expenditures on the property during the entire renovation project and failure to take the advice of consultants during the period when she was to be making payments on the Construction Loan are relevant and should be produced. Obviously, if Plaintiff was making such expenditures at the expense of her overall financial well-being and ability to make mortgage payments, that information is probative and should be disclosed.

Plaintiff compounds her logical failures with factual inaccuracies. The Opposition states that "*as part of our efforts to resolve this dispute,*" Ms. Miller produced documents concerning "significant" expenses incurred, or purchases made, after construction was complete." Opp. at 5 (emphasis added). Plaintiff's second of two document productions

8

occurred on <u>September 17</u>, 2003.  <u>See</u> Letter from P. Begos to T. Friedman of 9/17/03 attached

as Ex. 10 to Supp. Aff. of T. Friedman.  The parties' meet and confer occurred on <u>September 19</u>.

<u>See</u> Aff. of T. Friedman at ¶5.  Any claimed attempt by Plaintiff to narrow this discovery dispute

via its document production is therefore demonstrably false.  In an effort to narrow the dispute,

*Defendant* suggested that Plaintiff produce documents concerning "significant" expenses

incurred, or purchases made, by Plaintiff after construction was complete and Plaintiff has not

produced a single document since that discussion.  Supp. Aff of T. Friedman at ¶3.  Instead,

Plaintiff turns this compromise on its head to suggest that Defendant is now seeking

"insignificant" documents.  Opp. at 5-6.  In truth, MLCC is seeking the documents concerning

"significant" expenses which Plaintiff claims to have provided.  MLCC further requests that the

Court define "significant" as any expenditure over $5,000, as Plaintiff's counsel has indicated

that they believe a figure closer to *$50,000* is appropriate.

**The Interrogatories at Issue**

       With respect to Interrogatory No. 6,  MLCC is seeking to discover the sources,

and receipt of, Plaintiff's income from January 1, 1999.  Defendant has agreed to narrowing

Plaintiff's response to "significant" sources of income.  As discussed above, this information is

probative of causation and mitigation issues.  Plaintiff cannot simply "affirm" that her income

was "consistent with prior years," as she suggests.  <u>See</u> Opp. at 4 & n1.  First, as Plaintiff's own

exhibits demonstrate, her Adjusted Gross Income varied from $33,875 in 1995 to $2,613,601 in

1998.  <u>See</u> P. Begos Aff. at Ex. F.  On these facts, there is no "consistency" to verify.  Second,

the source of income is equally important to determine where MLCC can locate additional

relevant information.

Contrary to Plaintiff's assertion, a plain reading of Interrogatory No. 7 demonstrates that it seeks more than a description of where certain alleged white-outs are located. It seeks the facts and circumstances of the alleged whiting-out, which Plaintiff seems all to eager to rely upon, when it serves her purposes. As shown above, Plaintiff's versions of the facts surrounding the execution of this document has been, in effect, a "work in progress" and MLCC is entitled to a verified response to this straight-forward interrogatory.

Finally, to the extent Plaintiff purports to "reserve [her] right to respond more specifically" to discuss specific requests, MLCC notes that Plaintiff cannot reserve a right to which she is not legally entitled. Opp. at 3. The Local Rules do not permit or contemplate the submission of sur-replies, and there exists no extenuating circumstances here warranting a deviation from this Court's rules.

Dated: November 18, 2003
Stamford, Connecticut

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _Thomas P. Fried_____

Douglas C. Conroy, ct11555
Thomas P. Friedman, ct24947
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email:  douglasconroy@paulhastings.com
         thomasfriedman@paulhastings.com

Counsel for Defendant and Counterclaimant
MERRILL LYNCH CREDIT CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that on this 18th day of November, 2003, a copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL was delivered via U.S. first class mail to:

> Patrick W. Begos, Esq.
> BEGOS & HORGAN, LLP
> 327 Riverside Avenue
> Westport, CT 06880

Thomas P. Fried

Thomas P. Friedman

STM/263394.1
11413.00021

11