

# BEGOS & HORGAN, LLP

ATTORNEYS AT LAW

PATRICK W. BEGOS *
CHRISTOPHER G. BROWN *
MICHAEL F. HORGAN, JR. *
BRIAN G. KANNER †

* ADMITTED IN NY AND CT
† ADMITTED IN NY AND ME

327 RIVERSIDE AVENUE
WESTPORT, CONNECTICUT 06880
TEL: (203) 226-9990
FAX: (203) 222-4833
WWW.BEGOSHORGAN.COM

7 PONDFIELD ROAD
P.O. BOX 369
BRONXVILLE, NEW YORK 10708-0369
TEL: (914) 961-4441
FAX: (914) 961-4442

October 15, 2003

**BY TELECOPIER**

Thomas P. Friedman, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

   Re: Miller v. MLCC

Dear Thomas:

  I am writing to follow up on: our September 19, 2003 telephone conference; your October 6, 2003 letter; and your motion to compel. Given the pendency of your motion, we obviously reserve all our rights to oppose; however, I believe that we should be able to substantially narrow, if not entirely eliminate, the outstanding disputes.

**Plaintiff's Financial Condition**

  The majority of the disputed discovery requests concerned issues relating to Ms. Miller's finances, particularly including documents and information relating to her income, her assets, and trusts and/or estates in which she may be a beneficiary (*see, e.g.* Interrogatory 6; Requests 4-18). Though we will discuss certain of these requests in more detail below, we believe that most of the disputed items can be dealt with as a group.

  Ms. Miller has already produced all bank and brokerage statements in her possession, as well as all financial statements. MLCC already has Ms. Miller's tax returns for pertinent years up through 1999. Our primary concern at this point relates to the date through which financial information should be produced. In our view, you are not entitled to information up through the present. For example, even if Ms. Miller earned substantial income in 2003, or received substantial distributions from estates or trusts in 2003, it would not be relevant to the issues raised by our claims or your counterclaims.

  In order to resolve most of the disputes regarding Ms. Miller's finances, we are prepared to agree to produce Ms. Miller's tax returns through tax year 2001 (or provide authorizations if copies of the returns cannot be located), and all documents concerning any trusts or estates in which Ms. Miller is a beneficiary created on or before December 31, 2001. We believe this would provide all information arguably within the scope of discovery in this matter. If that is acceptable to you, please

Thomas P. Friedman, Esq.
October 15, 2003
Page 2

let me know. If, instead, you desire to seek documents for more recent periods, we will have to let the Court resolve the dispute.

**Plaintiff's Emotional Distress and Medical Condition**

A significant portion of the disputed discovery requests relate to Ms. Miller's emotional distress and medical condition (*see, e.g.*, Interrogatories 1-4; Document Requests 51, 53, 54). You asserted that these were relevant because of Ms. Miller's emotional distress claim. As we discussed, we do not want a damages issue to become the focus of burdensome and time consuming discovery in this case. For that reason, we are prepared to withdraw Ms. Miller's claim for emotional distress, solely: (i) to narrow the issues in the case; (ii) in exchange for MLCC's agreement not to seek discovery into Ms. Miller's medical/emotional condition, and not to rely on the withdrawal to any advantage. I have prepared a proposed stipulation and proposed Second Amended Complaint to that effect, which I am enclosing.[1] Please let me know if it is acceptable.

**Specific Requests**

There were certain issues that related to specific requests. We will now discuss our understanding of disputes MLCC has dropped, and Ms. Miller's attempts to resolve pending disputes.

**Request 4.** Ms. Miller has produced all non-privileged documents responsive to this request.[2] As we discussed, Omni Solo, Inc. was retained for litigation purposes, and any communications with its representatives are privileged. Obviously, if any representative of Omni Solo is expected to testify at trial, appropriate disclosures will be made. To anticipate your question about a privilege log, because Omni Solo, like Begos & Horgan, and, indeed, your firm, were retained contemporaneously with this litigation, and continue to provide services, I believe that preparing privilege logs for these entities will be unduly burdensome and not terribly helpful. We note, in this regard, that you have not provided us with any privilege log.

**Requests 5, 6, 8, 10, 11, 12, 13 and 41.** Any dispute regarding these requests would be resolved in accordance with our discussion of financial issues above.

