UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

------------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,

                      Plaintiff,

        – against –

MERRILL LYNCH CREDIT CORPORATION,

                      Defendant.
------------------------------------------------------------------x

Case No. 03-CV-1016 (RNC)

**SECOND AMENDED COMPLAINT**

## ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff is a natural person residing at 21 Point Road, Norwalk, Connecticut.

2. Upon information and belief, Defendant, Merrill Lynch Credit Corporation ("MLCC") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware and authorized to transact and transacting the business of lending money in the State of Connecticut.

3. This action arises out of MLCC's conversion of approximately $5 million of Plaintiff's stocks held by MLCC's affiliate, Merrill Lynch, Pierce, Fenner & Smith ("MLPFS"). MLCC has claimed that its sale of those assets and seizure of the proceeds was authorized pursuant to a Pledge Agreement executed as part of a $7.5 million construction loan transaction (the "Loan"). However, plaintiff never executed that Pledge Agreement, and, specifically withheld authority from her purported attorney-in-fact to sign it on her behalf.

4. Plaintiff has a brokerage account with MLPFS (the "Account") and the bulk of the stocks in the Account were acquired by Plaintiff's family before 1950. When Plaintiff inherited these stocks in 1996, she acquired her ancestors' cost basis in them for capital gains tax purposes.

5.  Plaintiff's MLPFS stock broker, Jay Falini ("Falini"), knew that the Account was Plaintiff's primary source of income and that liquidating the stocks would expose Plaintiff to substantial capital gains tax liability.

6.  In May 1998, Plaintiff began building a house on a piece of property that she owns on Wilson Point on the Norwalk waterfront. In or about the Fall of 1999, Falini arranged for Plaintiff to take the Loan from MLCC. Falini never disclosed to Plaintiff that the Loan involved a pledge of Plaintiff's Account. Falini's actions in arranging the Loan, obtaining documents necessary to close, and orchestrating the closing demonstrate that, at all relevant times, he had actual, implied and/or apparent authority to act as MLCC's agent.

7.  Thereafter, Falini advised Plaintiff that the Loan had been scheduled to close on December 7, 1999. Falini knew that Plaintiff was going to be in Africa from December 2 through December 22, 1999 but advised her that she did not need to have a lawyer present at the closing. Falini later asked Plaintiff to sign a document waiving her right to have a lawyer at the closing.

8.  Falini advised Plaintiff that, because her contractors purportedly needed to be paid while she was away, she needed to give Barry Newman ("Newman") (the accountant to whom Falini had referred Plaintiff in 1998) power of attorney to use the Loan money to pay them. Falini sent Plaintiff a blank Connecticut Statutory Short Form Power of Attorney ("POA") form and told her that he would come up from his office in Philadelphia to pick it up on December 2, 1999, the day she was leaving for Africa.

9.  On or about December 2, 1999, Plaintiff took the blank POA form that she received from Falini to her local bank to have it notarized. Newman was identified as the attorney in fact and, with the notary watching, Plaintiff followed the instructions on the form and crossed out and initialed

-2-

every power except "real estate transactions" and wrote in that she wanted Newman to be able to pay her contractors.

10. After Plaintiff signed the power of attorney in front of two witnesses and a notary public at the bank, she gave it to Falini, who "whited out" some of Plaintiff's markings on the form. The changes made by Falini after the POA had been signed and acknowledged, which purported to expand the authority delegated by Plaintiff, left it not in compliance with the Connecticut Statutory Short Form Power of Attorney Act, and invalidated it.

11. Falini did not alter Plaintiff's elimination of the power to act with respect to "bond, share and commodity transactions" because, he said, Newman should not have authority to sell Plaintiff's stock. Therefore, to the extent the POA is a valid document, it specifically withholds from Plaintiff's purported attorney-in-fact, Barry Newman, the power to act for the Plaintiff with respect to, *inter alia*, "bond, share and commodity transactions".

12. The POA specifically provides that the definitions of the Connecticut Statutory Short Form Power of Attorney Act apply to the subdivisions of the POA. Thus, as executed, the POA specifically withheld authority to "pledge . . . any bond, share [or] instrument of similar character," CGS § 1-46.

13. Upon information and belief, the Loan purportedly closed on or about December 7, 1999 and Newman, Falini and other as-yet-unidentified representative or representatives of MLCC were in attendance. Newman purported to obligate Plaintiff on an agreement with MLCC whereby Newman purportedly pledged Plaintiff's Account as security for the Loan ("Pledge Agreement"). MLCC accepted the POA as evidencing Newman's authority to enter the Pledge Agreement on

behalf of Plaintiff and ignored the changes to the document and Plaintiff's clear and unambiguous withholding of authority to pledge securities.

