UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

----------------------------------------------------------------x

JULIE DILLON RIPLEY MILLER,                    :

            Plaintiff,                    :    Case No. 3:03CV1016 (RNC) (DFM)

                           :

           – against –                    :    December 3, 2003

                           :

MERRILL LYNCH CREDIT CORPORATION,    :

                           :

            Defendant.                    :

----------------------------------------------------------------x

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL

Plaintiff, Julie Dillon Ripley Miller, by her attorneys, Begos & Horgan, LLP, submits this brief in support of her motion to compel defendant, Merrill Lynch Credit Corporation ("MLCC"), to: (a) identify and produce copies of its lending and/or underwriting manual or guidelines; and (b) comply with Ms. Miller's deposition notice to produce a witness or witnesses in Connecticut.

## NATURE OF THE CASE

Ms. Miller asserted this action to recover damages flowing from MLCC's misconduct in connection with an alleged "construction loan" (the "Loan") in December 1999. MLCC has, in turn, asserted a counterclaim seeking to foreclose on the mortgage allegedly given in connection with the Loan. There are two broad topics at issue.

First, MLCC has asserted that a pledge agreement executed by Ms. Miller's then-accountant (Barry Newman), allegedly as her attorney-in-fact, gave MLCC an interest in approximately $5.5 million in securities belonging to Ms. Miller; MLCC subsequently sold those securities, resulting in substantial capital gains liability and other damages for Ms. Miller. Ms. Miller has alleged that

the power of attorney ("POA") under which Mr. Newman purported to act was either void, or, if it

had *any* vitality, did not authorize Mr. Newman to pledge securities, for the following reasons:

▸     After the POA was signed and acknowledged, it was substantially changed at least twice by Jay Falini, a stockbroker employed by MLCC's affiliate, Merrill Lynch, Pierce Fenner & Smith ("MLPF&S"). Mr. Falini's changes purported to expand the authority given to Mr. Newman. Plaintiff contends that the post-execution changes voided the POA.

▸     Even if those changes did not void the POA, the document (as changed by Mr. Falini), still *withheld* any authority for Mr. Newman to pledge Ms. Miller's stocks. It did so by deleting the power to enter into "bond, share and commodity transactions," which is statutorily construed to cover the power to pledge securities (C.G.S.A. § 1-46).

Because Mr. Newman did not have the authority to pledge Ms. Miller's stock to MLCC, MLCC's

subsequent actions in freezing the account in which those securities were held, and subsequently

selling them, was a conversion.

Second, MLCC approved the $7,500,000 Loan even though its own documents show it knew

that: (i) the house, after completion, would be worth only $3,800,000; and (ii) Ms. Miller did not

have sufficient income to make the loan payments. Thus, MLCC knew, when it approved the Loan,

that Ms. Miller would necessarily default, and that it would be seizing, and selling, the collateral.

Moreover, Mr. Falini (the broker who changed the POA) told MLCC not to communicate directly

with Ms. Miller concerning the Loan, and insisted that the Loan closing go forward while Ms. Miller

was out of the country (necessitating the POA). Based on these, and other facts, Ms. Miller asserted

various defenses to MLCC's foreclosure counterclaim, including defenses of unclean hands and

unconscionability.[1]

---

[1] *See, e.g. Family Financial Services, Inc. v. Spencer,* 41 Conn. App. 754, 763 (Ct. App. 1996), in which the court found a mortgage transaction unconscionable where, *inter alia*: "the defendant's financial situation made it apparent that she could not reasonably expect to repay the second mortgage[.]" Similar factors support the defense of unclean hands. *Montary Funding Group, Inc. v. Pluchino,* 2003 Conn. Super. LEXIS 2442 (Ct. Super. Sep. 3, 2003).

## THE DISPUTED INTERROGATORY

In order to further support her defenses to MLCC's counterclaim (as well as certain of her affirmative claims), Ms. Miller sought discovery concerning MLCC's internal underwriting and/or lending guidelines and manuals. Specifically, on October 10, 2003, Ms. Miller served her First Set of Interrogatories (Begos Dec., Ex. A), which sought descriptions of certain of MLCC's policies and procedures, as well as copies of its guidelines or manuals (Interrogatories 5-8).

