UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIE DILLON RIPLEY MILLER, | NO. 3:03-CV-1016 (RNC)(DFM) |
| Plaintiff and Counterclaim Defendant, | |
| - against - | |
| MERRILL LYNCH CREDIT CORPORATION, | December 13, 2003 |
| Defendant and Counterclaimant. | |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO COMPEL

I. **INTRODUCTION**

Merrill Lynch Credit Corporation ("MLCC") respectfully submits this

Memorandum of Law in support of its motion, pursuant to Rule 37(a) of the Federal Rules of

Civil Procedure and Rule 37 of the Local Civil Rules of the District of Connecticut, to compel

Plaintiff Julie Dillon Ripley Miller to provide discovery responsive to Defendant's First Request

for Production of Documents and First Set of Interrogatories.

On July 23, 2003, MLCC served its First Requests for Production of Documents,

and on August 12, 2003, MLCC served its First Set of Interrogatories.  Plaintiff served her

Responses to the First Request for Production of Documents on August 25, 2003, and her

Responses to the First Set of Interrogatories on September 12, 2003.  On September 19, 2003,

Thomas P. Friedman, on behalf of MLCC, participated in an extended teleconference with

Plaintiff's counsel, Patrick W. Begos, to discuss the inadequacies in Plaintiff's discovery

responses, and to attempt to reach mutually acceptable resolutions to the outstanding discovery

**ORAL ARGUMENT REQUESTED**

issues.[1]  Following this teleconference, Plaintiff has since produced two of the tax returns at

issue (but no other documents) and entered into a stipulation to dismiss her claims for emotional

distress.  See Affidavit of Thomas P. Friedman ("Friedman Aff."), attached hereto as Exhibit A.[2]

MLCC sent a follow-up letter seeking the requested disclosure on October 6,

2003.  See Letter from T. Friedman to P. Begos dated October 6, 2003, attached as Ex. 5 to

Friedman Aff.  Plaintiff responded in a letter dated October 15, 2003, agreeing to dismiss

emotional distress claims and equivocally verifying that Plaintiff had produced all responsive

documents to certain document requests.  See Letter from P. Begos to T. Friedman, attached as

Ex. 6 to Friedman Aff. ("October 15 Letter").  MLCC sought to further narrow the discovery

dispute in a letter dated October 27, 2003.  See Letter from T. Friedman to P. Begos dated

October 27, 2003, attached as Ex. 7 to Friedman Aff.  Despite this good faith effort to reach

agreement on these outstanding discovery items, counsel have been unable to further resolve

Plaintiff's objections and/or failure to provide adequate responses.  The Court has entertained a

variant of this motion which it denied without prejudice.  To address the issue raised by the

Court, MLCC is providing a listing of each item of discovery in dispute.  MLCC now moves to

compel responses to selected document requests and interrogatories.

---

[1] Copies of MLCC's First Request for Production of Documents and First Set of Interrogatories
are attached as Exhibits 1 and 2 to the Affidavit of Thomas P. Friedman, and Plaintiff's
Responses are attached as Exhibits 3 and 4.

[2] Plaintiff asserts that she has not filed her 2002 federal tax return and therefore cannot produce
it.  MLCC reserves its right to seek production of this return and/or supporting documentation
related to its preparation.  Plaintiff did provide blue prints in connection with MLCC's expert
appraisal of the property.

## II.    **FACTUAL BACKGROUND**

### A.    **The Construction Loan**

This dispute arises out of a construction loan transaction closed on or about December 7, 1999, whereby MLCC provided Plaintiff Julie Dillon Ripley Miller ("Miller") approximately $7,500,000 (the "Construction Loan").  Amended Complaint at ¶3.  Miller purchased the property at issue, located at 21 Point Road in Rowayton, Connecticut, through a mortgage loan from MLCC for approximately $1,350,000 million in or about November of 1997.  Following the purchase and prior to the Construction Loan, Miller expended at least $3,800,000 million on reconstructing and renovating the property, which funds were obtained through margin loans against her account with Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPF&S").  Plaintiff was, and is, a beneficiary to numerous trusts and estates involving millions of dollars -- this motion is aimed, in part, at determining the extent of her various interests.

