UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2003 DEC 29 P 2: 2?

US DISTRICT COURT

| | |
|---|---|
| JULIE DILLON RIPLEY MILLER, <br><br> Plaintiff and Counterclaim Defendant, <br><br> - against - <br><br> MERRILL LYNCH CREDIT CORPORATION, <br><br> Defendant and Counterclaimant. | NO. 3:03-CV-1016 (RNC)(DFM) <br><br><br> December 29, 2003 |

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Merrill Lynch Credit Corporation ("MLCC") respectfully submits this memorandum in opposition to the motion to compel filed by Plaintiff Julie Dillon Ripley Miller ("Motion to Compel"). Plaintiff's Motion to Compel seeks two forms of relief: (i) an order compelling MLCC to produce for deposition in Connecticut its employees who reside and work in the Jacksonville, Florida area; and (ii) an order compelling MLCC to provide its loan underwriting guidelines. This Court should reject Plaintiff's invitation on both counts. With respect to the first issue, Plaintiff will be deposing <u>four</u> non-party witnesses (who are former MLCC employees) in Jacksonville, Florida, in mid-January of 2004 which provides additional foundation for not disregarding the presumption that a deponent has a right to be examined where he or she resides. With respect to the second issue, Plaintiff has not served a request for production of any underwriting guidelines pursuant to Federal Rule 34 and therefore, among other reasons, Plaintiff motion is improper and premature.

**ORAL ARGUMENT REQUESTED**

## NATURE OF THE CASE

This dispute arises out of a construction loan transaction closed on or about December 7, 1999, whereby MLCC provided Plaintiff Julie Dillon Ripley Miller ("Miller") approximately $7,500,000 (the "Construction Loan"). Amended Complaint at ¶3. Miller purchased the property at issue, located at 21 Point Road in Rowayton, Connecticut, through a mortgage loan from MLCC for approximately $1,350,000 million in or about November of 1997. Following the purchase and prior to the Construction Loan, Miller expended at least $3,800,000 million on reconstructing and renovating the property, which funds were obtained through margin loans against her account with Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPF&S").

To continue funding the reconstruction, Miller personally applied, and was approved, for a construction to permanent loan by MLCC in late 1999. To consummate the Construction Loan, Miller executed a power of attorney ("POA") in favor of her attorney-in-fact. Amended Complaint at ¶3. According to Miller, she withheld the authority to pledge securities, and therefore, her attorney-in-fact was not authorized to pledge a securities account as security for the Construction Loan. Id.

On the closing date, Plaintiff's attorney-in-fact executed an agreement, which, on its face, pledges Plaintiff's securities account held by Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPF&S") as security for the Construction Loan ("Pledge Agreement") Id. at ¶6. MLCC has reason to believe that Plaintiff continued to spend her disposable income on lavish interior decorations and furnishings, rather than her mortgage payments. Eventually, Plaintiff failed to make numerous mortgage payments or pay property taxes and the MPPF&S account was liquidated. Plaintiff has brought affirmative claims against MLCC including negligence and

2

recklessness, and set forth various defenses to MLCC's claim for foreclosure. In connection with these proceedings, Plaintiff has noticed four former employees of MLCC for deposition in Florida. See Notice of Depositions attached as Exhibit 1 to Affidavit of Thomas P. Friedman ("Friedman Aff."). She has also served MLCC with a notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6), and insists that any depositions in connection with this notice occur in Connecticut. See Motion to Compel.

## THE DEPOSITION NOTICE

Before launching into any multifaceted legal argument, MLCC submits that it is important to focus on the fact that Plaintiff intends to depose four non-party witnesses (who are former MLCC employees) in Florida in mid-January of 2004, while contemporaneously seeking to force one or more representatives of MLCC who reside and work in Jacksonville, Florida to travel to Connecticut for deposition. This is pure gamesmanship -- as Plaintiff admits: "MLCC's dispute relate[s] *only* to the location of the deposition(s)," see Motion to Compel at 7 (emphasis in original), and Plaintiff's counsel will be in Florida for *at least* three days in mid-January. Accordingly, this aspect of Plaintiff's motion is wholly unreasonable and, as shown below, unsupported by applicable law.

