UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

------------------------------------------------------------x

JULIE DILLON RIPLEY MILLER,       :

      Plaintiff,          :

      – against –        :

                           :

MERRILL LYNCH CREDIT CORPORATION,  :

      Defendant.        :

------------------------------------------------------------x

Case No. 3:03CV1016 (RNC) (DFM)

January 5, 2004

2004 JAN -6   A 11: 6

U.S. DISTRICT COURT
HARTFORD, CT.

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

Plaintiff, Julie Dillon Ripley Miller, by her attorneys, Begos & Horgan, LLP, submits this brief in opposition to defendant's motion to compel additional discovery.

### NATURE OF THE CASE

Ms. Miller asserted this action to recover damages flowing from the misconduct of defendant, Merrill Lynch Credit Corporation ("MLCC"), in connection with an alleged "construction loan" that was funded in December 1999 (the "Loan"). That misconduct centers around two issues.

First, MLCC asserted that a pledge agreement executed by Ms. Miller's then-accountant (Barry Newman), allegedly as her attorney-in-fact, gave MLCC an interest in approximately $5.5 million in securities belonging to Ms. Miller; MLCC subsequently sold those securities, resulting in substantial capital gains liability for Ms. Miller. Ms. Miller has alleged that the power of attorney ("POA") under which Mr. Newman purported to act was either void, or, if it had *any* vitality, did not authorize Mr. Newman to pledge securities (a copy of the POA is annexed to the Declaration of Patrick W. Begos as Exhibit A):

▸     After the POA was signed and acknowledged, it was substantially changed at least twice by Jay Falini, a stockbroker employed by MLCC's affiliate, Merrill Lynch, Pierce Fenner & Smith. Mr. Falini's changes purported to expand the authority given to Mr. Newman. Plaintiff

contends that the post-execution changes voided the POA. (Copies of Mr. Falini's faxes showing his changes are annexed to the Begos Declaration as Exhibits B and C). Expert handwriting analysis has confirmed that the changes were not made by Ms. Miller.

➤ Even if those changes did not void the POA, the document (as changed by Mr. Falini), still *withheld* any authority for Mr. Newman to pledge Ms. Miller's stocks. It did so by deleting the power to enter into "bond, share and commodity transactions," which is statutorily construed to cover the power to pledge securities (C.G.S.A. § 1-46).

Because Mr. Newman did not have the authority to pledge Ms. Miller's stock to MLCC, MLCC's subsequent actions in freezing the account in which those securities were held, and subsequently selling them, was a conversion.

Second, the evidence shows that MLCC approved the $7,500,000 Loan even though it knew that: (i) the house, after completion, would be worth, at most, $3,800,000; and (ii) Ms. Miller did not have sufficient income to make the loan payments (Begos Dec., ¶ 6, Ex. D). Thus, MLCC knew, when it approved the loan, that Ms. Miller would default, and that it would be seizing, and selling, the collateral. Given MLCC's clear knowledge of these facts before it made the loan, the notion, expressed in MLCC's brief, that Ms. Miller is somehow at fault for not preserving, for MLCC's benefit, whatever other assets she had, is outrageous. In reality, though, the facts will show that, even if Ms. Miller did not spend a penny on anything other than her mortgage payments, the loan still would have gone into default, and MLCC knew this.

Moreover, Mr. Falini (the broker who changed the POA) told MLCC not to communicate directly with Ms. Miller concerning the Loan, and insisted that the Loan closing go forward while Ms. Miller was out of the country (necessitating the POA). Under applicable law, these factors make the loan transaction unconscionable, and therefore unenforceable, as well as exposing MLCC to damages for unfair trade practices.

2

## THE DISPUTED REQUESTS

At the outset, we must take issue with MLCC's assertion that "Plaintiff concedes that nearly all of the discovery at issue is relevant" (MLCC Br. At 3). Obviously, Ms. Miller's objections contradict that conclusion. Ms. Miller's position on the discovery requests is set forth in her responses and objections to those requests, and below.

**Document Request 4**

> Please produce all documents concerning or containing your communications with any individual or entity whom you have used and/or employed as a financial advisor, tax planner, financial consultant or any similar profession, including all notes, drafts, and analyses created by, and communications with, Omni Solo, Inc. and/or its agents and employees.
>
> **Response**
> Plaintiff objects to this request as over-broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeking information protected by attorney work-product and/or attorney-client privileges.

