UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIE DILLON RIPLEY MILLER,<br><br>Plaintiff and Counterclaim Defendant,<br><br>- against -<br><br>MERRILL LYNCH CREDIT CORPORATION,<br><br>Defendant and Counterclaimant. | NO. 3:03-CV-1016 (RNC)(DFM)<br><br><br><br>January 6, 2004 |

### REPLY IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S LATE-FILED JURY DEMAND *AND* OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR EXTENSION OF TIME TO FILE JURY DEMAND

Defendant Merrill Lynch Credit Corporation ("MLCC") respectfully submits this memorandum in further support of its motion to strike Plaintiff's late-filed jury demand ("Motion to Strike") and in opposition to Plaintiff's cross-motion for extension of time to file a jury demand ("Cross-Motion"). As an initial matter, MLCC's Motion to Strike Plaintiff's late-filed jury demand should be granted based on the plain terms of the Federal Rules of Civil Procedure. Plaintiff did not demand a jury under Fed. R. Civ. P. 38 or 81(c), as required. For this reason alone, the Motion to Strike should be granted.

With regard to Plaintiff's Cross-Motion, the Court could relieve Plaintiff of her failure to file a timely demand. It should not apply its discretion to do so here. Although Plaintiff's counsel has provided this Court with a weak rationale to explain its negligence, the facts do not support the story, the Declaration setting forth this story is largely inadmissible, and provides no basis for a finding of excusable neglect. Furthermore, given the more reasonable inference of a lack of good faith that can be derived from the substantiated facts concerning the

filing of Plaintiff's Second Amended Complaint, the Court should deny the Cross-Motion for extension of time.

I. **MLCC'S MOTION TO STRIKE SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO FILE A TIMELY JURY DEMAND AS REQUIRED BY THE FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiff provides a two pronged response to MLCC's Motion to Strike. First, she claims that she was not required to file a jury demand absent "an order from the Court." See Opp. at 3. Second, she seeks leave of Court for an extension of time if the Court disagrees with her strained reading of the Federal Rules. Opp. at 3-4. MLCC addresses these arguments in turn.

Plaintiff argues that the Federal Rules do not require that she file a jury demand absent "an order from the Court." See Opp. at 4. She has not, and cannot, cite to any authority for this incredible proposition that places upon the Court the burden of addressing in the first instance whether each removed case should be tried to a jury. The Court in Wysowski v. Sitmar Cruises, 127. F.R.D. 446 (D. Conn. 1989), ruled on a motion to strike a late-filed jury demand in a case removed from Connecticut state court. In Wysowski, the plaintiffs filed a jury demand later than ten days after service of the last pleading. Id. Judge Cabranes began his analysis by stating that "[t]he Federal Rules of Civil Procedure proceed on the basic premise that a jury trial is waived unless a timely demand is filed." Id. (quoting Cascone v. Ortho Pharm. Corp., 702 F.2d 389, 391 (2nd Cir. 1983). Judge Cabranes determined that the jury demand was "clearly untimely under Rule 38," as it is in the case at bar. Id. at 447; Motion to Strike at 4-5. He then noted that, "[i]n a case removed from state court, however, special provisions regarding jury demand requirements may apply pursuant to Fed. R. Civ. P. 81(c)." Id. As in Wysowski, the first two prongs of 81(c) clearly do not apply. See Opp. at 3-4. Plaintiff mischaracterizes the

2

issue ruled upon in <u>Wysowski</u> – namely, whether a jury demand must be timely filed *absent a Court order* where an action is removed from Connecticut state court.

Plaintiff relies upon, and <u>Wysowski</u> distinguishes, <u>Higgens v. Boing Co.</u>, 526 F.2d 1004 (2nd Cir. 1975), which considered the effect of Rule 81(c) on a case removed from a <u>New York</u> state court. According to <u>Wysowski</u>, the Court of Appeals found in <u>Higgens</u> that:

> the law of New York does require a party seeking a jury trial to make a jury demand. It also found, however, that New York did not place any time limitation on when the demand for jury trial could be made, and that therefore the New York practice was a "grey situation" not expressly considered by the framers of Rule 81(c). <u>Higgens</u>, 526 F.2d at 1007. *See also* <u>Cascone</u>, 702 F.2d 391. Because New York law contained a provision permitting the trial court to "relieve a party from the effect of failing to comply with this section if no undue prejudice to the rights of another party would result," the Court of Appeals held that the discretionary right must be read into the language of Rule 81(c) and that the district court would have discretion under the rule to determine in a particular case whether a jury demand was required. <u>Higgens</u>, 526 F.2d at 1007.

