UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIE DILLON RIPLEY MILLER,<br><br>　　　　　　　　　　Plaintiff,<br><br>　- against -<br><br>MERRILL LYNCH CREDIT CORPORATION,<br><br>　　　　　　　　　　Defendant and<br>　　　　　　　　　　Counterclaimant. | CIVIL ACTION NO. 3:03-CV-1016 (RNC)<br><br>AFFIDAVIT IN SUPPORT<br>OF MOTION FOR ATTACHMENT<br><br>March 19, 2004 |

STATE OF FLORIDA　　)
　　　　　　　　　　　) ss.
COUNTY OF DUVAL　　 )

　　　DONALD J. McENERNEY, being duly sworn, deposes and says:

　　　1.　　I am a Vice-President of Merrill Lynch Credit Corporation ("MLCC"), the defendant and counterclaimant in this action. This affidavit is based upon my personal knowledge as well as a review of the books and records of MLCC. This affidavit and the accompanying Memorandum of Law are submitted in support of MLCC's request for the prejudgment remedy of attachment pursuant to Fed. R. Civ. P. 64 and CONN. GEN. STAT. ANN. § 52-279 et. seq. and temporary restraining order.

　　　2.　　MLCC, a provider of home financing and other credit programs, has asserted a counterclaim in this action to enforce the terms of an Adjustable Rate Note in the principal amount of $7,500,000 (the "Note") and to foreclose upon the Mortgage (the "Mortgage") which encumbers the premises located at 21 Point Road, Norwalk, Connecticut (the "Premises"). The most recent appraisal values the Premises at $4,850,000. As set forth herein, the plaintiff, Julie Dillon Ripley Miller ("Miller"), failed to make interest payments due on the first of the month from February 1, 2003 to the present. In addition to her failure to make interest payments, Miller

-2-

also failed to pay real estate property taxes on the Premises for 2000 and 2001, in the amount of $26,533.77 and $39,854.24, respectively. MLCC remitted the amount of past due property taxes and also advanced $20,375.36, to pay property taxes due November 14, 2003. In addition to these amounts, pursuant to the Note and Mortgage, Miller is also responsible for the payment of MLCC's attorneys' fees and costs incurred in connection with enforcement of the Note and Mortgage. A copy of MLCC's Answer to the Amended Complaint and Counterclaim (with exhibits) (the "Answer and Counterclaim") is attached hereto as Exhibit 1.[1]

3.    The amount presently due and owing by Miller is as follows:

| | |
|---|---|
| Principal Amount: | $7,497,995.94 [2] |
| Interest (as of 02/28/04): | $312,655.69 |
| Escrow (taxes including interest and applicable late fees): | $88,109.32 |
| Late Charges: | $14,641.60 |
| Recordable Balance (Attorney's Fees and Costs as of 2/28/04)[3] | $766,831.02 |
| TOTAL AMOUNT DUE | 8,680,233.57 |

---

[1] Attached to the Answer and Counterclaim are the following exhibits: Exhibit A, Legal Description of Premises; Exhibit B, the Note; Exhibit C, the Mortgage; Exhibit D, the Modification Agreement; Exhibit E, Notice of Default.

[2] The per diem rate of interest as of February 28, 2004 is $714.98.

[3] MLCC continues to incur attorneys' fees and costs in connection with its enforcement of the Note and Mortgage.

## FACTUAL BACKGROUND

A. <u>The First Loan</u>

4. Miller opened investment accounts with Merrill Lynch Pierce Fenner & Smith, Incorporated ("MLPF&S") in May 1997. At the time Miller opened the accounts, the balance of the investment accounts totaled approximately $10,500,000.

5. Shortly thereafter, in November 1997, Miller purchased the Premises. The purchase price was $1,350,000, which was equal to the appraised value of the property. At the time of the purchase, Miller opened margin facilities tied to two separate Cash Management Accounts ("CMA") and CMA Subaccounts: one to fund improvements in her existing house and a second to fund improvements at the Premises. A copy of the CMA Agreement is attached hereto as Exhibit 2. At that time, Miller applied and was approved to borrow $1,350,000 which was 100% of the purchase price, under the terms of MLCC's "Mortgage 100" Loan Program (the "1997 Loan"). Pursuant to the "Mortgage 100" Loan Program, Miller granted MLCC a first mortgage on the Premises and pledged approximately 30% of the purchase price, or $405,000 in securities, as additional collateral for the downpayment. A copy of the 1997 Pledge Agreement is attached hereto as Exhibit 3.

B. <u>The Consolidation Loan</u>

6. Over the next two years, Miller expanded the scope of her renovation project in order to construct a totally new 8,500 square foot house at the Premises.[4] In October 1999, Miller applied for a construction loan in the amount of $6,200,000. Then, upon receipt of the

---

[4] The construction was later expanded yet again and the Premises now totals 9,300 square feet.

plans and specifications from the general contractor, the loan amount was increased to $7,500,000 (the "1999 Loan"). The proceeds of the 1999 Loan were dispersed as follows: $1,350,000 (representing the original loan amount for the purchase of the Premises); $3,800,000 (representing the balance under the margin loan facilities used to fund construction costs through December 1999); and $2,350,000 (representing the amount needed to complete the construction).

7. The 1999 Loan was also issued pursuant to MLCC's "Mortgage 100" Loan Program and was secured by the Mortgage on the Premises and a pledge of securities at the time valued at $5,162,500.

