UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,                   :
                                              :   2004 APR -2  A 11: 02
          Plaintiff,                          :   Case No. 3:03CV1016 (RNC) (DFM)
                                              :
     – against –                              :   April 1, 2004
                                              :
MERRILL LYNCH CREDIT CORPORATION,             :
                                              :
          Defendant.                          :
---------------------------------------------------------------x

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL

Plaintiff, Julie Dillon Ripley Miller, by her attorneys, Begos & Horgan, LLP, submits this brief in support of her motion to compel defendant, Merrill Lynch Credit Corporation ("MLCC") to produce documents responsive to Ms. Miller's Second Request for Production of Documents ("Second Request") and Third Request for Production of Documents "(Third Request").

### NATURE OF THE CASE

Ms. Miller asserted this action to recover damages flowing from MLCC's misconduct in connection with an alleged "construction loan" (the "Loan") made in December 1999. MLCC has, in turn, asserted a counterclaim seeking to foreclose on the mortgage allegedly given in connection with the Loan. There are two broad topics at issue.

First, MLCC has asserted that a pledge agreement executed by Ms. Miller's then-accountant (Barry Newman), allegedly as her attorney-in-fact, gave MLCC an interest in approximately $5.5 million in securities belonging to Ms. Miller; MLCC subsequently sold those securities, resulting in substantial capital gains liability and other damages for Ms. Miller. Ms. Miller has alleged that the power of attorney ("POA") under whch Mr. Newman purported to act was either void, or, if it had any vitality, did not authorize Mr. Newman to pledge securities, for the following reasons:

- After the POA was signed and acknowledged, it was substantially changed at least twice by Jay Falini, a stockbroker employed by MLCC's affiliate, Merrill Lynch, Pierce Fenner & Smith ("MLPF&S"). Mr. Falini's changes purported to expand the authority given to Mr. Newman. Plaintiff contends that the post-execution changes voided the POA.

- Even if those changes did not void the POA, the document (as changed by Mr. Falini), still withheld any authority for Mr. Newman to pledge Ms. Miller's stocks. It did so by deleting the power to enter into "bond, share and commodity transactions," which is statutorily construed to cover the power to pledge securities (C.G.S.A. § 1-46).

Because Mr. Newman did not have the authority to pledge Ms. Miller's stock to MLCC, MLCC's subsequent actions in freezing the account in which those securities were held, and subsequently selling them, was a conversion

Second, MLCC approved the $7,500,000 Loan even though its own documents show it knew that: (i) the house, after completion, would be worth only $3,800,000; and (ii) Ms. Miller did not have sufficient income to make the loan payments. Thus, MLCC knew, when it approved the Loan, that Ms. Miller would necessarily default, and that it would be seizing, and selling, the collateral. Moreover, Mr. Falini (the broker who changed the POA) told MLCC not to communicate directly with Ms. Miller concerning the Loan, and insisted that the Loan closing go forward while Ms. Miller was out of the country (necessitating the POA). Based on these, and other facts, Ms. Miller asserted various defenses to MLCC's foreclosure counterclaim, including defenses of unclean hands and unconscionability.[1]

---

[1] *See, e.g. Family Financial Services, Inc. v. Spencer*, 41 Corn. App. 154,763 (Ct. App. 1996), in which the court found a mortgage transaction unconscionable where, inter alia: "the defendant's financial situation made it apparent that she could not reasonably expect to repay the second mortgage[.]" Similar factors support the defense of unclean hands. *Montary Funding Group, Inc. v. Pluchino*, 2003 Conn.. Super. Lexis 2442 (Ct. Super. Sep. 3,2003).

## THE DISPUTED REQUESTS

**Second Request, No. 1**

All of MLCC's underwriting manuals and all manuals used by MLCC in the underwriting of loans.

