UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIE DILLON RIPLEY MILLER, | CIVIL ACTION NO. 3:03-CV-1016 (RNC) |
| Plaintiff, | |
| - against - | |
| MERRILL LYNCH CREDIT CORPORATION, | |
| Defendant and Counterclaimant. | April 26, 2004 |

## MEMORANDUM IN SUPPORT OF OPPOSITION BY MERRILL LYNCH CREDIT CORPORATION TO PLAINTIFF'S MOTION TO COMPEL

Now comes the Defendant Merrill Lynch Credit Corporation [hereinafter "MLCC"] and opposes the plaintiff's Motion to Compel. Contrary to the requirements of the Federal and Local Rules and this Court's Order dated August 4, 2003, the plaintiff seeks to compel MLCC's production of its internal underwriting and operations manuals, in addition to any e-mails from the past 7 years concerning the plaintiff. The plaintiff's Motion should be denied in all respects on the basis that: 1) The plaintiff is procedurally barred from bringing her Motion; and 2) The plaintiff's requests are overly broad, unduly burdensome, and not reasonably likely to lead to the discovery of admissible evidence.

### Nature of the Case

This dispute arises out of a construction loan transaction closed on or about December 7, 1999, whereby MLCC provided the plaintiff approximately $7,500,000 [hereinafter the "Construction Loan"]. See Amended Complaint at ¶3. The plaintiff purchased the property at issue, located at 21 Point Road in Rowayton,

**ORAL ARGUMENT REQUESTED**

Connecticut, through a mortgage loan from MLCC for approximately $1,350,000 million in or about November of 1997. Following the purchase and prior to the Construction Loan, the plaintiff expended at least $3,800,000 million on reconstructing and renovating the property, which funds were obtained through margin loans against her account with Merrill Lynch, Pierce, Fenner & Smith, Inc. [hereinafter "MLPFS"].

To continue funding the reconstruction, the plaintiff personally applied and was approved for a construction to permanent loan by MLCC in late 1999. To consummate the Construction Loan, the plaintiff executed a power of attorney ("POA") in favor of her attorney-in-fact. See Amended Complaint at ¶3. According to the plaintiff, she withheld the authority to pledge securities, and therefore her attorney-in-fact was not authorized to pledge a securities account as security for the Construction Loan. See id.

On the closing date, the plaintiff's attorney-in-fact executed an agreement, which, on its face, pledges the plaintiff's securities account held by Merrill Lynch, Pierce, Fenner & Smith, Inc. as security for the Construction Loan [hereinafter "Pledge Agreement"] See id. at ¶6. MLCC has reason to believe that the plaintiff continued to spend her disposable income on lavish interior decorations and furnishings, rather than her mortgage payments. Eventually, the plaintiff failed to make numerous mortgage payments or pay property taxes and the MPPF&S account was liquidated. The plaintiff has brought affirmative claims against MLCC, including negligence and recklessness, and has set forth various defenses to MLCC's claim for foreclosure.

**Argument**

**I.     The Plaintiff Is Procedurally Barred From Bringing Her Motion**

      a.     The plaintiff failed to confer with counsel prior to filing her Motion in violation of the Local Rules and the Federal Rules of Civil Procedure.

Federal Rule 37 requires a movant to confer with the opposing party prior to the filing of any motion. Fed. R. Civ. P. 37. Local Rule 37 expressly states that "No motion pursuant to Rules 26 through 37, Fed. R. Civ. P., shall be filed unless counsel making the motion had conferred with opposing counsel and discussed the discovery issues between them in detail [.]" Plaintiff's counsel did not orally discuss with Defendant's counsel the discovery issues now before the Court prior to filing this motion. Friedman Aff. at ¶3.

The parties have engaged in limited correspondence in an attempt to settle their discovery differences. Begos Aff. at ¶2. Certainly, a formal Rule 37 conferral in anticipation of the plaintiff's motion to compel would have assisted in defining and narrowing the issues before the Court. Instead, the plaintiff flagrantly disregarded the Federal and Local Rules and improperly represented to this Court that Plaintiff had complied with her duty to confer.[1] On this basis, the Court should not condone the plaintiff's lack of diligence by considering her Motion.

