UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,                :
                                            :   Case No. 3:03CV1016 (RNC) (DFM)
            Plaintiff,                      :
                                            :   April 30, 2004
      – against –                           :
                                            :
MERRILL LYNCH CREDIT CORPORATION,          :
                                            :
            Defendant.                      :
---------------------------------------------------------------x

### PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL

Plaintiff, Julie Dillon Ripley Miller, by her attorneys, Begos & Horgan, LLP, submits this reply brief in further support of her motion to compel defendant, Merrill Lynch Credit Corporation ("MLCC") to produce documents responsive to Ms. Miller's Second Request for Production of Documents ("Second Request") and Third Request for Production of Documents "(Third Request").

### PRELIMINARY STATEMENT

The discovery requests at issue in this motion are quite ordinary and unremarkable follow-up requests in a commercial litigation. As discussed in more detail in our moving papers, the requests seek: (i) copies of discrete manuals that MLCC witnesses have stated either governed, or set forth procedures followed, in connection with the loan in dispute; and (ii) copies of emails concerning Ms. Miller that MLCC should previously have produced, but apparently never searched for.

MLCC's opposition attempts to put form over substance. For example, MLCC argues that an exchange of correspondence attempting to resolve the discovery disputes cannot constitute the "conference" required by Local Civil Rule 37(2). Clearly, an exchange of correspondence can be as good, if not better than, a telephone conversation, and, significantly, MLCC does not claim that a telephone conversation would have accomplished anything that the correspondence did not. MLCC

should not be permitted to transform rules intended to minimize and resolve discovery disputes into safe harbors for violating discovery obligations (*see* Point I, *infra*).

Once past the procedural roadblocks MLCC attempts to erect, MLCC has established no valid reason to avoid complying with the Requests (*see* Point II, *infra*).

## ARGUMENT

### I. NO LOCAL RULE OR ORDER BARS THE RELIEF SOUGHT

MLCC's argument that Local Civil Rule 37 bars this motion is specious. MLCC does not dispute that, within days after MLCC served its response (Begos Dec. Ex. C), Ms. Miller's counsel wrote a detailed letter "in an effort to resolve the discovery disputes raised in MLCC's Responses and Objections to Plaintiff's Second and Third Requests for Production of Documents" (*id.*, Ex. D, p. 1). After addressing each objection, and asserting that none were legitimate, this letter concluded: "If you disagree [with the previous analysis] please let me know so that we can discuss it, and attempt to avoid motion practice. As we are both anxious to complete discovery, I ask that you respond as promptly as possible." (*Id.*, p. 3).

Nor does MLCC dispute that, rather than calling to discuss the letter or the Requests, MLCC's counsel chose to respond by letter (*id.*, Ex. E), to which Ms. Miller's counsel responded in kind that same day (*id.*, Ex. F). Eight days later, MLCC had not responded to that letter, so, in an email to MLCC's counsel about various discovery issues, the undersigned stated: "I expect to be making a motion to compel shortly. If you are going to respond to my most recent letter on the disputes, I ask that you please do so promptly." MLCC's counsel, Thomas Friedman, emailed back later that day to say: "We will not be responding to your most recent letter." (Copies of these emails are annexed to the Begos Reply Declaration).

2

Despite this detailed written discussion regarding the disputes, and MLCC's decision to end that discussion, MLCC now claims: "Certainly, a formal Rule 37 conferral ... would have assisted in narrowing the issues before the Court." (MLCC Br. at 3). Significantly, MLCC's counsel does not make that statement in his affidavit; instead, he states only that a conference did not occur (Friedman Aff., ¶ 3). It is clear that MLCC had no interest in resolving or further narrowing the disputes before this motion was made, and is raising this opposition in a cynical effort to avoid its own obligations.

