UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

------------------------------------------------------------------ x
JULIE DILLON RIPLEY MILLER,    :
                               :   Case No. 3:03CV1016 (RNC) (DFM)
        Plaintiff,             :
                               :
    – against –                :   May 20, 2005
                               :
MERRILL LYNCH CREDIT CORPORATION :
                               :
        Defendant.             :
------------------------------------------------------------------ x

## LOCAL RULE 56(a)1 STATEMENT

Plaintiff, Julie Dillon Ripley Miller, submits this Statement in compliance with Local Civil Rule 56 and in support of her motion for summary judgment.

1.      Jay Falini ("Falini") was plaintiff's stockbroker at Merrill Lynch Pierce Fenner & Smith ("MLPFS"). (Falini Deposition [hereinafter "Ex. A"] 6-7, 15).

2.      In 1999, Falini was involved in arranging a loan ("Loan") for plaintiff from defendant, Merrill Lynch Credit Corporation ("MLCC"). (Ex. A 71).

3.      The Loan was for $7.5 million to be evidenced by a promissory note ("Note") (Ex. B) and secured by a mortgage on plaintiff's property at 21 Point Road, Norwalk, Connecticut ("Mortgage") (Ex. C) in addition to a pledge ("Pledge") of plaintiff's marketable securities in a certain value to be held by MLPFS for the benefit of MLCC ("Pledge Account") (Ex. D).

4.      The Pledge was to be effected and governed by a written pledge agreement between plaintiff and MLCC ("Pledge Agreement"). (Ex. D).

5.      MLCC required the Pledge Agreement to be signed prior to closing the Loan. (Ex. E MLCC 408).

6.  MLCC required the Pledge Account to be "opened and the securities delivered at least seven (7) business days prior to [the] mortgage closing." (Ex. E MLCC 408; Ex. A 192-93).

7.  The Loan closed on December 7, 1999. (Huben Deposition [hereinafter "Ex. F"] 31).

8.  Plaintiff was out of the country on December 7, 1999, having left for Africa on December 2, 1999. (Ex. F 31-32; Miller Deposition [hereinafter "Ex. G"] 274).

9.  Plaintiff did not sign the Pledge Agreement, and the Pledge Account was not funded prior to plaintiff's departure for Africa on December 2, 1999. (Ex. D; Ex. A 236-37, 199-201).

10. There was no reason that plaintiff could not have signed the Pledge Agreement prior to her departure for Africa on December 2, 1999. (Ex. A 236-37).

11. Plaintiff executed a document purporting to be a Connecticut Statutory Short Form Power of Attorney on December 2, 1999 ("POA"). (Ex. H).

12. The POA as originally executed by plaintiff was witnessed and acknowledged. (Exs. H-I; Ex. A 246-47).

13. The POA as originally executed by plaintiff did not include the name and address of an attorney-in-fact. (Ex. H).

14. The POA as originally executed by plaintiff included the plaintiff's initials in the boxes opposite the powers identified as "(A) real estate transactions" and "(D) banking transactions" and immediately after the text of "banking transactions." (Ex. H).

15. The POA as originally executed by plaintiff included lines through the letters designating powers "(B) chattel and goods transactions;" "(C) bond, share and commodity transactions;" "(E) business operating transactions;" "(F) insurance transactions;" "(G) estate transactions;" "(H) claims and litigation;" "(I) personal relationships and affairs;" "(J) benefits from

2

military service;" "(K) records, reports and statements;" and "(L) health care decisions." (Ex. H).

16. On December 2, 1999, Falini obtained a copy of the POA as originally executed by plaintiff. (Ex. A 246).

17. Harvey Rosenblum ("Rosenblum") was the MLCC, loan officer responsible for reviewing the POA prior to the closing of the Loan. (Rosenblum Deposition [hereinafter "Ex. J"] 8-9, 16).

18. Rosenblum rejected the POA as originally executed by plaintiff as not authorizing "the power of attorney" to "sign all the documents required by this loan process" because the "box for real estate transactions had been X'd out." (Ex. J 16)

19. Rosenblum informed Falini that MLCC "needed a ... power of attorney with that box not X'd out if we wanted to proceed with a power of attorney." (Ex. J 16-17)

20. On December 2, 1999 Falini sent a copy of the POA as originally executed by plaintiff to MLCC's closing agent for the Loan, Kevin Huben ("Huben"). (Ex. A. 246-247; Ex. F 10-11).

