UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

------------------------------------------------------------------ x
JULIE DILLON RIPLEY MILLER,                :
                                           :  Case No. 3:03CV1016 (RNC) (DFM)
                Plaintiff,                 :
                                           :
            – against –                    :  June 24, 2005
                                           :
MERRILL LYNCH CREDIT CORPORATION           :
                                           :
                Defendant.                 :
------------------------------------------------------------------ x

**AFFIDAVIT OF JULIE DILLON RIPLEY MILLER**

STATE OF CONNECTICUT)
                    )
COUNTY OF FAIRFIELD )

Julie Dillon Ripley Miller, being duly sworn, deposes and says:

1. I am the plaintiff in this action and have personal knowledge of the matters set forth herein. I submit this affidavit in opposition to defendant's motion for summary judgment. Though I provided much of this testimony in my deposition, I collect and reiterate it here for the convenience of the Court.

2. I worked as a nurse practitioner off and on from 1978 through 1986, when I stopped working to be a full-time mother and to do volunteer work. My husband owns a bait shop. From 1989 until we moved into the house at 21 Point Road at issue in this action, we lived in a house in Norwalk that we bought for approximately $325,000.

3. In 1996, when I was forty-five years old, my mother died. I had few investments at the time but, as a result of my mother's death, I inherited various assets and trust interests, including stocks with a value of between $7 million and $10 million.

4.  The stocks I inherited had been in my family for a very long time and I knew that I had a low cost basis in them. I had heard all of my life from my mother, my father and my grandmother that I should never sell any family stock because of the capital gains tax. For this reason, during my relationship with Jay Falini at Merrill Lynch, which began in or about the summer of 1997, I did not take his advice to diversify, nor did I give his recommendations any real consideration. As I made clear to Mr. Falini from the outset of our relationship, I was not going to do anything that involved selling my stock.

5.  In 1997, I bought my house at 21 Point Road in Norwalk for approximately $1.35 million. At Mr. Falini's urging, I financed the purchase with a loan from MLCC, which required me to withdraw my stocks from Paine Webber and deposit them into an account with Mr. Falini at Merrill Lynch.

6.  I began renovating my house in 1997 and the renovations continued into 1999. I trusted Mr. Falini completely. I even asked him to be the godfather of my twins. When he suggested that I take a construction loan from MLCC to finish the renovations, I trusted that what he recommended was in my best interests and would not conflict with my insistence that my stock not be sold.

7.  I learned much later that Mr. Falini disregarded my instructions and arranged for a construction loan that put my stocks at risk. Neither Mr. Falini, nor anyone at MLCC, told me before I left for Africa (on or about December 2, 1999), that the construction loan required me to pledge my stocks; they certainly did not tell me that a pledge of more than $5 million would be required. Moreover, neither Mr. Falini, nor anyone at MLCC, told me that I did not have enough income to make the payments on the construction loan. If anyone had told me that I would have to sell some or all of my stock to repay the loan, I would have refused to continue with the loan.

8. During this litigation, I learned that Mr. Falini arranged to keep me in the dark about the details of the construction loan and that MLCC went along with him. I understand that MLCC is claiming that, before the loan closed, I requested that MLCC communicate exclusively with Mr. Falini, and not directly with me, about the construction loan. I did no such thing. I never told anyone that MLCC should not communicate with me. I certainly never requested, saw or approved the note that Mr. Falini submitted to MLCC with the construction loan application forbidding MLCC from calling me directly.

9. I did not see the November 17, 1999 "approval" letter that MLCC is claiming it sent to me to disclose the pledge requirement and other loan details at any time before the loan allegedly closed in December 1999.

10. Further depriving me of the opportunity to learn the details of the loan, Mr. Falini and MLCC arranged for it to close while I was out of the country. As I told Mr. Falini well in advance, I was going to be in Africa for most of December in 1999. Nonetheless, Mr. Falini told me that the construction loan had to close before the end of December, even if I was away, because MLCC wanted to close the loan before the end of the year holidays.

11. Mr. Falini told me that the loan could be closed in my absence if I gave power of attorney to someone. He told me that I did not need to have an attorney present at the closing and suggested that I instead give the power to the accountant to whom he referred me, Barry Newman. The power of attorney that I signed was changed substantially, by Mr. Falini and/or others, after I signed it and gave it to Mr. Falini.

12. It was not until long after my return, and only in response to my inquiry as to why one of my accounts was being shown as "for the benefit of" MLCC, that Mr. Falini advised me that my

3

stocks had been pledged to MLCC. I did not learn until long after that disclosure that MLCC claimed the right to sell my stocks to repay the construction loan.

_____
Julie Dillon Ripley Miller

Sworn to before me this
24th day of June, 2005

_____
Commissioner of the Superior Court

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served via Federal Express overnight delivery, on June 24, 2005 on:

Douglas C. Conroy, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

Jonathan S. Bowman, Esq.
Cohen & Wolf
1115 Broad Street
Bridgeport, CT 06604

_____
Patrick W. Begos