UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
HARTFORD

------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,           :
                                      :   Case No. 3:03CV1016 (RNC) (DFM)
      Plaintiff,                      :
                                      :
    – against –                       :   August 1, 2005
                                      :
MERRILL LYNCH CREDIT CORPORATION,     :
                                      :
      Defendant.                      :
------------------------------------------------------------x

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT
OF HER MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

MLCC does not dispute that it has the burden of proving that Newman was authorized to bind plaintiff to the transaction (*cf.* Pl. Opening Br. 8 with MLCC Opp. Br. *passim*); the POA, as signed by plaintiff before two witnesses and acknowledged to be her free act and deed, did not grant an attorney-in-fact authority to bind plaintiff to the transaction (*cf.* Pl. Opening Br. 10-12 with MLCC Opp. Br. 12-15); on instructions from MLCC, Falini altered the POA to grant Newman different authority *after* plaintiff signed and acknowledged the POA (*cf.* Pl. Opening Br. 11-12 with MLCC Opp. Br. 15-16); plaintiff neither re-signed nor re-acknowledged the POA after it was altered (*cf.* Plaintiff's Opening Br. 8-11 with MLCC Opp. Br. 12-18); the absence of re-execution and re-acknowledgment rendered the Altered POA void on its face (*cf.* Pl. Opening Br. 8-11 with MLCC Opp. Br. 12-18); and the Altered POA withheld authority to pledge plaintiff's securities (*cf.* Pl. Opening Br. 14-15 with MLCC Opp. Br. 18-20).

In short, MLCC concedes, as it must, that neither the POA as executed by plaintiff, nor the Altered POA, authorized Newman to bind plaintiff to the transaction. MLCC's arguments that

plaintiff's intent overcomes statutory invalidity, plaintiff waived her defenses and plaintiff ratified the transaction are not supported by the law or the facts. Consequently, summary judgment for plaintiff is appropriate.[1]

## ARGUMENT

### I. THE CIRCUMSTANCES ATTENDING THE "POWER OF ATTORNEY" DEMONSTRATE ITS INVALIDITY

MLCC's argument, at pages 12-18 of its brief, that, even if the POA is invalid, plaintiff authorized Newman to sign all of the loan documents because that is what plaintiff intended, misstates the law and proceeds from false assumptions.

#### A. Plaintiff's Intent Does Not Validate the Invalid Altered POA

"The legal effect of a power of attorney cannot be altered by proof of what one or both parties understood the legal effect to be." *Long v. Schull,* 184 Conn. 252, 257 (1981). In *DiBlasi v. DiBlasi,* 114 Conn. 539 (1932) an attorney-in-fact purported to transfer the principal's property after the principal died, automatically revoking the power of attorney. *Id.* The attorney-in-fact claimed the transfer was authorized despite the invalid power of attorney because that is what the principal intended. *Id.* The Court rejected the argument: "The allegation . . . as to the understanding of the parties of the legal effect of the power of attorney was the allegation of an immaterial fact, since the

---

[1] MLCC complained in its brief that it did not understand which causes of action as to which plaintiff was seeking summary judgment, or the elements of those causes of action. (MLCC Opp. Br. 3). So that there can be no doubt, plaintiff seeks summary judgment as to MLCC's liability on Count I - Conversion, together with any of the other counts of the Second Amended Complaint as to which the Court believes summary judgment is appropriate. "Conversion is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." *Label Systems Corp. v. Aghamohammadi,* 270 Conn. 291, 329 (2004). Newman was unauthorized to enter into the Pledge Agreement, so MLCC's seizure and liquidation of plaintiff's securities was unauthorized. MLCC is therefore liable for conversion of plaintiff's securities.

legal effect of the instrument cannot be altered by proof of what the parties understood that legal effect to be." *Id.*

In addition, it is undisputed that the power of attorney at issue purports to be a Connecticut Statutory Short Form Power of Attorney. The legislature prescribed the formalities attending the execution of a valid statutory short form power of attorney to protect against improprieties that inevitably would result if an invalid power of attorney could be made valid by parol evidence of intent. As the Connecticut Supreme Court long ago observed with respect to the statutory formalities prescribed for the execution of a deed:

