UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 SEP -7 P 1: 18
U.S. DISTRICT COURT
BRIDGEPORT, CONN

JULIE DILLON RIPLEY MILLER,

    Plaintiff and Counterclaim Defendant,

- against -

MERRILL LYNCH CREDIT CORPORATION,

    Defendant and Counterclaimant.

CIVIL ACTION NO.
3:03-CV-1016(WWE)

SEPTEMBER 7, 2005

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO STRIKE AND OBJECTIONS TO THE AFFIDAVITS OF RICHARD HOMBERGER AND MARC SEIFER SUBMITTED BY PLAINTIFF**

Merrill Lynch Credit Corporation ("MLCC") respectfully submits this reply brief in further support of its motion to strike and objections to certain assertions and submissions made in the affidavits of Plaintiff Miller's experts which were filed in opposition to MLCC's motion for summary judgment. As outlined in MLCC's motion to strike, these expert affidavits and related exhibits are fatally flawed. They lack proper foundation, are inadmissible as a matter of law, and are not probative as to any issue properly before this Court in connection with MLCC's pending summary judgment motion. For the reasons stated herein as well as the reasons stated in MLCC's original motion, the Court should strike and disregard the Affidavits of Richard Homberger ("Homberger") and Marc Seifer ("Seifer") in addition to any arguments predicated on those affidavits in Miller's memoranda of law.

**I.   MILLER HAS STILL TOTALLY FAILED TO QUALIFY HOMBERGER AS AN EXPERT ON NUMEROUS TOPICS UPON WHICH HE PROVIDES OPINIONS IN HIS AFFIDAVIT AND REPORTS**

Miller has still totally failed to qualify Homberger, through reference to case law or otherwise, as an expert witness on numerous topics upon which he provides opinions in his affidavit

and reports. Homberger's deficiencies in qualification are not merely "quibbles" as contended by Miller. (Opposition at 7). No basis in fact or in law has been provided to qualify Homberger as an expert on:

- title insurance practice;
- closing attorney practice;
- psychiatry;
- brokerage industry practice; or
- predatory lending.

With respect to predatory lending, Miller admits that Homberger relies on a few lines of a single agency press release issued *after* the closing of the 1999 Loan. (Opposition at 9). Miller claims that Homberger cited the press release "to confirm there is a wide consensus concerning his understanding of what makes a loan predatory," but Homberger's report says nothing about "wide consensus." (Id.). Miller's argument that he is entitled to opine to a "wide consensus" makes it clear that she is attempting to qualify Homberger as an expert on predatory lending, even though Miller has failed to distinguish the cases cited in MLCC's motion which precluded expert opinions when a witness conceded his own lack of expertise on the subject. (Motion at 7-8).

## II. MILLER IGNORES THE NUMEROUS INSTANCES WHEN HOMBERGER TESTIFIES IN THE FORM OF IMPROPER LEGAL CONCLUSIONS

Based in large part on Miller's improper assumptions regarding Homberger's expertise, Miller essentially ignores the fact that Homberger opines repeatedly in the form of improper legal conclusions. In her Opposition, Miller casually tries to dismiss most of MLCC's objections on this point in a single footnote. (Opposition at 18). However, Homberger's legal conclusions (for example, whether the transaction was "fair, equitable and honest"; "fraudulent";

2

"unconscionable"; or "immoral, unethical, oppressive or unscrupulous") are pure legal conclusions and go well beyond the acceptable limits recognized in the advisory note mentioned in the Cary Oil decision cited by Miller. (Opposition at 17-18).

### III. MILLER HAS STILL PROVIDED NO AUTHORITY THAT A DUTY EXISTED BETWEEN MLCC AND MILLER THAT WOULD MAKE ANY OF THE PURPORTED INDUSTRY OR INTERNAL GUIDELINES DISCUSSED BY HOMBERGER ADMISSIBLE

While Miller desperately argues for some basis of relevance for Homberger's discussion of purported industry and MLCC underwriting guidelines for mortgage lending (Opposition at 10-16), Miller has still failed to provide a single authority that holds that MLCC owed any duty to Miller in this context that would make those guidelines relevant or material to this case. The simple fact is no such duty exists, and absent any such duty these guidelines, and any opinions (in any form) based upon them, are irrelevant and inadmissible.

