UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT

------------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,                    :
                                               :  Case No. 03-CV-1016 (WWE)
            Plaintiff,                 :
                                               :  **THIRD AMENDED**
          – against –                          :  **COMPLAINT**
                                               :
MERRILL LYNCH CREDIT CORPORATION,              :
                                               :
           Defendant.                 :
------------------------------------------------------------------x

      Plaintiff, Julie Dillon Ripley Miller, by her attorneys, Begos & Horgan, LLP, hereby amends her complaint to conform to the Court's ruling on the parties' summary judgment motions, as directed in the Court's December 6, 2005 Order:

### COUNT I - CONVERSION

**The Parties**

      1.      Plaintiff is a natural person residing at 21 Point Road, Norwalk, Connecticut.

      2.      Upon information and belief, Defendant, Merrill Lynch Credit Corporation ("MLCC") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware and authorized to transact and transacting the business of lending money in the State of Connecticut.

**The Account**

      3.      This action arises out of MLCC's conversion of approximately $5 million of Plaintiff's stocks held by MLCC's affiliate, Merrill Lynch, Pierce, Fenner & Smith ("MLPFS"). MLCC has claimed that its sale of those assets and seizure of the proceeds was authorized pursuant to a Pledge Agreement executed as part of a $7.5 million construction loan transaction (the "Loan"). However,

plaintiff never executed that Pledge Agreement, and, specifically withheld authority from her purported attorney-in-fact to sign it on her behalf.

4. Plaintiff has a brokerage account with MLPFS (the "Account") and the bulk of the stocks in the Account were acquired by Plaintiff's family before 1950. When Plaintiff inherited these stocks in 1996, she acquired her ancestors' cost basis in them for capital gains tax purposes.

5. Plaintiff's MLPFS stock broker, Jay Falini ("Falini"), knew that the Account was Plaintiff's primary source of income and that liquidating the stocks would expose Plaintiff to substantial capital gains tax liability.

**The Loan**

6. Plaintiff began renovating a house on a piece of property that she owns on Wilson Point on the Norwalk waterfront. In or about the Fall of 1999, Falini arranged for Plaintiff to take the Loan from MLCC. Falini never disclosed to Plaintiff that the Loan involved a pledge of Plaintiff's Account. Falini's actions in arranging the Loan, obtaining documents necessary to close, and orchestrating the closing demonstrate that, at all relevant times, he had actual, implied and/or apparent authority to act as MLCC's agent.

7. Thereafter, Falini advised Plaintiff that the Loan had been scheduled to close on December 7, 1999. Falini knew that Plaintiff was going to be in Africa from December 2 through December 22, 1999 but advised her that she did not need to have a lawyer present at the closing. Falini later asked Plaintiff to sign a document waiving her right to have a lawyer at the closing.

**The Power of Attorney**

8. Falini advised Plaintiff that, because her contractors purportedly needed to be paid while she was away, she needed to give Barry Newman ("Newman") (the accountant to whom Falini

had referred Plaintiff in 1998) power of attorney to use the Loan money to pay them. Falini sent Plaintiff a blank Connecticut Statutory Short Form Power of Attorney ("POA") form and told her that he would come up from his office in Philadelphia to pick it up on December 2, 1999, the day she was leaving for Africa.

9. On or about December 2, 1999, Plaintiff took the blank POA form that she received from Falini to her local bank to have it notarized. The POA as signed by Miller, and as witnessed and acknowledged, did not identify an attorney in fact, and did not authorize anyone to borrow money or pledge securities.

10. After Plaintiff signed the power of attorney in front of two witnesses and a notary public at the bank, she gave it to Falini, who "whited out" some of Plaintiff's markings on the form. The changes made by Falini after the POA had been signed and acknowledged, which purported to expand the authority delegated by Plaintiff, left it not in compliance with the Connecticut Statutory Short Form Power of Attorney Act, and invalidated it.

11. Falini did not alter Plaintiff's elimination of the power to act with respect to "bond, share and commodity transactions" because, he said, Newman should not have authority to sell Plaintiff's stock. Therefore, to the extent the POA is a valid document, it specifically withholds from Plaintiff's purported attorney-in-fact, Barry Newman, the power to act for the Plaintiff with respect to, *inter alia*, "bond, share and commodity transactions".

12. The POA specifically provides that the definitions of the Connecticut Statutory Short Form Power of Attorney Act apply to the subdivisions of the POA. Thus, as executed, the POA specifically withheld authority to "pledge . . . any bond, share [or] instrument of similar character," CGS § 1-46.

**The Closing**

13.    Upon information and belief, the Loan purportedly closed on or about December 7, 1999 and Newman, Falini, a closing agent and other as-yet-unidentified representative or representatives of MLCC were in attendance. Newman purported to obligate Plaintiff on an agreement with MLCC whereby Newman purportedly pledged Plaintiff's Account as security for the Loan ("Pledge Agreement"). MLCC accepted the POA as evidencing Newman's authority to enter the Pledge Agreement on behalf of Plaintiff and ignored the changes to the document and Plaintiff's clear and unambiguous withholding of authority to pledge securities.

**The Conversion**

14.    In or about February 2003, pursuant to a right it claimed by virtue of the Pledge Agreement, MLCC had the Account, which at the time had a value of approximately $5,000,000, liquidated and the proceeds frozen to the exclusion of Plaintiff.

15.    In addition to the loss of the stocks and cash in the Account, the liquidation damaged the Plaintiff including exposure to substantial tax liability.

16.    Newman was not authorized to enter into the Pledge Agreement for Plaintiff. Therefore, MLCC was not authorized to assume and exercise the right of ownership over the Account to the exclusion of Plaintiff.

17.    Plaintiff has been damaged by MLCC's conversion of Plaintiff's Account, in an amount to be determined at trial, but in excess of $7 million.

**WHEREFORE,** Plaintiff demands:

(i)    Money Damages;

(ii)    Punitive Damages;

(iii)   Attorney's Fees;

(iv)    Statutory Interest; and

(v)     Costs of Suit.

                                  THE PLAINTIFF
                                  JULIE DILLON RIPLEY MILLER

                                  By: _____
                                  Patrick W. Begos (ct19090)
                                  Christopher G. Brown, Esq. (ct 18216)
                                  Begos & Horgan, LLP
                                  327 Riverside Avenue
                                  Westport, CT 06880
                                  (203) 226-9990

## CERTIFICATE OF SERVICE

This certifies that on January 4, 2006, a copy of the foregoing Third Amended Complaint was delivered via first-class mail to:

Douglas C. Conroy, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

Jonathan Bowman, Esq.
Cohen and Wolf, P.C.
115 Broad Street
Bridgeport, CT 06604

*Christopher G. Brown* (signature)

Christopher G. Brown