UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT

------------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,                :
                                           :   Case No. 03-CV-1016 (WWE)
          Plaintiff,                      :
                                           :
   – against –                             :
                                           :
MERRILL LYNCH CREDIT CORPORATION,          :
                                           :
          Defendant.                      :
------------------------------------------------------------------x

## PLAINTIFF'S MOTIONS *IN LIMINE*

Plaintiff, Julie Dillon Ripley Miller, on the Declaration of Patrick W. Begos, and all prior papers and proceedings in this action, moves this Court for an *in limine* order confirming the following:

    1.    that MLCC has the burden of establishing the existence and scope of the alleged agency of Barry Newman;

    2.    that MLCC cannot establish Newman's authority by evidence extrinsic to the Altered Power of Attorney purporting to name Newman as attorney-in-fact;

    3.    that the Altered Power of Attorney is invalid if it was altered after it was witnessed and acknowledged;

    4.    that the Altered Power of Attorney did not authorize Newman to pledge Ms. Miller's stock to MLCC;

    5.    that MLCC must establish that it gave Ms. Miller the opportunity to unwind the 1999 loan transaction, without cost or damage to her, as an element of its ratification defense; and

**ORAL ARGUMENT REQUESTED**

6.   that MLCC is precluded from introducing evidence or argument regarding plaintiff's spending;

and awarding such other and further relief as the Court deems fair.

Dated:   Westport, Connecticut
         April 3, 2007

                                        BEGOS & HORGAN, LLP

                                        By: _____
                                            Patrick W. Begos (ct19090)
                                            Attorneys for Plaintiff
                                            327 Riverside Avenue
                                            Westport, CT 06880
                                            (203) 226-9990

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by overnight mail on April 3, 2007 to:

Theodore Krebsbach, Esq.
Krebsbach & Snyder
Suite 1600
55 Broadway
New York, NY 10006

Jonathan S. Bowman, Esq.
Cohen & Wolf
1115 Broad Street
Bridgeport, CT 06604

                                        _____
                                        Patrick W. Begos

2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT

---------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,                :
                                                                   : Case No. 3:03CV1016 (WWE)
        Plaintiff,                       :
                                                                      :
        – against –                      :
                                                                      :
MERRILL LYNCH CREDIT CORPORATION,  :
                                                                    :
        Defendant.                    :
---------------------------------------------------------------x

**DECLARATION OF PATRICK W. BEGOS IN SUPPORT OF
PLAINTIFF'S MOTIONS *IN LIMINE***

PATRICK W. BEGOS declares the following to be true under penalty of perjury:

1. I am a member of the firm of Begos & Horgan, LLP, attorneys for plaintiff, Julie Dillon Ripley Miller, in this action. I submit this declaration in support of plaintiff's motions *in limine*:

2. Submitted herewith are true copies of the following exhibits:

Exhibit A:  A Pledge Agreement executed by Barry Newman, purportedly as plaintiff's attorney-in-fact.

Exhibit B:  A copy of the Altered Power of Attorney

Dated:    Westport, Connecticut
           April 3, 2007

                                                                                   _____
                                                                                   Patrick W. Begos (ct19090)
                                                                                   BEGOS & HORGAN, LLP
                                                                                   Attorneys for Plaintiff
                                                                                  327 Riverside Avenue
                                                                                  Westport, CT 06880
                                                                                  (203) 226-9990

Exhibit A

SECURITIES DT  ... CONFIDENTIAL

## MORTGAGE 100℠
### PLEDGE AGREEMENT FOR SECURITIES ACCOUNT

THIS PLEDGE AGREEMENT ("Agreement") is made as of the ___7___ day of _December_, 1999, by and between MERRILL LYNCH CREDIT CORPORATION ("MLCC") and Julie D. R. Miller ("Borrower").

## RECITALS

1. MLCC is providing Borrower with a revolving line of credit or making a term loan to Borrower in the original principal amount of or having a credit limit of $7,500,000.00 to be secured by (i) a mortgage or deed of trust on certain real property or (ii) shares of stock in a cooperative association and an assignment of a proprietary lease on a cooperative unit (the "Security Property"), such real property or cooperative unit located at 21 Point Road, Fairfield County, Rowayton, Connecticut (the "Loan").

2. The Loan, together with any prior lien(s) on the Security Property will equal (a) up to one hundred percent (100%) of the lesser of the appraised value or the purchase price of the Security Property, if a purchase transaction; or (b) up to one hundred percent (100%) of the appraised value of the Security Property, if a refinance.

