UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------x

JULIE DILLON RIPLEY MILLER,　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　:　　Case No.03-CV-1016 (RNC)(DFM)

　　　　　　Plaintiff,　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　:

　　　　　– against –　　　　　　　　　　　:　　April 3, 2007

　　　　　　　　　　　　　　　　　　　　　　:

MERRILL LYNCH CREDIT CORPORATION,　　:

　　　　　　　　　　　　　　　　　　　　　　:

　　　　　　Defendant.　　　　　　　　　　　:

----------------------------------------------------------------x

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTIONS *IN LIMINE*

BEGOS & HORGAN, LLP
Attorneys for Plaintiff
327 Riverside Avenue
Westport, CT 06880
(203) 226-9990

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

MOTION 1:    MLCC HAS THE BURDEN OF ESTABLISHING THE EXISTENCE
AND SCOPE OF NEWMAN'S ALLEGED AGENCY . . . . . . . . . . . . . 3

MOTION 2:    MLCC CANNOT ESTABLISH NEWMAN'S AUTHORITY BY
EVIDENCE EXTRINSIC TO THE ALTERED POWER OF ATTORNEY
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

MOTION 3:    THE ALTERED POWER OF ATTORNEY IS NOT VALID IF IT WAS
ALTERED AFTER IT WAS SIGNED, WITNESSED AND
ACKNOWLEDGED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

MOTION 4:    MLCC SHOULD BE PRECLUDED FROM ARGUING THAT THE
ALTERED POWER OF ATTORNEY AUTHORIZED NEWMAN TO
PLEDGE SECURITIES (IF IT WAS VALID AT ALL) . . . . . . . . . . . . 8

MOTION 5:    MLCC CANNOT ESTABLISH A RATIFICATION DEFENSE WITHOUT
PROVING THAT IT GAVE MS. MILLER THE OPPORTUNITY TO
UNWIND THE LOAN TRANSACTION, WITHOUT COST OR
DAMAGE TO HER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MOTION 6:    MLCC SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE
OR ARGUMENT REGARDING MS. MILLER'S SPENDING . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Plaintiff, Julie Dillon Ripley Miller, by her attorneys, Begos & Horgan, LLP, submits this brief in support of her motions *in limine*.

The Court has scheduled a jury trial, to begin July 9, 2007, on Ms. Miller's claim that Merrill Lynch Credit Corp. ("MLCC") converted her securities valued at approximately $5,000,000. There are also pending MLCC's claims to foreclose upon a 1999 note and mortgage, and Ms. Miller's defenses to those claims – most notably, that the note and mortgage are unconscionable, and that MLCC has come to this Court with unclean hands. These equitable claims and defenses will be tried to the Court.

The parties are scheduled to participate in a Court-ordered mediation on June 6, 2007. Rulings on these motions before the mediation could increase the possibility of settlement.

## PRELIMINARY STATEMENT

MLCC sold the securities at issue purportedly pursuant to the terms of a pledge agreement executed by Barry Newman, whom MLCC claims was acting as Ms. Miller's attorney-in-fact (Begos Declaration, Ex. A). There is no dispute that Ms. Miller did not sign any document authorizing the sale. Because MLCC seeks to rely on Mr. Newman's alleged agency, Ms. Miller asks the Court to confirm, *in limine*, that MLCC has the burden of establishing the existence and scope of that alleged agency (*see* Motion 1, *infra*).

MLCC insisted on obtaining a Power of Attorney to confirm Newman's authority. The Court previously discussed *some* of the evidence surrounding the creation of what it referred to as the "Altered Power of Attorney" (December 6, 2005 Ruling on Pending Motions ("Summary Judgment Order") at 4-6; a copy of the Altered Power of Attorney is annexed to the Begos Declaration as

1

Exhibit B).[1] Because MLCC required the power of attorney in order to enter into the transaction it cannot dispute that the Power of Attorney controls the existence and scope of Newman's authority (if any). Therefore, Ms. Miller asks the Court to confirm, *in limine*, that MLCC cannot establish Newman's authority by evidence extrinsic to the Altered Power of Attorney (*see* Motion 2, *infra*).

