UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIE DILLON RIPLEY MILLER,<br><br>Plaintiff,<br><br>- against -<br><br>MERRILL LYNCH CREDIT<br>CORPORATION,<br><br>Defendant. | NO. 3:03-CV-1016 (WWE)<br><br><br><br><br>June 4, 2007 |

## DEFENDANT MERRILL LYNCH
## CREDIT CORPORATION'S MOTIONS *IN LIMINE*

Defendant Merrill Lynch Credit Corporation ("MLCC"), by its attorneys,

Krebsbach & Snyder, P.C. and Cohen and Wolf, P.C., as and for its motions *in limine,*

respectfully represents as follows:[1]

1.    For the reasons set forth in the Declaration of Barry S. Gold, dated June 4,

2007 and the exhibits annexed thereto, the memorandum of law in support of the motions

and upon all prior proceedings heretofore had herein, MLCC respectfully requests that this

Court issue an order declaring:

- on Motion No. 1, that the power of attorney, as modified by Mr. Falini with

  plaintiff's knowledge and consent, is valid;

---

[1]   MLCC recently assigned the note and mortgage at issue in this case to Merrill Lynch
Bank USA ("MLBUSA").  Accordingly, MLCC and MLBUSA will shortly file a motion for leave
to amend the answer to include the substitution of MLBUSA as the counterclaim-plaintiff on all
counterclaims, including the counterclaim for foreclosure and the counterclaim to recover under the
note.

**ORAL ARGUMENT REQUESTED**

- on Motion No. 2, that the power of attorney, as modified, authorized plaintiff's attorney-in-fact to enter into the Pledge Agreement on plaintiff's behalf;

- on Motion No. 3, that, because the Court has previously made certain findings -- as a matter of undisputed fact -- regarding the modifications made by Jay Falini, plaintiff's broker at Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("MLPFS"), to the power of attorney, those findings are the law of the case and all evidence and argument on that issue are excluded at trial;

- on Motion No. 4, that all evidence and argument of supposed misconduct on the part of MLPFS and Mr. Falini are excluded at trial because (i) the Court has already found as a matter of undisputed fact that Mr. Falini did not act improperly, (ii) such evidence and argument were the subject of the now-concluded arbitration proceeding in which MLPFS and Mr. Falini were respondents, and (iii) such evidence and argument are barred by plaintiff's release of MLPFS and Mr. Falini;

- on Motion No. 5, that, under the rules governing hearsay, plaintiff may not offer at trial against MLCC any testimony given at the arbitration hearing; and

- granting such other and further relief as may appear just and proper.

Dated:  June 4, 2007

KREBSBACH & SNYDER, P.C.
Attorneys for Defendant


Theodore A. Krebsbach, Esq. (ct 04917)
Barry S. Gold, Esq. (phv 01650)
One Exchange Plaza
55 Broadway, Suite 1600
New York, NY 10006
212-825-9811
212-825-9828 (fax)
E-Mail:  tkrebsbach@krebsbach.com
           bgold@krebsbach.com

COHEN AND WOLF
Jonathan S. Bowman (ct 08526)
Ari Hoffman (ct 22516)
1115 Broad Street
Bridgeport, CT 06604
203-368-0211
203-576-8504 (fax)
E-Mail:  jbowman@cohenandwolf.com
           ahoffman@cohenandwolf.com

## CERTIFICATE OF SERVICE

This is to certify that on this 4th day of June, 2007, a copy of the foregoing was delivered via e-mail and first class United States mail to:

> Patrick W. Begos, Esq.
> Christopher Brown, Esq.
> BEGOS & HORGAN, LLP
> 327 Riverside Avenue
> Westport, CT 06880
>
> Jonathan S. Bowman, Esq.
> Ari Hoffman, Esq.
> COHEN AND WOLF
> 1115 Broad Street
> Bridgeport, CT  06604

_____
Barry S. Gold

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIE DILLON RIPLEY MILLER, | NO. 3:03-CV-1016 (WWE) |
| Plaintiff, | |
| - against - | |
| MERRILL LYNCH CREDIT CORPORATION, | June 4, 2007 |
| Defendant. | |

## DEFENDANT MERRILL LYNCH CREDIT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE*

Defendant Merrill Lynch Credit Corporation ("MLCC") respectfully submits this memorandum of law in support of its motions *in limine.*[1]

### PRELIMINARY STATEMENT

This action involves a $7.5 million loan transaction plaintiff entered into in 1999 for the purpose of financing the remaining construction on her 9,300 square foot mansion in Norwalk, Connecticut. In its decision on the parties' summary judgment motions, the Court found the following facts to be undisputed: (1) plaintiff intended to, and did in fact, borrow all of the $7.5 million, (2) plaintiff spent all of the $7.5 million on her home and on other personal discretionary expenses, (3) plaintiff intended to, and did in fact, give MLCC a mortgage on her home as security for the loan, (4) plaintiff last made a payment to

---

[1]    MLCC recently assigned the note and mortgage at issue in this case to Merrill Lynch Bank USA ("MLBUSA"). Accordingly, MLCC and MLBUSA will shortly file a motion for leave to amend the answer to include the substitution of MLBUSA as the counterclaim-plaintiff on all counterclaims, including the counterclaim for foreclosure and the counterclaim to recover under the note.