---

[1] The formatting of the complaint made redlining unhelpful. To make your review easier, I can tell you that the only changes made to the Amended Complaint are: the document name; the removal of Counts VIII (Intentional Infliction of Emotional Distress) and IX (Negligent Infliction of Emotional Distress); renumbering Counts X and XI; and corresponding changes to the Wherefore clause.

[2] In order to prevent any misunderstanding, any statement about the completeness of Ms. Miller's production should be assumed to be limited to responsive documents or information in her possession, custody or control that she has discovered upon a reasonable, good faith search for same.

Thomas P. Friedman, Esq.
October 15, 2003
Page 3

**Requests 14, 15 and 17.** You have dropped any dispute regarding these requests.

**Request 16.** Ms. Miller has produced all documents responsive to this request.

**Requests 23-30.** Our dispute here relates to matters after the 1999 Loan was converted from construction to permanent. You advised that you are looking for documents relating to "significant expenses." As so limited, Ms. Miller has produced all documents responsive to these requests.

**Requests 31, 32, 33, 36 and 43.** Ms. Miller has produced all documents responsive to these requests.

**Request 39.** This request, seeking documents on any litigation in which Ms. Miller has been a party, without limitation of time or subject, is hopelessly overbroad. We are prepared to respond provided that MLCC agrees to provide similar disclosure regarding claims asserted against it by borrowers.

**Request 44.** You stated that this request related to Ms. Miller's claim for emotional distress. Therefore, any dispute would be resolved by the enclosed stipulation.

Based on my notes, these are all the disputes you raised. Please let me know your views on these proposals so that we can avoid further court involvement.

Sincerely yours,

Patrick W. Begos

PWB:mtf
Enclosures

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,                :
                                           :   Case No.03-CV-1016 (RNC)(DFM)
           Plaintiff,                      :
                                           :
   -- against --                           :   October 15, 2003
                                           :
MERRILL LYNCH CREDIT CORPORATION,          :
                                           :
           Defendant.                      :
---------------------------------------------------------x

## STIPULATION

WHEREAS plaintiff has asserted a claim in this action for damages resulting from emotional distress; and

WHEREAS defendant has sought substantial discovery relevant only to that emotional distress claim; and

WHEREAS the parties desire to narrow the issues in this action for discovery and trial;

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, between the undersigned counsel for both parties to this action:

1. Plaintiff shall amend her Amended Complaint by serving and filing the annexed Second Amended Complaint, and will withdraw any claim for emotional distress. Defendant consents to the amendment of Plaintiff's Amended Complaint.

2. Defendant shall withdraw any document requests and/or interrogatories relevant only to Plaintiff's emotional distress claims, including, but not limited to, requests and/or interrogatories seeking medical records or information. Defendant will not pursue any additional discovery concerning plaintiff's medical condition or emotional state.

3. The parties agree that this stipulation is entered into solely to narrow issues and expedite the prosecution of this action. Accordingly, neither party shall use introduce any evidence or argument in this action concerning this stipulation and/or the withdrawal of Plaintiff's claim for emotional distress.

| | |
|---|---|
| PAUL, HASTINGS, JANOFSKY & WALKER, LLP | BEGOS & HORGAN, LLP |
| By:_____ <br> Thomas P. Friedman, Esq. <br> Attorneys for Defendant <br> 1055 Washington Boulevard <br> Stamford, CT 06901-2217 <br> (203) 961-7400 <br> (203) 359-3031 (fax) | By:_____ <br> Patrick W. Begos (ct19090) <br> Attorneys for Plaintiff <br> 327 Riverside Avenue <br> Westport, CT 06880 <br> (203) 226-9990 <br> (203) 222-4833 (fax) |

2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

---------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,

        Plaintiff,

– against –

MERRILL LYNCH CREDIT CORPORATION,

        Defendant.
---------------------------------------------------------------x

Case No. 03-CV-1016 (RNC)

**SECOND AMENDED COMPLAINT**

## ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff is a natural person residing at 21 Point Road, Norwalk, Connecticut.

2. Upon information and belief, Defendant, Merrill Lynch Credit Corporation ("MLCC") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware and authorized to transact and transacting the business of lending money in the State of Connecticut.