14.  In or about February 2003, pursuant to a right it claimed by virtue of the Pledge Agreement, MLCC had the Account, which at the time had a value of approximately $5,000,000, liquidated and the proceeds frozen to the exclusion of Plaintiff.

15.  In addition to the loss of the stocks and cash in the Account, the liquidation damaged the Plaintiff including exposure to substantial tax liability.

## COUNT I - CONVERSION

16.  Plaintiff repeats and realleges paragraphs 1 through 15.

17.  Newman was not authorized to enter into the Pledge Agreement for Plaintiff. Therefore, MLCC was not authorized to assume and exercise the right of ownership over the Account to the exclusion of Plaintiff.

18.  Plaintiff has been damaged by MLCC's conversion of Plaintiff's Account to its own use, in an amount to be determined at trial, but in excess of $7 million.

## COUNT II - FRAUDULENT NONDISCLOSURE

19.  Plaintiff repeats and realleges paragraphs 1 through 18.

20.  MLCC, through Falini and its other agent or agents who attended the purported closing and any agent or agents who reviewed the POA and/or Pledge Agreement as part of any "post-closing" activities, knew or should have known that the POA was invalid and/or that Newman was not authorized to enter into the Pledge Agreement for Plaintiff.

21.  In addition, MLCC, never disclosed to Plaintiff, before the loan closing, that the Loan included a pledge of Plaintiff's Account. MLCC, through Falini, knew or should have known that

Plaintiff was incommunicado in Africa at the time of the closing, and had no reasonable opportunity to learn of or authorize the Pledge Agreement contemporaneously with the closing.

22. MLCC failed to disclose to Plaintiff that the POA was invalid, that the Pledge Agreement was not authorized and that she could disavow and/or rescind it.

23. Indeed, MLCC did not advise Plaintiff that the Pledge Agreement existed. She finally learned of its existence from MLPFS in 2001, more than a year after it was purportedly executed.

24. MLCC took the invalid Pledge Agreement as unauthorized security for the Loan and withheld from Plaintiff advice of its existence and her right to disavow and/or rescind it to protect its, and/or Falini's, and/or other MLCC agents' and representatives', pecuniary benefit.

25. In claiming rights under the Pledge Agreement with the knowledge that Plaintiff had not authorized Newman to bind her to the Pledge Agreement and that Plaintiff was not likely to learn of the existence of the Pledge Agreement absent advice from MLCC, MLCC assumed the duty to advise Plaintiff that the Pledge Agreement was not authorized and that she could disavow and/or rescind it.

26. As a result of MLCC's non-disclosures, Plaintiff did not disavow or seek to rescind the Pledge Agreement until the Account was liquidated and Plaintiff incurred substantial tax liabilities.

## COUNT III - RECKLESSNESS

27. Plaintiff repeats and realleges Paragraphs 1 through 26.

28. MLCC knew that Plaintiff was dependent on the Account for income and that her tax basis in the securities in the Account was small compared to their market value, such that MLCC knew there was a substantial likelihood that liquidating the Account and withholding the liquidation

Case 3:03-cv-01016-WWE     Document 37-5     Filed 11/26/2003     Page 6 of 13

proceeds from Plaintiff would leave her unable to pay her creditors, damage her credit and incur for her a substantial capital gains tax liability which she would be unable to pay.

29. MLCC maliciously, wantonly and recklessly caused the liquidation of Plaintiff's Account and withheld the proceeds of the liquidation from Plaintiff.

30. Plaintiff was injured by MLCC's malicious, wanton and reckless conduct in that Plaintiff foreseeably and unnecessarily incurred a substantial capital gains tax liability, and suffered damages to her credit and from her inability to pay her creditors, and incurred and will incur additional expenses to repair such damage and pay the capital gains tax.

## COUNT IV - CONNECTICUT UNFAIR TRADE PRACTICE ACT, DECEPTIVE ACTS OR PRACTICES

31. Plaintiff repeats and realleges Paragraphs 1 through 30.

32. The conduct of MLCC constituted a deceptive act or practice within the meaning of Conn. Gen. Stat. § 42-110b(a) in the conduct of the trade or commerce alleged in Paragraph 2 in that said conduct violates public policy, is immoral, unethical or unscrupulous and is substantially injurious to consumers, including Plaintiff.

33. As a result of the conduct of MLCC alleged in this Count, Plaintiff has suffered an ascertainable loss of money or property, including the Account and capital gains tax.

## COUNT V - CONNECTICUT UNFAIR TRADE PRACTICES ACT, EXACERBATING CIRCUMSTANCES, DECEPTIVE ACTS OR PRACTICES

34. Plaintiff repeats and realleges Paragraphs 1 through 33.

35. The conduct of MLCC constituted an intentional and wanton violation of Plaintiff's rights or was done with reckless indifference to those rights in that MLCC knew that its deceptive

acts or practices were substantially likely to leave Plaintiff unable to pay her creditors, damage her credit and incur for her a substantial capital gains tax liability which she would be unable to pay.