Plaintiff seeks to compel a complete answer to Interrogatory 8. The interrogatory, and MLCC's response (Begos Dec., Ex. B), are as follows:

> **Interrogatory 8.** Identify any lending manuals, underwriting manuals or other statements of procedure referring or relating to the procedures described in interrogatories 5, 6 and/or 7.
>
> **Response:** MLCC hereby incorporates each of the foregoing General Objections into its response to this interrogatory. MLCC objects to this interrogatory on the ground that it plainly seeks confidential and proprietary information. Without an appropriate confidentiality order, MLCC will neither identify, nor provide lending manuals, underwriting manuals or other statements of procedure.

It is noteworthy that, in its responses to Interrogatories 5, 6 and 7, MLCC confirmed that it imposed requirements and guidelines on its employees:

> MLCC extends credit based on the *application of guidelines* and discretion, not requirements. ... MLCC's lending decisions *require* that MLCC and its employees apply discretion in balancing the many variables that are material to any specific lending decision.

(Response to Interrogatory 6; emphasis supplied).

After receiving MLCC's response, we promptly forwarded a proposed Confidentiality Agreement to satisfy MLCC's concerns (Begos Dec., ¶ 4, Ex. C). MLCC did not seek any changes to the Confidentiality Agreement, but did not sign it either (*id.*). Instead, by letter dated November

3

19, 2003, it supplemented its objection: "MLCC is supplementing its objections to Interrogatory No.

8 of Plaintiff's First Set of Interrogatories in that it is vague, overbroad and unduly burdensome, in

part, for the reasons identified in MLCC's objections to Interrogatories 5, 6 and 7." (Begos Dec., Ex.

E).

Subsequently, we had two separate discussions with Thomas Friedman, MLCC's counsel, to

attempt to resolve this dispute (Begos Dec., ¶¶ 7-9). What emerged from those discussions is the

following (*id.* ¶ 9):

- ▸ Mr. Friedman confirmed that MLCC maintains one or more a compilations of information that could fairly be described as a lending or underwriting manual or guidelines. Though MLCC may refer to it by a different name or names, we will, for convenience sake, refer to it as the "Manual."

- ▸ Mr. Friedman asserted that the Manual is kept only in computer form and, apparently, when it is updated no original copies are kept. Thus, Mr. Friedman asserted, it would be unduly burdensome to recreate from its current form the Manual as it existed in 1999. We offered to accept the Manual as it exists today, in order to eliminate any such burden. Mr. Friedman responded that today's version is irrelevant, and declined to produce it.

- ▸ Mr. Friedman asserted that the Interrogatory was over-broad, as the Manual dealt with subjects (unspecified by MLCC) that did not relate to this action. We suggested that MLCC produce a table of contents, allowing us to specify the portions that should be produced. Mr. Friedman stated that no table of contents exists, and he would not offer any solutions to MLCC's overbreadth objections.[2]

It is apparent that MLCC is reaching for all available grounds not to produce the Manual,

without regard to the logical inconsistencies in its position. It is clear that a Manual exists in some

form, and existed in 1999. It is also clear that MLCC applies guidelines to its lending decisions (*see*

Response to Interrogatory 7 ("MLCC extends credit based on the application of guidelines")). MLCC

---

[2] In truth, the Interrogatory, as drafted, is not overly broad, as it seeks documents "referring or relating to the procedures identified in interrogatories 5, 6 and 7." Those interrogatories identify specific lending and underwriting activities and/or calculations, and MLCC did not assert that any of those matters were irrelevant to this action.

4

has represented that this Manual deals with what it calls a "significant and complex portion of [its] operations" (Response to Interrogatory 6), so it is very likely to reflect the consideration and judgment of the company and its responsible officers and employees. That being the case, to what better source than the Manual could Ms. Miller go for discoverable information on how MLCC approaches such a significant issue?

Moreover, production of the Manual, especially if it exists in computer form, cannot be burdensome. It has to be in a form that is easily accessible and usable by MLCC's employees, because it is, by definition, the compilation of information and procedures governing the manner in which those employees "apply their discretion in balancing the many variables that are material to any specific lending decision" (Response to Interrogatory 6).[3] Copying it onto one or more CDs would be the work of minutes. If MLCC instead prefers to produce the Manual as it existed in 1999, then it cannot lay at Plaintiff's feet any burden that it has thus voluntarily assumed. In reality, we submit that we are entitled to the Manual *both* as it existed in 1999, and as it exists today, as an examination of any changes in procedure could be "reasonably calculated to lead to the discovery of admissible evidence." But, for purposes of this motion, the relevant point is that MLCC's assertion of the burden of recreating a historical Manual cannot absolve it from producing what it currently has.