To continue funding the reconstruction, Miller personally applied, and was approved, for a construction to permanent loan by MLCC in late 1999.  To consummate the Construction Loan, Miller executed a power of attorney ("POA") in favor of her attorney-in-fact.  Amended Complaint at ¶3.  According to Miller, she withheld the authority to pledge securities, and therefore, her attorney-in-fact was not authorized to pledge a securities account as security for the Construction Loan.  Id.

On the closing date, Plaintiff's attorney-in-fact executed an agreement, which, on its face, pledges Plaintiff's securities account held by Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPF&S") as security for the Construction Loan ("Pledge Agreement")  Id. at ¶6.  MLCC has reason to believe that Plaintiff continued to spend her disposable income on lavish interior

3

decorations and furnishings, rather than her mortgage payments, which is probative of the

causation of Plaintiff's financial difficulties and her failure to mitigate damages, if any.  It would

also demonstrate that she disregarded advice testified to by her MPPF&S broker, Mr. Falini, in

connection with the Loan, that she shut off the spigot with respect to such additional costs.  See

Dep. Transcript of J. Falini at 71, attached as Ex. 8 to Friedman Aff.  We believe discovery will

show these types of expenses and other outlays were a continuing drain on her asset base after

the Construction Loan was approved.  See, e.g., Ex. 9 to Friedman Aff. (showing Plaintiff's

expenses for window treatments for a single invoice to be $42,598.22.)

Moreover, Miller recently produced tax returns indicating that in 2000, after

closing the loan, she liquidated $3,589,047 of equities and her prior residence.  The whereabouts

of the proceeds of those transactions have not been accounted for.  Plaintiff has also disclosed in

discovery that she has ongoing "disputes with her sisters in connection with her parents'

estates . . . ."  See Ex. 4 to Friedman Aff. at 5.)  These facts make clear that there are legitimate

questions regarding the existence, causation and mitigation of Plaintiff's alleged financial

damages, and other sources of income, the discovery of which is likely to lead to admissible

evidence, based on her alleged inability or refusal to make mortgage payments and her claim that

the loan was unconscionable, supposedly because MLCC should have anticipated her inability to

repay.  MLCC's submits that her anticipation, stated or otherwise, of other sources of future

income, also bear on her allegations that MLCC acted unreasonably.  She eventually failed to

make numerous mortgage payments or pay property taxes and the MPPF&S account was

liquidated.

**B.**     **Plaintiff's Counsel Conceded that Nearly all of the Discovery at Issue is Relevant**

Plaintiff's Amended Complaint alleges ten causes of action arising from MLCC's purported failure to notify Miller that the POA was defective, and in exercising its rights under the Pledge Agreement. These claims include, *inter alia*, violations of CUTPA, negligence, recklessness and fraudulent nondisclosure. Amended Complaint at. ¶¶31-44. She also asserts various affirmative defenses to MLCC's foreclosure action including unclean hands and unconscionaibility. Plaintiff alleges that she incurred damages as a result of the liquidation in that she has (i) suffered "the loss of stocks and cash in her Account"; (ii) been exposed to substantial capital gains tax liability; and (iii) suffered severe emotional distress. Id. at ¶15, 44.

As Plaintiff's various allegations and discovery responses make clear, she has placed three non-excusive and broad categories of information at issue. During the parties' conference on September 19, 2003, counsel for Plaintiff, Mr. Begos, agreed that the following areas of discovery are relevant and properly discoverable (i) Plaintiff's use of, and access to, financial resources; (ii) Plaintiff's alleged emotional distress (which is now moot); and (iii) discovery relating to causation and mitigation efforts by Plaintiff. See Friedman Aff. at ¶6.

Many of the requests in dispute relate to Plaintiff's knowledge of and involvement with the renovation of the property, additional expenditures on items such as interior furnishings and decoration which were evidently substantial, as well as her failure to follow the advice of consultants regarding the administration of her assets and estate. With respect to MLCC's defenses such as waiver, estoppel, laches, ratification, causation and failure to mitigate, Plaintiff's total expenditures on the property during the entire renovation project and failure to take the advice of consultants during the period when she was to be making payments on the Construction Loan are relevant and should be produced. Obviously, if Plaintiff was making

5

expenditures at the expense of her overall financial well-being and ability to make mortgage

payments, that information is highly probative.