### I. THERE IS A CLEAR PRESUMPTION IN FAVOR OF EXAMINING A DEPONENT IN HIS OR HER DISTRICT OF RESIDENCE

"There is a general presumption that a defendant's deposition will be held in the district of his residence." Six West Retail Acq., Inc. v. Sony Theatres Mngmt. Corp, 203 F.R.D. 98, 107 (S.D.N.Y. 2001); Auscape Int'l v. National Geo. Soc., No. 02 Civ. 6411, 2003 WL 156592, at *1 (March 14, 2003) (citing Six West and stating that "[c]ontrary plaintiff's assertion, there is a general presumption that a defendant's deposition will be held in the district of his residence"); Dagen v. CFC Group Holdings Ltd., No. 00 Civ. 54682, 2003 WL 21910861, at *2

(Aug. 11, 2003 S.D.N.Y.) (same). "Thus, a Plaintiff may only overcome this presumption by showing 'peculiar' circumstances favoring depositions at different locations." Dagen, 2003 WL 21910861, at *2 ("if a plaintiff notices a deposition with a location other than the defendant's residence or place of business and defendant objects, the plaintiff has the affirmative burden of demonstrating 'peculiar' circumstances which compel the court to order depositions to be held in an alternate location."); Zakre v. Norddeutsche Landesbank Girozentrale, 2003 WL 22208364, No. 03 Civ. 257 (Sept. 23, 2003 S.D.N.Y.) (same). The presumption loses its force *only* where the plaintiff has no choice of forum or by a strong showing that cost, convenience and litigation efficiency militate in favor of holding the deposition at issue outside of the witness' district. Six West, 203 F.R.D. at 107 Dagen, 2003 WL 21910861, at *2. Neither exception applies here.

Plaintiff seeks to establish that "peculiar circumstances" exist and that the presumption that the deposition be held in Florida should not apply because Plaintiff had no choice of forum when she initiated this suit. See Motion to Compel at 9. Plaintiff has not established that she had no choice of forum – she merely asserts the proposition. Id. Plaintiff could have brought suit in Florida, in federal or state court, but chose not to, and "the presumption that deponents be examined in their district of residence is fully applicable where the Plaintiff was not constrained to bring suit in another district." Six West, 203 F.R.D. at 107.

## II. CONSIDERATIONS OF COST, CONVENIENCE AND EFFICIENCY FAVOR A RULING THAT THE RULE 30(B)(6) DEPOSITIONS BE HELD IN FLORIDA

### A. Cost

Plaintiff conveniently failed to inform this Court in her moving papers that she has noticed four depositions of former MLCC employees in Florida. Plaintiff's counsel intends to be in Florida for at least three days for depositions of former MLCC employees. See Friedman Aff. at Ex. 1. Absent an order from this Court, which Plaintiff has not sought, or agreement of the parties, which does not exist, Plaintiff is entitled to a single day of seven hours to depose MLCC pursuant to its Rule 30(b)(6) notice of deposition. See Fed. R. Civ. P 30(d)(2). MLCC may designate more than one representative given the extent of the subjects designated in the 30(b)(6) notice of deposition. In any event, both plaintiff and defense counsel will be in Florida for a number of days regardless of the Court's ruling on this Motion, and the cost a few night's accommodations cannot equitably be determinative of this issue.

Moreover, Plaintiff cannot claim to be litigating this case with any reasonable degree of cost-sensitivity. See Six West, 203 F.R.D. at 106 ("the scales may tip slightly against Sony as the heavyweight, but Mr. Solow . . . has already shown the financial wherewithal to go the distance in this case.") Here, Plaintiff has retained no less than four purported experts -- one for loan underwriting, two for the financial aspects of this case and a handwriting analyst. See Friedman Aff. at ¶4. She has noticed four depositions in Florida, as well as a non-party deposition of the closing agent in Connecticut, and opted to take her deposition of non-party Jay Falini in Philadelphia. She has also failed to conclude her deposition of Defendant's sole non-rebuttal expert witness, Mr. Gold, an expert appraiser, in one day, creating additional expense for both parties. Id. MLCC has been accommodating with regard to the location of depositions by producing for deposition in Connecticut an MLCC employee, Mr. Avery, who lives and works

5

nearby in New Jersey. Id. The consumption of time and travel-related expenses of as many as three or four witnesses from Florida is another matter entirely. If MLCC designated a number of representatives, then its expenses will be significant, whereas counsel need only remain in Florida for a few additional days. If MLCC designates only one witness, then Plaintiff's costs would be de minimus. Either way, this factor weighs in favor of retaining the presumption that MLCC's depositions be taken in Florida.