MLCC asserts that what is at issue here are any documents in Ms. Miller's possession, custody or control concerning her communications with Joseph Tesoriere or his firm, Omni Solo, Inc. (together, "Tesoriere"). Before reaching that matter, however, Ms. Miller has asserted that any responsive document relating to the period after MLCC made the loan at issue, and especially after Ms. Miller defaulted on that loan and hired counsel to commence this litigation, is irrelevant to the issues in this case. The loan at issue in this case was made in December 1999, based on MLCC's view of her financial condition at that time. MLCC had Ms. Miller's tax returns, information about all of her assets, and made a decision to enter into the transaction after calculating that her income was insufficient to make the monthly payments.

No financial advice she received after that date could have had any bearing on the loan's unconscionability, or whether MLCC engaged in tortioius conduct or unfair trade practices in connection with the loan. To the extent any information about Ms. Miller's finances is relevant, Ms. Miller has already produced, (or MLCC already has in its possession), among other documents, her tax returns for the years 1995 through 2001, and her bank and brokerage account statements.

Any documents relating to communications with Mr. Tesoriere falls within the above-described category of irrelevant documents. But there are additional reasons why any documents relating to such communications are beyond the scope of discovery. MLCC does not dispute that Mr. Tesoriere was retained as an expert in this litigation, and MLCC concedes that communications with a non-testifying expert are privileged. There is no question that Mr. Tesoriere is **not** going to be testifying at the trial of this action. The time for designating experts and providing reports has passed, and no report for Mr. Tesoriere was submitted. MLCC essentially claims that Mr. Tesoriere should be considered a testifying expert because he submitted an affidavit in connection with Ms. Miller's application for a pre-judgment remedy. MLCC is wrong for several reasons:

First, a "testifying expert" is plainly an expert who is expected to offer testimony at trial. The execution of an affidavit, which affidavit was never introduced into evidence at any hearing, which was never used to obtain any relief, and which will be inadmissible at trial, cannot convert Mr. Tesoriere into a "testifying expert." Mr. Tesoriere, in contrast, is plainly a consultant or expert described in Fed. R. Civ. P. 26 (b)(3), which provides that, "a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for [a] party, or by or for that . . . party's representative (including the . . . party's ... consultant[)] ... only upon a

showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case." MLCC has not attempted to make any such showing.

Second, Mr. Tesoriere's affidavit concerns a single issue – his estimate of Ms. Miller's capital gains tax liability from MLCC's improper liquidation of her securities. Ms. Miller retained Ralph DePanfilis, CPA, to calculate precisely that liability and to testify as an expert on this subject at the trial of this action. Mr. DePanfilis has provided an expert report, and MLCC has had an opportunity to depose him, but chose not to (*see* Begos Dec., ¶ 7). Mr. Tesoriere did not testify about any financial advice to Ms. Miller, which is the subject on which MLCC wants production.

Third, even if the Court were to conclude that the affidavit constituted some waiver of the privilege otherwise attaching to communications with Mr. Tesoriere, any such waiver would be limited to the subject of the affidavit – *i.e.*, capital gains taxes from MLCC's liquidation of Ms. Miller's stock. As the Second Circuit has held: "the extrajudicial disclosure of an attorney-client communication – one not subsequently used by the client in a judicial proceeding to his adversary's prejudice – does not waive the privilege as to the undisclosed portions of the communication." *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987). Certainly, where Mr. DePanfilis will be testifying as to the precise calculation of Ms. Miller's capital gains tax liability, Mr. Tesoriere's early *estimate* of that liability cannot possibly be used in this case to MLCC's prejudice.

**Document Request 5**

> Please produce all documents concerning or reflecting communications with your siblings or other family members, other than your husband or children, regarding your financial situation since January, 2000 and/or access to funds or accounts, whether held in trust or otherwise.

**Response**
Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably
calculated to lead to the discovery of admissible evidence.

MLCC seeks information far beyond what is relevant. Any offer Ms. Miller may have made

to produce documents beyond what was relevant was made as a compromise – *i.e.* to avoid the time

and expense of motion practice. Such an offer certainly was not a waiver of her objections to this or

any other request.