<u>Wysowski</u>, 127 F.R.D. at 448.

The Court continued that "[t]he Conneticut statute governing claims to a jury trial, Conn. Gen. Stat. §52-215, differs in significant ways from the New York law at issue in *Higgens*. There is a fixed time limit in which a jury demand must be made, either 'within thirty days after the return day' or 'within 10 days after [an] issue has been joined.'" <u>Id.</u> Judge Cabranes noted that "[t]here is also no provision for relieving party of the effect of a failure to comply where there is no prejudice to the other party." <u>Id.</u> The court held that a case removed from <u>Connecticut</u> state court is <u>not</u> a "'gray situation' overlooked by the framers of Rule 81(c) or a system that creates discretion that can be read into Rule 81(c)." <u>Id.</u> Judge Cabranes concluded that "[b]ecause none of the special situations of Rule 81(c) are applicable, and because plaintiffs have not complied with the time limits of Rule 38, I am <u>constrained</u> to hold that plaintiffs waived their right to demand a trial by jury. Defendant's motion to strike plaintiffs' jury demand <u>must</u>

3

therefore be granted." Id. (emphasis added).

Here, as in Wysowski, the Plaintiff failed to timely demand a jury under either Rules 38 or 81(c) in an action removed from Connecticut state court. See Motion to Strike at 4-6. Plaintiff has had months to demand a jury, but failed to do so. Accordingly, this Court should grant Defendant's Motion to Strike Plaintiff's late-filed jury demand.

## II. THERE IS NO GOOD CAUSE TO GRANT PLAINTIFF'S CROSS-MOTION FOR EXTENSION OF TIME

The Second Circuit has stated that a court should apply its discretion with regard to a Rule 39(b) motion "with an eye to the factual situation in a particular case." Cascone, 702 F.2d at 392. The court in Higgens viewed the following three factors as relevant: (1) whether the action is traditionally tried to a jury; (2) whether the parties have proceeded upon the assumption that there would be a jury trial; and (3) whether there would be any prejudice to the defendants in allowing the tardy motion to succeed." Higgens, 526 F. 2d at 1006. But, the court remanded the case because "there are conceivably other factors of which we are not aware that might weigh otherwise." Id.

Higgens augmented the Noonan rule that in a removed case, it is legal error to grant a Rule 39(b) motion based on inadvertent neglect alone. See Cascone, 702 F.2d at 392. In Cascone, the court stated "[a]lthough we may not overlook lack of compliance with the federal rules in removed cases, there is nonetheless 'some play in the joints' for accommodating a removed party who may not be as at ease in the new surroundings imposed upon him." Id. The Cascone court also stated that "*Gellela v. Onassis*, 487 F.2f 986 (2d Cir. 1973), was a removed case in which the district court refused to honor an untimely request for a jury trial. We affirmed that exercise of discretion summarily, and cited *Noonan*. The Opinion, however, did not discuss

4

all the elements later reviewed in *Higgens*. When those factors are present, the *Higgens* analysis, rather than *Galella's* is appropriate." Id. at 392 &n.2. This discussion demonstrates that a Court's application of its discretion should not be dictated by a strict three factor test, as Plaintiff urges. See Opp. at 5. Here, all the Higgens' factors are not present, and the facts, viewed in their entirety, militate against granting Plaintiff's Cross-Motion.

> A. **The Issues Central to this Action are Traditionally Tried to the Court**

The first factor outlined by Plaintiff is whether the action is traditionally tried by a jury. See Opp. at 5 (citing Higgens). In ruling in which party's favor this factor weighs, Defendant notes that Plaintiff asserts that "there are two broad topics at issue": (i) whether MLCC may foreclose on the property at issue in light of its alleged unclean hands and unconscionable conduct in connection with the making of the 1999 mortgage loan; and (ii) whether MLCC committed conversion of a pledge of securities given the language of C.G.S.A. §1-46 and its application to the short form power of attorney used to consummate the 1999 mortgage loan. See Ex. 1 to Supp. Aff. of T. Friedman at 1-2 (Plaintiff's Brief in Support of Motion to Compel describing "Nature of the Case"). Foreclosure, and any equitable defenses thereto, are undeniably issues to be tried to the Court. See Motion to Strike at 7 n1. The second major issue involves statutory construction (by Plaintiff's own admission), and therefore will also necessitate the Court's involvement. Statutory construction is an issue of law for the court:

> The process of statutory interpretation involves a reasoned search for the intention of the legislature. In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.