8. The Loan closed on December 7, 1999. The Adjustable Rate Note (Exhibit B to the Answer and Counterclaim), the Mortgage (Exhibit C to the Answer and Counterclaim) and the 1999 Pledge Agreement (Exhibit 4 hereto) were executed on December 7, 1999 by Miller's attorney-in-fact, Barry Newman.

C. The Modification Agreement

9. On January 30, 2001, Miller entered into an agreement modifying certain repayment terms of the Note and corresponding portions of the Mortgage (the "Modification Agreement"). *See* Modification Agreement, Exhibit D to the Answer and Counterclaim. Miller personally executed the Modification Agreement.

10. Paragraph 3 of the Modification Agreement states that "Miller warrants that she has no existing right of offset, counterclaim, or other defenses against enforcement of the Note [and Mortgage] by MLCC and that, if any such right or defenses do exist, they are hereby waived and released." Modification Agreement, p. 3 ¶ 3.

11. Pursuant to Paragraph 1(a) of the Modification Agreement, Miller is required to pay interest under the Note on the first day of each month, beginning March, 2001, until

-4-

C048519/0175359Error! AutoText entry not defined.1132159.3

February, 2011. Paragraph 4 of the Modification Agreement provides that "[t]he Note and the [Mortgage] shall continue to evidence and secure [Miller's] indebtedness thereunder as modified herein" and, except as modified therein, "neither the Note nor the [Mortgage] is modified by this Agreement and they shall remain in full force and effect until the obligations secured thereunder are paid in full and the [Mortgage] is satisfied of record." Id., p. 3, ¶ 4.

12. Under its terms, the Mortgage secures: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 (Protection of Lender's Rights in the Property) to protect the security of the Mortgage; and (c) the performance of Miller's covenants and agreements under the Mortgage and the Note. *See* Mortgage, Exhibit C to the Answer and Counterclaim, p. 1. As discussed in the following paragraphs, Miller is in default under the Mortgage by (i) failing to make timely payments under the Mortgage and Note; and (ii) failing to pay property taxes for the Premises to the City of Norwalk.

D. Miller's Defaults

13. In breach of Miller's obligations under the terms of the Mortgage, as amended, Miller has failed to make interest payments due on the first of the month from February 1, 2003 to the present, and now owes MLCC interest in the aggregate sum of $312,655.69. Pursuant to Paragraph 8 of the Note, if the full amount of any monthly payment is not received by MLCC at the end of 15 calendar days after its due date, Miller owes a 6% late fee for each such late payment.

14. Paragraph 4 of the Mortgage further requires Miller to pay all taxes attributable to the Premises. In breach of Miller's obligations under the terms of the Mortgage, Miller failed to

remit to the City of Norwalk property taxes on the Premises for the years 2000 and 2001, in the amount of $26,533.77 and $39,854.24, respectively.

15. The City of Norwalk filed suit on January 14, 2003 to satisfy its tax lien. Pursuant to Paragraph 7 of the Mortgage, which permits MLCC to make payments to safeguard its interest in the Premises, MLCC paid the City of Norwalk $67,733.96 in property taxes, costs and fees to satisfy Miller's property tax obligations. MLCC made an additional property tax payment on November 14, 2003 in the amount of $20,375.36. Paragraph 7 of the Mortgage further provides that these costs and fees, with interest from the date of demand for reimbursement are to be treated as additional debt secured by the Mortgage.

16. MLCC has satisfied all of its obligations under the Note and Mortgage, as amended. MLCC provided notice to Miller of the aforementioned defaults by letter dated May 16, 2003 via U.S. First Class Mail, U.S. Registered Mail (Return Receipt Requested) and Express Mail Overnight Delivery (the "Notice of Default"). See Notice of Default, Exhibit E to the Answer and Counterclaim. The Notice of Default complied with all applicable notice requirements of the Mortgage with regard to MLCC's subsequent right to foreclose upon the Premises and accelerate the debt secured by the Mortgage without further notice. Miller has failed to cure her defaults in accordance with the Notice of Default.

17. Paragraph 20 of the Mortgage, which provides for acceleration of the debt secured by the Mortgage, states that MLCC "shall be entitled to collect all expenses incurred in pursuing the remedies provided for in this paragraph 20 [any remedy permitted by law], including, but not limited to, reasonable attorneys' fees and costs of title evidence." Thus, in addition to the amounts due under the Mortgage and Note, MLCC is entitled to reimbursement of its ongoing attorneys' fees and expenses.

-7-

18. Miller borrowed $7,500,000 from MLCC and MLCC is entitled to be repaid that principal amount in addition to penalties, interest, taxes and attorneys' fees, in the total amount of $8,680,233.57 as of February 28, 2004. MLCC has made demand upon Miller for payment of the indebtedness and she has failed to make payment.

_____
DONALD J. McENERNEY

Sworn to before me this
18th day of March, 2004

*Kathleen M. Clifford*
Notary Public

Kathleen M. Clifford
MY COMMISSION # CC932860 EXPIRES
May 1, 2004
BONDED THRU TROY FAIN INSURANCE, INC.

CERTIFICATE OF SERVICE

This is to certify that on this 19th day of March, 2004, a copy of the foregoing AFFIDAVIT IN SUPPORT OF ATTACHMENT was delivered via U.S. first class mail to:

> Patrick W. Begos, Esq.
> BEGOS & HORGAN, LLP
> 327 Riverside Avenue
> Westport, CT 06880

_____
Thomas P. Friedman