**Response**

MLCC hereby incorporates each of the foregoing General Objections into its response to this request. MLCC further objects to this request on the grounds that (i) it is overbroad and unduly burdensome in that it seeks documents not reasonably calculated to lead to admissible evidence; and (ii) it seeks production of confidential and proprietary information.[2]

MLCC's objection that this request is overbroad and unduly burdensome is contrary to the clear testimony of the MLCC witness who is responsible for maintaining the underwriting manual, Tara Stewart, Manager of MLCC's Underwriting Department. Ms. Stewart, who was MLCC's 30(b)(6) designee regarding the underwriting manual, testified that the manual exists in computer format, and is only one-hundred pages in length, making production simple and not burdensome (Stewart Tr. (Ex. G) at 13-14). She also testified that the guidelines have not changed substantially from 1999 (when the loan to Ms. Miller was underwritten) to today (*id.*). Moreover, "[t]o the extent defendants assert burden, they have submitted no affidavits or other material of evidentiary weight describing the volume of materials that would have to be reviewed for responsive materials, nor is there any evidence concerning the amount of time required to review this material. Their conclusory

---

[2] Plaintiff's First Set of Interrogatories had requested that MLCC identify any manuals that related to its underwriting process; MLCC objected to the interrogatory on various grounds, and Ms. Miller moved to compel a response to the interrogatory and production of the manual(s) (Docket No. 38). As part of its opposition to that motion, MLCC argued that the Interrogatory sought only identification of the underwriting manual, not production of a copy of the manual. That first motion is currently *sub judice*. The present request was served, in part, to ensure that a demand for production had been made in the event that the Court ruled that the interrogatory did not demand production of a copy of the manual. Should the Court order production of the underwriting manual as part of the first motion, then it need not revisit the issue on this motion. However, the present request was also served because, after the first motion to compel was briefed and submitted, Ms. Miller obtained testimony from MLCC witnesses confirming the relevance and importance of the manual in the underwriting of Ms. Miller's loan. That testimony is discussed below.

3

assertion of burdensomeness is entitled to no weight whatsoever." *Jackson v. Edwards*, 2000 U.S. Dist. Lexis 8549 (S.D.N.Y. June 16, 2000).

Regarding MLCC's relevance objection, other MLCC witnesses confirmed that the contents of the manual are highly relevant to this case. For example, Andrew Jones, the underwriter for the loan at issue, testified that he typically referred to the manual (he called them the "guidelines") when underwriting a loan (Jones Tr. (Ex. I) at 44). When asked about many of the underwriting calculations and decisions on the loan, he repeatedly referred to the contents of the guidelines (*see, e.g. id.* at 71, 87, 130-31, 158). Most significantly, Mr. Jones confirmed that these guidelines permitted him to calculate an income figure for Ms. Miller that, in his opinion, was a made-up number (*id.* 167-72). If nothing else, the manual itself will allow us to ascertain whether Mr. Jones did in fact apply MLCC's underwriting policies, as he claims to have done.

Despite these facts, MLCC asserted that Ms. Miller "failed to establish that the production of [these documents] is reasonably likely to lead to admissible evidence[,]" citing *de Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293 (2d Cir. 2002)(Ex. E, p. 1). However, *de Kwiatkowski* merely held that, in a *negligence* action, the standard of care to which a corporation is held may be lower than the standards set forth in its procedures manual. Nothing in that decision held that the procedure manuals in question were not discoverable. Indeed, it was obvious from the decision that the manual in question had been produced by Bear Stearns.

In order to compel production of the underwriting manual, Ms. Miller need not demonstrate that MLCC's liability will hinge on its compliance with that manual, or even that the manual will be admissible at trial. All that needs to be shown is that the production sought is relevant to any claims or defenses in the action. As the Supreme Court has stated, discovery should be allowed into

4

any "matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978).