_____

[1] This is not the first time that Plaintiff has disregarded the Rules applicable to discovery. Plaintiff's first Motion to Compel improperly sought the production of documents based on the service of interrogatories. See, e.g., Petruceli v. Bohringer and Ratzinger, GMBH, 46 F.3d 1298, 1310-11 (3rd Cir. 1995) (motion to compel production of documents properly denied where no request had been served for production of the documents sought); Bermudez v. Duenas, 936 F.2d 1064, 1068 (9th Cir. 1991) (motion to compel premature where no request for production made under Fed. R. Civ. P. 34);

(continued...)

b.    <u>The plaintiff has failed to comply with the deadlines imposed by this Court's order for challenging timely discovery responses.</u>

The plaintiff is also barred from moving to compel the production of e-mails concerning the plaintiff based on this Court's Order of August 4, 2003. Specifically, the Court requires that any motion to compel be brought within 30 days of the due date for a party's response to a discovery request.  In this regard, MLCC timely responded to the plaintiff's First Request for Production of Documents on September 8, 2003, which called for, *inter alia*, "all documents referring or relating to Miller." Friedman Aff. at Ex. A. The plaintiff specifically defined "documents" to include e-mail, and MLCC responded accordingly, subject to appropriate objections. <u>Id</u>. at Ex. B, p. 1. The plaintiff, however, only now challenges MLCC's response and attempts to skirt the court's imposed deadline by submitting to MLCC a duplicative discovery request for e-mails concerning the plaintiff.

Following MLCC's timely response to the plaintiff's First Request for Production on September 8, 2003, MLCC, upon discovering additional documents, supplemented its response on January 29, 2004 in good faith as required by the Federal Rules.  The fact that MLCC supplemented its document production or that another party produced e-mails that were not included in MLCC's production is irrelevant to the plaintiff's failure to raise a timely challenge to MLCC's objections to the plaintiff's First

(...continued)

<u>Hilgenberg v. Neth</u>, 93 F.R.D. 325, 326 (E.D. Tenn. 1981) ("Rule 34 provides for production [of documents] upon request, not by motion . . .[a]ccordingly, the Court declines to consider this aspect of the respective motions until such time as the movant has first requested the respective [party] to produce the documents and has been refused.")  The Plaintiff's first Motion to Compel remains sub judice.

Request for Production.   Plaintiff states that "<u>MLCC agreed to produce documents</u> <u>responsive to Ms. Miller's First Request No 2, so Ms. Miller had no reason, at the time,</u> <u>to move to compel.</u>"  Opp. at 9 (emphasis added).  This statement distorts the facts, at best, and is ultimately an attempt to make excuses.  MLCC response to Ms. Miller's First Request No 2, which encompasses the same documents as those at issue, stated:

> 2.     All documents referring or relating to Miller.

> **Response:**

> MLCC hereby incorporates each of the foregoing General Objections into its response to this request.  MLCC further objects to this request on the grounds that (i) **it is over-broad and unduly burdensome in that it seeks documents not related to any issue in dispute or reasonably calculated to lead to admissible evidence;** and (ii) it seeks documents subject to the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, that constitute or reflect communication subject to such privilege.  Subject to and without waiving its objections, MLCC will produce responsive documents.

<u>See</u> Ex. A to Friedman Affidavit at 4 (emphasis added).

Plaintiff cannot represent to the Court that MLCC did not timely object to the overbroad request in the first or second instance.  The plaintiff simply has no basis to redefine the deadlines imposed by the Court where MLCC performed a reasonable and diligent search.

The plaintiff apparently recognized her dilemma and therefore attempted to skirt the Court's order by issuing a duplicative request for documents to MLCC.  In her Second Request for Production submitted on February 11, 2004, the plaintiff this time requested "all e-mail concerning Miller regardless of date."  <u>See</u> Ex. A. of Begos Aff. at 2.  MLCC again objected based, in part, on undue burden:

MLCC hereby incorporates each of the foregoing General Objections into its response to this request. MLCC further objects to this request on the grounds that (i) it seeks documents not in MLCC's possession, custody or control; (ii) it seeks documents subject to the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, that constitute or reflect communication subject to such privilege; and (iii) it is over-broad and unduly burdensome in that it seeks documents not reasonably calculated to lead to admissible evidence. Moreover, MLCC previously produced documents responsive to this request following a good faith search for same pursuant to Plaintiff's First Request for Production of Documents, and as Plaintiff stated in her Response to Defendant's Second Request for Production of Documents "[i]t is beyond the scope of Fed. R. of Civ. Proc. 34 to seek production of those same documents a second time[.]"