In *Reidy v. Runyon*, 169 F.R.D. 486, 490-491 (E.D.N.Y. 1997), the court rejected a similar assertion by a recalcitrant party, holding that the "premotion conference requirement does not always constitute a condition precedent to consideration of the merits of a discovery motion." Significantly, the court stated that a failure to conduct any communications at all "will not operate as a bar to hearing merits of that motion where the goal, namely a compromise between the parties, is unlikely to be met." *Id. See also Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 645 (E.D.N.Y. 1997) ("denying Plaintiff's application for failing to confer in good faith would be an exercise in futility, given the contentious nature of this litigation.").

In any event, MLCC cites no authority for the notion that an exchange of detailed correspondence aimed at resolving discovery disputes does not comply with Rule 37. In contrast, *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. at 644-645, found that "an initial round of correspondence" satisfied the Eastern District's local rule, "which provides in pertinent part that 'prior to seeking judicial resolution of a discovery . . . dispute, the attorneys for the affected parties . . . shall attempt to ***confer in good faith in person or by telephone in an effort to resolve the dispute***. [emphasis supplied]'"

Distinguishing between letters and a telephone conversation is especially inappropriate when both parties freely engaged in a written dialogue regarding the discovery disputes at issue, with neither party suggesting that an oral conversation would be advisable. Under these circumstances – *i.e.* when both parties choose to express their views and proposals in writing – there is no reason to interpret the rule to differentiate between a written or oral "conference" or discussion." Indeed, as an oral discussion is always subject to misinterpretation, we submit that a detailed discussion of discovery disputes through correspondence is better than, say, a telephone conference. Moreover, conducting the good faith discussion in written format has the advantage of creating a record to inform the Court precisely what was discussed.[1]

In a second procedural hurdle MLCC attempts to erect, it claims that its response to Ms. Miller's First Request precludes Ms. Miller from seeking production of emails through the Second Request. This assertion has already been addressed in Ms. Miller's moving papers (*see* Miller Br. at 8-10). It appears that MLCC is taking the position that, despite its response to Ms. Miller's First Request – in which MLCC stated, after asserting various boilerplate objections, that it "will produce responsive documents" (MLCC Br. at 5) – and despite the fact that MLCC never advised Ms. Miller that it was specifically declining to search archives for emails, Ms. Miller is precluded from now seeking to compel a complete search for emails.

Accepting MLCC's proffered interpretation of the Court's August 4, 2003 Order would change discovery from a process intended to allow the parties to prepare for trial, narrow issues, and avoid unfair surprise, into an exercise in obfuscation in which sharp practice is rewarded. As Ms. Miller

---

[1] With more and more business being done, and communications being transmitted, through email, interpreting Rule 37 to require an oral exchange would stand in the way of efficient resolution of discovery disputes.

previously demonstrated (Miller Br. at 9), MLCC's interpretation of the Order is unsupportable. Moreover, MLCC should not be rewarded for hiding the fact that it was declining to search a specific repository of responsive documents.[2]

Additionally, MLCC's present assertions about having previously conducted a "good faith" search are suspect. MLCC puts forth Donald McEnerney to testify about the alleged search (McEnerney Aff., ¶¶ 3-4). However, Mr. McEnerney recently testified that he did *not* know the scope of the search that had been performed (Miller Br. at 9).

Finally, MLCC claims that it is only taking the same position Ms. Miller took in refusing to re-produce documents (MLCC Br. at 6). This is untrue. Ms. Miller is seeking to compel production of documents that MLCC admits it did *not* produce – MLCC did not even search for them. The example MLCC uses was Ms. Miller's response to MLCC's request that Ms. Miller re-produce previously produced brokerage statements in the manner that "she kept them," rather than "as organized for a production that was completed months ago (Friedman Aff., Ex. C, p. 3). The two situations are not comparable at all.