21. Huben is an attorney licensed to practice in Connecticut. (Ex. F at 5).

22. On December 2, 1999, Huben informed Falini "that the Power of Attorney had been completed incorrectly." (Ex. F 247).

23. Huben "mentioned [to Falini] that [the POA as originally executed by plaintiff] was initialed where it should not have been initialed and not initialed where it should have been initialed." (Ex. A 248).

24. Huben did not tell Falini that a line should be drawn through the text of the powers that were not initialed but should have been. (Ex. A 275).

25. Huben told Falini that "a Power of Attorney executed the correct way would be needed." (Ex. A 248).

26. Huben also said that the POA as originally executed by plaintiff does not specify the holder of the power and described that as a deficiency. (Ex. A 275-76).

27. Huben said that to correct the deficiency, "the person would need to be indicated on the form, on the Power of Attorney, as to who it was." (Ex. A 276).

28. After speaking with Huben, Falini called MLCC and spoke with a MLCC loan officer named Christine Dounda ("Dounda"). (Ex. A 249).

29. "[Falini] informed [Dounda] that [he] just received an incorrectly executed Power of Attorney from Julie Miller, and that [he] had faxed it to the closing agent and the closing agent informed [him] that it was not correct for the closing." (Ex. A 250).

30. Dounda told Falini to "go ahead and make the changes, and we will have Julie execute a new Power of Attorney when she comes back." (Ex. A 250, 257-58).

31. Dounda told Falini "to initial where it should have been initialed and remove the initialing where it was initialed." (Ex. A 250).

32. Falini changed the copy of the POA he had by "initial[ing] where [plaintiff] should have initialed and whit[ing]-out the two locations where she . . . had initialed." (Ex. A 251; Ex. K).

33. More specifically, Falini inserted plaintiff's initials in the brackets opposite powers B, C, E, F, G, H, I, J, K and L, and whited-out where plaintiff had initialed (i.e. the brackets opposite powers A and D). (Ex. A 285-86; Ex. K).

34. Falini also wrote "Barry Newman" in the space on the POA for providing the name and address of the attorney-in-fact. (Ex. A 282; Ex. K).

35. Falini faxed the altered POA to Huben who said that the altered POA was acceptable for the closing. (Ex. A 252)

36. Rosenblum received another fax of a power of attorney "that was different [from the faxed power of attorney that he first received] in the respect that the real estate box was not X'd out." (Ex. J 17).

37. Rosenblum was satisfied that the second faxed power of attorney was sufficient to allow the closing to go forward. (Ex. J 18).

38. On December 7, 1999, Barry Newman, purportedly acting as plaintiff's attorney-in-fact pursuant to a power of attorney, signed the Note, Mortgage and Pledge Agreement. (Exs. B, C, D).

39. Plaintiff never told Barry Newman that he was authorized to sign the documents he signed on December 7, 1999. (Newman Deposition [hereinafter "Ex. L"] 137-38).

40. Barry Newman asked to see the POA at the December 7, 1999 closing and Falini told him that it would be sent to him shortly after the closing because it was being "processed." (Ex. L 137-38)

41. MLCC had the original POA on December 7, 1999, but it was not at the closing. (Ex. A 262-63).

42. MLCC never asked Falini to confirm that plaintiff either changed the power of attorney or authorized changes to the power of attorney. (Ex. A 263-65).

43. The original power of attorney was recorded in the Norwalk Land Records on December 20, 1999.

44. The original power of attorney bears the notation "Recorded as Received." (Ex. M).

45. The original power of attorney includes "Barry Newman" in the space for identifying the name and address of the attorney-in-fact, white-outs in the brackets opposite power "(A) real estate transactions" and power "(D) banking transactions" and plaintiff's initials in the boxes opposite powers B, C, E, F, G, H, I, J, K and L ("Altered POA"). (Ex. M).

46. Plaintiff did not put any white out on the original power of attorney. (Ex. G 299-300).

47. Plaintiff never "acknowledged" the Altered POA to be her free act and deed before an official authorized to take acknowledgments or anyone else. (Ex. N).

Dated: Westport, Connecticut
       May 20, 2005

                                   BEGOS & HORGAN, LLP

                                   By: _____
                                       Christopher G. Brown (ct18216)
                                       Patrick W. Begos (ct19090)
Attorneys for Plaintiff
327 Riverside Avenue
Westport, CT 06880
(203) 226-9990
(203) 222-4833 (fax)

## CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on May 20, 2005 to:

Douglas C. Conroy, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

Jonathan S. Bowman, Esq.
Cohen & Wolf
1115 Broad Street
Bridgeport, CT 06604

                                                                           */s/ Christopher G. Brown*
                                                                          Christopher G. Brown