> *We shall find very satisfactory reasons for insisting upon a strict compliance with [the statute's] provisions. They were all designed to protect the parties and third persons, from the consequences of fraud, perjury and imposition.* Parol alienations were prohibited, to prevent titles to real estate from being dependent upon the frail memory of witnesses. The instrument of conveyance was to be subscribed by the grantor, that it might afford evidence that it was his act. It was to be under his own hand, that it might furnish the best evidence that it was executed by him. As however it might happen that he could not write, he was permitted to affix his mark to it. *It was to be attested by witnesses, for the further security of the parties and all others, from fraud and imposition. It was to be acknowledged, to guard the grantor against fraud and duress. A more perfect system could not probably have been devised, to prevent frauds, to give stability to our titles to real estate, and to perpetuate the evidence by which they are supported.*

*Linsley v. Brown*, 13 Conn. 192 (1839) (emphasis added).

The Connecticut Short Form Power of Attorney Act requires powers of attorney to be signed and acknowledged. C.G.S. § 1-43(a). Because plaintiff never signed or acknowledged the Altered POA in compliance with C.G.S. § 1-43(a), it is invalid for all purposes regardless of plaintiff's intent. *Connecticut National Bank v. Lorenzato*, 221 Conn. 77, 82 (1992) (imperfectly executed mortgage deed is a nullity); *Matter of Kolodij's Estate*, 85 Misc. 2d 946, 950, 380 N.Y.S.2d 610, 614 (N.Y. Surr. 1976) ("the acknowledgment is invalid, and so, therefore, is the power of attorney as not

3

being in compliance with the requirements of EPTL, § 13-2.3"); *In re Geiger's Will*, 145 N.Y.S. 2d 697, 698-99 (N.Y. Surr. 1955) (power of attorney not acknowledged in accordance with New York law was of "no effect"); *see Adams v. Valley Nat'l Bank of Arizona*, 139 Ariz. 340, 341, 678 P. 2d 525, 526 (1984) (unacknowledged statutory power of attorney is void if statute requires acknowledgment); *North American Uranium, Inc. v. Johnston*, 77 Wyo. 332, 343, 316 P.2d 325, 328 (1957) ("For the agent to convey and interest in real property and have the conveyance recorded, he must have a power of attorney duly acknowledged"); *Krysiak v. Egan*, 243 Ill. App. 310, 1927 WL 4015, *2-3 (Ill. App. 1 Dist. 1957) (statutory provision that power of attorney shall be acknowledged is mandatory); *Council of Unit Owners of Pilot Point Condominium v. Realty Growth Investors*, 436 A.2d 1268, 1275 (Del. Chanc. 1981) (power of attorney that did not comply with statute concerning acknowledgment invalid to convey real estate interest despite attendant circumstances); *Herron v. Harbour*, 75 Okla. 127, 182 P. 243, 245 (1919) ("the [acknowledgment] is so entirely wanting in several of the material averments prescribed by the statutory form as to render it fatally defective").

The cases upon which MLCC relies are inapposite. Neither *Connecticut Housing Finance Authority v. John Fitch Court Associates Limited Partnership*, 49 Conn. App. 142, *cert. denied* 247 Conn. 908 (1998) nor *Bank of Montreal v. Gallo*, 3 Conn. App. 268 (1985) involved the lack of effect of an instrument executed absent requisite statutory formalities.

**B.    Even if Relevant, Intent Must be Determined from the Language of the Instrument**

Even if intent could somehow make valid the invalid Altered POA, MLCC's claim that plaintiff did not intend to withhold from Newman the authority to enter the Pledge Agreement because it was just another part of the loan transaction which plaintiff intended to enter (MLCC Opp.