The analysis in Homberger's affidavit assumes, improperly, that MLCC's supposed failure to adhere to its own internal guidelines or his purported industry standards for secondary market sales violates Miller's rights. However, Miller has never claimed she was aware of any industry or internal guidelines, she was never told by MLCC that her loan complied with any such guidelines, and, in fact, Miller claims she never even dealt with MLCC before the loan was approved. As a result, she cannot claim representations were made to her concerning how the loan underwriting and origination were to be conducted.

MLCC simply owed no duty to Miller in this context and internal guidelines and purported industry standards neither create a duty nor form the basis for a cause of action. See DeKwiatkowski v. Bear, Stearns & Co., Inc., 306 F.3d 1293 (2d Cir. 2002) ("Courts therefore have sensibly declined to infer legal duties from internal 'house rules' or industry norms that advocate

greater vigilance than otherwise required by law"); Security Pac. Nat. Bank v. Robertson, No. CV 920124622S, 1997 WL 561235, at *3 (Aug. 28, 1997 Conn. Super.) ("Research has not revealed any law supporting the proposition that a lender has any duty to investigate the financial stability of a borrower . . . and independent research has not revealed any authority to support the proposition that a lender has a duty to a borrower to inquire into the ability to repay a loan"); Great County Bank v. Kiely, No. CV 94 047460S, 1995 WL 625917, at *3 (Jan. 19, 1995 Conn. Super.) ("no court has recognized a duty to inquire into a borrower's ability to repay, even if the lender was a commercial bank").

Miller has utterly failed to demonstrate how these mere guidelines (the term used repeatedly in her Opposition, *e.g.*, at 14) could even create an obligation of any kind. These lending guidelines clearly have less significance to their industry than did the established brokerage regulations and industry "suitability" standards in the deKwiatkowski case which were found not to give rise to a duty or to provide the basis for a cause of action. Miller even concedes in her Opposition that "most mortgage lenders" follow these purported industry guidelines, not all. (Id. at 16).

Indeed, Plaintiff's twice amended complaint and counterclaim defenses allege nothing about MLCC's loan underwriting and origination process which Homberger criticizes in such detail in his affidavit. For this reason, Miller's protest that "MLCC wishes to prevent anyone from talking at all about *any* standards, internal or industry-wide" completely misses the point. (Opposition at 16; emphasis in original). Simply put, Miller has not asserted any claim in her amended complaint which is based upon MLCC's mortgage underwriting guidelines or standards which would thereby require expert testimony on purported lending standards and MLCC's internal

4

guidelines.[1]

In summary, Homberger attempts to position these underwriting guidelines as if they were actually controlling and binding on MLCC (which they are not), as if Miller actually relied on them (she did not), and then feed them to the jury in conjunction with his opinion that MLCC violated these very guidelines. In other words, these guidelines are merely a ruse, to be propped up by Homberger in front of the jury in order for him to allege that any non-compliance by MLCC must have violated some sort of obligation owed to Miller, instantly converting it into a CUTPA claim. As has been demonstrated, moreover, the CUTPA claim is barred by the statute of limitations in any event. (See MLCC's Memorandum of Law in Support of Motion for Summary Judgment at pp. 28-29). Miller claims these guidelines serve as a proxy for what is a "fair and equitable loan" (Opposition at 14), but in reality these guidelines, according to Homberger himself, serve as a proxy for what is appropriate to sell into the secondary market. This loan was held for MLCC's portfolio. (See MLCC's Motion at 19-20).[2] Miller's claim that the guidelines are also admissible in order to provide the jury with industry background in a complex case (Id. at 14) is simply a thin pretext to support her blatant attempt to offer these guidelines to create a duty.

## IV. GIVEN MILLER'S BINDING JUDICIAL ADMISSIONS, SEIFER'S AFFIDAVIT IS IRRELEVANT AND INADMISSIBLE

The Seifer affidavit ultimately opines that certain handwriting on an original Power

---

[1] As previously noted, an exception to the DeKwiatkowski holding might exist in situations of fraud. No fraud involving underwriting or lending practices is alleged in Miller's complaint. Moreover, given that definitive industry standards of the type present in DeKwiatkowski would only become admissible at the heightened standard of fraud, it would follow that with respect to a CUTPA claim, which does not require fraud, even such guidelines would be clearly inadmissible.