3. As an inducement for MLCC to make the Loan to Borrower, Borrower has agreed to provide collateral for the Loan to MLCC, which includes a security interest in the Collateral (as defined below).

NOW, THEREFORE, in consideration of the covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Definitions.** As used herein, the following terms shall have the following meanings:

    (a) "Account" shall mean those certain Cash Securities Accounts, collectively (if more than one), in the name of Borrower with Merrill Lynch, Pierce, Fenner & Smith Incorporated listed below, which account numbers may change from time to time. MLCC is authorized to instruct Broker to change the Account title to reflect MLCC's security interest.

    881-32513

    (b) "Broker" shall mean Merrill Lynch, Pierce, Fenner & Smith Incorporated.

    (c) "Business Day" shall mean any day other than (i) a Saturday or Sunday, or (ii) a day on which banking institutions in the State of New York are authorized or obligated by law or executive order to be closed.

Mortgage 100 Regular/Consults PLEDGE AGREE/SECURITIES
(11/01/99) MPCPAGS1 (M)
4381240

PLAINTIFF'S EXHIBIT
MLCC 36
2/10/04 BW

Newman 9
9/10/03

(d) "Collateral" shall mean the Account as well as: (i) all stocks, bonds or other securities held in the Account now or in the future; (ii) all credit balances, accounts, contract rights, general intangibles, instruments, documents, money, certificates of deposit and all other property of whatever kind or description held in the Account now or in the future; (iii) all funds received by MLCC under paragraph 8 below; (iv) any securities described in confirmations and other reports delivered by Broker to Borrower of MLCC in connection with the Account, which securities are deemed to be incorporated by reference in this Agreement; and (v) all dividends, interest and proceeds of any such property, including, without limitation, proceeds of proceeds. Collateral includes Cash Collateral (as defined below in paragraph 8).

(e) "Investment Advisory Program" shall mean the Merrill Lynch Consults Service, Merrill Lynch Strategy Power Program, Merrill Lynch Private Investment Advisor Program, Merrill Lynch Asset Management's Mercury Asset Management Advisors Service and Merrill Lynch Asset Management's Private Portfolio Group Service, as the case may be.

(f) "Investment Manager" shall mean Merrill Lynch, Pierce, Fenner & Smith, Incorporated and its permitted successors and assigns unless otherwise noted in paragraph 10 below.

(g) "Loan Documents" shall mean a note, the Security Document (as defined below), control agreement, a stock power, an assignment of lease or any other documents executed by Borrower and delivered to MLCC, evidencing or securing the Loan.

(h) "Security Document" shall mean (i) the Mortgage or Deed of Trust (ii) the Security Agreement from Borrower to MLCC, which Mortgage, Deed of Trust or Security Agreement from Borrower to MLCC encumbers the applicable Security Property and secures the Loan.

(i) "Maximum Amount" shall mean Five Million One Hundred Sixty Two Thousand Five Hundred and 00/100—— Dollars ($5,162,500.00).

2. **CMA Account.** If the Account is established under the Merrill Lynch Cash Management Account® financial service ("CMA® account"), then:

(i) MLCC is authorized to instruct Broker to change the title of the CMA account or CMA SubAccount$^{SM}$, as the case may be, to reflect MLCC's security interest.

(ii) Funds held pending investment shall be invested in CMA Money Funds managed by a company affiliated with Broker. Funds held pending investment shall not be invested in an insured money market deposit account established pursuant to the ISA® Account program. If Borrower has designated an ISA Account as the Primary Money Account under the CMA service or an Investment Advisory Program, MLCC is authorized to instruct Broker to invest funds held pending investment in one of the CMA Money Funds instead.

(iii) Available free credit balances in the Account will be invested in CMA Money Funds at least once each week. Borrower understands that amounts owed by Borrower to Broker from time to time in connection with the Account (such as payments for financial services provided to Borrower by Broker) may be satisfied, subject to MLCC's security interest, by Broker from amounts invested in CMA Money Funds.

(iv) If Borrower is not already the Master CMA Accountholder for Borrower's household, Borrower designates the Master CMA Accountholder as Borrower's agent for the purpose of receiving monthly statements and any notices or other communications with respect to the Account and Borrower authorizes Broker to mail them to the address designated by the Master CMA Accountholder from time to time.

(v) The terms "ISA Account," "Master CMA Accountholder," "Money Funds" and "Primary Money Account" shall have the same meanings as the CMA Application and Agreement.