As noted, the Court determined that the power of attorney executed by Ms. Miller was altered after it was signed. Because the statutes authorizing the use of the Power of Attorney expressly require the document to be witnessed and acknowledged, Ms. Miller asks the Court to confirm *in limine* that the Altered Power of Attorney is invalid if it was altered after it was witnessed and acknowledged (*see* Motion 3, *infra*).

Even if the Altered Power of Attorney were a valid document, it expressly withheld any authority for Newman to engage in "bond, share and commodity transactions." Therefore, Ms. Miller asks the Court to confirm, *in limine*, that the Altered Power of Attorney did not authorize Newman to pledge Ms. Miller's stock to MLCC (*see* Motion 4, *infra*).

In denying MLCC's summary judgment motion on this claim, the Court ruled that questions of fact existed regarding MLCC's assertion that Ms. Miller ratified the terms of the 1999 loan (Summary Judgment Order at 10-14). In so doing, the Court discussed aspects of the law of ratification that provided a sufficient basis to deny MLCC's motion. The Supreme Court has

---

[1] Some of the statements the Court made about the creation of the Altered Power of Attorney do not reflect all of the evidence that will be introduced at trial. For example, the Court stated that the alterations were made in Ms. Miller's presence by Jay Falini, a Merrill Lynch broker. The evidence shows, however, that only a single alteration was made in her presence; Mr. Falini made the key alterations outside of Ms. Miller's presence and without her knowledge or approval. Moreover, Mr. Falini has sworn that he did not make *any* changes to the original power of attorney in Ms. Miller's presence. It is not necessary to resolve such issues on this motion; were merely point them out to emphasize that the jury will make its determination about the validity of the Altered Power of Attorney based on *all* of the facts surrounding its creation.

2

confirmed that, in order for MLCC to prove an intent to ratify the transaction, MLCC must have given Ms. Miller an opportunity to repudiate the transaction without any cost or damage. Accordingly, Ms. Miller asks the Court to confirm, *in limine*, that MLCC must establish that it gave Ms. Miller the opportunity to unwind the 1999 loan transaction, without cost or damage to her, as an element of its ratification defense (*see* Motion 5, *infra*).

MLCC and its lawyers have demonstrated a tactic of seeking to unfairly prejudice Ms. Miller by introducing evidence of her alleged spending habits, including money spent on house construction, traveling, and other items. Ms. Miller's spending habits have absolutely no relevance to her conversion claim, or to any of MLCC's defenses to that claim. Accordingly, Ms. Miller asks the Court to preclude MLCC from introducing evidence or argument regarding her spending (*see* Motion 6, *infra*).

## MOTIONS

**MOTION 1:    MLCC HAS THE BURDEN OF ESTABLISHING THE EXISTENCE AND SCOPE OF NEWMAN'S ALLEGED AGENCY**

There is no dispute that Ms. Miller did not sign the Pledge Agreement, which MLCC claims gave it authority to sell Ms. Miller's stocks. Rather, it was signed only by Barry Newman, purportedly as Ms. Miller's attorney-in-fact. Ms. Miller has asserted that Newman was not authorized to pledge her stock (or, indeed, to take any action on her behalf). Thus, the existence and scope of Newman's alleged agency are essential questions in Ms. Miller's conversion claim.

It is well established that the party who seeks to rely on an agent's authority has the burden of proving the existence and scope of the agency. *City of West Haven v. U. S. Fidelity & Guaranty Co.*, 174 Conn. 392, 395, 389 A.2d 741, 744 (1978) ("The burden of proving the scope of such agency

3

was on USF&G, the party claiming that Norton's knowledge was imputed to the city"); *Robert T. Reynolds Associates, Inc. v. Asbeck*, 23 Conn.App. 247, 251, 580 A.2d 533, 535 (Conn.App. 1990) ("The law is clear that the burden of proving agency is on the party asserting its existence"); *New England Whalers Hockey Club v. Nair*, 1 Conn.App. 680, 683, 474 A.2d 810, 813 (Conn.App. 1984) (same). *See also, Botticello v. Stefanovicz*, 177 Conn. 22, 26, 411 A.2d 16, 19 (1979) (where plaintiff relied on agency, plaintiff had burden of proving it); *Taylor v. Hamden Hall School, Inc.*, 149 Conn. 545, 551, 182 A.2d 615, 618 (1962) (The burden of proving the existence of that relationship rested on the defendant under the pleadings").