**ORAL ARGUMENT REQUESTED**

MLCC in January 2003, and (5) plaintiff pledged certain securities to MLCC as additional collateral for the loan.

There is one additional fact -- regarding plaintiff's pledging of securities -- that was disputed at the time the Court rendered its decision on the summary judgment motions but is no longer disputed. Notwithstanding plaintiff's repeated sworn statements to this Court to the contrary, ***plaintiff now admits she was fully aware prior to the closing that she would be pledging her securities to MLCC.*** Plaintiff made this admission under oath at the trial of the arbitration proceeding she commenced against Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("MLPFS"). *See* Arbitration Hearing Transcript, p. 1011, line 13 – p. 1012, line 11 A copy of these pages is annexed to the Declaration of Barry S. Gold, Esq., dated June 4, 2007, in Support of MLCC's Motions *In Limine* ("Gold Dec.") as Exhibit A.

By way of further background, there are additional facts not in dispute relevant to ratification, which is potentially an important issue in this case: (1) plaintiff made *37* monthly mortgage payments from December 1999 through January 2003 without objection and without even a hint there was anything improper about the loan or her repayment obligations and (2) plaintiff received *37* monthly account statements showing millions of dollars of securities in the pledge account (clearly designated in the monthly account statements as an account in plaintiff's name "f/b/o MLCC") and made the monthly mortgage payments for *37* months without objection and without even a hint there was anything improper about the pledge of her securities.

Plaintiff now owes MLCC nearly $12 million, inclusive of principal, interest, taxes paid by MLCC on plaintiff's behalf, late charges and attorney's fees. At the end of the

day, this is a simple case because we come back to the same unremarkable, undisputed facts: Plaintiff borrowed the money; plaintiff spent the money and, like anyone else who has ever borrowed money, she has an obligation to repay it.[2]

## MOTION NO. 1

### THE POWER OF ATTORNEY, AS MODIFIED BY MR. FALINI WITH PLAINTIFF'S KNOWLEDGE AND CONSENT, *IS* VALID

Central to plaintiff's claims and defenses in this case is her hyper-technical argument that the power of attorney, pursuant to which her attorney-in-fact executed the loan documents, is "defective" and, therefore, the documents executed pursuant to the power of attorney are invalid. According to plaintiff, the power of attorney is "defective" because, after it was modified by Jay Falini, plaintiff's broker at MLPFS (as modified and recorded, the "Power of Attorney"), so that it would confer the powers plaintiff wanted and needed to confer, it was not re-acknowledged before a notary and it was not re-attested by two witnesses. *See* Plaintiff's Motions *In Limine,* Motion 3. Relying upon a *177* year old case -- which is readily distinguishable in any event -- plaintiff asks the Court to allow her to walk away from her $7.5 million loan obligation (plus interest and other charges) by reason of this alleged technical defect. Needless to say, where, as here, the Court has found as a matter of undisputed fact that Mr. Falini's modifications merely implemented what plaintiff set out to do in the first place, and were made in plaintiff's presence with her knowledge and consent, such a result would be grossly inequitable. Under such

---

[2]   Presently pending before the Court are *plaintiff's* motions *in limine.* MLCC has submitted a detailed memorandum of law in opposition to those motions ("MLCC Opposition") and, rather than repeating in this memorandum all of the points raised therein, MLCC will highlight certain of the points where appropriate and otherwise incorporates by reference the MLCC Opposition into this memorandum of law.

circumstances, letting plaintiff avoid her obligations would be an unwarranted triumph of form over substance that would leave MLCC "holding" what will amount to nearly a $12 million "bag." Moreover, as explained below, under the relevant statutory and caselaw, the Power of Attorney *is* valid.

**The Court's Findings Of *Undisputed* Facts**

In its decision on the parties' motions for summary judgment, the Court made important findings of undisputed fact with respect to plaintiff's intent regarding the power of attorney and the modifications made by Mr. Falini to the instrument. (A copy of the Ruling on Pending Motions, dated December 6, 2005 ["Summary Judgment Decision"], is annexed as Exhibit B to the Gold Dec.) To summarize those findings, the Court found as a matter of undisputed fact that each and every one of the changes to the power of attorney was made in plaintiff's presence and with her knowledge and consent. First, the Court found that Mr. Falini, plaintiff's broker at MLPFS, had discussed with plaintiff the concept of a power of attorney and having Barry Newman (her accountant) serve as the attorney-in-fact:

> The loan was scheduled to close in December 1999 when plaintiff planned to be in Africa with her family. Therefore, Falini advised her to execute a power of attorney. *Miller and Falini discussed a plan to have Barry Newman, plaintiff's accountant, serve as her attorney-in-fact for the closing.*

Summary Judgment Decision, Gold Dec., Exh. B, p. 4 (emphasis added).