3. This action arises out of MLCC's conversion of approximately $5 million of Plaintiff's stocks held by MLCC's affiliate, Merrill Lynch, Pierce, Fenner & Smith ("MLPFS"). MLCC has claimed that its sale of those assets and seizure of the proceeds was authorized pursuant to a Pledge Agreement executed as part of a $7.5 million construction loan transaction (the "Loan"). However, plaintiff never executed that Pledge Agreement, and, specifically withheld authority from her purported attorney-in-fact to sign it on her behalf.

4. Plaintiff has a brokerage account with MLPFS (the "Account") and the bulk of the stocks in the Account were acquired by Plaintiff's family before 1950. When Plaintiff inherited these stocks in 1996, she acquired her ancestors' cost basis in them for capital gains tax purposes.

5.  Plaintiff's MLPFS stock broker, Jay Falini ("Falini"), knew that the Account was Plaintiff's primary source of income and that liquidating the stocks would expose Plaintiff to substantial capital gains tax liability.

6.  In May 1998, Plaintiff began building a house on a piece of property that she owns on Wilson Point on the Norwalk waterfront. In or about the Fall of 1999, Falini arranged for Plaintiff to take the Loan from MLCC. Falini never disclosed to Plaintiff that the Loan involved a pledge of Plaintiff's Account. Falini's actions in arranging the Loan, obtaining documents necessary to close, and orchestrating the closing demonstrate that, at all relevant times, he had actual, implied and/or apparent authority to act as MLCC's agent.

7.  Thereafter, Falini advised Plaintiff that the Loan had been scheduled to close on December 7, 1999. Falini knew that Plaintiff was going to be in Africa from December 2 through December 22, 1999 but advised her that she did not need to have a lawyer present at the closing. Falini later asked Plaintiff to sign a document waiving her right to have a lawyer at the closing.

8.  Falini advised Plaintiff that because her contractors purportedly needed to be paid while she was away, she needed to give Barry Newman ("Newman") (the accountant to whom Falini had referred Plaintiff in 1998) power of attorney to use the Loan money to pay them. Falini sent Plaintiff a blank Connecticut Statutory Short Form Power of Attorney ("POA") form and told her that he would come up from his office in Philadelphia to pick it up on December 2, 1999, the day she was leaving for Africa.

9.  On or about December 2, 1999, Plaintiff took the blank POA form that she received from Falini to her local bank to have it notarized. Newman was identified as the attorney in fact and, with the notary watching, Plaintiff followed the instructions on the form and crossed out and initialed

- 2 -

every power except "real estate transactions" and wrote in that she wanted Newman to be able to pay her contractors.

10. After Plaintiff signed the power of attorney in front of two witnesses and a notary public at the bank, she gave it to Falini, who "whited out" some of Plaintiff's markings on the form. The changes made by Falini after the POA had been signed and acknowledged, which purported to expand the authority delegated by Plaintiff, left it not in compliance with the Connecticut Statutory Short Form Power of Attorney Act, and invalidated it.

11. Falini did not alter Plaintiff's elimination of the power to act with respect to "bond, share and commodity transactions" because, he said, Newman should not have authority to sell Plaintiff's stock. Therefore, to the extent the POA is a valid document, it specifically withholds from Plaintiff's purported attorney-in-fact, Barry Newman, the power to act for the Plaintiff with respect to, *inter alia*, "bond, share and commodity transactions".

12. The POA specifically provides that the definitions of the Connecticut Statutory Short Form Power of Attorney Act apply to the subdivisions of the POA. Thus, as executed, the POA specifically withheld authority to "pledge ... any bond, share [or] instrument of similar character," CGS § 1-46.

13. Upon information and belief, the Loan purportedly closed on or about December 7, 1999 and Newman, Falini and other as-yet-unidentified representative or representatives of MLCC were in attendance. Newman purported to obligate Plaintiff on an agreement with MLCC whereby Newman purportedly pledged Plaintiff's Account as security for the Loan ("Pledge Agreement"). MLCC accepted the POA as evidencing Newman's authority to enter the Pledge Agreement on

-3-

behalf of Plaintiff and ignored the changes to the document and Plaintiff's clear and unambiguous withholding of authority to pledge securities.