### COUNT VI - CONNECTICUT UNFAIR TRADE PRACTICES ACT, UNFAIR ACTS OR PRACTICES

36. Plaintiff repeats and realleges Paragraphs 1 through 35.

37. The conduct of MLCC constituted an unfair act or practice within the meaning of Conn. Gen. Stat. § 42-110b(a) in the conduct of the trade or commerce alleged in Paragraph 2 in that said conduct violates public policy, is immoral, unethical or unscrupulous and is substantially injurious to consumers, including Plaintiff.

38. As a result of the conduct of MLCC alleged in this Count, Plaintiff has suffered an ascertainable loss of money or property, including the Account and capital gains tax.

### COUNT VII - CONNECTICUT UNFAIR TRADE PRACTICES ACT, EXACERBATING CIRCUMSTANCES, UNFAIR ACTS OR PRACTICES

39. Plaintiff repeats and realleges Paragraphs 1 through 38.

40. The conduct of MLCC constituted an intentional and wanton violation of Plaintiff's rights or was done with reckless indifference to those rights in that MLCC knew that its unfair acts or practices were substantially likely to leave Plaintiff unable to pay her creditors, damage her credit and incur for her a substantial capital gains tax liability which she would be unable to pay.

### COUNT VIII - NEGLIGENCE

41. Plaintiff repeats and realleges paragraphs 1 through 40.

42. A reasonable lender would have known that the POA and/or Pledge Agreement was invalid. Therefore, MLCC was negligent in causing the liquidation of the Account pursuant to the invalid Pledge Agreement.

43. As a result of MLCC's negligence, Plaintiff foreseeably and unnecessarily forfeited the Account to MLCC and incurred a substantial tax liability.

### COUNT IX - RESPONDEAT SUPERIOR

44. Plaintiff repeats and realleges paragraphs 1 through 43.

45. At all relevant times, Falini was the MLPFS registered representative assigned to the Account.

46. Acting as an employee or agent of the MLPFS-affiliated MLCC, and within the scope of his employment or agency in furtherance of MLCC's business, Falini arranged for the Loan, including Pledge Agreement, and engaged in the conduct alleged in Counts II through X.

47. Falini's negligence and/or recklessness was generally foreseeable.

48. At all relevant times, MLCC put Falini in a position which enabled Falini, while apparently acting within his authority, to engage in the conduct alleged in Counts II through X and Falini did engage in such conduct.

49. As a result, MLCC is vicariously liable for Falini's liability to Plaintiff, in addition to its own direct liability to Plaintiff.

**WHEREFORE,** Plaintiff demands relief in an amount greater than fifteen thousand dollars, exclusive of interest and costs.

As to Counts I through VII and IX, Plaintiff claims:

(i) Money Damages;

(ii) Punitive Damages;

(iii) Attorney's Fees;

(iv) Statutory Interest; and

(v)   Costs of Suit.

As to Count VIII, Plaintiff claims:

(i)   Money Damages;

(ii)  Statutory Interest; and

(iii) Costs of Suit.

THE PLAINTIFF
JULIE DILLON RIPLEY MILLER

By: _/s/ Patrick W. Begos_

Patrick W. Begos (ct19090)
Christopher G. Brown, Esq. (ct 18216)
Begos & Horgan, LLP
327 Riverside Avenue
Westport, CT 06880
(203) 226-9990

## CERTIFICATE OF SERVICE

This certifies that on November 10, 2003, a copy of the foregoing Amended Complaint was delivered via first-class mail to:

Thomas P. Friedman, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

_____
Patrick W. Begos

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

------------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,          :
                                     :   Case No. 03-CV-1016 (RNC)
                  Plaintiff,         :
                                     :   **JURY DEMAND**
         – against –                 :
                                     :
MERRILL LYNCH CREDIT CORPORATION,    :   November 10, 2003
                                     :
                  Defendant.         :
------------------------------------------------------------------x

Plaintiff, Julie Dillon Ripley Miller, by her attorneys, Begos & Horgan, LLP, hereby demands trial by jury of all issues in this action.

BEGOS & HORGAN, LLP

By: _____
Patrick W. Begos (ct19090)
Christopher G. Brown, Esq. (ct 18216)
327 Riverside Avenue
Westport, CT 06880
(203) 226-9990

**CERTIFICATE OF SERVICE**

This certifies that on November 10, 2003, a copy of the foregoing was delivered via first-class mail to:

Thomas P. Friedman, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

_____
Patrick W. Begos