Equally undisputable is the relevance of this information. As set forth above, Interrogatory 8 keys in on the subjects addressed in Interrogatories 5, 6 and 7; MLCC did not object to the relevance

---

[3] Alternately, if no Manual existed in 1999 or today, that would be highly relevant, as there would be no guidelines or limitations on the "discretion" that MLCC employees are able to employ in making decisions concerning a "significant and complex portion of MLCC's operations." (Response to Interrogatory 7). But MLCC has to take a firm position: if a Manual exists, there can be no burden in producing it; if a Manual (by whatever name it is called) does not exist, MLCC should say so. Interrogatory 8 plainly requires as much.

of those subjects, and it has not asserted a relevance objection to Interrogatory 8 (aside from a boilerplate "general objection" to all interrogatories). Moreover, Ms. Miller's lending expert, Richard Homberger, has made clear in his report that the propriety of MLCC's actions in making the Loan must be evaluated in the context of both industry standards and MLCC's own guidelines (Homberger Report, pp. 1, 10; Begos Dec., Ex. F).

For these reasons, MLCC should be compelled to identify and/or produce its manuals and/or guidelines responsive to Interrogatory 8.

## THE DEPOSITION NOTICE

Ms. Miller has also sought to depose one or more MLCC employees who were involved in either the underwriting and approval of the Loan, or in the subsequent sale of Ms. Miller's securities. To that end, Ms. Miller served a Notice of Deposition on October 10, 2003, seeking the deposition of five employees who were involved in that process. MLCC responded that three were no longer employees, and objected to producing the other two in Connecticut (Begos Dec., ¶ 5). Through negotiation, we learned that one of the two remaining employees (James Avery) worked in New Jersey, and MLCC agreed to produce him in Connecticut. Unfortunately, Mr. Avery disclaimed virtually any knowledge of MLCC's underwriting and lending practices in general, or the Loan in particular (*id.*).

Subsequently, Ms. Miller served a Rule 30(b)(6) deposition notice (*id.*, Ex. D), which noticed:

> the deposition(s) of one or more officers, directors or managing agents of [MLCC] or other persons who consent to testify on MLCC's behalf, concerning:
>
> 1.  MLCC's underwriting policies, procedures and guidelines in 1999;
> 2.  The underwriting and approval of the $7,500,000 loan to plaintiff that is the subject of this action ("Loan"), including, but not limited to:
>     a.  The preparation and content of the following documents: Underwriting Worksheets (MLCC 418 and 419); Source of Funds Worksheets

(MLCC720-722); Mortgage 100 Securities Worksheet (MLCC 725); Approval Summary (MLCC 417); Securities Based Lending Pledge Approval Summary (MLCC 723); Oscar Pre-Closing Exception Report (MLCC314);

    b.    The analysis of Ms. Miller's income;

3.    The appraisal(s) of the property at 21 Point Road conducted by or for MLCC;

4.    MLCC's review and/or approval of the Power of Attorney dated December 2, 1999, including but not limited to the copies produced at MLCC307-309 and MLCC327;

5.    Communications between MLCC and Kevin Huben concerning the Loan;

6.    MLCC/Margin Department Collateral Calls issued in connection with the Loan;

7.    Ms. Miller's loan application that was the subject of the Statement of Credit Denial (MLCC1819-20);

8.    Any alleged default on the Loan, and workout steps taken by MLCC in response to such alleged default;

9.    MLCC's directions to Merrill Lynch Pierce Fenner & Smith concerning account 5AX-12860, including, but not limited to, any directions to prevent plaintiff from withdrawing funds, and the direction to sell assets in or about February 2003.

MLCC did not object to the relevance of any of these subjects. Rather, Mr. Friedman wrote:

> We are in the process of locating corporate representatives in response to Plaintiff's Notice of Deposition dated November 17, 2003. Given the scope of the subjects designated for questioning, MLCC will likely need to produce more than one employee. Further, we object to the location of the deposition(s) in Westport, Connecticut, as Defendant's employees likely to have knowledge on the designated subjects live and work in the Jacksonville, Florida area."