## III.    **ARGUMENT**

The items and information requested in the discovery at issue are all relevant to

Plaintiff's claims in this action.  As stated in Schwartz v. Marketing Publishing Co., 153 F.R.D.

16, 18 n.1 (D. Conn. 1994), "[i]t is well established that the Federal Rules of Civil Procedure

allow parties broad discovery[.]" (citing Oppenheimer Fund Inc. v. Sanders, 437 U.S. 340, 351

(1978)).  Specifically, "Rule 26(b)(1) authorizes discovery of 'any matter, not privileged, which

is relevant to the subject matter involved in the pending action,' . . . [and] 'appears reasonably

calculated to lead to the discovery of admissible evidence.'" Id.  As discussed below, all of the

outstanding discovery sought by MLCC meets this standard and should be produced.

### DOCUMENTS REQUESTS

**Document Request No. 4:**   Please produce all documents concerning or containing
your communications with any individual or entity whom you have used and/or employed as a
financial advisor, tax planner, financial consultant or any similar profession, including all notes,
drafts, and analyses created by, and communications with, Omni Solo, Inc. and/or its agents and
employees.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome,
not reasonably calculated to lead to the discovery of admissible evidence, and improperly
seeking information protected by attorney work-product and/or attorney-client privileges.

**MLCC's Argument**:

Plaintiff claims that she has produced all non-privileged documents responsive to

this request with the exception of documents provided to or created by Omni Solo, Inc.  See

October 15 Letter at 2.[3]  To the extent Plaintiff asserts that information provided to, or created

by, Mr. Tesoriere, or his firm, Omni Solo, is privileged, that privilege has been waived.  See,

e.g., U.S. Postal Serv. v. Phelps Dodge Refining Co., 852 F.Supp. 156, 161 (E.D.N.Y. 1994)

(noting that in limited circumstances, privilege may be extended to communications made to

third parties who are agents of the attorney, "such as accountants; administrative practitioners not

admitted to the bar; and *non- testifying* experts" (emphasis added).)  Mr. Tesoriere testified as an

expert in this matter by submitting an affidavit regarding capital gains liability and therefore no

privilege attaches to his work product or documents provided to him.  See Affidavit of Joseph

L.A. Tesoriere Filed in Support of Plaintiff's Motion for Prejudgment Remedy, attached as Ex.

10 to Friedman. Aff.  This Court should therefore order production of all information and

documentation provided to, or created by, Omni Solo or its agents.

**Document Request No. 5:**   Please produce all documents concerning or reflecting communications with your siblings or other family members, other than your husband or children, regarding your financial situation since January, 2000 and/or access to funds or accounts, whether held in trust or otherwise.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

Plaintiff is willing "to produce documents concerning trusts and estates in which

Ms. Miller is a beneficiary created on or before December 31, 2001."  See October 15 Letter at 1.

---

[3] While Plaintiff's counsel maintains that all responsive documents to certain document requests have been provided, Mr. Begos has added the following caveat:  "In order to prevent any misunderstanding, any statement about the completeness of Ms. Miller's production should be assumed to be limited to responsive documents or information in her possession, custody or control that she discovered upon a reasonable, good faith search of same."  See October 15 Letter at 2 n.2.  If Plaintiff is complying with her discovery obligations, this caveat would seem unnecessary.  If she is not, then we would respectfully ask the Court to strike any objection

(continued...)

During the parties' conference on September 19, Mr. Begos stated that "you are clearly entitled

to what's in the trusts" and that his concern with respect to this and other requests for financial

information was that it would create "an ongoing burden." Friedman Aff. at ¶7. In light of this

concern, MLCC agreed to limit its request to documents created or received by the date of its

letter supplementing the parties' negotiations regarding discovery. See Letter from T. Friedman

to P. Begos of October 27, 2003, attached as Ex. 7 to Friedman Aff. at 1. This is a proper

request and there is no valid reason to limit its scope. First, Plaintiff's defaults for which MLCC

is seeking foreclosure occurred in 2003. Her access to, and use of, funds during this period,

leading up to and including this period, and any period for which Plaintiff might seek damages,

are relevant to causation and mitigation of those damages. Second, given the disputes Plaintiff

has had with her sisters, and their shared interests in various trusts, estates and partnerships, these

documents are reasonably likely to include information regarding her finances generally and,

quite possibly, admissions regarding her financial obligations to MLCC.