### B.   Convenience

Factors relevant to convenience include convenience of counsel, defendant's residence, and the extent of disruption of defendants' affairs during travel to and from depositions." Dagen, 2003 WL 21910861 at *3. Convenience of counsel does not favor either party. Plaintiff's counsel will be taking, and presumably gathering documents for, four other depositions similar in nature to the one at issue. Both counsel will be in Florida – neither party can claim any hardship in remaining to complete the 30(b)(6) deposition(s).

On the other hand, MLCC's 30(b)(6) representatives will be residents of Florida who work in the corporate headquarters in Jacksonville and who do not make regular trips to Connecticut. Friedman Aff. at ¶5. Moreover, courts in this Circuit universally hold that **"the convenience of counsel is less compelling than any hardship to the witnesses."** Six West, 203 F.R.D. at 108 (emphasis added) (ordering deposition in Japan); Dagen, 2003 WL 21910861 at *3 (same) (ordering deposition in Hong Kong); Zakre, 2003 WL 22208364 (ordering deposition in Germany). Here, Patrick Begos, counsel for Plaintiff, has stated that he "expects" that MLCC's 30(b)(6) witnesses will be high level executives. See Friedman Aff. at ¶4. The travel time of high level MLCC executives associated with 30(b)(6) depositions will necessarily interrupt the daily operations of MLCC's business. If only one representative is designated by

6

MLCC, then Plaintiff will not be inconvenienced in any significant manner. If multiple witnesses are required because of the scope of the 30(b)(6) designations, even more inconvenience to MLCC's business will result. Although part of a larger corporate entity, MLCC has limited high level executives who are needed for its daily operations. Id. When compared with the minimal inconvenience, if any, of counsel remaining in Florida, the inconvenience which MLCC would suffer weighs heavily in its favor.

### C. Litigation Efficiency

The factors to be considered with respect to litigation efficiency are the location of documents and the need for judicial supervision. See, e.g., Six West, 203 F.R.D. at 108. The first factor is a non-issue here. Plaintiff will be in Florida with the relevant documentation for her depositions of the four former employees of MLCC. As for the second factor, courts hold that, unless there is an "unusual degree of acrimony," this factor does not outweigh the presumption accorded to deponents. Id. The parties have not sought Court intervention during any of the many depositions to date, and there is no reason to believe that this Court would not be equipped to handle any disputes that might arise during the 30(b)(6) deposition via teleconference, as it would any dispute that might arise during the non-party depositions in Florida.

### D. Summary: Location of Rule 30(b)(6) Deposition

Plaintiffs have ignored the most important fact in any meaningful assessment of this issue – specifically, that counsel for Plaintiff will be taking the depositions of four former MLCC employees in Florida at around the time it seeks to take MLCC's 30(b)(6) deposition(s). Plaintiff has not shown "peculiar" circumstances which warrant a deviation from the application of the presumption in favor an examination in the deponent's district of residence. Even if she

7

had, she cannot show that considerations of cost, convenience or litigation efficiency favor an order compelling a deposition in Connecticut. Case law indicates that disruption to the witness is the most important factor. If MLCC designates a single representative, then the cost to Plaintiff in remaining in Florida to complete the depositions will be minimal. If MLCC designates a number of representatives, then the litigation and business costs to MLCC will necessarily be substantial. Either way, Plaintiff's counsel will be in Florida, and therefore, this disruption can be significantly mitigated. On balance, given these facts, Plaintiff has failed to carry its burden that the presumption in favor of Florida has been overcome.

## THE DISPUTED INTERROGATORY

Notably, the heading for this section is adopted from the Plaintiff's moving papers. See Motion to Compel at 3. Plaintiff has placed the cart before the horse in her haste to try the case as she sees fit. Plaintiff seeks the *production* of what she calls the "Manual," and, elsewhere in her papers, chides MLCC for failing to comply with Federal Rule 26(c). However, Plaintiff has never formally requested that MLCC produce its underwriting guidelines pursuant to Rule 34, the only proper method for requesting documents from a party. Thus, the portion of the Motion to Compel seeking production of documents is premature as a matter of law. MLCC has objected to the over-breadth of Plaintiff's Interrogatory No. 8, and has more than adequate

grounds to do so.[1] Plaintiff is on a classic fishing expedition, and this Court should not countenance such discovery methods.[2]