MLCC has not explained how any communications Ms. Miller may have had about her

"financial situation" (whatever that means) after the Loan was made can have any relevance to this

case. Certainly, no such communications made "since January 2000" could have had any bearing on

the Loan's unconscionability, or whether MLCC engaged in tortious conduct or unfair trade

practices. To the extent any information about Ms. Miller's finances is relevant, Ms. Miller has

already produced, (or MLCC already has in its possession) her tax returns for the years 1995 through

2001, and her bank and brokerage account statements.

MLCC suggests that this information is relevant because it claims Ms. Miller had some duty

to "mitigate" the damages caused by its improper Loan. It appears that MLCC is arguing that Ms.

Miller had some affirmative obligation to preserve assets for MLCC's benefit, and/or to use every

last dollar available to her to avoid a default on this loan. Yet MLCC cites no law supporting such

a position.

Moreover, as MLCC knows, Ms. Miller went through extensive efforts to avoid a default,

including: asking MLCC to refinance the loan (which request MLCC rejected because it concluded

Ms. Miller had insufficient income; asking MLCC to allow use of some of the $5 million in her

assets over which MLCC asserted control to make monthly payments (which requests MLCC

rejected) (Begos Dec., ¶ 8; Ex. E).

**Document Requests 6, 11, 12 and 13**

> 6.    Please produce all documents concerning any disputes or proceedings relating to trust fund or similar assets in which you claim or claimed a right or interest.
>
> **Response**
> Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence
>
> 11.    Please produce all documents concerning the disposition of your father's estate, including but not limited to documents concerning your entitlement to assets, income or any form of property interest or inheritance.
>
> **Response**
> Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.
>
> 12.    Please produce all documents concerning the disposition of your mother's estate, including but not limited to documents concerning your entitlement to assets, income or any form of property interest or inheritance.
>
> **Response**
> Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.
>
> 13.    Please produce all documents concerning the disposition of any estate in which you have claimed or currently claim any interest.
>
> **Response**
> Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

The argument made concerning Document Request 5 are applicable here. MLCC does not, and

cannot, explain how documents relating to, say, a proceeding regarding the management of a trust

fund in which Ms. Miller might have an interest, or all documents concerning any estate in which

she may have an interest (no matter how small) can be relevant to the issues in this case.

Moreover, MLCC's focus in these Requests is not on liquid assets or income that Ms. Miller could have used to make the monthly payments on the Loan. In that regard, to the extent she received any distributions from any trust or estate, her tax returns will reflect it. Thus, these requests, to the extent they focus on assets or income at all, focus on assets or income which Ms. Miller has not yet received. Rather, by focusing on estate proceedings up to the present date, instead of seeking information about distributions previously received, MLCC is obviously seeking discovery on assets from which it might satisfy any deficiency judgment on its foreclosure claim. This is not a proper subject of discovery.

**Document Request 8**

> Please produce all documents concerning or reflecting any source of your income or distributions to you of money or property of any kind.
>
> **Response**
> Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

The arguments concerning Document Requests 5 and 6-13 are applicable here. MLCC already has Ms. Miller's tax returns for 1995 through 2001, and those documents provide any information MLCC is entitled to concerning her income. Tax returns for 2002 have not been filed.

**Document Request 10**

> Please produce all documents reflecting or describing all of your personal assets and/or belongings, including but not limited to any real estate in which you have an interest, whether in Connecticut or elsewhere.
>
> **Response**
> Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

The arguments concerning Document Requests 5 and 6-13 are applicable here. MLCC claims that this information relates to alleged "mitigation efforts." However, MLCC does not explain why Ms. Miller had any duty to "mitigate" the effects of an unconscionable loan it made, or why such mitigation efforts should involve selling off assets to pay MLCC. Unless it can demonstrate why any such mitigation efforts are relevant, these documents should not be produced. Moreover, the request plainly relates to assets Ms. Miller owns today, which have even less relevance to this case. And even if it can make such a demonstration, the limitation we proposed – assets valued at more than $50,000 – is appropriate. The monthly payment for the loan MLCC made were in excess of $50,000 (and MLCC calculated that Ms. Miller had insufficient income to make those payments). Requiring Ms. Miller to search for documents such as jewelry appraisals, car titles and/or insurance documents, would impose an undue burden for no purpose.