Fort Trumbull Conservancy, LLC v. Planning and Zoning Comm. of New London, 266 Conn. 338, 832 A.2d 611 (1991) (emphasis added).

As discussed above, Plaintiff has waived her right to a jury trial. Plaintiff's Cross-Motion seeks relief from her negligence. Defendant submits that one of the two major issues in this litigation is purely equitable (foreclosure) and the other, in large part, hinges on a decision requiring the Court's statutory interpretation. Although Plaintiff argues that her claims of fraud, negligence, recklessness and CUTPA are traditionally tried by a jury (citing no authority), these claims are all derivative of the conversion claim that requires statutory interpretation by the Court. The central issues to this case are not traditionally tried to a jury and there is good cause to find that the Court would be better suited to hear the case in its entirety.[1] This factor therefore weighs heavily in favor of denying Plaintiff's Cross-Motion.

    B.    **Defendants have Proceeded on the Assumption that the Action would be Tried to the Court**

The second and third factors raised by Plaintiff are whether the parties have proceeded on the assumption that the action would be tried to a jury and whether the non-movant would be prejudiced if the tardy motion were to succeed. See Opp. at 5. Defendant has proceeded in discovery as if the action would be tried to a Court. For example, Defendant's counsel chose not to videotape depositions of Plaintiff and her purported loan expert, but would have done so if Defendant's counsel knew that any part of this action would be tried to a jury. This is based on the fact that the reaction to questioning of these particular deponents would be

---

[1] The court in Richards added "if the Federal Rules of Civil Procedure are to have any meaning at all, the Court should not exercise its discretion in favor of plaintiff simply because the case is one which is traditionally tried before a jury and his attorney [erroneously believed that the action was a jury trial]." Id. at 74-75. The issues here are not even traditionally tried to a jury.

especially important to capture if a jury would be determining factual issues. See Supp. Aff. of T. Friedman Aff. at ¶4. While there are cases that hold that a Court may provide for additional discovery to relieve a party of prejudice, that remedy is unavailable here. While not concluded, the bulk of those depositions have been completed. Id. Thus, Defendant would suffer prejudice in terms of its litigation strategy if the Court were to grant Plaintiff's Cross-Motion. Unlike the Defendant in Higgens, MLCC has taken no action acquiescing to a jury trial. Moreover, as Judge Friendly has observed, "'[t]here is, of course, not the slightest reason to doubt that a judge is quite as able as a jury to make a fair determination' of the issues in this case." Richards v. Proctor & Gamble Mfg. Co., 753 F. Supp. 71, 75 (E.D.N.Y. 1991) (denying Rule 39(b) motion for extension to file jury demand).

    C.    **Equitable Factors Weigh in Favor of Denying Plaintiff's Cross-Motion**

As discussed above, the Court is not constrained to review the factors cited by Higgens. MLCC submits that the following equitable factors also weigh against granting the Cross-Motion. Plaintiff concedes that equitable factors should be considered. See Cross-Motion at 2.

    1.    Plaintiff Acted in Bad Faith by Filing Her Jury Demand in Connection with a Stipulation to Narrow the Issues and Expedite the Prosecution of the Action

Plaintiff filed an eleven count Amended Complaint on July 11, 2003, alleging, *inter alia*, negligent infliction of emotional distress and intentional infliction of emotional distress. See Ex. 1 to Friedman Aff. at 7-8. In a letter dated October 15, Plaintiff proposed that she voluntarily dismiss the emotional distress claims without prejudice to "narrow the issues and expedite the prosecution of this action." See Ex. 2 to Friedman Aff. at 2. The October 15 letter from Attorney Begos states that "[we are] prepared to withdraw Ms. Miller's claim for emotional

7

distress, solely: (i) to narrow the issues in the case; (ii) in exchange for MLCC's agreement not to seek discovery into Ms. Miller's medical/emotional condition, <u>and not to rely on the withdrawal to any advantage</u>." Ex. 2 to Friedman Aff. at 2 (emphasis added). The resulting Stipulation was executed on November 5 and included the following preamble: "WHEREAS the parties desire to narrow the issues in this action for discovery and trial." The Stipulation also included the following term: "[t]he parties agree that this Stipulation is entered into solely to narrow issues and expedite the prosecution of this action." <u>See</u> Ex. 3 to Friedman Aff. at 1, 2.