Certainly, when MLCC witnesses, like Mr. Jones, have testified that the bases for decisions they made are reflected in these manuals, or that they specifically consulted them in making those decisions, that standard has been met. As the court stated in *Fields v. Oliver's Stores, Inc.*, 1990 U.S. Dist. Lexis 2271, at 2-3 (S.D.N.Y. Mar. 2, 1990):

> [T]he manuals are the single best source of information available to plaintiffs on how Touche conducted audits. Even if Roe did not specifically turn to the manuals in the course of the audits at issue here, the way in which he did his work must have been informed by the procedures outlined therein. Even if Touche's internal procedures for auditing prove irrelevant to the proof at trial, understanding them could be vital to conducting meaningful depositions and might aid in learning whether or not Touche's auditors acted with scienter by conducting the audits in an irregular way.

Courts routinely order production of internal procedure manuals. *See, e.g. Bank of N.Y. v. Meridien Biao Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997) (bank's Internal Audit Procedures Manual, Credit Policy Manual, and Authorized Signature Book); *Aboulissan v. New York*, 1991 U.S. Dist. Lexis 3291 (E.D.N.Y. Mar. 12, 1991) (Police Department's Organized Crime Control Bureau Narcotics Division Manual of Procedures); *Fields v. Oliver's Stores, Inc., supra* (accountant's audit manuals); *In re Crazy Eddie Securities Litigation*, 1988 U.S. Dist. Lexis 13235 (E.D.N.Y. Nov. 16, 1988) (accountant's audit manuals); *Rosen v. Dick*, 1975 U.S. Dist. Lexis 13739 (S.D.N.Y. Feb. 20, 1975) (internal accounting literature).

*Fields*' reference to scienter raises another significant difference between *de Kwiatkowski* and this case. Unlike the negligence claim in *de Kwiatkowski* (which is the only claim concerning which Bear Stearn's manual was discussed), Ms. Miller has asserted numerous claims and defenses that

turn on MLCC's knowledge and state of mind – whether it be scienter, good faith, and/or deceptiveness – and she also seeks recovery of punitive damages. In *Deloitte & Touche v. Hassett*, 123 B.R. 488, 491 (S.D.N.Y. 1991), the court observed that "internal auditing manuals might be deemed admissible for purposes of showing scienter or proving punitive damages."

The degree to which MLCC's employees followed, or disregarded, its pertinent internal manuals and guidelines is highly relevant to the questions whether MLCC acted so as to defraud and/or deceive Ms. Miller, or knowingly approved a loan transaction that would inevitably result in a default. Indeed, Ms. Miller's banking expert has opined, and testified, that the contents of MLCC's guidelines are important in evaluating the propriety of its actions.[3]

Finally, insofar as MLCC asserts confidentiality concerns, MLCC has not made any showing to support the assertion that its underwriting manual is kept confidential. There is no evidence that MLCC restricts access to the manual to a small number of MLCC employees, for example. In any event, Ms. Miller advised MLCC months ago that she was prepared to enter into a confidentiality agreement to protect against disclosure of confidential information.

---

[3] In expert discovery, MLCC has attempted to stake out the position that standards and procedures contained in the underwriting guidelines issued by Fannie Mae (which Ms. Miller's expert has referred to as industry standard), are irrelevant to the underwriting decisions made by MLCC on a loan that does not fall under Fannie Mae limits. However, Tara Stewart confirmed that there were many similarities between MLCC's underwriting guidelines and the Fannie Mae guidelines (Ex.G at 17). When asked to describe the similarities, she answered: "We talk about we require credit reports. We look for certain types of – depending upon types of employment, certain basic information, basic documentation. We are similar in appraisal requirements and the forms that they are completed on. I believe our closing documents are similar. Terminology is similar." (*Id.*). Production of MLCC's manual is critical to allow Ms. Miller and her experts to explore the similarities and differences between the two sets of guidelines.