This request contravenes not only the Federal Rules of Civil Procedure, but also the Court's Rules. The Court's Order dated August 4, 2003 prohibits a party from seeking additional production more than 30 days following the due date for production of responsive documents. While MLCC conducted a good faith search for responsive documents pursuant to Plaintiff's First Request for Production of Documents which documents were produced to Plaintiff, MLCC maintains that this request is an attempt to circumvent the relevant portion of the Court's Order dated August 4, 2003.

See Ex. C of Begos Affidavit at 4-5.

As Plaintiff herself has stated, the Federal Rules do not permit duplicative discovery requests. In response to a document request submitted by MLCC to Plaintiff due to an apparent gap in Plaintiff's production, she objected to Request No 2, stating that "It is beyond the scope of Fed. R. Civ. P. 34 to seek production of documents a second time[.]" See Ex. C to Friedman Aff. at 3.

Plaintiff's apparent position is that the protection provided by the Federal Rules only applies to her. The plaintiff had adequate notice of MLCC's objections to its first request for such documents and could have brought a timely motion to compel within the 30-day period mandated by the Court. It was not necessary to "wait and see"

which documents MLCC would produce.  If the plaintiff was dissatisfied with MLCC's response, she should have promptly challenged MLCC's objections within the time allotted by the Court.[2]

The notion that Plaintiff waited for months after Defendant's initial production without any request for further production belies her current position.  Moreover, Plaintiff did not even move to compel within 30 days of Defendant's supplemental production.  *Cf.* Ex. L to Begos Aff. (showing supplemental production on January 29, 2004) and Plaintiff's Motion to Compel (dated April 1, 2004).  In failing to move in a timely fashion, the plaintiff has waived her right to challenge MLCC's response.  Again, the plaintiff's lack of diligence should not be excused, nor should it result in a second bite at the discovery apple.

---

[2] See e.g., Sonnino v. University of Kansas Hospital Authority, 2004 WL 741320, No. Cov.A. 02-2576-KHV-DJW (D. Kan. March 31, 2004), the court denied plaintiff's motion to compel as untimely as it was not filed within the 30-day timeframe set forth in the rules.  Further, the court rejected plaintiff's argument that she had good cause for failing to file the motion in time because she was giving defendants an opportunity to cure alleged deficiencies in their productions, and in reliance on defendants' assurances they would supplement their responses.  Id. at *2.

II.     **The Plaintiff's Discovery Requests are Overly Broad, Unduly Burdensome, and Not Reasonably Likely to Lead to the Discovery of Admissible Evidence**

a.     <u>The plaintiff's requests are overly broad and unduly burdensome.</u>

The MLCC underwriting manual, OPS Guide and guidelines related to Powers of Attorney [the "Manuals"], whether in whole or in part, are not relevant to this litigation.[3] The majority of these Manuals are not applicable to the plaintiff's loan, and despite having taken the depositions of at least six MLCC employees and former employees, the plaintiff has not sought to narrow her request. On this basis, MLCC asserts that the plaintiff's requests for MLCC's Manuals are overly broad and unduly burdensome.

The production of these documents is also unduly burdensome based on the proprietary nature of the information. If disclosed, this information would undoubtedly benefit MLCC's competitors. Specifically, such information would be of significant value to MLCC's actual and potential competitors in determining their own business plans and strategies and could be used by those competitors to undermine significantly MLCC's ability to compete effectively in the marketplace. McEnerney Affidavit at ¶6. Further, MLCC has been scrupulous in its efforts to maintain the

---

[3] Mrs. Miller's Second Request, No 1. seeks "All of MLCC underwriting manuals and manuals used by MLCC in the underwriting of loans." Second Request, No. 2 seeks "MLCC's 'OPS' Guide as referred to in the document produced by MLCC in this litigation bearing Bates number 2474." Miller's Third Request, No. 1 seeks "All documents referring or relating to the use, approval, review, form, content or creation of powers of attorney with respect to loans of whatever type or nature made by MLCC." Defendant views these requests as seeking various "Manuals" and believes that in the interest of efficiency can be grouped together as contemplated by Local Rule 37(a)3.

confidentiality of the information. MLCC employees are expected to keep this information confidential, and MLCC makes every reasonable effort to protect this information from unauthorized third-parties seeking to infiltrate MLCC's computer systems. Id. at ¶7. For the above-stated reasons, MLCC objects to the production of these documents in the absence of a protective order.