## II. THE REQUESTS ARE NOT OVER-BROAD OR OTHERWISE OBJECTIONABLE

MLCC claims that the requests for its manuals and guidelines (Second Request, Nos. 1 and 2; Third Request No. 1) are overbroad, but it does not dispute its own employees' testimony that the manuals are discrete documents and/or computer files (Miller Br. at 3). MLCC does not dispute its underwriter's testimony that he expressly relied on the underwriting manual in underwriting the loan, or the testimony of another ex-employee that the power of attorney guidelines set forth standards and

---

[2] It is deeply ironic that MLCC contends that this motion is precluded by a local rule intended to minimize discovery motion practice, while at the same time arguing that the motion is precluded by virtue of an interpretation of Court's prior order that would greatly expand discovery motion practice.

procedures pertaining to the use of powers of attorney (*id.* at 3-4). Nor does MLCC dispute that its underwriting of the loan, or reliance on the power or attorney, are key issues in this litigation.

MLCC does not cite a single case in which a court refused to order production of operations or procedures manuals in similar circumstances. Nor does MLCC effectively distinguish the numerous cases cited by Ms. Miller in which production of such manuals was ordered (*id.* at 5-6). The best argument MLCC can muster is an unsupported assertion that all the manuals in all those cases were produced "to ensure that specific auditing standards, which are clearly established in that industry, are encompassed by the auditor's guidelines." (MLCC Br. at 11). MLCC does not claim to find any such statement in any of the cases, and it ignores the fact that this statement would not apply to the banking and police department manuals that were at issue in two of the cases (Miller Br. at 5).

Most of MLCC's argument on this point is limited to an assertion that its liability will not ultimately turn on the contents of these manuals or whether MLCC followed them (MLCC Br. at 11-13). But even if that assertion were true (and it is not), MLCC cites no case holding that this would be a sufficient ground to avoid production. Nor does MLCC attempt to distinguish cases like *Fields v. Oliver's Stores, Inc.*, 1990 U.S. Dist. Lexis 2271, at 2-3 (S.D.N.Y. Mar. 2, 1990), which observed: "Even if Touche's internal procedures for auditing prove irrelevant to the proof at trial, understanding them could be vital to conducting meaningful depositions and might aid in learning whether or not Touche's auditors acted with scienter by conducting the audits in an irregular way[.]" (*See* Miller Br. at 5).

Finally, MLCC claims that the manuals are proprietary, yet does not explain how a confidentiality order, which Ms. Miller proposed months ago, would not prevent undue disclosure

With regard to the emails, MLCC claims that production would be unduly burdensome. First, the evidence of burden is suspect, because Mr. McEnerney, who provides that "evidence," previously testified that he did not even know if MLCC maintained copies of emails dating back to 1999 or earlier (Begos Moving Dec., Ex. H, p. 93). Moreover, any claim of burden must be put in context. MLCC is seeking to collect more than $8 million from Ms. Miller, and MLCC has asserted that it already paid its lawyers the staggering sum of $766,000, which it seeks to pass on to Ms. Miller (McEnerney Affidavit in Support of Motion for Attachment, sworn to March 18, 2004, ¶ 3; Doc No. 70). Even legal fees of that amount is not burdensome to MLCC, because it hired a second firm, almost as large as the first, to act as co-counsel. A search through email archives cannot be unduly burdensome to MLCC under the circumstances, especially where MLCC seeks to pass its costs and expenses on to Ms. Miller if it is successful.

If Mr. McEnerney's statement about the scope of the search MLCC has previously conducted can be believed, then a search of MLCC's archives for emails is critical. Mr. McEnerney states that MLCC searched documents in the possession of "employees at the Company who had involvement with respect to the plaintiff" (McEnerney Aff., ¶ 3). As MLCC knows however, the key people "who had involvement with respect to the plaintiff" in 1999 – *e.g.*, Harvey Rosenblum, Andrew Jones, Robert Smith, Michael Johnston and Jay Falini – are no longer employees of MLCC or any of its affiliates.

## CONCLUSION

For the reasons set forth in Ms. Miller's moving papers, and above, the motion should be granted.

BEGOS & HORGAN, LLP

By: _____
Patrick W. Begos (ct19090)
Attorneys for Plaintiff
327 Riverside Avenue
Westport, CT 06880
(203) 226-9990
(203) 222-4833 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on April 30, 2004 to:

Thomas P. Friedman, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

_____
Patrick W. Begos