4

Br. 18-20) does not hold water.[2] Assuming *arguendo* that the Altered POA was valid (plaintiff does not concede that it was) there is no dispute that the Altered POA withheld from Newman the authority to engage in "bond, share and commodity transactions," which is defined to include the authority "to ... pledge ... any bond, share [or] instrument of similar character" C.G.S. § 1-46(2). It purports to grant him authority to engage in "banking transactions," which includes authority "to give security out of the assets of the principal" C.G.S. § 1-47(7); and engage in "real estate transactions," which includes authority "to mortgage . . . any estate or interest in land." C.G.S. § 1-44(2).

To the extent there is a conflict in powers withheld and granted, the Court must look to the Altered POA for reconciliation. The specific prohibition on pledging stocks prevails over the general grant of authority to provide security (Pl. Opening Br. 15-16) because "[t]he aim of interpretation [of a power of attorney] is to ascertain what a writer intended by what he said, and not either to put words into his month or to give effect to that which it may be thought that he either intended to say or would have wished to say but didn't.'" *Boucher v. Godfrey*, 119 Conn. 622, 178 A. 655, 658 (1935) (quoting *Zlulkoski v. Barker*, 94 Conn. 491, 494, 109 A. 185, 186). "The question is not what intention existed in the minds of the parties but *what intention is expressed in the language used.*" *Connecticut Housing Finance Authority v. John Fitch Court Associates Limited Partnership*, 49 Conn. App. 142, 147, *cert. denied* 247 Conn. 908 (1998) (emphasis original); *Pesino v. Atlantic Bank of NY*, 244 Conn. 85, 93 (1998) ("It is the general rule that a contract is to be

---

[2]Contrary to MLCC's claim (at page 18, footnote 8 of its brief), plaintiff's learning, after-the-fact, that the loan MLCC proposed, and ultimately closed, involved a pledge of plaintiff's securities is not plaintiff's admission that she knew on or before the closing date that the transaction included a pledge.

5

interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties").

The only reasonable interpretation of the Altered POA is that, if the document authorized Newman to do anything, it authorized him to "borrow money" under the "banking transactions" power and mortgage plaintiff's home under the "real estate transactions" power. As demonstrated in plaintiff's opening brief (at page 15), MLCC required the power of attorney *at the closing* only for execution of the note and mortgage because MLCC required the pledge to be effected *prior to the closing*. For this reason, MLCC had the power of attorney altered to eliminate "bond, share and commodity transactions" authority. (Pl. 56(a)(1) St. ¶¶ 23, 28-33; MLCC 56(a)(2) St. ¶¶ 23, 28-33).

Accordingly, it is undisputed that MLCC had the power of attorney altered to authorize Newman to enter only a mortgage transaction. (Pl. 56(a)(1) St. ¶¶ 14, 17-33; MLCC 56(a)(2) St. ¶¶ 14, 17-33). A mortgage transaction is a single transaction involving only a promissory note and mortgage. *Connecticut Housing*, 49 Conn. App. at 147; *Citicorp Mortgage, Inc. v. Porto*, 41 Conn.App. 598, 602 (1996). In rejecting a power of attorney that withheld "real estate transactions" authority[3], MLCC clearly recognized that specifically withholding authority "to mortgage" real estate, C.G.S. § 1-44(2), precluded Newman from mortgaging plaintiff's home despite any general grant of authority found in "banking transactions" to give security out of plaintiff's assets. It follows that, notwithstanding "banking transactions" authority, specifically withholding authority to pledge plaintiff's stock precluded Newman from doing so.

---

[3]MLCC's loan officer (Rosenblum) and closing agent (Huben) rejected the version of the power of attorney with plaintiff's initials in the box opposite "real estate transactions" as insufficient to permit Newman to close the loan. (Pl. 56(a)(1) St. ¶¶ 14, 17-23; MLCC 56(a)(2) St. ¶¶ 14, 17-23).

At the very least, the white-outs and facial conflict between the powers put MLCC on notice that further investigation was necessary to determine Newman's authority. *Beaucar v. Bristol Federal Savings and Loan Association*, 6 Conn.Cir.Ct. 148, 158, 268 A.2d 679 (1969); *Hollywyle Association, Inc. v. Hollister*, 164 Conn. 389, 397 (1973). MLCC has not proffered any evidence that it contacted plaintiff to determine whether Newman was authorized to pledge her stock. If it had, plaintiff would have said that he was not. (See Pl. Opp. Br. 16-18).