[2] Regarding Miller's allegation that MLCC "cooked the books," it is impossible to understand how MLCC's internal variance reflected on totally internal documents could be pertinent unless there was a related misrepresentation to Miller, which Miller has never claimed.

of Attorney used at Miller's 1999 loan closing is not Miller's but, rather, is that of Jay Falini. However, Miller has sworn, in an affidavit submitted to this Court in support of her application for a Prejudgment Remedy (PJR), that the handwriting is hers. Nor does she dispute that a prejudgment order freezing certain account proceeds and granting other relief was ultimately ordered by Magistrate Judge Martinez as a result of Miller pursuing this remedy. As previously discussed and briefed by MLCC, these statements of fact by Miller, under oath, constitute binding judicial admissions.

In her Opposition (pp.19-20), Miller yet again fails to cite a single authority to refute the authorities cited by MLCC for the proposition that Miller's prior sworn testimony and affidavits constitute binding judicial admissions. Seifer's affidavit and report are thus inadmissible as they do not assist the trier of fact on any disputed issue since the author of the subject handwriting has been conclusively established by Miller's own binding admissions. See Fed. R. Evid. 702.

Unable to dispute her prior judicial admissions, Miller attempts to create relevance for Siefer's affidavit by making the bald-faced assertion that, regardless of whatever Miller has already stated under oath to this Court in the past, this "does not foreclose further evidence on the subject. . . .[and] there is nothing to preclude her from changing that testimony." (Opposition at 19). In other words, Miller argues that Seifer's affidavit and report might hypothetically assist the trier of fact at trial in the event Miller changes her testimony at trial. It should be noted that "[t]he settled law in the Second Circuit is that 'a party may not create a material issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'" Newport Electronics, Inc., 157 F. Supp. 2d 202, 220 (D. Conn. 2001) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997)). Accordingly, even under Miller's own faulty reasoning, there is no basis to consider Seifer's

affidavit and report at this juncture, based on an idle threat to recant testimony in the future.

Furthermore, Miller's argument is totally inconsistent with Rule 56(c) which states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and *admissions on file*, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). At bottom, Miller effectively argues that there is no such thing as an admission at the summary judgment stage since a witness could theoretically always change that testimony at trial. By extension, Miller is also implying that the Court cannot rely on affidavits at this juncture either as the substance of those affidavits may be deviated from or recanted at trial as well. This reasoning must be rejected. For purposes of summary judgment, the Court must be able to rely upon Miller's sworn affidavits and testimony as binding admissions.

Since Miller's binding judicial admissions establish that the handwriting on the Power of Attorney was her own, Seifer's affidavit opining on the identity of the author of the handwriting is irrelevant and thus inadmissible. Accordingly, Seifer's affidavit and attached report should be stricken.

### V. MILLER IGNORES THE COURT'S GATE KEEPING FUNCTION IN THE CONTEXT OF SUMMARY JUDGMENT AND MISSTATES THE PROPER FORM OF ANALYSIS FOR EXPERT AFFIDAVITS

Miller also argues in her Opposition that MLCC's motion to strike is premature at this procedural juncture. Miller essentially contends that any admissibility analysis of her experts' affidavits and the opinions presented therein should be deferred until the time of trial. According to Miller, the objections raised by MLCC in its motion to strike are simply credibility arguments that go to the weight of her experts' testimony and should therefore be deferred for cross-examination at trial. (Opposition at 3-11). Miller's argument, however, mischaracterizes MLCC's motion,

misstates the proper analysis under Rule 56(e), and ignores the Court's critical gatekeeping function at this stage of the case.[3]

First, Miller mischaracterizes the nature of the objections underlying MLCC's motion to strike. As discussed at length in MLCC's motion, the objections relate to threshold admissibility not credibility, and hence raise issues for present determination by the Court and not issues for witness cross-examination. MLCC's objections concern lack of foundation, improper methodology, irrelevance, improper attempts to usurp functions of the court, improper opinions on ultimate issues, and other admissibility matters, all of which have regularly been held to preclude improper expert testimony.