3. <u>Collateral</u>. (a) As additional security for the Loan, Borrower hereby assigns, pledges, grants and conveys to MLCC a continuing first priority lien and security interest in the Collateral. Collateral includes all assets set forth on Exhibit "A" attached hereto and incorporated herein by reference. MLCC hereby waives its security interest in shares that have been held in an Account for fewer than 30 days issued by an open-end investment company (other than shares resulting from dividend reinvestment), or of any other new issue with respect to which MLPF&S participated as a member of the selling group or syndicate.

(b) Nothing in this paragraph 3 shall operate to alter the provisions of this Agreement relating to Minimum Value or a Borrower's right to make withdrawals from his or her Account. Borrower shall take all actions reasonably necessary or requested by MLCC in order to assure that MLCC has at all times while this Agreement remains in effect a continuing perfected first priority lien and security interest in the Collateral.

(c) Without limiting the foregoing, Borrower shall have executed and delivered to MLCC prior to the date hereof a financing statement, conforming with the requirements of the applicable Uniform Commercial Code and in form acceptable to MLCC, relating to the Collateral and shall execute and deliver upon request a continuation statement, conforming with the requirements of the applicable Uniform Commercial Code and in form acceptable to MLCC, relating to such financing statement at such time or times as may be requested by MLCC as long as this Agreement remains in effect. If Borrower changes his or her principal place of residence or business, Borrower shall notify MLCC in writing of such change within two weeks thereafter, and shall execute such additional financing statements or similar documentation as shall be reasonably requested by MLCC to assure the continued effectiveness of MLCC's perfected first priority lien and security interest in the Collateral. Borrower acknowledges that Broker is the agent of MLCC for purposes of perfecting MLCC's security interest in the Collateral. Following performance in full by Borrower of Borrower's obligations under this Agreement, MLCC's lien and security interest in any Collateral remaining in the possession of MLCC shall be terminated and any such Collateral shall be returned to or at the direction of Borrower.

(d) Borrower hereby irrevocably authorizes and directs Broker, subject only to any contrary written direction from MLCC, to rename the Account on its books and records to reflect MLCC's security interest.

(e) Borrower shall have no further obligation pursuant to this Agreement at such time as the outstanding principal balance of the Loan has been paid down to $2,337,500.00 or less and, if the Loan is a revolving line of credit, (i) Borrower has executed and delivered to MLCC an agreement modifying the Loan so that the maximum credit limit available does not exceed such amount or (ii) if the above amount is zero, the Borrower has signed and delivered to MLCC a written statement requesting that the line of credit be terminated.

4. <u>Authorization for Withdrawal or Liquidation</u>. (a) In the event Borrower breaches any covenant or agreement set forth in the Loan Documents, prior to acceleration MLCC shall give written notice to Borrower of such breach and the opportunity to cure, such notice and the terms thereof shall be in accordance with the terms and conditions of the Security Document.

(b) Notwithstanding the foregoing, MLCC may accelerate the Loan without notice to Borrower (i) if the Security Property is real property, as a result of the sale or transfer of the Security Property by Borrower without the prior written consent of MLCC, unless applicable law provides otherwise, or (ii) if the Security Property is personal property (i.e., shares of stock in a cooperative) in the event Borrower agrees to cancel, surrender, transfer or assign the proprietary lease on the Security Property (the "Lease") or any interest

-3-

in the Lease, or the Lease or any interest in the Lease is cancelled, surrendered, transferred, or assigned, or notice is given by the corporation which issued the shares of stock that the Lease is to be cancelled or terminated, as more particularly set forth in the applicable Security Document. In the event (i) notice is not required as set forth above or (ii) notice is given and Borrower fails to timely cure and MLCC accelerates the Loan, Borrower hereby authorizes MLCC and MLCC shall be entitled to liquidate and/or withdraw any Collateral from the Account, up to the Maximum Amount, to be applied first to accrued and unpaid interest on the Loan and then to the outstanding principal balance of the Loan. MLCC shall then be entitled to exercise any and all other remedies available to it pursuant to the Loan Documents, at law or in equity, including, but not limited to exercising MLCC's rights under the applicable Security Document.

(c) If the Account is established under an Investment Advisory Program, at the time Collateral in the Account is to be sold and the proceeds applied to the Loan, as provided for in this paragraph 4, the market value of the Account is in excess of the Maximum Amount, MLCC will notify Broker or the Investment Manager to generate funds in an amount up to the Maximum Amount.