**MOTION 2:    MLCC CANNOT ESTABLISH NEWMAN'S AUTHORITY BY EVIDENCE EXTRINSIC TO THE ALTERED POWER OF ATTORNEY**

There is no question that, in closing the 1999 loan, MLCC relied on the Altered Power of Attorney as the source of Newman's alleged authority. This is confirmed by the fact that Newman signed the documents in question as "attorney in fact," a status that can only exist pursuant to a power of attorney. In order to prove Newman's authority, therefore, MLCC has the burden of proving the validity and scope of the Altered Power of Attorney. "The authority of the defendant-agent was defined by the terms of the power of attorney." *Long v. Schull*, 184 Conn. 252, 256, 439 A.2d 975, 977 (1981).

If the Altered Power of Attorney is not valid, then Newman did not have authority to do anything. *Salahshourian v. Ferrante*, 1992 WL 204688, *2 (Conn.Super. 1992), held:

> What is also evident is that the witnesses and notary public were not present when Julio and Yolanda Ferrantes' purported signatures were allegedly placed on the powers of attorney, which would have resulted in the powers of attorney being invalid. ... It follows that without valid powers of attorney the mortgages executed by Nellie L. Ferrante as attorney for Julio and Yolanda Ferrante was *[sic]* in fact invalid and without any force and effect.

4

The law does not permit MLCC to insist on the execution of a power of attorney, and then argue that Ms. Miller's authorization of Newman can be found in parole evidence of her subjective intent. *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 125, 374 A.2d 144, 150 (1976) ("It is an acknowledged principle of agency law that a principal may limit the powers of his agent and that all parties who deal with the agent with knowledge of the limitation are bound by its terms"); *Slocum v. New York Life Ins. Co.*, 228 U.S. 364, 374, 33 S.Ct. 523, 527, 57 L.Ed. 879 (1913) ("[o]ne who deals with an agent, knowing that he is clothed with a circumscribed authority and that his act transcends his powers, cannot hold his principal"). *See also, Long v. Schull, supra*, 184 Conn. at 257, 439 A.2d at 977:"The legal effect of a power of attorney cannot be altered by proof of what one or both parties understood the legal effect to be."

Powers of attorney would be meaningless if a bank could insist on the document, and then argue that the document does not govern the existence and scope of agency.

**MOTION 3:    THE ALTERED POWER OF ATTORNEY IS NOT VALID IF IT WAS ALTERED AFTER IT WAS SIGNED, WITNESSED AND ACKNOWLEDGED**

C.G.S.A. § 1-43 requires that the "statutory short form power of attorney shall be duly acknowledged by the principal in the manner prescribed for the acknowledgment of a conveyance of real property." C.G.S. § 1-43. A conveyance must be "acknowledged by the grantor ... to be his free act and deed." C.G.S. § 47-5(a)(3). The Connecticut Supreme Court has stated: "an acknowledgment is a public declaration or a formal statement of the person executing an instrument made to the official authorized to take the acknowledgment that the execution of that instrument was his free act and deed." *J.C. Penney Properties, Inc. v. Peter M. Santella Company, Inc.*, 210 Conn. 511, 513, 555 A.2d 990 (1989).

It is undisputed that the power of attorney was altered *after* Ms. Miller signed it, acknowledged it as her free act and deed, and had her execution of the document attested by two witnesses. It is also undisputed that plaintiff did not acknowledge the Altered Power of Attorney to be her free act and deed before an official authorized to take an acknowledgment (and did not re-execute it before two witnesses).[2] (¶ 47; Ex. N).  The acknowledgment requirement would be meaningless if material changes could thereafter be made. In *Coit v. Starkweather*, 8 Conn. 289, 292 (1830), the Connecticut Supreme Court, with respect to an altered deed, confirmed:

> It is a positive requirement of our law, that all deeds of land shall be attested by two witnesses, and acknowledged before a magistrate. . . . No such deed can be valid without a compliance with these requisites. It follows, that if the alteration be material, the deed is fatally defective, without a new attestation and acknowledgment.