Next, the Court found that plaintiff had intended to confer upon Mr. Newman the power to enter into real estate and banking transactions, but made an error in filling out the short form power of attorney form:

On December 2, plaintiff executed a Statutory Short Form Power of Attorney, which instructed:

Strike out and initial in the opposite box any one or more of the subdivisions as to which the principal does NOT desire to give the agent authority.

*Plaintiff had initialed the boxes for real estate and banking transactions, signed the form before two witnesses, and acknowledged it before a notary. She gave the executed Short Form Power of Attorney to Falini.*

Harvey Rosenblum, MLCC's loan officer, informed Falini that the power of attorney did not authorize the appropriate powers for closing on the loan. The closing required execution of a note to evidence the debt, a mortgage to secure MLCC's interest in the real property, and a pledge agreement as additional security. Accordingly, the power of attorney needed to authorize banking and real estate transactions. As Kevin Huben, MLCC's closing agent, informed Falini, the power of attorney was "initialed where it should not have been and not initialed where it should have been initialed." Further, the form failed to indicate who was to be the attorney-in-fact.

*Id.* at pp. 4-5 (emphasis added).

Critically, the Court found that Mr. Falini had explained the mistake to plaintiff and made the needed corrections to the Power of Attorney (1) at plaintiff's home, (2) in her presence, and (3) with her knowledge and consent:

***Falini informed plaintiff that the attorney-in-fact did not need authority to sell her stock, but that he needed more authority to close the loan. At her house and in her presence, Falini "whited out" plaintiff's markings and initials next to real estate and banking transactions, and wrote in her initials next to the other powers required to close on the loan. The name of Barry Newman was also written onto the form.***

*Id.* at 5 (emphasis added).

5

Finally, Barry Newman, acting as plaintiff's attorney-in-fact pursuant to the Power of Attorney, executed the loan documents so that plaintiff could obtain the $7.5 million loan from MLCC:

> This version of the power of attorney (the "Altered Power of Attorney") was then faxed to Rosenblum, who found it sufficient for closing the loan. Subsequently, on behalf of the plaintiff, Newman as attorney-in-fact executed a construction loan agreement, an adjustable rate promissory note for a loan of $7,500,000, a mortgage on the 21 Point Road residence, and a Mortgage 100 Pledge Agreement for Securities Account.

*Id.* at pp. 5-6 (emphasis added).

In short, the Court has found *as a matter of undisputed fact* that there was nothing nefarious about the changes to the power of attorney and, moreover, that the final version of the Power of Attorney (with the modifications) exactly reflected plaintiff's intent to give her agent the necessary power to enter into real estate and banking transactions. Accordingly, the Court should not be distracted by plaintiff's crafty legal argument that the absence of an acknowledgment by a notary and attestation by two witnesses after the modifications should somehow allow her to walk away -- "scot-free" -- from repaying the millions of dollars she borrowed and now owes.

**To The Extent The Power Of Attorney, As Modified,
Is Defective In Any Way, C.G.S.A. § 47-36aa "Corrects"
Any Such Defects And Validates The Power Of Attorney**

It is not only as a matter of equity, but also as a matter of law, that the Power of Attorney is valid. Unfortunately for plaintiff, C.G.S.A. § 47-36aa, entitled "Validation of Conveyance Defects" and known as the "Validating Statute," expressly provides that defects in instruments of the kind plaintiff relies on here are deemed "corrected":

        (a) Conveyancing defects.  Any deed, mortgage, lease, ***power of attorney***, . . . made for the purpose of conveying, leasing, mortgaging or affecting any interest in real property in this state ***recorded after January 1, 1997,*** which instrument contains any one or more of the following defects or omissions ***is as valid as if it had been executed without the defect or omission unless an action challenging the validity of that instrument is commenced and a notice of lis pendens is recorded in the land records of the town or towns where the instrument is recorded within two years after the instrument is recorded:***

        (1) ***The instrument contains a defective acknowledgment or no acknowledgment;***

        (2) ***The instrument is attested by one witness only or by no witnesses;*** . . .

(Emphasis added).