14. In or about February 2003, pursuant to a right it claimed by virtue of the Pledge Agreement, MLCC had the Account, which at the time had a value of approximately $5,000,000, liquidated and the proceeds frozen to the exclusion of Plaintiff.

15. In addition to the loss of the stocks and cash in the Account, the liquidation damaged the Plaintiff including exposure to substantial tax liability.

## COUNT I - CONVERSION

16. Plaintiff repeats and realleges paragraphs 1 through 15.

17. Newman was not authorized to enter into the Pledge Agreement for Plaintiff. Therefore, MLCC was not authorized to assume and exercise the right of ownership over the Account to the exclusion of Plaintiff.

18. Plaintiff has been damaged by MLCC's conversion of Plaintiff's Account to its own use, in an amount to be determined at trial, but in excess of $7 million.

## COUNT II - FRAUDULENT NONDISCLOSURE

19. Plaintiff repeats and realleges paragraphs 1 through 18.

20. MLCC, through Falini and its other agent or agents who attended the purported closing and any agent or agents who reviewed the POA and/or Pledge Agreement as part of any "post-closing" activities, knew or should have known that the POA was invalid and/or that Newman was not authorized to enter into the Pledge Agreement for Plaintiff.

21. In addition, MLCC, never disclosed to Plaintiff, before the loan closing, that the Loan included a pledge of Plaintiff's Account. MLCC, through Falini, knew or should have known that

- 4 -

Plaintiff was incommunicado in Africa at the time of the closing, and had no reasonable opportunity to learn of or authorize the Pledge Agreement contemporaneously with the closing.

22. MLCC failed to disclose to Plaintiff that the POA was invalid, that the Pledge Agreement was not authorized and that she could disavow and/or rescind it.

23. Indeed, MLCC did not advise Plaintiff that the Pledge Agreement existed. She finally learned of its existence from MLPFS in 2001, more than a year after it was purportedly executed.

24. MLCC took the invalid Pledge Agreement as unauthorized security for the Loan and withheld from Plaintiff advice of its existence and her right to disavow and/or rescind it to protect its, and/or Falini's, and/or other MLCC agents' and representatives', pecuniary benefit.

25. In claiming rights under the Pledge Agreement with the knowledge that Plaintiff had not authorized Newman to bind her to the Pledge Agreement and that Plaintiff was not likely to learn of the existence of the Pledge Agreement absent advice from MLCC, MLCC assumed the duty to advise Plaintiff that the Pledge Agreement was not authorized and that she could disavow and/or rescind it.

26. As a result of MLCC's non-disclosures, Plaintiff did not disavow or seek to rescind the Pledge Agreement until the Account was liquidated and Plaintiff incurred substantial tax liabilities.

## COUNT III - RECKLESSNESS

27. Plaintiff repeats and realleges Paragraphs 1 through 26.

28. MLCC knew that Plaintiff was dependent on the Account for income and that her tax basis in the securities in the Account was small compared to their market value, such that MLCC knew there was a substantial likelihood that liquidating the Account and withholding the liquidation

- 5 -

proceeds from Plaintiff would leave her unable to pay her creditors, damage her credit and incur for her a substantial capital gains tax liability which she would be unable to pay.

29. MLCC maliciously, wantonly and recklessly caused the liquidation of Plaintiff's Account and withheld the proceeds of the liquidation from Plaintiff.

30. Plaintiff was injured by MLCC's malicious, wanton and reckless conduct in that Plaintiff foreseeably and unnecessarily incurred a substantial capital gains tax liability, and suffered damages to her credit and from her inability to pay her creditors, and incurred and will incur additional expenses to repair such damage and pay the capital gains tax.

## COUNT IV - CONNECTICUT UNFAIR TRADE PRACTICE ACT, DECEPTIVE ACTS OR PRACTICES

31. Plaintiff repeats and realleges Paragraphs 1 through 30.

32. The conduct of MLCC constituted a deceptive act or practice within the meaning of Conn. Gen. Stat. § 42-110b(a) in the conduct of the trade or commerce alleged in Paragraph 2 in that said conduct violates public policy, is immoral, unethical or unscrupulous and is substantially injurious to consumers, including Plaintiff.