(Begos Dec., Ex. E). Thus, MLCC's dispute related *only* to the location of the deposition(s).

MLCC has no reasonable basis to object to producing "one or more officers, directors or managing agents of [MLCC] or other persons who consent to testify on MLCC's behalf" in Connecticut. Ms. Miller's claims arise out of MLCC's decision to engage in the mortgage lending business in Connecticut. Indeed, MLCC has affirmatively stated that it was licensed as a mortgage lender in Connecticut as early as 1997 (Response to Interrogatory 9). The fact that MLCC has

chosen, for its convenience, to operate its Connecticut mortgage lending business from a Jacksonville, Florida office does not change the fact that it engaged in the most local of transactions.

Moreover, MLCC is also a (counterclaim) plaintiff in this action. A significant number of the subjects about which Ms. Miller seeks discovery are related significantly, or solely, to Ms. Miller's defenses to MLCC's counterclaim. Thus, MLCC takes the position that it should be entitled to make a loan to a Connecticut resident; take a mortgage on Connecticut property; then foreclose on that mortgage and take title to, or sell the Connecticut property; and seek a deficiency judgment against the Connecticut resident; all without being obligated to produce in Connecticut a witness with knowledge of the transaction. Not surprisingly, the law does not support MLCC's position.

As a general rule, "the party noticing the deposition usually has the right to choose the location." See 7 *Moore's Federal Practice*, § 30.20[1][b][ii]; Fed. R. Civ. P. 30(b)(1). *See also Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Friedman)*, 2003 U.S. App. Lexis 23749, 10-11 (2d Cir. 2003) ("the rules generally do not place any initial burden on parties to justify their deposition and discovery requests").

Moreover, Rule 30 does not permit a party simply to refuse to appear for, or object to, a noticed deposition. MLCC's remedy was to move for a protective order under Rule 26(c), which it has failed to do. Under Rule 26(c):

> upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make an order which justice requires to protect a party or person from . . . undue burden or expense, including . . . (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place.

8

Thus, the question is whether there is "good cause" to conclude that producing one or more MLCC witnesses in Connecticut would impose an "undue burden or expense," and that "justice requires" relief.

We have not found a decision in this District addressing the issue of the location of depositions. There are, however, a number of decisions by other District Courts within this Circuit. Those cases establish several propositions:

First, "although a plaintiff must generally submit to deposition in the district where he has commenced litigation, a defendant is usually entitled to insist that his deposition take place where he resides." *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547. 550 (S.D.N.Y. 1989). In this case, significantly, MLCC is both a defendant and a plaintiff, having asserted a foreclosure counterclaim. Thus, any presumption in favor of deposing MLCC in Florida would not apply:

> Because courts retain substantial discretion to designate the site of a deposition, the presumption appears to be merely a decision rule that facilitates determination when other relevant factors do not favor one side over the other. "Underlying this rule appears to be the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice." *Farquhar v. Shelden, 116 F.R.D. at 72.* Where this factual premise is attenuated, the presumption is weakest. *See South Seas Catamaran, Inc. v. M/V "LEEWAY,"* 120 F.R.D. [17] at 21 [(D.N.J. 1988)] (consideration given to whether plaintiff is *"de facto* defendant"); *Pinkham v. Paul*, 91 F.R.D. [613] at 614-15 [(D. Me. 1981)] (defendant asserting non-compulsory counterclaim may be considered as plaintiff for site of deposition).
>
> *        *        *
>
> This is such a case. Although the plaintiff initiated the litigation in this district, it had little choice. ... Moreover, the transactions at issue took place here, rendering New York the only focal point for all of the parties. Thus, the standard presumption has little force in this case, and the other factors influencing the designation of a deposition site must now be addressed.

9

*Mill-Run Tours*, 124 F.R.D. at 550.[4]

Those "other relevant factors" are cost, convenience and litigation efficiency. *Mill-Run Tours, supra; Zurich Ins. Co., supra.* We submit that those factors supports requiring MLCC to produce its witnesses in Connecticut.

**Cost**

"[C]onsideration of which party is best able to absorb the related costs for the depositions, as noted in *Mill-Run*, is the measuring scale guiding this factor." *F.D.I.C. v. La Antillana, S.A.* 1990 U.S. Dist. Lexis 13246, *7 (S.D.N.Y. 1990).