**Document Request No. 6:**    Please produce all documents concerning any disputes or
proceedings relating to trust fund or similar assets in which you claim or claimed a right or
interest.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome
and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

MLCC respectfully reasserts its argument with regard to Request No. 5. By

agreement with Plaintiff's counsel, Request No. 6 has been limited to "significant" sources of

income or funds, subject to the agreement that Plaintiff would not object on the ground that such

───────────────

(...continued)
related to this limiting language.

8

a narrowing rendered the request vague. Plaintiff suggests that this term should be defined as $50,000 or more, MLCC requests that the Court define the term "significant" in this context as $5,000 or more, which is entirely reasonable.

**Document Request No. 8:**   Please produce all documents concerning or reflecting any source of your income or distributions to you of money or property of any kind.

**Plaintiff's Response**: Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

MLCC respectfully reasserts its argument with regard to Request No. 5. Furthermore, MLCC has reason to believe that Plaintiff opted to spend funds on items other than her mortgage payments thereby causing her defaults. This Request seeks the source of any income or distributions so that MLCC can assess Plaintiff's financial conduct during the relevant time period and for further discover, if necessary. Mrs. Miller testified at deposition that she has been care taking for her children and is not otherwise employed. This Request therefore cannot be burdensome. By agreement with Plaintiff's counsel, Request No. 8 has been limited to "significant" sources of income or distributions, subject to the agreement that Plaintiff would not object on the ground that such a narrowing rendered the requests vague. Plaintiff suggests that this term should be defined as $50,000 or more, MLCC requests that the Court define the term "significant" in this context as $5,000 or more.

**Document Request No. 10:**   Please produce all documents reflecting or describing all of your personal assets and/or belongings, including but not limited to any real estate in which you have an interest, whether in Connecticut or elsewhere.

**Plaintiff's Response**: Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

During the course of discovery, counsel for MLCC learned that Plaintiff currently owns real estate in Vermont. This information proved useful in ascertaining Miller's knowledge regarding real estate transactions during her deposition, which has been recessed. This Request is also relevant to a proper evaluation of Plaintiff's mitigation efforts. MLCC has reason to believe that Miller will claim that she sold various assets as a result of MLCC's conduct -- MLCC is entitled to know whether Plaintiff failed to mitigate her alleged damages in a reasonable manner. By agreement with Plaintiff's counsel, Request No. 10 has been limited to "significant" assets or belongings, subject to the agreement that Plaintiff would not object on the ground that such a narrowing rendered the requests vague. Plaintiff suggests that this term should be defined as $50,000 or more, MLCC requests that the Court define the term "significant" in this context as $5,000 or more.

**Document Request No. 11**: Please produce all documents concerning the disposition of your father's estate, including but not limited to documents concerning your entitlement to assets, income or any form of property interest or inheritance.

**Plaintiff's Response**: Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

Plaintiff is willing "to produce documents concerning trusts and estates in which Ms. Miller is a beneficiary created on or before December 31, 2001." See October 15 Letter at 1. Her production should not be limited to this arbitrary timeframe and MLCC respectfully reasserts its argument with regard to Request No. 5.

10

**Document Request No. 12:**  Please produce all documents concerning the disposition of your mother's estate, including but not limited to documents concerning your entitlement to assets, income or any form of property interest or inheritance.

**Plaintiff's Response**: Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

Plaintiff is willing "to produce documents concerning trusts and estates in which Ms.

Miller is a beneficiary created on or before December 31, 2001." See October 15 Letter at 1.

Her production should not be limited to this arbitrary timeframe and MLCC respectfully

reasserts its argument with regard to Request No. 5.

**Document Request No. 13:**  Please produce all documents concerning the disposition of any estate in which you have claimed or currently claim any interest.

**Plaintiff's Response**: Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

Plaintiff is willing "to produce documents concerning trusts and estates in which Ms.

Miller is a beneficiary created on or before December 31, 2001." See October 15 Letter at 1.

Her production should not be limited to this arbitrary timeframe and MLCC respectfully

reasserts its argument with regard to Request No. 5.