## I. PLAINTIFF HAS NOT SERVED A REQUEST FOR PRODUCTION AND THEREFORE THE PORTION OF HER MOTION SEEKING THE PRODUCTION OF DOCUMENTS IS PREMATURE AS A MATTER OF LAW

Because Plaintiff has not served a request for production of MLCC's underwriting guidelines, this aspect of her motion should be denied as premature. See, e.g., Schwartz v. Mktg. Pub. Co., 153 F.R.D. 16, 20-21 (D. Conn. 1994). In ruling that a party may not seek to compel production of documents which it has not requested pursuant to Fed. R. Civ. P. 34, Magistrate Judge Smith reasoned that:

> The Federal Rules of Civil Procedure are designed to enable a relatively small judiciary to deal in an orderly way with a virtually limitless number of disputes. Even when parties sedulously *comply* with the rules of procedure, courts must struggle to keep abreast of their ever-growing dockets. By pioneering their own ad hoc procedure, parties do themselves and the courts a disservice. It is far easier and quicker to make a formal document request pursuant to Rule 34 than it is to [formulate ad hoc procedures]. When parties fashion their own procedure, they remove their cases from the litigative stream and, when a dispute later arises, almost invariably consume more than their fair share of judicial time.

Id. at 20.

---

[1] A review of the record establishes that Plaintiff has never formally requested that MLCC produce its underwriting guidelines. Moreover, when Mr. Begos sent the confidentiality order, attorney Friedman specifically stated during the parties' phone conference that receipt of the confidentiality order was without prejudice to MLCC's positions with respect to the disputed discovery. Among other reasons for this position, no request for production had been propounded. Friedman Aff. at ¶6.

[2] The manner in which Plaintiff distorts this discovery dispute can be found in its description of the dispute itself: "It is noteworthy that, in its responses to Interrogatories 5, 6 and 7, MLCC confirmed that it imposed **requirements** and guidelines on its employees: MLCC extends credit based on the application of guidelines and discretion, **not** requirements." (emphasis added). Moreover, MLCC only objected to Interrogatories 5 and 6 – it did not answer them, and Plaintiff has never taken issue with MLCC's position.

9

The Court concluded that "neither of the first two categories of documents were requested in plaintiff's First Request for Production of Documents. Since these documents were not requested pursuant to Rule 34 but in a highly informal, extra-procedural manner, Rule 37 does not by its terms apply. Rule 37(a)(2)(B) provides for the filing of a motion to compel compliance with a Rue 34 production request . . . . Accordingly, plaintiff's motion to compel the production of these documents pursuant to Rule 37 is denied." Id. at 20 & n12.

Here, as in Schwartz, the movant has failed to formally request the documents at issue prior to filing her motion to compel. Accordingly, the motion contravenes the Federal Rules and should be denied as premature. See also Petruceli v. Bohringer and Ratzinger, GMBH, 46 F.3d 1298, 1310-11 (3rd Cir. 1995) (motion to compel production of documents properly denied where no request had been served for production of the documents sought); Bermudez v. Duenas, 936 F.2d 1064, 1068 (9th Cir. 1991) (motion to compel premature where no request for production made under Fed. R. Civ. P. 34); Hilgenberg v. Neth, 93 F.R.D. 325, 326 (E.D. Tenn. 1981) ("Rule 34 provides for production [of documents] upon request, not by motion . . .[a]ccordingly, the Court declines to consider this aspect of the respective motions until such time as the movant has first requested the respective [party] to produce the documents and has been refused.")

## II. INTERROGATORY NO. 8 IS OVER-BROAD AND NOT REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE

As an initial matter, Interrogatory No. 8 requests that MLCC "Identify any lending manual, underwriting manuals, or other statements of procedure referring or relating to the procedures described in interrogatories 5, 6 and/or 7." Thus, to establish that this is a proper interrogatory, Plaintiff must show that it is reasonably calculated to lead to the discovery of

admissible evidence and that it is not vague or over-broad with respect to its cross-referencing of Interrogatory Nos. 5, 6 and 7.