**Request 18**

> Please produce all documents, including but not limited to diaries, notes, memoranda, journal entries, or other writings, whether maintained on a computer or otherwise, made by you concerning your personal finances and/or financial difficulties.

> **Response**
> Plaintiff objects to this request as vague, ambiguous, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

We are not aware of any documents responsive to this request within Ms. Miller's possession, custody or control that have not been produced

**Request 22**

> Please produce all documents concerning any loan, credit or cash advance (whether secured or unsecured) from any entity for which you owe any balance.

9



**Response**
Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

The arguments concerning Document Requests 5 and 6-13 are applicable here. This request seeks, among other things, all of Ms. Miller's credit card bills, without limitation on time period. MLCC does not explain how such documents are relevant. The notion that this lawsuit makes relevant every detail about Ms. Miller's financial affairs is simply false.

**Document Requests 23, 24, 25, 26, 27, 29, 30**

> 23.   Please produce all documents concerning any improvements or renovation to the Land, the Residence and/or the Premises, including but not limited to any communications between you and MLCC, MLPFS and/or any other entity or individual relating thereto.
>
> **Response**
> Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."
>
> 24.   Please produce all documents reflecting payments made by you for any renovation, improvement or upgrade to the Land, the Residence and/or Premises, to any building contractor, subcontractor, designer, architect, decorator or other entity involved in any renovation, improvement or upgrade to the Land, Residence and/or Premises, including but not limited to the following: [list omitted].
>
> **Response**
> Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."
>
> 25.   Please produce all documents reflecting payments made by you for any renovation, improvement or upgrade to the Land, the Residence and/or Premises, to any building contractor, subcontractor, designer, architect, decorator or other entity involved in any renovation, improvement or upgrade to the furnishings and/or interior of the Residence, including but not limited to furniture purchases, wall and

window treatments, carpeting, major appliance purchases and/or any remodeling projects.

**Response**

Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. To the extent this request seeks relevant documents, it is duplicative of request 24, and defendant is referred to plaintiff's response to that request.

26.    Please produce all documents reflecting any communications between you and any contractor, subcontractor or other entity involved in any renovation, improvement or upgrade to the Land, Residence and/or Premises, including but not limited to the entities listed in Request No. 24.

**Response**

Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

27.    Please produce all documents reflecting any authorizations by you for payment (directly or indirectly) to any contractor, subcontractor or other entity involved in the renovation, improvement or upgrade to the Land, Residence and/or Premises.

**Response**

Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

29.    Please produce all documents reflecting any communications between you and MLCC, MLPFS or any representative thereof concerning work to be performed by any contractor, subcontractor or other entity involved in the renovation, improvement or upgrade to the Land, Residence and/or Premises.

**Response**

Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

11

30.    Please produce all documents concerning the costs of any renovation, improvement or upgrade to the Land, Residence and/or Premises, including but not limited to those reflecting your knowledge, or lack thereof, regarding such costs.

**Response**
Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to her objections, plaintiff will produce documents concerning improvements up to the time the alleged "1999 Loan" was allegedly converted from "construction" to "permanent."

The arguments concerning Document Requests 5 and 6-13 are applicable here. As this action concerns a *construction* Loan, Ms. Miller agreed to produce -- and has produced -- all documents "concerning improvements up to the time the alleged '1999 Loan' was allegedly converted from 'construction' to 'permanent'" (*i.e.*, when construction was completed).

Moreover, as part of our efforts to resolve this dispute, Ms. Miller went farther, and produced documents concerning "significant" expenses incurred, or purchases made, after construction was complete. Given that the monthly payment on the loan in question was in excess of $50,000, use of that number as the measure of "significant" is appropriate. Moreover, as Exhibit 9 to the Friedman Affidavit shows, Ms. Miller has produced documents that relate to expenses below that limit. In other words, Ms. Miller maintained, in one place, a substantial number of documents relating to expenses incurred and purchases made in connection with her house. We have produced those documents *without* culling anything that fell below the limit. Additionally, Ms. Miller has produced records of her bank and brokerage accounts, which records include information on checks written by Ms. Miller, and would include information on purchases below any $50,000 limit.[1]

---

[1] The vast majority of Ms. Miller's expenditures on the house were made by checks drawn on one or more of her accounts at MLCC's sister corporation, Merrill Lynch, Pierce, Fenner & Smith ("MLPFS"). The monthly statements for those accounts provides itemized records of checks drawn. These records, which MLCC already has, provides a great deal of additional detail on any expenses below the $50,000 limit.