   Based on the October 15 letter, and the terms of the Stipulation, Defendant consented to the voluntary dismissal of Plaintiff's claims and agreed to withdraw discovery related to those claims. <u>Id.</u> at ¶2. On November 10, nine weeks prior to the deadline for all discovery at that point, Plaintiff served the Second Amended Complaint, now, suddenly, accompanied by a purported jury demand "for all issues in this action." <u>See</u> Ex.'s 4 & 5 to Friedman Aff. This Court should enforce the terms of the parties' Stipulation and strike Plaintiff's jury demand which contradicts both the letter and spirit of the Stipulation. In a telephone conversation subsequent to the filing of the jury demand, Attorney Friedman asked Attorney Begos to withdraw the jury demand because it was in violation of the parties' Stipulation. Supp. Aff. of T. Friedman at ¶3. Attorney Begos refused and stated that he believed the jury demand was not a violation of the Stipulation and, with what can only be regarded as a facetious assertion, that a jury trial would likely be more expedient than a bench trial. <u>Id.</u>

2.   Plaintiff's Jury Demand Would Have Been Late Under Federal or State Law

"[Under] the Conneticut statute governing claims to a jury trial, [t]here is a fixed time limit in which a jury demand must be made, either 'within thirty days after the return day' or 'within 10 days after [an] issue has been joined.'" Wysowski, 127 F.R.D. 448. "There is also no provision for relieving a party of the effect of a failure to comply where there is no prejudice to the other party." Id. On July 25, 2003, MLCC Answered Plaintiff's Amended Complaint. Under federal law, Plaintiff had ten days from the service of that Answer to timely demand a jury. Under Connecticut law, all the issues would have been joined at that juncture as well. Although not dispositive, the Wysowski court found plaintiff's failure in this regard to be a relevant factor in determining a Rule 39(b) motion.

3.   The Fact that the Parties have Granted Extensions of Time Weighs in Favor of MLCC, as Plaintiff Ignored this Practice Here and Did Not Have MLCC's Agreement to File a Late Demand

Attorney Begos asserts that "both parties have been liberal and cooperative, to date, in granting each other extensions of time to take actions required by the Federal Rules, or the Court's orders." Begos Decl. at ¶6. MLCC can only read this fact as weighing in favor of denying Plaintiff's Cross-Motion – Attorney Begos cannot reasonably be arguing that because MLCC has been cooperative, that it has legally acquiesced to Plaintiff's negligence. On the contrary, there have been agreements for extensions of time so as to comport with applicable rules, and these agreements, such as the one appended to Attorney Begos' Declaration, is an example of the parties' practice of setting forth any such agreements in writing, and submitting them to the Court for approval when appropriate. This argument is a classic red herring.

In short, most issues central to this action must ultimately be decided by the Court; MLCC has proceeded on the assumption that the action would be tried to the Court and would be prejudiced if the action were tried to a jury; and equitable considerations weigh heavily in favor of denying the Cross-Motion. Game playing of the type engaged in by Plaintiff should neither be encouraged nor rewarded. Plaintiff acted in bad faith by filing her jury demand in connection with a stipulation to narrow the issues and expedite the prosecution of the action. Plaintiff's jury demand would have been late under federal or state law. The fact that the parties have granted extensions of time weighs in favor of MLCC, as Plaintiff ignored this practice here knowing full well that MLCC would not have agreed to the Stipulated Second Amended Complaint with a jury demand. For all these reasons, the Court should deny Plaintiff's Cross-Motion for extension of time.

### III. RULE 6(b) DOES NOT SUPPORT AN EXTENSION BECAUSE PLAINTIFF HAS NOT SHOWN THAT COUNSEL'S NEGLECT WAS REASONABLE AND IN GOOD FAITH

In considering a motion under Rule 6(b), "inquiry into whether the failure to abide by a specified time constraint constitutes 'excusable neglect' is at bottom line an equitable one, taking into account all relevant circumstances surrounding the party's omission, including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." Raymond v. IBM, 148 F.3d 63,66 (2nd Cir. 1998). "To establish excusable neglect, however, *the movant must show good faith and a reasonable basis for noncompliance*." In re PaineWebber Ltd. Partnerships Litig., 147 F.3d 132, 135 (2nd Cir. 1998) (emphasis added). Plaintiff's filing is totally deficient on the critical issue of "good faith and reasonable basis for noncompliance." Although the Court need go no further in its analysis, given this failure, other equitable considerations strongly militate in favor of denial of the Cross-Motion.