**Second Request, No. 2**
MLCC's "OPS Guide" as referred to in the document produced by MLCC in this litigation bearing Bates number MLCC 2474.
**Response**
MLCC hereby incorporates each of the foregoing General Objections into its response to this request. MLCC further objects to this request on the grounds that (i) it is overbroad and unduly burdensome in that it seeks documents not reasonably calculated to lead to admissible evidence; and (ii) it seeks production of confidential and proprietary information.

The document with Bates number MLCC 2474 (Ex. L), is an email from one MLCC employee to another, with the subject "Re: Julie Miller..." The body of the email began with a discussion of a notice of tax lien on Ms. Miller's property, and then stated: "I would think that perhaps we should reconsider the *OPS guides* procedure when dealing with delinquent accounts in reference to tax payments... [emphasis supplied]"

Donald McEnerney, a Vice President and Director of MLCC, testified that the OPS Guide referred to in this email was likely an operational guideline that instructed MLCC's loan servicer (Cendant) how to handle issues arising with loans made to "priority clients" or "key clients" like Ms. Miller: "I think they were exceptions to Cendant's normal guidelines that we wanted followed for Merrill Lynch clients, or Merrill Lynch priority clients or key clients." (McEnerney Tr. (Ex. H) at 202-03).

MLCC has relied on the *deKwiatkowski* case to resist production of the OPS guides. Therefore, the discussion in the previous section concerning the discoverability of corporate procedures manuals is applicable here. Where an internal MLCC email concerning the loan at issue in this case makes specific reference to "the OPS guides procedure," there is sufficient relevance to make that guide discoverable.

Moreover, MLCC has made no assertion of any specific burden associated with producing these guides, which MLCC is obligated to do. *Jackson v. Edwards, supra.*

**Second Request, No. 3**
All email concerning Miller regardless of date.
**Response**
MLCC hereby incorporates each of the foregoing General Objections into its response to this request. MLCC further objects to this request on the grounds that (i) it seeks documents not in MLCC's possession, custody or control; (ii) it seeks documents subject to the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, that constitute or reflect communication subject to such privilege; and (iii) it is overbroad and unduly burdensome in that it seeks documents not reasonably calculated to lead to admissible evidence. Moreover, MLCC previously produced documents responsive to this request following a good faith search for same pursuant to Plaintiff's First Request for Production of Documents, and as Plaintiff stated in her Response to Defendant's Second Request for Production of Documents "[i]t is beyond the scope of Fed. R. of Civ. Proc. 34 to seek production of those same documents a second time[.]"

This request contravenes not only the Federal Rules of Civil Procedure, but also the Court's Rules. The Court's Order dated August 4, 2003 prohibits a party from seeking additional production more than 30 days following the due date for production of responsive documents. While MLCC conducted a good faith search for responsive documents pursuant to Plaintiff's First Request for Production of Documents which documents were produced to Plaintiff, MLCC maintains that this request is an attempt to circumvent the relevant portion of the Court's Order dated August 4, 2003.

Objections (i) and (ii) are not grounds for avoiding production: to the extent MLCC does not have responsive documents in its possession, custody or control, obviously MLCC need not produce anything; and to the extent responsive documents are privileged, MLCC should provide a log. As for subpart (iii), MLCC cannot seriously contend that an email in MLCC's possession concerning Ms. Miller is not reasonably calculated to lead to the discovery of admissible evidence.

MLCC's primary objection is that Ms. Miller has asked for these same documents before. Ms. Miller did serve a general request that incorporated such documents; however, there is a legitimate question whether MLCC produced all emails it should have in response to that prior request. More

specifically, Ms. Miller's First Request for Production of Documents, demanded "All documents referring or relating to Miller." The term documents was defined to include emails (*See* Ex. E, p. 2).

MLCC did produce *some* emails (*see* Exs. L, M). However, MLCC's affiliate, MLPF&S, responding to a subpoena issued by Ms. Miller, produced emails between MLCC and MLPF&S that MLCC did not produce (Ex. N). Donald McEnerney, the MLCC Vice President and Director, testified that he did not know what type of search MLCC had performed for emails responsive to Ms. Miller's First Request (Ex. H at 93-94).