The plaintiff's request for e-mails concerning the plaintiff are likewise overly broad and unduly burdensome. MLCC conducted in good faith a diligent search for the requested information and raised timely and appropriate objections. McEnerney Aff. at ¶3. The plaintiff's demand that MLCC search back-up and archived e-mails for the past seven years is not reasonable.

In responding to the plaintiff's First Request for Production, MLCC responded in good faith to the plaintiff's requests for e-mails pertaining to her. McEnerney Aff. at ¶3. Specifically, MLCC identified those employees at the Company who had involvement with respect to the plaintiff and/or her various applications. Id. MLCC then requested the production of all relevant documents in the possession of these individuals or in the files, including e-mails and produced those documents it received to the plaintiff in the course of discovery. Id.

Due to the burdensomeness of the task, MLCC did not check its back-up files and archives for e-mails referring or relating to "Miller" over the last seven years. MLCC has approximately 4680 files that refer or relate to the name "Miller" and cannot reasonably be expected to cull through all of the e-mails from all senders that these files would generate. McEnerney Aff. at ¶4. Moreover, Defendant is not aware of any

manner by which MLCC can determine which of these e-mails refer or relate specifically to Julie Miller without reviewing each and every e-mail. Id. The time and effort for such a review would be immense and would not necessarily yield additional pertinent documents (as many of the e-mails will only refer generically to a "Miller" loan or application). Id. Furthermore, dozens of relevant e-mails that were in the possession of employees known to have relevant e-mails have been produced, and the loan files, containing additional relevant e-mails, were also produced. Id.

Moreover, it is unduly burdensome for the plaintiff to demand that MLCC search its back-up and archived computer files. As noted by the court in Cognex Corporation v. Electro Scientific Industries, Inc., "...the case law does not establish a general duty to search back-up tapes." See Cognex Corporation v. Electro Scientific Industries, Inc., 2002 WL 32309413 at *5 (D. Mass. July 2, 2002.) (citing McPeek v. Ashcroft, 202 F.R.D. 31, 33 (D.D.C. 2001)). Similarly, this burden should not be imposed on MLCC.

     b.    The plaintiff's requests are not reasonably likely to lead to the discovery of admissible evidence.

In her complaint, the plaintiff alleges counts of conversion, fraudulent non-disclosure, recklessness, violations of CUTPA, negligence, and respondeat superior. None of these claims are contingent upon the extent to which MLCC complied with its own guidelines. They do not determine any duty owed by MLCC to the plaintiff or establish a standard of care that will determine liability in this case.

The Second Circuit supports Defendant's position.  In <u>De Kwiatkowski v.</u>

<u>Bear, Sterns & Co.</u>, 306 F.3d 1293 (2d Cir. 2002),  the appeals court reversed the trial

court's reliance on internal standards, stating:

> As a policy matter, <u>it makes no sense to discourage the adoption of higher</u>
> <u>standards than the law requires by treating them as predicates for liability</u>.
> Courts therefore have sensibly declined to infer legal duties from internal
> "house rules" or industry norms that advocate greater vigilance than
> otherwise required by law.  (citing cases.)

<u>De Kwiatkowski</u>, 306 F.3d at 1311 (emphasis added) (citing <u>Farmland Indus. v. Frazier-</u>

<u>Parrott Commodities, Inc.</u>, 871 F.2d1 402, 1407 (8th Cir. 1989).

Plaintiff argues that the guidelines were produced in <u>Kwiatkowski</u>, which

to her, indicates that they should also be produced here.  Plaintiff misses the point.  The

Second Circuit's admonition establishes that such production is improper, should not

have occurred in that case, and should not be used as a predicate for liability here.  Any

other reading of <u>Kwiatkowski</u> is completely strained.

Moreover, Plaintiff cites numerous negligent auditing cases where courts

order the production of internal guidelines to ensure that specific auditing standards,

which are clearly established in that industry, are encompassed by the auditor's

guidelines.  Opp. at 5.  Plaintiff has offered no evidence that any similar set of guidelines

apply to the case at bar.  In fact, Plaintiff's loan expert, Mr. Homberger, relies on Fannie

Mae's guidelines, which he admits apply to loans under $337,000.  Ex. D to Friedman

Aff. at 39, lines 3-6.