## II.  PLAINTIFF DID NOT WAIVE HER DEFENSES

MLCC contends, at pages 4-6 of its brief, that the Modification Agreement waived plaintiff's defenses to the transaction. In addition to the reasons set forth in plaintiff's opposition brief (at pages 31-33), plaintiff did not waive her defenses because, as MLCC concedes (MLCC Opp. Br. 4), the Modification Agreement purports to waive "defenses against enforcement of the Note and Security Instrument." (Stewart Aff. Ex. F ¶ 3). The "Note" is the $7.5 million promissory note and the "Security Instrument" is the mortgage securing it. (*Id.* p. 1). Thus, the Modification Agreement by its terms it does not waive any defenses to the Pledge Agreement.

Further, the Modification Agreement purports to waive only defenses "against *enforcement*" (*id.* ¶ 3 [emphasis added]) of the Note and Mortgage. The Modification Agreement is governed by Connecticut law. (*Id.* ¶ 7). Connecticut courts recognize that defenses against the validity of a note and/or mortgage are distinct from defenses against enforcement. *Homeamerican Credit, Inc. v. Weiss*, 2000 WL 347785, *3 (defense that loan document is a nullity goes to making or validity, not enforcement); *Town of West Hartford Association of East Hartford v. Dadi*, 2001 WL 1355540, *1 (breach of agreement allowing for late payment is defense against enforcement but not validity or making of lien); *PHH U.S. Mortgage Corporation v. Roman*, 2000 WL 233289, *2-3 (defense of

right to reinstatement goes to enforcement, not validity or making); *Fleet Mortgage v. Akavalos*, 1999 WL 353472, *4 (lender's waiver of right to acceleration is a defense against enforcement not validity or making); *Norwest Mortgage, Inc. v. Cook*, 1999 WL 355135, *3 (same); *Federal Home Loan Mortgage v. Markovich*, 1999 WL 124348 (failure of proper notice of foreclosure and doctrine of laches are defenses to enforcement of note and mortgage, not making or validity); *Fleet National Bank v. Bileca*, 1998 WL 846126, *1 (where borrower acknowledged making and validity of note and mortgage, accord and satisfaction was proper defense to enforcement); *Fleet National Bank v. Rustici*, 1998 WL 560381, *2 (defense of lender's refusal to accept payments causing default does not address making or validity of the note and mortgage but does address their enforcement); *Troj v. Lane*, 1998 WL 175947, *1 (defense of accord and satisfaction affects enforcement of note and mortgage but not its validity or making); *Webster Bank v. Eierweiss*, 1997 WL 381215, *4 (lender's failure to give proper notice of acceleration goes to enforcement of promissory note, not its making or validity).

Here, plaintiff's attacks on the Pledge Agreement, Note and Mortgage go to their validity — either they were executed pursuant to an invalid power of attorney or Newman exceeded his authority. Moreover, the events of the attacks precede the putative entry of the loan documents and as such are not within the penumbra of "enforcement." "The allegations . . . describe events which occurred prior to [alleged] entry of the parties into the mortgage contract. They have nothing to do with either performance or enforcement." *Walsh Securities, Inc. v. Daniels*, 1999 WL 1063157, *1.

Accordingly, contrary to MLCC's contention, at page 6 of its brief, the Modification Agreement did not waive defenses that the loan was unauthorized because those defenses address the making and validity of the loan, not its enforcement.

## III. PLAINTIFF DID NOT RATIFY THE TRANSACTION

MLCC contends, at pages 7-12 of its brief, that plaintiff ratified Newman's acts by her post-closing conduct. As plaintiff demonstrated in her opposition brief, plaintiff's actions subsequent to the closing do not operate as a ratification. (Pl. Opp. Br. 24-26).