Second, Miller contends that at the summary judgment stage "the Court must give the affidavits of the non-movant, plaintiff, every reasonable benefit of the doubt." (Opposition at 3). Miller even goes so far as to say, without citing a single authority, that "because those affidavits [Homberger and Seifer] were submitted in opposition to MLCC's summary judgment motion, they are entitled to a presumption of correctness." (Id. at 1). Apparently, Miller believes that the mere fact that she filed the Homberger and Seifer affidavits in opposition to MLCC's motion thereby shields those affidavits from any scrutiny as to the actual admissibility of their contents. In fact, no such shield applies and the admissibility and propriety of those affidavits must be examined by the Court before the contents may be considered.

---

[3] Miller's argument that MLCC's motion to strike is "improper" and without "any authority" to be filed at this juncture is baseless. See Newport Electronics, Inc. v. Newport Corp., 157 F. Supp. 2d 202, 208 (D. Conn. 2001) ("A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion"); Hollander v. American Cyanamid Co., 999 F. Supp. 252, 255-56 (D. Conn. 1998) ("A court may therefore strike portions of affidavits which are not made upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."), affirmed 172 F.3d 192, cert. denied 528 U.S. 965 (1999). Nor, contrary to her assertions, is the motion to strike a disguised argument on the merits.

(continued...)

8

Third, the Second Circuit has held that the court performs the role of a gatekeeper for expert testimony at the summary judgment phase of a case. See Raskin v. The Wyatt Company, 125 F.3d 55, 65-67 (2d Cir. 1997). Rule 56(e) specifically contemplates that affidavits "shall set forth such facts as would be admissible in evidence." ABB Industrial Systems, Inc. v. Prime Technology, Inc., 120 F.3d 351, 357 (2d Cir. 1997). See also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) (factors laid out in Daubert v. Merrell Dow may be used by courts when evaluating non-scientific expert testimony, with the court performing role of a gatekeeper). In Rubens v. Mason, 387 F.3d 183, 189 (2d Cir. 2004), the Second Circuit held that "on a motion for summary judgment, a district court may rely only on material that would be admissible at trial."

The case of Newport Electronics, Inc. v. Newport Corp., 157 F. Supp. 2d 202, 208-212 (D. Conn. 2001) is illustrative of this process. In Newport, in connection with cross motions for summary judgment, the plaintiff moved to strike the affidavits of Defendant's two experts citing Rule 702. Among other things, defendant countered that expert testimony submitted on a motion for summary judgment should not be submitted to a vigorous Rule 702 analysis.[4] The court rejected defendant's argument and held that a court should decide whether an expert opinion is admissible on a motion for summary judgment. After reviewing the affidavits under Rule 702 and under Daubert and Kumho, the Court found that one of the expert affidavits was not admissible and granted the motion to strike the affidavit. Id. at 210-212.

Contrary to the claims in Miller's Opposition, the Court has a clearly-defined gatekeeping role with respect to expert testimony at the summary judgment phase of the case, not

---

(...continued)

9

just at trial. For the reasons discussed at length in MLCC's motion, the motion to strike the affidavits should be granted.

## CONCLUSION

For the reasons discussed in this reply brief and in MLCC's moving papers, the Homberger affidavit should be stricken as it violates almost every evidentiary principle applicable to expert testimony. Likewise, the Seifer affidavit should be stricken as it is wholly irrelevant and thus inadmissible. The Court should exercise its gate keeping role and remove these submissions from its consideration when deciding MLCC's Motion for Summary Judgment.

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
Douglas C. Conroy (ct 11555)
Matthew R. Paul (ct 21036)
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email:   douglasconroy@paulhastings.com
Email:   matthewpaul@paulhastings.com

Counsel for Defendant and Counterclaimant
MERRILL LYNCH CREDIT CORPORATION

---

(...continued)

[4] Compare the similarity of that claim to Miller's statement in her Opposition on page 4 that "[w]e submit that a summary judgment motion is not the appropriate forum in which to make the fine evidentiary rulings MLCC seeks."

## CERTIFICATE OF SERVICE

This is to certify that on this **7th** day of September 2005, a copy of the foregoing DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO STRIKE AND OBJECTIONS TO EXPERT AFFIDAVITS SUBMITTED BY PLAINTIFF was delivered via U.S. first class mail to:

> Patrick W. Begos, Esq.
> BEGOS & HORGAN, LLP
> 327 Riverside Avenue
> Westport, CT 06880

*[signature]*
Douglas C. Conroy

STM/301992.2