(d) Liquidation and/or withdrawal of any Collateral from the Account shall not be deemed (i) to cure any default pursuant to the Loan Documents; (ii) a tender of arrears or tender of performance sufficient to require reinstatement of the Loan; or (iii) a waiver of acceleration or of MLCC's right to accelerate the balance due on the Loan or a waiver of MLCC's rights under the Security Agreement.

5. **Prohibition of Trading and Withdrawals**. (a) Except upon the prior written consent of MLCC, Borrower will not: (i) borrow any funds on margin using any Collateral as security; (ii) otherwise pledge, grant or permit to exist a security interest in any Collateral; or (iii) directly or indirectly withdraw any cash or securities from the Account, except as provided herein. Borrower may purchase any of the following securities which are available for purchase through Broker described in Exhibit "B" which is attached hereto and incorporated herein by reference.

(b) If the Account is established under an Investment Advisory Program, nothing in this Agreement shall be construed by any party as limiting the types of securities which the Investment Manager may trade pursuant to the applicable investment advisory agreement between Borrower and Broker; provided, however, that any securities or other property held in the Account which are not listed in Exhibit "B", or are otherwise deemed unacceptable by MLCC, shall not be assigned any value for purposes of determining the Minimum Value or Liquidation Value pursuant to this Agreement. Borrower acknowledges and agrees that MLCC may limit the Minimum Value or Liquidation Value assigned to any security or other property which may be purchased with funds in the Account if MLCC is not reasonably assured of a continuing perfected first priority lien and security interest in such security or other property. Borrower may withdraw cash or securities from the Account, provided the Account maintains the Minimum Value set forth in paragraph 7 below. In the event the Account falls below the Minimum Value, Borrower may not directly or indirectly withdraw cash or securities from the Account. Borrower may, without the consent of MLCC, buy or sell, any securities in the Account at any time, provided the value of the Collateral does not fall below the Liquidation Value (as defined below).

(c) If the Account is established under an Investment Advisory Program, Borrower understands and agrees that funds held pending investment shall not be invested in an individual money market deposit account established pursuant to the Insured Savings Account (ISA®Account). If Borrower has designated an ISA Account under an Investment Advisory Program, Borrower hereby instructs Broker to temporarily invest funds which are held pending investment in a money market fund managed by an affiliated company of Broker rather than in an ISA Account.

6. **Warranties**. Borrower warrants to MLCC on a continuing basis that:

(i) except for the rights of MLCC hereunder, Borrower is the owner of the Collateral free and clear of any interest or lien of any third person;

(ii) the liens and security interests of MLCC hereunder are and shall at all times be perfected and valid first priority liens and security interests upon the Collateral;

(iii) Borrower has the full right, power and authority to make, execute and deliver this Agreement; and

(iv) Borrower has entered into this Agreement for personal, commercial or business purposes and not with the intent to leverage the investment performance of the Account.

7. **Minimum Value/Liquidation Value**. Borrower represents and warrants that the Collateral held in the Account as of the date hereof has an aggregate market value of not less than $6,711,250.00, which shall be known as the Minimum Value. Borrower agrees that at all times hereafter the Collateral in the Account will have an aggregate market value of not less than $5,678,750.00, which shall be known as the Liquidation Value. The market value of any securities in the Account shall, for all purposes under this Agreement, be the market value assigned to such securities from time to time by Broker in accordance with its standard valuation procedures.

8. **Remedies**. (a) If at any time the aggregate market value of the Collateral shall be less than the Liquidation Value and Borrower has not, within five (5) Business Days from the date the aggregate market value of the Collateral becomes less than the Liquidation Value, deposited in the Account additional cash and/or marketable securities acceptable to MLCC with an aggregate market value sufficient to increase the aggregate market value of the Collateral to at least the Liquidation Value, then MLCC may at its option from time to time cancel any open orders and close any or all outstanding contracts and withdraw and/or sell any or all Collateral and any proceeds thereof from the Account. If the aggregate market value of the Collateral falls to or below the Maximum Amount, MLCC has the right to withdraw and/or sell any or all Collateral and any proceeds thereof from the Account without notice or demand. Any such cash withdrawn shall be held by MLCC as "Cash Collateral" until the earlier to occur of (i) the application of such funds to accrued and unpaid interest on the Loan and then to the outstanding principal balance of the Loan, in the event of a default by Borrower which is not timely cured after notice, if required, as more particularly set forth in paragraph 4 above or (ii) termination of this Agreement.