In *J.C. Penney Properties, Inc. v. Peter M. Santella Co., Inc.*, *supra*, 210 Conn. at 515, 555 A.2d at 992, the Supreme Court held that a certificate of mechanic's lien was void where the document did not contain written evidence of the signer's oath: "The defendant, however, has cited no Connecticut case in which a court has validated a certificate of mechanic's lien despite the clear absence of a necessary statutory element of the certificate, nor have we found such a case." The court held that an 1820 decision regarding the requisites of a deed was "dispositive of this case" 201 Conn. at 517, 555 A.2d at 993. The court went on to state, in language applicable to this case:

> In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. The defendant argues that the statute does not require that the swearing to the contents of the certificate be in

---

[2]An acknowledgment must be in writing. *J.C. Penney Properties, Inc. v. Peter M. Santella Company, Inc.*, 210 Conn. at 517 (citing *Pendleton v. Button*, 3 Conn. 406, 412 (1820)). Thus, even if Ms. Miller had orally acknowledged the Altered Power of Attorney to be her free act and deed (which she did not), such a purported "acknowledgment" is invalid.

6

writing. In considering a statute that authorizes a certificate of mechanic's lien in writing, however, we cannot ascribe to the legislature an intent that an essential part of this certificate need not be in writing. Such a certificate may take precedence over prior encumbrances and may furnish the basis for a foreclosure of the subject premises. General Statutes § 49-34 describes the contents of such a certificate with great detail. To validate a certificate without a written oath would invite confusion, delay and uncertainty into an area where certainty and complete compliance with the statutory requirements are of paramount importance to interested parties and the general public.

210 Conn. at 518, 555 A.2d at 994 (citations and internal quotes omitted).

The legislature has described the contents of a power of attorney in great detail, and has required that it be witnessed and acknowledged. This Court cannot ascribe to the legislature an intent that the substance of the power of attorney could be changed after it was witnessed and acknowledged. Certainly, a power of attorney can cause a greater effect on property rights than a mechanic's lien.  To validate a power of attorney that is altered after being witnessed and acknowledged "would invite confusion, delay and uncertainty into an area where certainty and complete compliance with the statutory requirements are of paramount importance to interested parties and the general public." *Id.*

Other courts and commentators agree: "[w]here a deed has been acknowledged before a magistrate appointed by law to take and certify the acknowledgment, in order that the deed may be recorded, the parties have no right to make the most trifling alteration. An altered deed is not the same which is certified. The act of the magistrate is independent of the parties, and no consent of theirs can warrant them in falsifying it." 67 A.L.R. § 364 (quoting *Moore v. Bickham* (1811) 4 Binn. (Pa.) 1); *see Tiffany on Real Property* § 989 (2003) ("to give innocent third parties notice of the alteration by the subsequent recording of the instrument after the changes have been made, acknowledgment after the alteration is required wherever the statute makes such formality a

7

prerequisite to recording altered instruments. In other words, there must be, in effect, a new execution and delivery of the instrument.").[3]

**MOTION 4:     MLCC SHOULD BE PRECLUDED FROM ARGUING THAT THE ALTERED POWER OF ATTORNEY AUTHORIZED NEWMAN TO PLEDGE SECURITIES (IF IT WAS VALID AT ALL)**

Even if MLCC proves that the Altered Power of Attorney was valid notwithstanding the post-execution alterations, the document, as altered, expressly stated that it did *not* give Newman authority to enter into "bond share and commodity transactions." Specifically, Line (C) of the list of authorized acts ("bond, share and commodity transactions") is both crossed out and initialed. The Altered Power of Attorney expressly instructs: "Strike out and initial in the opposite box any one or more of the subdivisions as to which the principal does NOT desire to give the agent authority."