       Thus, refusing to exalt form over substance, the Connecticut legislature has determined that defects in a power of attorney of the kind plaintiff alleges here are immaterial and should be deemed "corrected" ***unless*** the party alleging the defect has commenced an action within the two year time period required by the statute.  Here, the Power of Attorney was recorded on December 20, 1999 and it is indisputable that plaintiff did not commence this lawsuit until on or about April 23, 2003, which is more than two years after the recording date.  (A copy of the recorded Power of Attorney reflecting the recording date on page 3 of the exhibit is annexed as Exhibit C to the Gold Dec.)

       The relevant caselaw construing the Validating Statute confirms its applicability here.  For example, in *Greene v. Greene,* 2001 Conn. Super. LEXIS 1160 (Sup. Ct.), the plaintiff mother gave her defendant son a power of attorney, which he used to sign a deed transferring to himself the mother's property.  Just as plaintiff here seeks to void the $7.5 million loan transaction with MLCC on the basis of purported defects in the Power of

Attorney, the plaintiff mother in *Greene* attempted to void the deed pursuant to which her property was transferred on the ground that the power of attorney she signed lacked attesting witnesses. The court took note of the attestation requirement for deeds and found that the Validating Statute would have validated the defect but for the fact that an action had been commenced within the two year time period.

**The 177 Year Old Case Cited By Plaintiff Is Inapposite**

Plaintiff's reliance on a 177 year old case -- *Coit v. Starkweather*, 8 Conn. 289 (1830) -- is unavailing for several reasons. First, while *Coit* holds that a *deed* (not a power of attorney) altered after it has been acknowledged is not valid without a new acknowledgment and attestation, it makes clear that such new acknowledgment and attestation are required *only if the alteration is material.* Inasmuch as the changes to the Power of Attorney were -- as the Court has found as a matter of undisputed fact -- made in plaintiff's presence and with her knowledge and consent, those alterations cannot be deemed to be *material. See, e.g.*, 3A *Corpus Juris Secundum* § 75 ("In general it may be said that the filling of a blank in a sealed instrument, even after its execution, *where done under proper authority or with consent*, does not constitute a material alteration.") (emphasis added). Thus, no re-acknowledgment or re-attestation was necessary.

Second, to the extent the Court is considering applying *Coit* -- and it should not -- *Coit* has clearly been statutorily overruled by the Validating Statute, which rejects the "form over substance" holding of *Coit* by validating a power of attorney, such as the one at issue here, that lacks an acknowledgment and/or an attestation.

In sum, the Power of Attorney, as modified by Mr. Falini to reflect plaintiff's express intent to confer upon Mr. Newman the power to enter into real estate and banking transactions on her behalf, *is* valid.

## MOTION NO. 2

### THE POWER OF ATTORNEY, AS MODIFIED, EXPRESSLY AUTHORIZED PLAINTIFF'S ATTORNEY-IN-FACT TO ENTER INTO THE PLEDGE AGREEMENT ON HER BEHALF

As the Court has found, on December 2, 1999, plaintiff executed a Connecticut short form power of attorney at her local bank, intending to give Barry Newman the power to enter into banking and real estate transactions on her behalf. Unfortunately, plaintiff marked and initialed the form incorrectly and, as a result, the instrument needed to be modified. After consultation with MLCC and the title company, Mr. Falini (plaintiff's broker at MLPFS), who was assisting plaintiff with the loan, made certain changes to the instrument *at plaintiff's home, in her presence and with her knowledge and consent* so that the power of attorney properly conferred upon Mr. Newman the authority to enter into "banking" and "real estate" transactions – exactly the powers plaintiff wanted and needed to confer. As we explain below, by conferring such powers upon Mr. Newman, plaintiff expressly conferred upon him the power to enter into the Pledge Agreement on her behalf.

The Connecticut Statutory Short Form Power of Attorney Act (C.G.S.A. § 1-42 *et seq.*) is structured so that each power listed on the short form power of attorney form has a corresponding statute explaining what authority is conferred by that power. It is clear from the statutory language that the authority granted by each of the powers is quite expansive and that the legislature's intent was to make certain an agent appointed under a power of attorney had *all* of the powers he/she might possibly need to carry out the

principal's wishes.  Indeed, C.G.S.A. § 1-43 and the short form power of attorney form itself expressly state:

> Notice: ***The powers granted by this document are broad and sweeping.*** They are defined in Connecticut Statutory Short Form Power of Attorney Act, sections 1-42 to 1-56, inclusive, of the general statutes (emphasis added).

As further evidence that the powers conferred are intended to be "broad and sweeping," not only does each section of the statute describe the specific authority being conferred, it also includes general "catch-all" provisions authorizing the agent in the broadest language imaginable to take whatever steps are necessary to complete the transaction successfully.  For example, C.G.S.A. § 1-44, which governs the power to enter into real estate transactions (one of the two powers plaintiff conferred upon Mr. Newman), provides in subparagraph (8) that the agent is authorized "to agree and to contract, in any manner, and with any person and on any terms, which the agent may select, for the accomplishment of any of the purposes enumerated in this section" and, in subparagraph (9), that the agent is authorized "to execute, to acknowledge, to seal and to deliver any . . . instrument which the agent may think useful for the accomplishment of any of the purposes enumerated in this section."  One of the many "purposes" enumerated in the section is the conveyance of a mortgage.  Needless to say, plaintiff would never have been able to convey a mortgage to MLCC in return for a $7.5 million loan unless Mr. Newman, her designated attorney-in-fact, executed and delivered the Pledge Agreement on her behalf.  C.G.S.A. § 1-44 authorized him to do just that.