33. As a result of the conduct of MLCC alleged in this Count, Plaintiff has suffered an ascertainable loss of money or property, including the Account and capital gains tax.

## COUNT V - CONNECTICUT UNFAIR TRADE PRACTICES ACT, EXACERBATING CIRCUMSTANCES, DECEPTIVE ACTS OR PRACTICES

34. Plaintiff repeats and realleges Paragraphs 1 through 33.

35. The conduct of MLCC constituted an intentional and wanton violation of Plaintiff's rights or was done with reckless indifference to those rights in that MLCC knew that its deceptive

acts or practices were substantially likely to leave Plaintiff unable to pay her creditors, damage her credit and incur for her a substantial capital gains tax liability which she would be unable to pay.

### COUNT VI - CONNECTICUT UNFAIR TRADE PRACTICES ACT, UNFAIR ACTS OR PRACTICES

36. Plaintiff repeats and realleges Paragraphs 1 through 35.

37. The conduct of MLCC constituted an unfair act or practice within the meaning of Conn. Gen. Stat. § 42-110b(a) in the conduct of the trade or commerce alleged in Paragraph 2 in that said conduct violates public policy, is immoral, unethical or unscrupulous and is substantially injurious to consumers, including Plaintiff.

38. As a result of the conduct of MLCC alleged in this Count, Plaintiff has suffered an ascertainable loss of money or property, including the Account and capital gains tax.

### COUNT VII - CONNECTICUT UNFAIR TRADE PRACTICES ACT, EXACERBATING CIRCUMSTANCES, UNFAIR ACTS OR PRACTICES

39. Plaintiff repeats and realleges Paragraphs 1 through 38.

40. The conduct of MLCC constituted an intentional and wanton violation of Plaintiff's rights or was done with reckless indifference to those rights in that MLCC knew that its unfair acts or practices were substantially likely to leave Plaintiff unable to pay her creditors, damage her credit and incur for her a substantial capital gains tax liability which she would be unable to pay.

### COUNT VIII - NEGLIGENCE

41. Plaintiff repeats and realleges paragraphs 1 through 40.

42. A reasonable lender would have known that the POA and/or Pledge Agreement was invalid. Therefore, MLCC was negligent in causing the liquidation of the Account pursuant to the invalid Pledge Agreement.

- 7 -

43. As a result of MLCC's negligence, Plaintiff foreseeably and unnecessarily forfeited the Account to MLCC and incurred a substantial tax liability.

## COUNT IX - RESPONDEAT SUPERIOR

44. Plaintiff repeats and realleges paragraphs 1 through 43.

45. At all relevant times, Falini was the MLPFS registered representative assigned to the Account.

46. Acting as an employee or agent of the MLPFS-affiliated MLCC, and within the scope of his employment or agency in furtherance of MLCC's business, Falini arranged for the Loan, including Pledge Agreement, and engaged in the conduct alleged in Counts II through X.

47. Falini's negligence and/or recklessness was generally foreseeable.

48. At all relevant times, MLCC put Falini in a position which enabled Falini, while apparently acting within his authority, to engage in the conduct alleged in Counts II through X and Falini did engage in such conduct.

49. As a result, MLCC is vicariously liable for Falini's liability to Plaintiff, in addition to its own direct liability to Plaintiff.

WHEREFORE, Plaintiff demands relief in an amount greater than fifteen thousand dollars, exclusive of interest and costs.

As to Counts I through VII and IX, Plaintiff claims:

(i) Money Damages;

(ii) Punitive Damages;

(iii) Attorney's Fees;

(iv) Statutory Interest; and

(v)    Costs of Suit.

As to Count VIII, Plaintiff claims:

(i)    Money Damages;

(ii)    Statutory Interest; and

(iii)    Costs of Suit.

THE PLAINTIFF
JULIE DILLON RIPLEY MILLER

By: _____
Christopher G. Brown, Esq. (ct 18216)
Begos & Horgan LLP
327 Riverside Avenue
Westport, CT 06880
(203) 226-9990

- 9 -

## CERTIFICATE OF SERVICE

This certifies that on October 15, 2003, a copy of the foregoing Amended Complaint was delivered via first-class mail to:

Douglas C. Conroy, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT 06901-2217



Christopher G. Brown