In this case, both parties' attorneys' are located in Connecticut. Therefore, even if the depositions were held in Florida, MLCC would incur expense, because it would have to transport its own lawyers there. *Mill-Run Tours,* 124 F.R.D. at 550 ("It will be necessary either to transport counsel to the various places where the defendants reside or to transport each of the defendants here"). However, as the court held in *Zurich Ins. Co., supra* at *5-6: "The total cost of the depositions at issue here will likely be lower if the examinations take place in New York. Since counsel's time is more expensive to the clients than the witnesses' time, it would be more costly to require the attorneys to spend time in travel."

More importantly, however, Ms. Miller is an individual, and MLCC is a corporation owned by one of the largest brokerage houses in the world. Thus, MLCC is certainly better able to absorb the costs of travel. *Mill-Run Tours, supra (citing Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94,

---

[4] *See also Zurich Ins. Co. v. Essex Crane Rental Corp.,* 1991 U.S. Dist. LEXIS 863 at *5 (S.D.N.Y. 1991) ("In this case it is largely arbitrary that Essex is the defendant, since Zurich might simply have denied the claim and waited for Essex to sue, in which case the position of the parties with respect to the presumption would have been reversed. Accordingly, the presumption carries little weight here, and the other relevant factors must be examined."). Similarly, Ms. Miller commenced her action after MLCC had declared a default. She, like Zurich, could have awaited a foreclosure action, and asserted her affirmative claims as counterclaims.

97 (S.D.N.Y. 1968) (where defendants are better able to bear costs of travel, they were required to attend deposition in forum district)); *see also F.D.I.C. v. La Antillana, supra* at *7("two of the four defendants have indicated meaningful financial difficulties in pursuing this matter, while plaintiff is a corporation of significant size and resources. The Court finds, therefore, that the cost factor weighs in defendants' favor")

### *Convenience*

"[T]he convenience of counsel, while a less important factor than any hardship to the parties, favors holding the depositions in New York where all the attorneys are located." *Zurich Ins. Co., supra*, at *6; *Mill-Run Tours, supra*, 124 F.R.D. at 551. Unless and until MLCC designates the witnesses that it intends to produce for deposition, and provides evidence about their residences, the frequency of their travel to Connecticut, and/or any interruption of MLCC's business attributable to their traveling to New York, the convenience factor tips in favor of a Connecticut deposition. *Mill-Run Tours, supra* 124 F.R.D. at 551 ("the defendants have failed to provide affidavits demonstrating in any detail how their businesses or other interests might be harmed if they were to take the time to come to New York for deposition").[5]

### *Litigation Efficiency*

In analyzing this factor, *Zurich Ins. Co., supra* at *7, observed:

Finally, the efficiency of the litigation process will be marginally enhanced by conducting the depositions in New York. Although most disputes likely to arise at the depositions could be dealt with through a telephone conference call or by a judicial officer in Alabama, more significant conflicts might require an in-person conference with this Court, which is most familiar with the case. At the same time, the witnesses

---

[5] We should note that, as part of our efforts to resolve this dispute, we offered to conduct the depositions in Florida, for the convenience of MLCC's witnesses, *if* MLCC agreed to pay Ms. Miller's counsel's costs. That would offset any business hardship MLCC might claim. MLCC rejected that proposal.

are unlikely to require access to voluminous documents that might be available only in Alabama.

For the same reasons, this factor favors conducting MLCC's deposition(s) in Connecticut.

*Summary*

We submit that MLCC cannot benefit from any presumption normally given to defendants,

given its status as a counterclaim plaintiff and the fact that this action concerns a purely Connecticut

transaction, which MLCC chose to enter into. Moreover, each of the factors courts analyze to

determine the location of a deposition supports conducting MLCC's deposition in Connecticut.

## CONCLUSION

For the reasons set forth above, plaintiff's motion should be granted.

Dated:     Westport, Connecticut
           December 3, 2003

                                                    BEGOS & HORGAN, LLP


                                            By: _____
                                                    Patrick W. Begos (ct19090)
                                                    Attorneys for Plaintiff
                                                    327 Riverside Avenue
                                                    Westport, CT 06880
                                                    (203) 226-9990
                                                    (203) 222-4833 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on December 3, 2003 to:

Thomas P. Friedman, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

_____
Patrick W. Begos

12