**Document Request No. 18:**  Please produce all documents, including but not limited to diaries, notes, memoranda, journal entries, or other writings, whether maintained on a computer or otherwise, made by you concerning your personal finances and/or financial difficulties.

**Plaintiff's Response**: Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

During the September 19 teleconference, Mr. Begos specifically agreed to produce relevant portions of any responsive documents. Friedman Aff. at ¶6.

**Document Request No. 22:**  Please produce all documents concerning any loan, credit or cash advance (whether secured or unsecured) from any entity for which you owe any balance.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

A fundamental aspect of Mrs. Miller claims is that she has been placed under severe financial duress as a result of MLCC's actions.  Moreover, during her deposition she testified that she has taken out a mortgage on her property in Vermont.  This request bears directly on the issue of whether MLCC has caused Plaintiff any financial duress, and if so, to what extent (although MLCC certainly contends that it is not the proximate cause of any of her alleged damages).  Further, if Plaintiff has opted to keep other financial obligations current to the detriment of MLCC, MLCC is entitled to discover this information.

**Document Request No. 23:**  Please produce all documents concerning any improvements or renovation to the Land, the Residence and/or the Premises, including but not limited to any communications between you and MLCC, MPPF&S and/or any other entity or individual relating thereto.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

**MLCC's Argument**:

As an initial matter, it is difficult to conceive of a request more calculated to lead to the discovery of admissible evidence than Request No. 23. Indeed, Plaintiff has agreed to provide documents "after the 1999 loan was converted from construction to permanent" for "significant" expenses and or payments. See October 15 Letter at 3. This request must be viewed in the context of Plaintiff's receipt – and evident disposition of $3.5 million reported on Schedule D-1 to her 2000 return. Even assuming some of these sums represented payments on the MLCC loan, approximately $3,000,000 remains largely unaccounted for. Plaintiff's counsel has indicated that all such documents have been produced, but MLCC maintains that Plaintiff's definition of "significant" ($50,000 or more) is unreasonable and asks that the Court define the term significant to mean $5,000 or more.

Moreover, this Request seeks documents relating to more than expenses and payments. It seeks documents that may well contain admissions regarding Miller's knowledge of the terms of the loan. Plaintiff's wrote objections should therefore be rejected.

**Document Request No. 24:** Please produce all documents reflecting payments made by you for any renovation, improvement or upgrade to the Land, the Residence and/or Premises, to any building contractor, subcontractor, designer, architect, decorator or other entity involved in any renovation, improvement or upgrade to the Land, Residence and/or Premises, including but not limited to the following:

ABS Environment Asbestos Removal, AF Contracting-roofing material, American Toilet Rentals, American Wood Column Corp., Arcamone Land Surveyors, Automated Salvage, AVA Painting, B&S Carting Co., CL&P, Canaan Distributors Corp., Casey's Sheetmetal Service, Castro Convertible, Centre Mills Antique Floors & Beams, Chestnut Specialists, City of Norwalk, Colonial Carting, Connecticut Stone Supplies, Cotta Tree Experts, Condon-Brown Builders, Inc., Creative Waterscapes, Dale O'Duncan, Inc., Darien Electrical Contracting, Darien Rental Service, Devine Bros. Inc., The DiSalvo Ericson Group, Dovetail Millworks, E&A Foundations, Eastern Precase Company, Ely's Tree Service, EPPCO drainage pipe, FAF Contracting, Fairfield Insulation, Feda Drywall, Federal Express, Foundation Sealers, Grasso