> A. **Interrogatory No. 8 is Not Reasonably Calculated to Lead to Admissible Evidence**

Plaintiff has retained a purported expert to opine on whether the underwriting of the loan at issue fell below industry standards. See Declaration of P. Begos at Ex. F. While this expert states that he must review MLCC's guidelines to complete his analysis, this is logically inconsistent. In his purported expert report, Mr. Homberger states that: "Merrill Lynch Credit Corporation has not produced its Loan Manual or Underwriting Guidelines or any other material detailing MLCC loan procedures, other than the information contained in the MLCC Interrogatories. Therefore, I cannot draw any conclusions about the extent to which MLCC follows FNMA/FHLMC and/or Industry standards. . . ." See Ex. F to Declaration of P. Begos at 1. If the underwriting process used fell below industry standards, Plaintiff's expert would presumably have sufficient knowledge regarding, or access to, those standards to compare the underwriting process used with those standards. He would not need to rifle through MLCC's underwriting guidelines to make any such determination. Beyond its substantial document production, Plaintiff will be deposing MLCC's current and former employees to determine what occurred during the underwriting process. See Notice of Deposition attached as Ex. D to Declaration of P. Begos.

MLCC's guidelines are simply irrelevant – they do not assist the factfinder in determining whether MLCC's conduct fell below industry standards, as defined by Plaintiff's expert. In any event, the information sought is not relevant or likely to lead to the production of admissible evidence. Connecticut law supports this conclusion. In People's Bank v. ECAP Constr., Inc., No. CV 96332728S, 1997 WL 614575, at *1 (Sept. 29, 1997 Conn. Super.), the

11

court struck the defendant's special defense to a foreclosure action that the bank did not comply with its own underwriting guidelines. The court added that "[a] bank's noncompliance with its lending guidelines does not make a transaction unconscionable." Id.

**B.      Interrogatory No. 8 is Vague and Over-Broad**

Interrogatory No. 8 is also vague and overbroad in that it does not state with specificity the items sought and seeks specific items which are not relevant as a matter of law. As noted above, Interrogatory No. 8 seeks policies and procedures referring to or relating to the procedures described in Interrogatories 5, 6 and 7. But, as stated in the letter from MLCC's counsel to Plaintiff's counsel, attached to the Declaration of P. Begos as Exhibit E, those interrogatories are vague and over-broad themselves.

For example, Interrogatory 5 requests that "MLCC describe [its] policies and procedures concerning applications for construction loans in 1999, including, but not limited to: the information requested from potential borrowers and the procedures, if any for verifying its accuracy." See Ex. B to Declaration of P. Begos at 9. MLCC did not answer and objected to Interrogatory No. 5 on the grounds that it was vague, unduly burdensome, and required further explanation to be answerable. See id. Plaintiff did not seek to compel MLCC to respond to Interrogatory No. 5, which MLCC maintains is over-broad.

To be specific, the interrogatory requests, but is not limited to, the verification of information requested from borrowers; but Connecticut law does not mandate any such verification and therefore, that portion of the interrogatory, at minimum, is overbroad. See Security Pac. Nat. Bank v. Robertson, No. CV 920124622S, 1997 WL 561235, at *3 (Aug. 28, 1997 Conn. Super.) ("Research has not revealed any law supporting the proposition that a lender has any duty to investigate the financial stability of a borrower . . . and independent research has

12

not revealed any authority to support the proposition that a lender has a duty to a borrower to inquire into the ability to repay a loan."); Great County Bank v. Kiely, No. CV 94 047460S, 1995 WL 625917, at *3 (Jan. 19, 1995 Conn. Super.) ("no court has recognized a duty to inquire into a borrower's ability to repay, even if the lender was a commercial bank."). For this reason, among others, MLCC asked that Plaintiff be more specific with regard to Interrogatory No. 8, which incorporates Interrogatory No. 5, but Mr. Begos declined to do so. Friedman Aff. at ¶7. MLCC submits that it should not be forced to interpret Interrogatory No. 8 in a manner that renders is answerable – rather, it is Plaintiff's responsibility to draft an interrogatory or distinct interrogatories that are not so broad as to encompass clearly irrelevant information.

Dated: December 29, 2003
Stamford, Connecticut

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
Douglas C. Conroy, ct11555
Thomas P. Friedman, ct24947
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email: douglasconroy@paulhastings.com
       thomasfriedman@paulhastings.com

Counsel for Defendant and Counterclaimant
MERRILL LYNCH CREDIT CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that on this 29th day of December, 2003, a copy of the foregoing DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL was delivered via first class U.S. mail to:

>Patrick W. Begos, Esq.
>BEGOS & HORGAN, LLP
>327 Riverside Avenue
>Westport, CT 06880

*/s/ Thomas P. Fried*
Thomas P. Friedman

STM/265628.1
11413.00021