12

All of that information, however, still does not satisfy MLCC. Instead, MLCC apparently wants Ms. Miller to search through every document in her possession, custody or control for any scrap of paper that might relate to a household purchase exceeding $5,000. Given the documents Ms. Miller has already produced, any such search would impose a burden that would far outweigh any relevance any such document might have.

MLCC's suggestion that the proceeds of $3 million in securities is unaccounted for is baseless and disingenuous. As MLCC well knows, virtually all of the securities owned by Ms. Miller were held by MLPFS. Any sales were made by MLPFS brokers, and MLCC has the records of those sales, and what happened to the proceeds.

**Document Request 28**

> Please produce all documents reflecting any communications by you exhibiting a lack of approval or withholding of authority for payment to, or for work to be performed by, any contractor, subcontractor or other entity involved in the renovation, improvement or upgrade to the Land, Residence and/or Premises.

> **Response**
> Plaintiff objects to this request as vague, ambiguous and impossible to understand. If and when the request is clarified, Plaintiff will respond.

As written, this request was incomprehensible; we could not imagine what a document "reflecting .... communications ... exhibiting a *lack* of approval or *withholding* of authority" would look like. After further discussions with MLCC's counsel, we gained an understanding of what they were interested in, and we are not aware of any responsive document that has not been produced.

**Request 39**

> Please produce all pleadings, discovery requests and responses thereto, deposition transcripts, and all other litigation materials served or filed by any party, in any suit filed by or against you at any time.

**Response**
Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

To the extent MLCC seeks records concerning any court proceedings regarding "family trusts and partnerships since December of 1999,"our discussion regarding Requests 5 and 6-13 is applicable. Any such documents are irrelevant to this action. To the extent MLCC seeks documents concerning litigation concerning Ms. Miller's house, its construction and improvements since 1999, we are aware of no such litigation, other than the lawsuit against MLCC, and a separate lawsuit against Barry Newman (about which MLCC already has detailed information and documents). Putting aside the lack of relevance of any of these documents, we do not believe any documents responsive to this request, as narrowed by MLCC, have not been produced.

## Document Request 40

Please produce all documents concerning or relating to any dispute or disagreement between you and any advisor, accountant, attorney or other professional of any kind.

**Response**
Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

MLCC's argument on this request is disingenuous and offensive. The fact that Ms. Miller has – along with suing MLCC for its improper actions – also sued the accountant who signed the documents without proper authority, does not provide a "documented history of disputes with the professionals and advisors whom she employs."

If that argument suffices to demonstrate the relevance of this request, then it will necessarily also demonstrate the relevance of a request by Ms. Miller that MLCC produce all documents

14

concerning all disputes or disagreements between MLCC and any borrower; such documents could

show that MLCC has a habit of making loans that borrowers cannot repay.

Moreover, even if this request sought some relevant documents (and we submit it does not),

it sweeps *far* too broadly. It is not limited by time. A complaint about an physician's bill would be

responsive, yet completely irrelevant. A "disagreement" with an accountant about the deductibility

of an expense would be responsive, yet irrelevant. Any manner of "disputes or disagreements" would

be responsive, yet irrelevant.

**Document Request 41**

> Please produce all correspondence between you and any accounting firm or
> representative thereof.
>
> **Response**
> Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably
> calculated to lead to the discovery of admissible evidence.

Ms. Miller has already produced her tax returns. She has already produced "all documents

concerning the 1999 Loan, including but not limited to any applications, mortgages, notes, pledge

agreements, closing documents, modification agreements and/or any communication or

correspondence between you and MLCC, MLPFS, Cendant and/or any other entity or individual

relating thereto." (Document Request 20). She has already produced all "documents concerning any

outstanding loans secured by the Land, the Residence and/or the Premises provided by an entity other

than MLCC." (Response to Document Request 21).