Reason for the Delay

Plaintiff asserts that "Both Patrick Begos and Christopher Brown, the two partners in Begos & Horgan responsible for this action, believed that the removal papers served and filed by MLCC contained an indication that MLCC demanded a jury trial." Begos Decl. at ¶3. Strikingly, the Declaration provides not a shred of rationale to support this belief. Why MLCC would seek a jury for the claims at issue, especially when it is counterclaiming for foreclosure is far from clear. Further, Attorney Begos may not, as matter of law, declare what Attorney Brown believed. See Fed. R. Evid. 602. MLCC requests that the Court strike this portion, and in fact, any portion, of Attorney Begos' Declaration that is not, and cannot, be based on his personal knowledge or lacks foundation. Id. Ultimately, Plaintiff's explanation for its failure to file a jury demand is the legal equivalent of "the dog ate my homework," i.e. it cannot be completely disproved, but it is highly suspect.

What can be proved is that MLCC's removal papers did <u>not</u> include any demand for a jury. See Ex's. 2-6 of Supp. Aff. of T. Friedman. The civil cover sheet states that no jury is requested. Id. at Ex. 7. Moreover, the papers served on Plaintiff in connection with the removal, as required by the Local Rules, did <u>not</u> include any demand for a jury. See Id. at Ex. 8. To be clear, at no time did MLCC request a jury or implying that it sought a jury in this action, nor did it ever acquiesce or agree to a jury in this action. Id. at ¶6. Thus, Plaintiff's counsel must have been suffering from some joint delusion which lasted, not coincidentally, until it was time for them to file a Second Amended Complaint (at their own request), at which point Mr. Begos chose to file a jury demand. Moreover, Attorney Begos admits that he reviews the Court's on-line docket. See Begos Declaration at ¶3. His use of this system further undercuts any claim that the neglect was reasonable or excusable. See, e.g., Jones v. Hirshfield, No. 01 CV 7585, 2003

11

WL 21415323, at * 5 (June 19, 2001 S.D.N.Y.) (Rule 6(b)(2) motion for extension of time to file jury denied where no substantiated reason provided for neglect). For these reasons, Plaintiff cannot show a reasonable basis for noncompliance, as required by PaineWebber.

### Lack of Good Faith

As discussed, Plaintiff filed her jury demand in connection with a Stipulation to narrow the issues in dispute and expedite the prosecution of the action. Her attempt to bootstrap an untimely jury demand to the Amended Complaint contemplated by that Stipulation, and then shift the burden of raising the issue with the Court is not good faith. See supra at II.C.1. Plaintiff's response to these *facts* is a completely unsubstantiated conclusion that "there is, and can be, no claim that Ms. Miller acted in bad faith." Cross-Motion at 8. On the contrary, Plaintiff has failed to show that she acted in good faith and therefore fails to establish the second prong of the PaineWebber test.

### Duration of the Delay

As discussed in Section I.C.2, Plaintiff's jury demand would have been late under state or federal practice. The most important depositions to MLCC's case have already been completed, or are nearing completion. These include the deposition of Mrs. Miller and her purported loan expert. See Supp. Aff. of T. Friedman at ¶4. As discussed above, these deposition were conducted in a manner that cannot be altered. Accordingly, Plaintiff cannot claim that her five month delay is immaterial.

### Prejudice to MLCC

As discussed in Section I.B above, MLCC has proceeded as if this action is going to be tried to the Court. One decision that could not be remedied would be that MLCC has lost the opportunity to conduct depositions via videotape, which it would have done if this case were

12

to be tried to a jury. Moreover, the Court should give weight to practical concerns such as the possibility that the Court and a jury may not find the same facts, thereby creating an inconsistent verdict. See Garcia v. U.S. Postal Services, No. 98 CIV. 9152, 2001 WL 102349, at *1 (Feb. 7, 2001 S.D.N.Y.) ("Although Raymond liberalized the standards under which untimely demands for juries would be entertained, permitting the demand here would be tantamount to ignoring the time limits set forth in Rule 38(b) in their entirety.")

For these reasons, the Court should deny Plaintiff's Cross-Motion for relief pursuant to Rule 6(b)(2) as well.

Dated: January 6, 2004
Stamford, Connecticut

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
Douglas C. Conroy, ct11555
Thomas P. Friedman, ct24947
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email: douglasconroy@paulhastings.com
        thomasfriedman@paulhastings.com

Counsel for Defendant and Counterclaimant
MERRILL LYNCH CREDIT CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of January, 2004, a copy of the foregoing REPLY IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S LATE-FILED JURY DEMAND *AND* OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR EXTENSION OF TIME TO FILE JURY DEMAND was delivered via first class U.S. mail to:

> Patrick W. Begos, Esq.
> BEGOS & HORGAN, LLP
> 327 Riverside Avenue
> Westport, CT 06880

_____
Thomas P. Friedman

STM/265946.1
11413.00021