MLCC claims to interpret this Court's August 4, 2003 Order (Docket No. 18) as precluding Ms. Miller from seeking to ensure that MLCC has produced all emails concerning her (*see* Objection: "The Court's Order dated August 4, 2003 prohibits a party from seeking additional production more than 30 days following the due date for production of responsive documents."). The Court's order cannot be interpreted as MLCC desires. The order merely states: "Any motion for an order compelling disclosure or discovery pursuant to Fed. R. Civ. P. 37(a) must be filed within 30 days after the due date of the response." The Order does not state that, when a party agrees to produce documents, but fails to make a complete production, the demanding party has no remedy if more than thirty days have elapsed.

In this case, MLCC agreed to produce documents responsive to Ms. Miller's First Request, No. 2, so Ms. Miller had no reason, at the time, to move to compel. It was not until MLCC began actually producing documents, and MLPF&S produced documents, that it became apparent that MLCC may not have conducted a comprehensive search for emails. Accordingly. Ms. Miller served the Second Request.

There is no dispute that MLCC continued to produce documents responsive to the First Request until at least January 29, 2004 (Ex. L), many months after that Request had been served. Yet under MLCC's interpretation of this Court's August 4, 2003 order, Ms. Miller should have moved to compel a complete response to requests to which MLCC had already agreed to make a complete response, even before MLCC had completed production. Such an interpretation would mean that motions to compel would have to be filed with respect to every document request, just in case it developed later that a party did not actually produce all the documents it agreed to produce.

In short, MLCC should be compelled to produce all emails in its possession, custody or control concerning Ms. Miller. If it has already produced all such emails (which would include emails on computer backups and archives), then it should so state.

**Third Request, No. 1**
All documents referring to or relating to the use, approval, review, form, contents or creation of powers of attorney with respect to loans of whatever type or nature made by MLCC.
**Response**
MLCC hereby incorporates each of the foregoing General Objections into its response to this request. MLCC further objects to this request on the grounds that (i) it seeks documents subject to the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, that constitute or reflect communication subject to such privilege; (ii) it seeks production of confidential and proprietary information; and (iii) it is overbroad and unduly burdensome in that it seeks documents not reasonably calculated to lead to admissible evidence.

The witness whom MLCC designated to testify about MLCC's review and approval of the power of attorney that is at issue in this case, Harvey Rosenblum, testified that MLCC had guidelines concerning powers of attorney that could be accessed through its internal computer system (Rosenblum Tr. (Ex. K) at 18-19: "We had on-line guidelines that you could go in and, you know, put in 'power of attorney' and it would bring up everything about power of attorney").

MLCC's former Senior Vice President also confirmed that powers of attorney were reviewed to ascertain whether they met MLCC's guidelines: "Merrill Lynch Credit Corporation had some basic guidelines for the content of a power of attorney used in connection with a real estate loan, and it was determined that [a power of attorney] met those guidelines." (Smith Tr. (Ex. J) at 93-94).

MLCC has refused to produce these materials for the same reasons that it refused to produce the underwriting manual and OPS Guides (*see* Ex. E, p. 1). As discussed above with respect to the Second Request, Nos. 1 and 2, all of these procedure guides or manuals are relevant and discoverable in this case.

## CONCLUSION

For the reasons set forth above, Ms. Miller's motion should be granted.

Dated: Westport, Connecticut
April 1, 2004

BEGOS & HORGAN, LLP

By: /s/ *signature*
Patrick W. Begos (ct19090)
Attorneys for Plaintiff
327 Riverside Avenue
Westport, CT 06880
(203) 226-9990
(203) 222-4833 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on April 1, 2004 to:

Thomas P. Friedman, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

_____
Patrick W. Begos

12