MLCC's position is further supported by the case law cited by the plaintiff

in her motion: "The question of unconscionability is a matter of law to be decided by the

court based on all facts and circumstances of the case...As applied to real estate mortgages, the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code..." See Family Financial Services, Inc. v. Spencer, 41 Conn. App. 754, 763 (1996); see also Monetary Funding Group, Inc., v. Pluchino, 2003 Conn. Super. LEXIS 2442 at *16 (Conn. Super. September 3, 2003) (noting that the basic test for unconscionability 'is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract'). Based on the foregoing, the Manuals are simply not relevant to this litigation. To the extent the plaintiff seeks a checklist of compliance requirements for the underwriting of a loan, or to predicate liability based on them, this request is improper.

    Plaintiff asserts that "the degree to which MLCC employees followed, or disregarded its pertinent manuals and guidelines is highly relevant to the questions whether MLCC acted so as to defraud and/or deceive Ms. Miller or knowingly approved a loan transaction that would inevitably result in default." Opp. at 6. This bold assertion of relevance is unfounded. See Security Pac. Nat. Bank v. Robertson, No. CV 920124622S, 1997 WL 561235, at *3 (Aug. 28, 1997 Conn. Super.) ("Research has not revealed any law supporting the proposition that a lender has any duty to investigate the financial stability of a borrower . . . and independent research has not revealed any authority to support the proposition that a lender has a duty to a borrower to inquire into the ability to repay a loan."); Great County Bank v. Kiely, No. CV 94 047460S, 1995 WL

625917, at *3 (Jan. 19, 1995 Conn. Super.) ("no court has recognized a duty to inquire into a borrower's ability to repay, even if the lender was a commercial bank.").

Moreover, Plaintiff's assertion makes clear that Plaintiff is seeking to tie MLCC's potential liability to its Manuals, which <u>Kwiatkowski</u> soundly rejects. Whether MLCC followed or deviated from its Manuals is not relevant to any underwriter's actual state of mind, and Plaintiff has had five depositions of MLCC employees and former employees to ascertain the underwriters' actual states of mind.

At this stage, it seems that the plaintiff inappropriately seeks to hinge MLCC's liability on whether or not MLCC's underwriters complied with any particular Manual. The Second Circuit has made clear that courts should not discourage the adoption of higher standards than the law requires by treating them as predicates for liability – it would run contrary to this notion for the Court to order production of the Manuals at issue. Internal discretionary standards simply are not relevant to MLCC's "state of mind" in underwriting the plaintiff's loan, the standard of liability to be applied in this case, or the applicability of punitive damages.

## Conclusion

The plaintiff is procedurally barred from bringing this Motion before the Court based on her failure to comply with the Federal and Local Rules and this Court's own order with respect to the deadlines for timely challenging discovery responses. With these omissions, the plaintiff has waived her right to challenge MLCC's discovery responses at this late date. Moreover, the plaintiff's request for documents is overly broad, unduly burdensome, and not reasonably likely to lead to the discovery of

admissible evidence.    At this juncture, the plaintiff merely seeks MLCC's Manuals for the purpose of attempting to establish liability based on irrelevant criteria.    Based on the foregoing, the defendant Merrill Lynch Credit Corporation respectfully requests that the Court deny the plaintiff's Motion to Compel.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By:    _Thomas P. Fried_

Douglas C. Conroy, ct11555
Thomas P. Friedman, ct24947
1055 Washington Boulevard
Stamford, CT  06901-2217
Telephone:  (203) 961-7400
Facsimile:    (203) 359-3031
Email:   douglasconroy@paulhastings.com
              thomasfriedman@paulhastings.com

BRYAN CAVE LLP

Dennis C. Fleischmann, ct11013
1290 Avenue of the Americas
New York, New York 10104

Counsel for Defendant and Counterclaimant
MERRILL LYNCH CREDIT
CORPORATION

## CERTIFICATE OF SERVICE

This is to certify that on this 26th day of April, 2004, a copy of MEMORANDUM IN SUPPORT OF OPPOSITION BY MERRILL LYNCH CREDIT CORPORATION TO PLAINTIFF'S MOTION TO COMPEL was delivered via U.S. first class mail to:

> Patrick W. Begos, Esq.
> BEGOS & HORGAN, LLP
> 327 Riverside Avenue
> Westport, CT 06880
>
> Dennis C. Fleischmann, Esq.
> Bryan Cave, LLP
> 1290 Avenue of the Americas
> New York, New York 10104

Thomas P. Friedman