Further, MLCC concedes that an element of ratification is that the ratifier accept the results of the unauthorized act with full knowledge of all the material circumstances — including knowledge that the acts claimed to have been ratified were originally unauthorized — and that the ratifier has the opportunity to undo the transaction. (MLCC Opp. Br. 7); *Updike, Kelly and Spellacy, P.C. v. Beckett*, 269 Conn. 613, 640 (2004); *Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 185 (1986).

Even if true, MLCC's allegations support plaintiff's lack of knowledge that the Altered POA was invalid and, consequently, her lack of full knowledge of the material facts. MLCC contends that plaintiff intended to authorize Newman to do everything he did (MLCC Opp. Br. 14-15); acquiesced in the alterations to the power of attorney believing that they would so authorize Newman (MLCC Opp. Br. 16-17); was aware of the pledge after the closing (MLCC Opp. Br. 8); never complained about improprieties in the loan or its related documentation (MLCC Opp. Br. 5, 8); used loan proceeds (MLCC Opp. Br. 8-9); made monthly payments on the loan (MLCC Opp. Br. 8); and acknowledged the components of the alleged loan in 2002 (MLCC Opp. Br. 9). This conduct demonstrates that plaintiff was unaware that the Altered POA was invalid and that she was not given the chance to extricate herself from the transaction without harm.[4]

---

[4] Contrary to MLCC's contention (MLCC Opp. Br. 11-12), even absent a power-of attorney, there still can be no ratification unless the principal has full knowledge and an opportunity to undo the transaction.

9

At best, plaintiff's alleged conduct is equivocal — it could be consistent with ratification or with a lack of full knowledge of the material facts. Ratification cannot be founded on equivocal conduct. "To constitute a ratification, . . . certain conditions at least are essential. The claimed conduct amounting to ratification must be unequivocal as evidencing an intent to ratify." *Turner v. American Dispatch Telegraph & Messenger Co.*, 94 Conn 707 (1920).[5] In this regard, MLCC's attempt to "impute" knowledge of the material facts to plaintiff is unavailing. The cases upon which MLCC relies impute the knowledge of an undisputed agent, acting within his authority, to the principal. *Bond Rubber Corp. v. Oates Bros., Inc.*, 136 Conn. 248, 251 (1949) ("[t]he bookkeeper [undisputed agent], as a reasonable person, could not fail to notice that the checks were not certified. Her knowledge was the knowledge of the plaintiff [principal]"); *Dichello v. Societa Libero Pensiere*, 111 Conn. 412 (1930) (knowledge of undisputed agent acting within his authority imputed to principal). Plaintiff disputes that Newman was a properly authorized agent acting within the scope of his authority. Moreover, MLCC does not offer any evidence that Newman had full knowledge of the material facts.

## CONCLUSION

For the reasons set forth above and in plaintiff's moving brief, her 56(a)(1) Statement, her opposition brief, and her 56(a)(2) Statement, plaintiff's motion for summary judgment as to MLCC's liability should be granted and the matter set down for a hearing in damages.

---

[5]MLCC implies that plaintiff should have objected when she received the Altered POA from the Norwalk Land Records after it was recorded. (MLCC Opp. Br. 5). As noted in the text, plaintiff's nonobjection is consistent with lack of awareness of the invalidity of the Altered POA. As also noted in the text, even if plaintiff understood the Altered POA to be valid, such an understanding does not cure the statutory deficiencies.

Dated: Westport, Connecticut
    August 1, 2005

              BEGOS & HORGAN, LLP

            By: /s/ Christopher G. B_____
              Christopher G. Brown (ct18216)
              Patrick W. Begos (ct19090)
            Attorneys for Plaintiff
            327 Riverside Avenue
            Westport, CT 06880
            (203) 226-9990
            (203) 222-4833 (fax)

## CERTIFICATE OF SERVICE

  This is to certify that a copy of the foregoing was mailed via first class mail, postage prepaid, on August 1, 2005 to:

Douglas C. Conroy, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

Jonathan S. Bowman, Esq.
Cohen & Wolf
1115 Broad Street
Bridgeport, CT 06604

                /s/ Christopher G. Brown
                Christopher G. Brown