(b) Borrower acknowledges and agrees that any Cash Collateral will not be held in trust and may be commingled with other assets of or held by MLCC. MLCC may invest the Cash Collateral in accordance with its normal cash management procedures. Any income or loss allocable to the investment of any Cash Collateral shall be for the account of MLCC. In lieu of investing the Cash Collateral with other assets of or held by MLCC, MLCC may, at its option, elect to invest the Cash Collateral in the Account in money market mutual funds or in such other investments as MLCC deems appropriate. Notwithstanding anything to the contrary contained herein, the Borrower may elect, by causing written notice to be received by MLCC of such election, to have the funds from the liquidation applied to the outstanding principal balance of the Loan.

(c) In the event of a default by Borrower of any covenant or agreement contained in the Loan Documents, which default is not timely cured after notice, if required, by MLCC to Borrower, as more particularly set forth in paragraph 4 above, MLCC may accelerate the Loan and may, at its option, withdraw cash from the Account and/or sell any other Collateral in the Account and apply any such cash and the proceeds of any such other Collateral, together with any Cash Collateral, first to accrued and unpaid interest on the Loan and then to the outstanding principal balance of the Loan, up to the Maximum Amount. In addition to the foregoing, MLCC may exercise any and all other remedies available to it under the Loan Documents. If during the term

of this Agreement, Borrower does not default on the Loan or if any event of default by Borrower is timely cured, upon termination of this Agreement, MLCC shall return any Cash Collateral being held to Borrower. If the Account is established under an Investment Advisory Program and if at the time Collateral in the Account is to be sold and the proceeds applied to the Loan, as provided in this paragraph 8(c), the market value of the Account is in excess of the Maximum Amount, MLCC will notify Broker to generate funds in an amount up to the Maximum Amount.

(d) MLCC may exercise any or all of the remedies set forth herein without notice of sale or other notice or advertisement. Any such sales may be made by MLCC, or its affiliates, on any exchange or other market where such business is usually transacted, or at public auction or private sale, and MLCC or its affiliates may be the purchaser for its own account. Any prior demand or call or prior notice of the time and place of such sale shall not be considered a waiver of MLCC's right to sell without any such demand, call or notice as herein provided.

(e) In addition to the rights and remedies set forth in this Agreement, MLCC shall have the right to exercise any one or more of the rights and remedies of a secured creditor under the Uniform Commercial Code of Connecticut. All rights and remedies available to MLCC hereunder shall be cumulative and in addition to any and all other rights and remedies otherwise available to it at law, in equity or otherwise, and any one or more of such rights and remedies may be exercised simultaneously or successively.

(f) Notwithstanding the fact that the aggregate market value of the Collateral is in excess of the Liquidation Value, in the event MLCC notifies the Borrower that any Collateral deposited in the Account is unacceptable and Borrower does not deposit in the Account cash and/or marketable securities acceptable to MLCC within ten (10) Business Days from the date on which such notice is sent to Borrower, then the market value of the Account will be determined without taking into consideration any Collateral which is unacceptable to MLCC.

9.  **Term**. This Agreement and the security interest created herein shall become effective when signed by Borrower and shall continue in full force and effect until the outstanding principal balance of the Loan has been paid down to the amount set forth in paragraph 3 above and the other conditions therein have been satisfied.

10. **Investment Manager**. (a) The Investment Manager is (if other than Merrill Lynch, Pierce, Fenner & Smith, Incorporated):

(b) Borrower agrees to provide MLCC with written notice of any change in the foregoing information or the appointment of a successor Investment Manager. Borrower agrees that instructions to trade in the Account may be given to Broker by the Investment Manager and that securities may be purchased or sold in the Account pursuant to orders placed by the Investment Manager, so long as such securities that are purchased and the proceeds of sales are credited to the Account.

-6-

(c)   Nothing set forth in this Agreement shall prohibit the Investment Manager from collecting its management fee under the investment advisory contract between Borrower and the Investment Manager; provided, however, that any interest the Investment Manager may have in the Account and the Collateral is subordinated to the security interest given by Borrower in favor of MLCC pursuant to this Agreement.

(d)   Under no circumstances will Borrower change the investment objective of the Account without securing MLCC's prior written consent.

11.   <u>Broker</u>.  This agreement shall not impose or create any obligations or duties upon Broker to Borrower greater than or in addition to the customary and usual obligations and duties of Broker as stockbroker and custodian of securities, except and to the extent that Broker shall henceforth accept instructions in connection with the Account as provided herein. Borrower hereby agrees to indemnify and hold harmless Broker, the Investment Manager, its affiliates (not including MLCC), officers and employees from and against any and all claims, causes of action, liabilities, lawsuits, demands and/or damages, including, without limitation, any and all court costs and reasonable attorney's fees, in any way related to or arising out of or in connection with this Agreement, including Broker's following instructions of MLCC regarding the Account. The Borrower acknowledges that this Agreement supplements the Borrower's existing agreement(s) with Broker and in no way is this Agreement intended to abridge any rights that Broker might otherwise have.