The Altered Power of Attorney is on the form prescribed by statute as a "statutory short form power of attorney." C.G.S.A. § 1-43(a). That statute provides: "The use of the following form in the creation of a power of attorney is authorized, and, when used, *it shall be construed in accordance with the provisions of this chapter.*" *Id.* (emphasis added). Plainly, this statute governs the scope of the Altered Power of Attorney. Section 1-46 sets forth the meaning of "bond, share and commodity transactions":

> In a statutory short form power of attorney, the language conferring general authority with respect to bond, share and commodity transactions *shall be construed* to mean that the principal authorizes the agent: ... (2) to ... hypothecate, pledge, revoke, create or modify a trust, grant options concerning, loan, trade in, or otherwise dispose of any bond, share, [or] instrument of similar character[.] [emphasis added]

---

[3] It has been held that, to consider an altered power of attorney to remain valid "would be a travesty of justice and repugnant to our public policy." *Kurman v. Kurman*, 11 Misc.2d 1035, 1038, 174 N.Y.S.2d 128, 131 (1958).

8

Because this statute deals specifically with powers to pledge securities, it must govern over any other section of the code on which MLCC may attempt to rely to argue the delegation of that power. *Wisniowski v. Planning Com'n of Town of Berlin*, 37 Conn.App. 303, 313-314, 655 A.2d 1146, 1151 (Conn.App.), *cert. denied*, 233 Conn. 909 (1995) ("When two statutes conflict, however, as in the present case, the more specific legislation governs over the general legislation"); *Edmond v. U.S.*, 520 U.S. 651, 657, 117 S.Ct. 1573, 1578 (1997) ("Ordinarily, where a specific provision conflicts with a general one, the specific governs"); *McKinley v. Musshorn*, 185 Conn. 616, 624, 441 A.2d 600 (1981).

As the United States Supreme Court explained in *Varity Corp. v. Howe* 516 U.S. 489, 511, 116 S.Ct. 1065, 1077 (1996): "This Court has understood the present canon ('the specific governs the general') as a warning against applying a general provision when doing so would undermine limitations created by a more specific provision." Allowing MLCC to argue that some other general item in the Altered Power of Attorney authorized Newman to do what Line C and section 1-46 specifically precluded him from doing would "undermine limitations created by" section 1-46.

By precluding Newman from entering into "bond, share and commodity transactions," the Altered Power of Attorney plainly precluded Newman from entering into the stock pledge that MLCC contends was effected by Newman's signature on the Pledge Agreement. There is no dispute that MLCC knew of this limitation. Therefore, even if the Altered Power of Attorney were a valid document (which it is not), the Court should find, and instruct the jury, that the Altered POA did not authorize Newman to pledge Ms. Miller's securities.

**MOTION 5:**  **MLCC CANNOT ESTABLISH A RATIFICATION DEFENSE WITHOUT PROVING THAT IT GAVE MS. MILLER THE OPPORTUNITY TO UNWIND THE LOAN TRANSACTION, WITHOUT COST OR DAMAGE TO HER**

MLCC has argued that, even if Newman was not authorized to bind Ms. Miller to the 1999 loan transaction, she ratified the transaction. The Court, in ruling that questions of fact existed regarding that defense, held, in pertinent part:

> To ratify an "unauthorized act of an agent and make it effectual and obligatory upon the principal, the general rule is that the ratification must be made by the principal with a full and complete knowledge of all the material facts connected with the transaction to which it relates. . . ." <u>Cohen v. Holloways', Inc.</u>, 158 Conn. 395, 408 (1969).

(Summary Judgment Decision at 11).