Similarly, C.G.S.A. § 1-47, which governs banking transactions (the second of the powers plaintiff conferred upon Mr. Newman), provides in subparagraph (14) that the agent is authorized "to execute, acknowledge, seal and deliver any instrument of any kind,

in the name of the principal or otherwise, which the agent deems useful for the accomplishment of any of the purposes enumerated in this section" and, in subparagraph (17), that the agent is authorized "in general, and in addition to all the specific acts in this section enumerated, to do any other act or acts, which the principal can do through an agent, in connection with any banking transaction which does or might in any way affect the financial or other interests of the principal." One of the many "purposes" and "banking transactions" enumerated in the section is the borrowing of money. Of course, plaintiff would never have been able to borrow $7.5 million from MLCC unless Mr. Newman, on behalf of plaintiff, executed and delivered the Pledge Agreement. C.G.S.A. § 1-47 authorized him to do just that.[3]

Plaintiff correctly notes in her own Motions *In Limine* that C.G.S.A. § 1-46, entitled "Bond, share and commodity transactions," provides that in a Connecticut short form power of attorney, "the language conferring general authority with respect to bond, share and commodity transactions shall be construed to mean that the principal authorizes the agent: . . . (2) to . . . pledge, . . . any bond, share . . . ." However, as explained above, that is *not* the only power which authorizes an agent to pledge assets. Lest there be any doubt about this, the Court need only look a bit more closely at C.G.S.A. § 1-47, which governs banking transactions, because one of the *express* powers spelled out in subparagraph (7) is the power to pledge assets:

> In a statutory short form power of attorney, the language
> conferring general authority with respect to banking

---

[3]   As further evidence of the legislature's intent to cloak broadly an agent with *all* the powers he/she might need, other sections of the Short Form Power of Attorney Act contain similar "catch-all" provisions. *See, e.g.,* C.G.S.A. § 1-45(10) (chattel and goods transactions); C.G.S.A. § 1-48(10) (business operating transactions); C.G.S.A. § 1-49(13) (insurance transactions).

transactions shall be construed to mean that the principal authorizes the agent: . . . (7) to borrow money . . . by promissory note of the principal and *to give such security out of the assets of the principal as the agent deems desirable or necessary for any such borrowing* (emphasis added).

Plaintiff makes reference in her Motions *in Limine* to the well-known maxim of statutory construction that when two statutes conflict, the more specific statute governs over the more general statute. The reference is futile. First, C.G.S.A. § 1-46's use of the word "pledge" is no more specific than C.G.S.A. § 1-47's use of the words "to give such security out of the assets of the principal as the agent deems desirable or necessary for any such borrowing." Second, and more importantly, this rule of statutory construction is irrelevant for the simple reason that *there is no conflict between the statutes.* That the same act -- pledging assets -- may be authorized in two or more statutes does not mean the statutes are in conflict. To the contrary, it demonstrates a legislative intent to make certain the agent has all the authority he/she needs to successfully complete the transaction

Thus, consistent with the legislature's intent as reflected in the statutory language, the power to enter into banking and real estate transactions clearly, and expressly, conferred upon Mr. Newman the authority to pledge plaintiff's assets and, accordingly, to execute the Pledge Agreement on her behalf.

## MOTION NO. 3

### BECAUSE THE COURT HAS PREVIOUSLY MADE CERTAIN FINDINGS -- *AS A MATTER OF UNDISPUTED FACT* -- REGARDING THE MODIFICATIONS MADE BY MR. FALINI TO THE POWER OF ATTORNEY, THE COURT SHOULD EXCLUDE ALL EVIDENCE AND ARGUMENT AT TRIAL ON THAT ISSUE

We anticipate plaintiff will seek to offer certain purported "evidence" at trial, including, perhaps, testimony from a handwriting expert, regarding the modifications

made by Mr. Falini to the power of attorney in an effort to depict these changes as part of some dark, "nefarious" plot to disadvantage plaintiff. The Court, however, has already weighed all of this evidence and found, ***as a matter of undisputed fact***, that there was nothing nefarious about the changes to the power of attorney because (1) each and every one of the changes to the power of attorney was made in plaintiff's presence and with her knowledge and consent and (2) the final version of the Power of Attorney (with modifications) exactly reflected plaintiff's intent. Given the Court's findings, allowing evidence or argument on this issue at trial would be inappropriate and would unnecessarily extend what already promises to be a lengthy trial.