Construction, Greg Right-Tree Removal, Hamilton Woodworking, Hammersmith, Harvey Industries, Hatch & Bailey Company, Hilti, Hocon Gas, Home Depot, Homer C. Godfrey Co., Installations in Wood, International Tile, K. Brown, Kingsland Company, Klaff's Inc., Knobel Bros., L&L Evergreen, M. Rondano Inc., Magna Steel Sales Inc., Mark Baldyga Marble & Tile, Martany Tile Corp, Mercede, N. Scott Orlando, Inc., New England Elevator, New England Stair Company, New England Window & Doors, North East Elevator, O&G Industries, Outwater Hardware Corp, Pool House, Premiere Flooring Inc, Protective Products, Quality Building, R. Riith Plumbing & Heating, R. Slossar, R.P.O. Construction Co., Ray Coutermash Excavating, Renaissance Studio, Inc., REO Appliance, Reprographics Plus, Ring's End Inc., Rings End Lumber, Robert Riith Plumbing & Heating, Rod Klucik, Rondano, Rowayton Fuel, Stamford Iron & Steel, Steve Appliance Repair, Sutherland Excavating Contractors, T&R Stone Company, Terzian Trucking Co., Inc., Town & Country Door & Operator Co., Town & Country Garage Doors, Turner & Harrison, United Rentals, V&S Contracting, Vermont Soapstone Co., Vincent Gentile & Son, Waterworks, Woods Lightning Protection Co., Yellow Freight.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

**MLCC's Argument**:

Plaintiff has agreed to provide documents "after the 1999 loan was converted from construction to permanent" for "significant" expenses and or payments. See October 15 Letter at 3. Plaintiff's counsel has indicated that all such documents have been produced, but MLCC maintains that Plaintiff's definition of "significant" ($50,000 or more) is unreasonable and asks that the Court define the term significant to mean $5,000 or more. This request also must be viewed in the context of plaintiff's receipt – and evident disposition of $3.5 million reported on Schedule D-1 to her 2000 return. Even assuming some of these sums represented payments on the MLCC loan, as stated above, approximately $3,000,000 remains largely unaccounted for.

**Document Request No. 25:** Please produce all documents reflecting payments made by you for any renovation, improvement or upgrade to the Land, the Residence and/or Premises, to any building contractor, subcontractor, designer, architect, decorator or other entity involved in any renovation, improvement or upgrade to the furnishings and/or interior of the Residence,

14

including but not limited to furniture purchases, wall and window treatments, carpeting, major appliance purchases and/or any remodeling projects.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. To the extent this request seeks relevant documents, it is duplicative of request 24, and defendant is referred to plaintiff's response to that request.

**MLCC's Argument**:

Plaintiff has agreed to provide documents "after the 1999 loan was converted from construction to permanent" for "significant" expenses and or payments. See October 15 Letter at 3. Plaintiff's counsel has indicated that all such documents have been produced, but MLCC maintains that Plaintiff's definition of "significant" ($50,000 or more) is unreasonable and asks that the Court define the term significant to mean $5,000 or more.

**Document Request No. 26**: Please produce all documents reflecting any communications between you and any contractor, subcontractor or other entity involved in any renovation, improvement or upgrade to the Land, Residence and/or Premises, including but not limited to the entities listed in Request No. 24.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

**MLCC's Argument**:

MLCC respectfully reasserts its argument with regard to Request No. 24.

**Document Request No. 27**: Please produce all documents reflecting any authorizations by you for payment (directly or indirectly) to any contractor, subcontractor or other entity involved in the renovation, improvement or upgrade to the Land, Residence and/or Premises.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

**MLCC's Argument**:

MLCC respectfully reasserts its argument with regard to Request No. 25.

**Document Request No. 28**:  Please produce all documents reflecting any communications by you exhibiting a lack of approval or withholding of authority for payment to, or for work to be performed by, any contractor, subcontractor or other entity involved in the renovation, improvement or upgrade to the Land, Residence and/or Premises.

**Plaintiff's Response**: Plaintiff objects to this request as vague, ambiguous and impossible to understand. If and when the request is clarified, Plaintiff will respond.

**MLCC's Argument**:

Plaintiff has used substantially every avenue to disclaim responsibility for her finances and the loan.  This Request, which is only vague and ambiguous when viewed through the distorted lens of an opposing counsel, is aimed at assuring that Miller does not have any documents exhibiting a lack of approval for the renovations performed on her home.  Her counsel questioned the propriety of the sums spent on the home during the status conference held with the Court.  Plaintiff should respond or verify that no such documents exist.

**Document Request No. 29**:  Please produce all documents reflecting any communications between you and MLCC, MPPF&S or any representative thereof concerning work to be performed by any contractor, subcontractor or other entity involved in the renovation, improvement or upgrade to the Land, Residence and/or Premises.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

**MLCC's Argument**:

MLCC respectfully reasserts its argument with regard to Request No. 24.