In short, to the extent any communications with any accountant has any relevance to the issues

in this lawsuit, it has been produced in response to other requests. Insisting on the production of any

other documents – which, by definition would not relate to the 1999 loan, or other relevant subjects

– is nothing more than a fishing.

**Document Request 44**

> Please produce all documents reflecting any attempt by any alleged creditor, whether
> written or oral, to collect a debt from you, whether liquidated or otherwise.
>
> **Response**
> Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably
> calculated to lead to the discovery of admissible evidence.

MLCC asserted, in discussions attempting to resolve the parties' discovery disputes, that this

request related to Ms. Miller's now-withdrawn emotional distress claims (*see* Friedman Aff, Ex. 6,

p. 3; Ex. 7). Therefore, this request does not seek relevant information

**Document Request 45**

> Please produce all documents concerning any trips or vacations you have taken.
>
> **Response**
> Plaintiff objects to this request as over-broad, unduly burdensome and not reasonably
> calculated to lead to the discovery of admissible evidence.

Plaintiff has produced documents relating to the trip she was on at the time that MLCC and

its commissioned broker, Jay Falini, insisted that the loan be closed. MLCC once again offensively

claims that, after making a loan that it knew Ms. Miller had insufficient income to repay, it is entitled

to discovery on *every* expenditure she thereafter made. It is not.

Even if some responsive documents were relevant the request sweeps far too broadly, as it

would require production of postcards, snapshots, and the like.

**Interrogatory 6**

> For the period from January 1, 1999 until the date on which you respond to these
> Interrogatories, please identify all sources of income received by you from any

16

source, including but not limited to allowances, stipends, governmental benefits, disability benefits, salaries and wages, and, with respect to each such source, state the amount of income received from that source and identify the period during which you received income from that source.

**Response**
Plaintiff objects to this interrogatory as over-broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.

Ms. Miller has already produced her tax returns up through 2001, as well as numerous other documents reflecting income (such as her MLPFS monthly statements and bank statements). MLCC cannot demonstrate that any information not already provided would have any relevance to this action. In this regard, we respectfully refer the Court to our discussion regarding Document Requests 4, 5 and 6-13.

## Interrogatory 7

If you claim that any portion(s) of the Power of Attorney form where whited-out (or otherwise manipulated), please describe (a) which portions you claim were whited-out or manipulated; (b) who whited-out or manipulated any such portions; (c) whether you consented to any such whiting-out or manipulation, and if so, to which portions; and (d) who was present during the whiting-out or manipulation.

**Response**
The Power of Attorney was whited-out, and the portions that were whited-out are obvious on the face of the document (to attempt to describe, in narrative fashion, the location of white-out on a paper would be nonsensical). All of the white-out was applied by Jay Falini. Mr. Falini did not ask for plaintiff's consent to his actions, and therefore plaintiff did not consent. Mr. Falini whited-out the document in plaintiff's house; plaintiff was with Mr. Falini at the time. Various other people, including plaintiff's husband and various contractors, were in the house at the same time. Plaintiff does not presently recall whether anyone else observed Mr. Falini adding the white-out to the power of attorney.

MLCC has Ms. Miller's response to this interrogatory. It has her deposition testimony about the power of attorney (and, as her deposition has not concluded, MLCC has the opportunity to continue to question her). It has the expert report of Marc Seifer, Ph.D., a document expert, who has

examined the different versions of the power of attorney, and it has Dr. Seifer's deposition testimony. It also has the deposition testimony of Mr. Falini (who stated under oath that he never saw the power of attorney after it was signed, though the faxes from Mr. Falini MLCC references in its motion demonstrates the falsity of that testimony).

Above all, MLCC has access to the original power of attorney, which provides the best evidence of what was whited-out. Simply put, Ms. Miller has responded to this interrogatory.

## CONCLUSION

For the reasons set forth above, MLCC's motion should be denied in its entirety.

Dated:    Westport, Connecticut
          January 5, 2004

BEGOS & HORGAN, LLP

By: _____
        Patrick W. Begos (ct19090)
        Attorneys for Plaintiff
        327 Riverside Avenue
        Westport, CT 06880
        (203) 226-9990
        (203) 222-4833 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on January 5, 2004 to:

Thomas P. Friedman, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

_____
Patrick W. Begos