12.   <u>Miscellaneous</u>.  (a) MLCC may waive or delay enforcing any or all of its rights herein at any time without limiting, restricting or precluding its exercise of any or all of them in the future. Any waiver of any one of MLCC's rights hereunder shall not act as a waiver of any other right MLCC may have. BORROWER ACKNOWLEDGES AND AGREES THAT NOTWITHSTANDING ANY AFFILIATION BETWEEN MLCC AND BROKER AND THE AGENCY RELATIONSHIP OF BROKER TO MLCC HEREUNDER, NEITHER BROKER, NOR ANY OF ITS EMPLOYEES ARE AUTHORIZED TO WAIVE ON BEHALF OF MLCC ANY PROVISION HEREOF, OR, CONSENT ON BEHALF OF MLCC TO ANY ACTION OR INACTION BY BORROWER OR OTHERWISE BIND MLCC.

(b)   If there is more than one "Borrower," their obligations hereunder are joint and several.

(c)   Titles of paragraphs are for convenience only and shall not be considered in the interpretation thereof.

(d)   This Agreement shall be binding upon Borrower and Borrower's heirs and personal representatives and inure to the benefit of MLCC and its successors and assigns.

(e)   If any provision of this Agreement or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provisions to other persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

(f)   This Agreement, and the Loan Documents, constitute the entire agreement between the parties with respect to the subject matter hereof and may be modified only by a written instrument executed by both MLCC and Borrower.

(g)   This Agreement shall be governed in all respects by the laws of the State of Connecticut.

(h)   The rights of MLCC hereunder and with respect to the Collateral are absolute and unconditional, and nothing that MLCC does or leaves undone shall affect such rights of MLCC.

THIS PLEDGE AGREEMENT is dated as of the day and year first above written.

BORROWER:

_Julie D.R. Miller By Barry Newman A.I.F._____    _____
(Signature)                                              (Signature)

Julie D. R. Miller By Barry Newman A.I.F.                _____
(Printed Name)                                           (Printed Name)


_____                           _____
(Signature)                                              (Signature)


_____                           _____
(Printed Name)                                           (Printed Name)

MERRILL LYNCH CREDIT CORPORATION

_Sandra Stolze_____

Sandra Stolze
Its _Vice President_____

(AK/AR/CT/HI/IA/ID/KS/ME/MI/MN/MO/NE/NV/NY/PA/SC/WA/WI/WV)

-8-

EXHIBIT "A"

LIST OF SECURITIES IN ACCOUNT AS OF THE DATE OF THIS AGREEMENT

| ACCOUNT NUMBER | NAME OF SECURITIES | AMOUNT OF SECURITIES |
|---|---|---|
| 881-32513 | | |
| | Cocs Cola Com | 2,420 |
| | Exxon Corporation | 2,344 |
| | Johnson & Johnson | 2,586 |
| | Weyerhaeuser Co | 2,500 |
| | CMA CT Municipal MON | 1,390 |

EXHIBIT "B"

Eligible Collateral

## EQUITIES

**ADRs (American Depository Receipts)**
Subject to criteria for domestic equities

**Closed-End Funds:**
Subject to criteria for domestic equities
Subject to trading on NYSE or AMEX only

**Convertible Preferred and Preferred Stock:**
Subject to criteria for domestic equities

**Domestic Equities:**
Margin-eligible
Traded on a major exchange
Shares priced at least $10/share
Trading volume of at least 10,000 shares/week

**MITTS (Market Index Target Term Securities):**
Subject to criteria for domestic equities

**Merrill Lynch & Co., Inc. Book Value Shares**

**Mutual Funds:**
MLAM quarterly-redeemed/tendered
Margin-eligible (non-MLAM funds must be held long in a MLPF&S account and have sales agreements with MLPF&S)
Mutual funds available for purchase under the Merrill Lynch Mutual Fund Advisor Program

**REITs (Real Estate Investment Trusts):**
Subject to criteria for domestic equities
Subject to trading on NYSE or AMEX only