The Supreme Court has emphasized that a party seeking to establish ratification must prove an "*intent* to ratify[.]" *Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 185, 510 A.2d 972, 979 (1986) (emphasis in original). In *Russell*, the Supreme Court specifically approved the following jury instruction regarding the *intent* prong of ratification:

> Before the plaintiff can be held to have ratified acts of the defendants which you find to have initially been unauthorized [by] the plaintiff, it is essential that [the plaintiff] had the privilege and opportunity of repudiating the unauthorized transaction if he did not choose to ratify it. **Thus, you must find that [the plaintiff] was given an opportunity to repudiate any transaction you find was unauthorized without any cost to [the plaintiff] or damage to [the plaintiff] as a result of the unauthorized transaction if he chose to repudiate it.** [emphasis added].

200 Conn. at 185-86, 510 A.2d at 980. The court rejected the argument that this instruction created a new element in the definition of ratification, and held that, instead, it served: "to clarify the requirement that the jury may find that a party ratified a transaction only if the jury finds an intent to ratify it. ... The challenged instructions cautioned the jurors that they could not permissibly infer such an intent from the plaintiff's inaction if he lacked the ability by his action to undo the disputed

10

transaction. We have emphasized in the past that the finding of a free and informed decision to ratify is a prerequisite to a finding of ratification." *Id.*

This Court acknowledged that the opportunity to invalidate a transaction is an important element of establishing an intent to ratify the transaction: "The evidence also indicates that plaintiff did not know that the 1999 loan could potentially be invalidated due to the allegedly defective Power-of-Attorney until shortly before this action was filed in 2003." (Summary Judgment Order at 12).

Certainly, ratification cannot be established by trickery. MLCC cannot close an unauthorized transaction, refuse to disclose the true facts surrounding that transaction, and then argue that the passage of time, or execution of boilerplate documents, evidenced Ms. Miller's *intent* to ratify the unauthorized acts. By this motion, we ask the Court to confirm that it will instruct the jury that it cannot find an intent to ratify without proof that Ms. Miller was given the opportunity to undo the 1999 loan transaction without cost or penalty (in addition to the other elements of ratification).

**MOTION 6:    MLCC SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OR ARGUMENT REGARDING MS. MILLER'S SPENDING**

We expect that MLCC will attempt to introduce argument and/or evidence concerning the size of Ms. Miller's house, its finishes and furnishings, and concerning other purchases and/or expenditures she made. Such evidence and argument has no place in this trial. It certainly is not relevant to the conversion claim, which is the only claim that the jury will be asked to determine. Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible"). As the Second Circuit held in *U.S. v. Kahaner*, 317 F.2d 459, 472 (2d Cir.), *cert denied*, 375 U.S. 835 (1963): "'Legal relevancy denotes, first of all, something more than a minimum of probative value. Each single piece of

11

evidence must have a plus value.' 1 Wigmore, supra, at 409-10. The court did not err in concluding that the proffered evidence did not meet this standard- particularly in view of the areas that might have had to be opened for rebuttal by the Government if the evidence had been admitted. Trial judges have wide discretion to exclude for remoteness."

The size of Ms. Miller's house, or the amount of money she spent on the house (or anything else) has no relevance to the question whether MLCC converted Ms. Miller's securities when it sold them in 2003. Instead, the conversion claim will turn on the issues such as the validity of the Altered Power of Attorney, the scope of Newman's authority (if he had any), and whether Ms. Miller ratified the loan transaction.

To the extent such evidence had any probative value at all (and it does not), it would be substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. "The trial court has considerable discretion in determining whether to admit or exclude evidence, and to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion, or by its cumulative nature[.]" *Gierlinger v. Gleason*, 160 F.3d 858, 871 (2d Cir. 1998) (citations and internal quotes omitted).

## CONCLUSION

For the reasons set forth above, the Court should grant Ms. Miller's *in limine* motions.

BEGOS & HORGAN, LLP

By: _____
    Patrick W. Begos (ct 19090)
    Attorneys for Plaintiff
    327 Riverside Avenue
    Westport, CT 06880
    (203) 226-9990

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served by overnight mail on April 3, 2007 to:

Theodore Krebsbach, Esq.
Krebsbach & Snyder
Suite 1600
55 Broadway
New York, NY 10006

Jonathan S. Bowman, Esq.
Cohen & Wolf
1115 Broad Street
Bridgeport, CT 06604

Patrick W. Begos

13