Moreover, allowing such evidence would violate the law of the case doctrine, pursuant to which district courts are *permitted* to revisit prior decisions but are *strongly discouraged* from doing so. As the United States Supreme Court has stated, district courts "should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 816, 108 S. Ct. 2166, 2178 (1988), *quoting Arizona v. California,* 460 U.S. 605, 618 n. 8 (1983).

While the law of the case doctrine is a rule of practice and has "flexibility," it is strictly followed because of the important judicial policy favoring finality of decisions. *Remington Prods., Inc. v. North American Philips, Corp.,* 755 F. Supp. 52 (D. Conn. 1991). As the Second Circuit has stated:

> Under the law-of-the-case doctrine, we will generally adhere to our own earlier decisions on a given issue in the same litigation. Though the issue is not closed with all of the finality of *res judicata,* and though in appropriate circumstances we may exercise our discretion to review the

13

> earlier ruling, the strong policy favoring finality impels us
> to exercise the power to review such rulings only sparingly.

*U.S. v. Adegbite*, 877 F.2d 174, 176 (2d Cir.) (citations omitted), *cert. den., Obalaja v. United States*, 495 U.S. 956, 110 S. Ct. 370 (1989), *quoted in Remington Prods.*, 755 F. Supp. at 54.

It is widely recognized that only three circumstances justify reconsideration of an earlier decision in a case: (1) an intervening change in controlling law, (2) new evidence and (3) the need to correct a clear error of law or to prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992); *Remington Prods., supra.* None of those circumstances is present here. First, there has been no intervening change in the controlling law. Second, because the Summary Judgment Decision was rendered after the conclusion of what was lengthy and exhaustive discovery, *all* of the evidence was before the Court when it made its findings. Finally, the Court's findings of undisputed fact regarding the modifications to the power of attorney were clearly *correct*, not clearly *erroneous*, and the only manifest injustice that needs to be prevented here is plaintiff's attempt to walk away from her $12 million debt in not paying a dime.

Accordingly, there is no reason for the Court to reconsider its earlier findings. The Court should preclude plaintiff from offering any purported "evidence" at trial inconsistent with the Courts' findings, or otherwise arguing there was anything "nefarious" in connection with the modifications made by Mr. Falini to the power of attorney.[4]

---

[4] We note the Court has already ruled that the testimony of plaintiff's handwriting expert was irrelevant because Mr. Falini had identified the writing on the Power of Attorney as his own. *See* Summary Judgment Decision, Gold Dec., Exh. B, p. 18.

Furthermore, plaintiff is precluded from attempting, at trial, to burden MLCC with any of Mr. Falini's actions, because in the agreement settling the arbitration proceeding, plaintiff expressly released Mr. Falini and MLPFS. *See* Motion No. 4, below.

## MOTION NO. 4

### THE COURT SHOULD EXCLUDE ALL EVIDENCE AND ARGUMENT OF SUPPOSED MISCONDUCT ON THE PART OF MLPFS AND MR. FALINI BECAUSE SUCH EVIDENCE AND ARGUMENT WERE THE SUBJECT OF THE NOW-CONCLUDED ARBITRATION PROCEEDING AND ARE BARRED BY PLAINTIFF'S RELEASE OF MLPFS AND MR. FALINI

It is clear from the Third Amended Complaint that plaintiff hopes to impute to MLCC responsibility and liability for Mr. Falini's supposed misconduct in connection with the closing of the loan. Specifically, plaintiff (1) alleges in the Third Amended Complaint that Mr. Falini "never disclosed to Plaintiff that the Loan involved a pledge of Plaintiff's Account" and (2) devotes the bulk of the complaint to describing the changes to the power of attorney made by Mr. Falini, as if those changes were somehow improper. *See* Third Amended Complaint, ¶¶ 6-13. (A copy of the Third Amended Complaint is annexed as Exhibit D to the Gold Dec.) According to plaintiff, MLCC is liable for Mr. Falini's actions because, allegedly, Mr. Falini was acting as MLCC's agent:

> Falini's actions in arranging the Loan, obtaining documents necessary to close, and orchestrating the closing demonstrate that, at all relevant times, he had actual, implied and/or apparent authority to act *as MLCC's agent*.

Third Amended Complaint, Gold Dec. Exh. D, ¶ 6 (emphasis added).