**Document Request No. 30:**  Please produce all documents concerning the costs of any renovation, improvement or upgrade to the Land, Residence and/or Premises, including but not limited to those reflecting your knowledge, or lack thereof, regarding such costs.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

**MLCC's Argument**:

MLCC respectfully reasserts its argument with regard to Request No. 25.

**Document Request No. 39:**  Please produce all pleadings, discovery requests and responses thereto, deposition transcripts, and all other litigation materials served or filed by any party, in any suit filed by or against you at any time.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

In its correspondence, MLCC showed a willingness to narrow this Request to

(i) litigation since December 1999, including the residence in question, its construction and

improvements; and (ii) litigation of any kind, including probate court proceedings, regarding the

various family trusts and partnerships since December of 1999.  See Letter of T. Friedman to P.

Begos of October 27, 2003, at 2, attached as Ex. 6 to Friedman Aff.  Plaintiff did not respond to

this narrowed Request.  As narrowed, this Request is not over-broad.  It seeks documents related

to the reconstruction project underlying this lawsuit and documents related to litigation

impacting Plaintiff's finances, which she has conceded are relevant.

**Document Request No. 40:**  Please produce all documents concerning or relating to any dispute or disagreement between you and any advisor, accountant, attorney or other professional of any kind.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

Plaintiff has a documented history of disputes with the professionals and advisors whom she employs. In this litigation, she alleges that Mr. Falini, her stock broker in 1999, acted improperly. In litigation pending in Connecticut State Court, she alleges that Mr. Newman, her accountant in 1999, was negligent in failing to notify her of the pledge agreement and of its tax consequences. During her deposition, she criticized her general contractor and one of the trustees of her estates. Miller's testimony and document production is littered with the names of advisors and attorneys, and therefore, the record demonstrates that she may have a habit, as that term is defined under the Federal Rules of Evidence, of blaming others for the consequences of her own behavior, and, in particular, the state of her finances. If this is not the case, and there have been no other disputes, then this Request is not burdensome. If Plaintiff has such a habit, then Plaintiff should produce all responsive documents.

**Document Request No. 41**: Please produce all correspondence between you and any accounting firm or representative thereof.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

Once again, one source of information regarding Miller's finances and knowledge of same, is correspondence with her accountants. These documents are also reasonably likely to include relevant admissions regarding her relationship with Mr. Falini and/or MLCC. This information is relevant to MLCC's defenses of waiver, estoppel, ratification and laches. It is also reasonably likely to lead to admissible evidence regarding causation and mitigation of Miller's alleged damages.

18

**Document Request No. 44:**  Please produce all documents reflecting any attempt by any alleged creditor, whether written or oral, to collect a debt from you, whether liquidated or otherwise.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

Plaintiff claims to be financially devastated from MLCC's acts.  MLCC presumes that she will offer some proof of this alleged financial devastation.  She apparently possessed over $3.5 million from sales of equities and real property in 2000.  If no responsive documents exist, she should so verify.  If responsive documents exist, MLCC is entitled to know what creditors, if any, Plaintiff opted to pay, if any, in lieu of making her mortgage payments.  This Request bears on the issue of the existence of damages, as well as damage causation and mitigation.

**Document Request No. 45:**  Please produce all documents concerning any trips or vacations you have taken.

**Plaintiff's Response**: Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument**:

MLCC has reason to believe that, notwithstanding her financial situation, Plaintiff opted to take numerous expensive trips, such as the one that lead to the employment of a power of attorney in the first place.  We have already found some documentation to date reflecting tens of thousands of dollars being spent in this fashion.  Given the likely expense of these trips, it can reasonably be concluded that they impacted her ability to repay her mortgage and pay her property taxes.  MLCC is therefore entitled to documents indicating the timing and expense of

19

her various trips and vacations. For purposes of this request, a cutoff of $5,000 or more is again acceptable.

## INTERROGATORY RESPONSES

**Interrogatory No. 6:** For the period from January 1, 1999 until the date on which you respond to these Interrogatories, please identify all sources of income received by you from any source, including but not limited to allowances, stipends, governmental benefits, disability benefits, salaries and wages, and, with respect to each such source, state the amount of income received from that source and identify the period during which you received income from that source.