**UITs (Unit Investment Trusts):**
Margin-eligible
Merrill Lynch-sponsored

## DEBT INSTRUMENTS - CORPORATE

**Corporate Debt Instruments:**
Margin-eligible
Notes, debentures, bonds and zero-coupon bonds issued directly by the corporation

## DEBT INSTRUMENTS - MUNICIPAL

**Municipal Debt Instruments:**
Investment grade (rated Baa/BBB or higher)

**Zero-Coupon Municipal Debt:**
Investment grade (rated Baa/BBB or higher)
Issued directly by the municipality

## DEBT INSTRUMENTS - GOVERNMENT

CATS Certificate of Accrual on Treasury Securities:

CMOs (Collateralized Mortgage Obligations):
Margin- and nonmargin-eligible

Government Agency Debt:
Margin-eligible
FACO (Financial Assistance Corp.)
FFCB (Federal Farm Credit Bank)
FICO (Financial Corp.)
REFCORP (Resolution Funding Corp.)
TVA (Tennessee Valley Authority)

Government Debt Securities, including:
U.S. Treasury bonds, notes and bills
Zero-coupon government debt issued directly by the government, including STRIPS

Mortgage-Backed Government Debt, including:
GNMA/Ginnie Mae (Government National Mortgage Association)
FHLMC/Freddie Mac (Federal Home Loan Mortgage Corporation)
FNMA/Fannie Mae (Federal National Mortgage Association)

TIGR's® (Treasury Investment Growth Receipts)

## CASH EQUIVALENTS

CDs (Certificates of Deposit):
Merrill Lynch-sponsored or Merrill Lynch-marketed
Merrill Lynch secondary market, including:
Zero-coupon
Merrill Lynch jumbo
DTC-eligible

Money Markets
CMA Money Funds

## OTHER

Options:
Covered calls

Limited Partnerships:
Subject to criteria for domestic equities
Subject to trading on NYSE or AMEX only

FR G-3
OMB No. 7100-0018
Approval expires May

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM

# Statement of Purpose for an Extension of Credit Secured by Margin Stock by a Person Subject to Registration Under Regulation G

**Merrill Lynch Credit Corporation**
Name of Lender

ORIGINAL

(Federal Reserve Form G-3) SECURITIES DOCUMENT

This form is required by law (15 U.S.C. 78g and 78w; 12 CFR 207.)

**REPORTING BURDEN**
Public reporting burden for this collection of information is estimated to average 10 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Secretary, B of Governors of the Federal Reserve System, 20th and C Str N.W., Washington, D.C. 20551; and to the Office of Management Budget, Paperwork Reduction Project (7100-0011), Washington, D.C. 20

## Instructions

1. This form must be completed when a lender subject to registration under Regulation G extends credit secured directly or indirectly, in whole or in part, by any margin stock.

2. The term "margin stock" is defined in Regulation G (12 CFR 207) and includes, principally: (1) stocks that are registered on national securities exchange, stocks that are on the Federal Reserve Board's List of Marginable OTC Stocks, or any OTC secu designated for trading in the National Market System; (2) debt securities (bonds) that are convertible into margin stock; and shares of most mutual funds.

3. Please print or type (if space is inadequate, attach separate sheet.)

**Part I**   To be completed by borrower(s)

1. What is the amount of the credit being extended?   $7,500,000.00

2. Will any part of this credit be used to purchase or carry margin securities?   Yes ☐   No ☒

If the answer is "no," describe the specific purpose of the credit —

The loan proceeds are being used to refinance existing indebtedness on the property located at 21 Point Road, Rowayto Connecticut 06853 and in part for personal, family, and household purposes.

I (We) have read this form and certify that to the best of my (our) knowledge and belief the information given is true, accurate complete.

Signed: _Julie D. R. Miller By Barry Newman A.I.F._                    Signed: _____

Borrower's Signature                                  Date                Borrower's Signature                         Date
Julie D. R. Miller by Barry Newman A.I.F.
Print or type name                                                       Print or type name

This form should not be signed in blank.