The Court should exclude any evidence and argument relating to Mr. Falini's supposed misconduct for several reasons. First, as discussed above, there was no misconduct. The Court now knows from plaintiff's own testimony at the arbitration

hearing what MLCC has always known -- that plaintiff knew full-well prior to the closing that she would be pledging her securities to MLCC as additional collateral for the loan. *See* Gold Dec., Exh. A. It should come as no surprise that plaintiff knew all about the pledge requirement prior to the closing because, among other reasons, two years earlier plaintiff obtained a similar loan from MLCC under MLCC's Mortgage 100 program (in the amount of $1.35 million) to purchase the house she would now be reconstructing and that loan also had a pledge requirement. In fact, by the time of the $7.5 million loan closing in December 1999, plaintiff had been living with a pledge account in connection with the first loan for more than two years.

Evidence regarding Mr. Falini's changes to the power of attorney should also be excluded because this Court has already found *as a matter of undisputed fact* that Mr. Falini did not act improperly. *See* Motion No. 3 above. To the contrary, Mr. Falini merely modified the power of attorney in front of plaintiff to make sure the instrument conferred exactly those powers *she wished* and *she needed* it to confer so that she could obtain the $7.5 million loan from MLCC *she wanted*.

Second, even if plaintiff could demonstrate that Mr. Falini, an employee of MLPFS and not MLCC, was acting as MLCC's agent -- which she cannot[5] -- evidence and argument of his supposed wrongdoing should be barred because it was the subject of the arbitration proceeding *brought against Mr. Falini and MLPFS*, which was settled in December 2006. Mr. Falini and MLPFS are not defendants in this proceeding and allegations as to their supposed wrongdoing have no place in this lawsuit.

---

[5] Plaintiff, of course, has the burden of proof on this issue.

Third, plaintiff is barred as a matter of law from imputing to MLCC liability for any of Mr. Falini's and MLPFS's actions because, in the settlement agreement plaintiff entered into with respect to the arbitration, she expressly released Mr. Falini and MLPFS. (A redacted copy of the Release section (Section 2) of the settlement agreement is annexed as Exhibit E to the Gold Dec.) The law in Connecticut is clear: where, as here, the liability sought to be imposed upon a party is based derivatively upon the conduct of that party's purported agent and is therefore vicarious, the release of the agent constitutes the release of the principal.

In *Alvarez v. New Haven Register, Inc.*, 249 Conn. 709, 735 A.2d 306 (1999), a motor vehicle accident victim brought an action against one Ziolo, the driver of the vehicle. The plaintiff and Ziolo agreed to settle for $90,000 and entered into a settlement agreement pursuant to which, among other things, the plaintiff released Ziolo. Thereafter, because Ziolo was acting within the scope of his employment, the plaintiff commenced an action against Ziolo's employer, the New Haven Register (the "Register"), alleging that the Register was vicariously liable. The Register moved for summary judgment dismissing the action on the ground that the release which had been executed by the plaintiff in favor of its employee, discharged the Register from any vicarious liability. In response, the plaintiff filed an affidavit stating that he never intended to release the Register and always intended to pursue his claim against it. At issue was the meaning of C.G.S.A. § 52-572e, which provides that the release of one joint tortfeasor does not release any other joint tortfeasor. The Connecticut Supreme Court affirmed the trial court's decision granting the motion, finding that Ziolo and the Register were not joint tortfeasors because the Register, like any other employer, was not *independently* liable for its

employee's negligence.    Instead, the Register was only *vicariously* liable and, consequently, C.G.S.A. § 52-572e did not apply:

> By holding that § 52-572e does not apply to vicariously liable defendants, the release of the agent removes the only basis for imputing liability to the principal.

249 Conn. at 725, 735 A.2d at 315.

Three years later, in *Cunha v. Colon,* 260 Conn. 15, 792 A.2d 832 (2002), the Connecticut Supreme Court followed *Alvarez* in holding that a lessor and lessee were not joint tortfeasors and, consequently, that a release executed in favor of the lessee also operated to release the lessor:

> As we explained in *Alvarez,* however, § 52-572e was intended to apply only to joint tortfeasors who are *independently* at fault on the basis of their own tortious conduct, and not to individuals or entities whose sole liability is *derivative* or *vicarious* in nature.

260 Conn. at 20, 792 A.2d at 834 (emphasis added).

Thus, it is clear in Connecticut that the release of a tortfeasor constitutes the release of all other parties whose liability is derivative or vicarious of the tortfeasor's liability. Here, even assuming Mr. Falini had acted improperly and that MLCC had some liability under the law for his actions -- neither of which is the case – MLCC's liability could only be derivative or vicarious in nature.  Accordingly, the Court should exclude from trial all evidence and argument of supposed misconduct on the part of Mr. Falini and MLPFS not only because (1) it has previously found Mr. Falini acted properly and that finding is now the law of the case, (2) allegations of wrongdoing on the part of Mr. Falini and MLPFS have no place in this lawsuit inasmuch as they were the subject of a *different* and now-concluded (arbitration) proceeding in which Mr. Falini and MLPFS were the respondents,