**Plaintiff's Response:** Plaintiff objects to this interrogatory as over-broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.

**MLCC's Argument:**

With respect to Interrogatory No. 6, MLCC is seeking to discover the sources, and receipt of, Plaintiff's income from January 1, 1999. Defendant has agreed to narrowing Plaintiff's response to "significant" sources of income. As discussed above, this information is probative of causation and mitigation issues. Plaintiff cannot simply "affirm" that her income was consistent with prior years. First, as Plaintiff's tax returns demonstrate, her Adjusted Gross Income varied from $33,875 in 1995 to $2,613,601 in 1998 to $583, 693 in 2000. On these facts, there is no "consistency" to verify. The source of income is equally important to determine where MLCC can locate additional relevant information concerning plaintiff's claims, and her affirmative defenses, as well as demonstrate that plaintiff's wounds in a financial sense, were self-inflicted. MLCC is similarly willing to limit Plaintiff's response to significant sources of income, with the request that the Court define the term "significant" as $5,000 or more.

**Interrogatory No. 7:** If you claim that any portion(s) of the Power of Attorney form where whited-out (or otherwise manipulated), please describe (a) which portions you claim were whited-out or manipulated; (b) who whited-out or manipulated any such portions; (c) whether you consented to any such whiting-out or manipulation, and if so, to which portions; and (d) who was present during the whiting-out or manipulation.

**Plaintiff's Response**:  The Power of Attorney was whited-out, and the portions that were whited-out are obvious on the face of the document (to attempt to describe, in narrative fashion, the location of white-out on a paper would be nonsensical).  All of the white-out was applied by Jay Falini.  Mr. Falini did not ask for plaintiff's consent to his actions, and therefore plaintiff did not consent.  Mr. Falini whited-out the document in plaintiff's house; plaintiff was with Mr. Falini at the time.  Various other people, including plaintiff's husband and various contractors, were in the house at the same time.  Plaintiff does not presently recall whether anyone else observed Mr. Falini adding the white-out to the power of attorney, which is at the heart of *her* claims as to the validity of the pledge of her securities as collateral for the $7,500,000.

**MLCC's Argument**:

Plaintiff alleges that Mr. Falini, her broker at MLPF&S at the time the loan was closed, whited-out portions of the power of attorney used to consummate the Loan.  Nevertheless, Plaintiff refused to fully answer Interrogatory No. 7, which seeks Plaintiff's verified version of the facts surrounding this alleged incident.  In her opposition to the motion initially filed by MLCC, Plaintiff points to various "faxes" allegedly sent by Mr. Falini from Pennsylvania involving the power of attorney on the date and about the time the document was executed.  See Opp. at 1-2.  Yet, during her deposition, Plaintiff testified that the "whiting-out" occurred at her house in Norwalk, Connecticut with Mr. Falini present at the same time he was purportedly sending these forms from Pennsylvania to the title company in Connecticut.  See Dep. Transcript of J. Miller of 10/21/03 at 299, attached as Ex. 11 to T. Friedman Aff.  MLCC is entitled to Plaintiff's *final and complete* version of the facts surrounding the formulation and execution of the Power of Attorney form which bears directly on her claims as to the alleged invalidity of the pledge of securities as collateral for the $7,500,000 loan she received.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, MLCC motion to compel should be granted in its entirety.  As such, MLCC respectfully requests that the Court compel production of the documents requested and further responses to Interrogatories.

Dated: December 13, 2003
Stamford, Connecticut

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By:

Douglas C. Conroy, ct11555
Thomas P. Friedman, ct24947
1055 Washington Boulevard
Stamford, CT  06901-2217
Telephone:  (203) 961-7400
Facsimile:  (203) 359-3031
Email:   douglasconroy@paulhastings.com
         thomasfriedman@paulhastings.com

Counsel for Defendant and Counterclaimant
MERRILL LYNCH CREDIT CORPORATION

22

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of December, 2003, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL was delivered via U.P.S. overnight mail to:

> Patrick W. Begos, Esq.
> BEGOS & HORGAN, LLP
> 327 Riverside Avenue
> Westport, CT 06880

_____
Thomas P. Friedman

STM/264507.2
11413.00021

23