A borrower who falsely certifies the purpose of a credit on this form or otherwise willfully or intentionally evades the provisions of Regulation G will also violate Federal Reserve Regulation X, "Borrowers of

Exhibit B

Case 3:03-cv-01016-WWE    Document 195    Filed 04/04/2007    Page 17 of 19

C 54 G—POWER OF ATTORNEY—STATUTORY SHORT FORM    AD RV ST-1    Copyright ©1985 ALL-STATE LEGAL SUPPLY CO.
(With Durable Power Clause)    (Revised Oct. 1990)    One Commerce Drive, Cranford, N. J. 07016

NOTICE: *The powers granted by this document are broad and sweeping. They are defined in Connecticut Statutory Short Form Power of Attorney Act, sections 1-42 to 1-56, inclusive, of the general statutes, which expressly permits the use of any other or different form of power of attorney desired by the parties concerned.*

KNOW ALL MEN BY THESE PRESENTS, which are intended to constitute a GENERAL POWER OF ATTORNEY pursuant to Connecticut Statutory Short Form Power of Attorney Act:

That I, JULIE DILLON RIPLEY MILLER

(insert name and address of the principal)

do hereby appoint **Barry Newman**    (insert name and address of the agent, or each agent, if more than one is designated)

my attorney(s)-in-fact TO ACT:

(If more than one agent is designated and the principal wishes each agent alone to be able to exercise the power conferred, insert in this blank the word "severally." Failure to make any insertion or the insertion of the word "jointly" shall require the agents to act jointly)

**First:** *In my name, place and stead in any way which I myself could do, if I were personally present, with respect to the following matters as each of them is defined in the Connecticut Statutory Short Form Power of Attorney Act to the extent that I may be permitted by law to act through an agent:*

[Strike out and initial in the opposite box any one or more of the subdivisions as to which the principal does NOT desire to give the agent authority. Such elimination of any one or more of subdivisions (A) to (L), inclusive, shall automatically constitute an elimination also of subdivision (M).]

To strike out any subdivision, the principal must draw a line through the text of that subdivision AND write initials in the box opposite.

| Subdivision | Initials |
|---|---|
| (A) real estate transactions; | [ JDRM ] |
| (B) chattel and goods transactions; | [ JDRM ] |
| (C) bond, share and commodity transactions; | [ JDRM ] |
| (D) banking transactions; | [ JDRM ] |
| (E) business operating transactions; | [ JDRM ] |
| (F) insurance transactions; | [ JDRM ] |
| (G) estate transactions; | [ JDRM ] |
| (H) claims and litigation; | [ JDRM ] |
| (I) personal relationships and affairs; | [ JDRM ] |
| (J) benefits from military service; | [ JDRM ] |
| (K) records, reports and statements; | [ JDRM ] |
| (L) health care decisions; (see definition on back) | [ JDRM ] |
| (M) all other matters; | [    ] |
| Special provisions | [    ] |

Approval of all contractor loan advances to Condon-Brown, Inc. JDRM

Approval of all contractor loan advances to Condon-Brown, Inc. JDRM

(Special provisions and limitations may be included in the statutory short form power of attorney only if they conform to the requirements of the Connecticut Statutory Short Form Power of Attorney Act.)

**Second:** *With full and unqualified authority to delegate any or all of the foregoing powers to any person or persons whom my attorney(s)-in-fact shall select.*

**Third:** *Hereby ratifying and confirming all that said attorney(s) or substitute(s) may do or may cause to be done.*

SURVIVAL OF AUTHORITY UPON DISABILITY AND INCOMPETENCE OF PRINCIPALS

This Power of Attorney SHALL NOT be affected by the subsequent disability or incompetence of the principal.

**Witness** hand and seal this ___ day of December, 19__

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF

_Nancy R Borchetta_    Witness
Nancy R Borchetta

_Theresa M Marsan_    Witness
Theresa M Marsan

_Julie Dillon Ripley Miller_
(Signature of Principal)
JULIE DILLON RIPLEY MILLER

RECORDED AS RECEIVED

# Power of Attorney

TO

Dated

19

DTR
Julie Dillon Ripley Miller
1 Point Road
Norwalk, CT 06854

HEALTH CARE DECISIONS

*In this power of attorney, the language conferring general authority with respect to health care decisions shall be construed to mean that the principal, who, in the judgment of the attending physician, is unable to receive and effectively evaluate information pertaining to any health care decision, or to effectively and rationally communicate such decisions, authorizes the agent to consent to, refuse to consent to, or withdraw consent to any medical treatment other than that designed solely for the purpose of maintaining physical comfort, the withdrawal of life support systems or the withdrawal of nutrition or hydration.*

STATE OF CONNECTICUT
COUNTY OF Fairfield } ss. Norwalk

The foregoing POWER OF ATTORNEY with provision for SURVIVAL OF AUTHORITY was acknowledged before me this ___ day of December, 19 99.

by _____
(Name of person acknowledging)

Notary Public
My Commission Expires Oct. 31, 2002
Notary Public
Commissioner of the Superior Court

VOL3836PG231