18

but also because (3) the release of Mr. Falini and MLPFS effected a release of MLCC with

respect to any alleged improper conduct on the part of Mr. Falini and MLPFS.[6]

## MOTION NO. 5

### UNDER THE RULES GOVERNING HEARSAY, PLAINTIFF MAY NOT OFFER AT TRIAL AGAINST MLCC ANY TESTIMONY GIVEN AT THE ARBITRATION HEARING

Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement, other

than one made by the declarant while testifying at the trial or hearing, offered in evidence

to prove the truth of the matter asserted." Rule 802 provides that hearsay is not admissible

except as provided by the Federal Rules of Evidence or other rules prescribed by the

Supreme Court. Because former testimony offered for the truth of the matter asserted is

clearly hearsay, plaintiff may not offer at trial against MLCC any testimony given at the

arbitration hearing unless there is an applicable hearsay exception.

The only hearsay exception relating to former testimony is found in Rule 804(b) of

the Federal Rules of Evidence, which provides that former testimony is not admissible in a

subsequent proceeding against a party that was not a party to the prior proceeding:

> (b)    Hearsay exceptions. – The following are not
> excluded by the hearsay rule if the declarant is unavailable
> as a witness:
>
> (1) Former testimony. – Testimony given as a witness at
> another hearing of the same or a different
> proceeding, . . . , *if the party against whom the*
> *testimony is now offered, or, in a civil action or*

---

[6] To be clear, although we do not believe MLCC has done anything for which it is liable, we are not arguing that the release of MLPFS and Mr. Falini immunizes MLCC from liability for any claims as to which it is *independently* liable. Rather, the release immunizes MLCC from liability for any claims based upon actions Mr. Falini or MLPFS may have taken because MLCC's liability for those actions could only be derivative or vicarious. Accordingly, any evidence and argument relating to Mr. Falini's supposed wrongdoings should be excluded from the trial.

> ***proceeding, a predecessor in interest, had an
> opportunity and similar motive to develop the
> testimony by direct, cross or redirect examination.***

(Emphasis added).

As MLCC was ***not*** a party to the arbitration proceeding, none of the testimony given at that proceeding is admissible at this trial against MLCC.

## CONCLUSION

For the reason set forth above, MLCC respectfully requests that this Court issue an order granting MLCC's motions *in limine* in their entirety and declaring:

1.    on Motion No. 1, that the Power of Attorney, as modified by Mr. Falini with plaintiff's knowledge and consent, is valid;

2.    on Motion No. 2, that the Power of Attorney, as modified, authorized plaintiff's attorney-in-fact to enter into the Pledge Agreement on plaintiff's behalf;

3.    on Motion No. 3, that, because the Court has previously made certain findings -- as a matter of undisputed fact -- regarding the modifications made by Mr. Falini to the power of attorney, those findings are the law of the case and all evidence and argument on that issue are excluded at trial;

4.    on Motion No. 4, that all evidence and argument of supposed misconduct on the part of MLPFS and Mr. Falini are excluded at trial because (i) the Court has already found as a matter of undisputed fact that Mr. Falini did not act improperly, (ii) such evidence and argument were the subject of the now-concluded arbitration proceeding in which MLPFS and Mr. Falini were respondents, and (iii) such evidence and argument are barred by plaintiff's release of MLPFS and Mr. Falini; and

5.    on Motion No. 5, that, under the rules governing hearsay, plaintiff may not

offer at trial against MLCC any testimony given at the arbitration hearing.

Dated:  June 4, 2007

> KREBSBACH & SNYDER, P.C.
> Attorneys for Defendant
>
>
> _____
> Theodore A. Krebsbach, Esq. (ct 04917)
> Barry S. Gold, Esq. (phv 01650)
> One Exchange Plaza
> 55 Broadway, Suite 1600
> New York, NY 10006
> 212-825-9811
> 212-825-9828 (fax)
> E-Mail:  tkrebsbach@krebsbach.com
>             bgold@krebsbach.com
>
> COHEN AND WOLF
> Jonathan S. Bowman (ct 08526)
> Ari Hoffman (ct 22516)
> 1115 Broad Street
> Bridgeport, CT 06604
> 203-368-0211
> 203-576-8504 (fax)
> E-Mail:  jbowman@cohenandwolf.com
>             ahoffman@cohenandwolf.com

## CERTIFICATE OF SERVICE

This is to certify that on this 4th day of June, 2007, a copy of the foregoing was

delivered via e-mail and first class United States mail to:

        Patrick W. Begos, Esq.
        Christopher Brown, Esq.
        BEGOS & HORGAN, LLP
        327 Riverside Avenue
        Westport, CT 06880

        Jonathan S. Bowman, Esq.
        Ari Hoffman, Esq.
        COHEN AND WOLF
        1115 Broad Street
        Bridgeport, CT  06604

                        _____
                                Barry S. Gold