# EXHIBIT C

VOL 3836 PG 230     021505

C 64 G—POWER OF ATTORNEY—STATUTORY SHORT FORM    AD    RVST-1    Copyright ©1985 ALL-STATE LEGAL SUPPLY CO.
(With Durable Power Clause)    (Revised Oct. 1990)    One Commerce Drive, Cranford, N J 07016

NOTICE: The powers granted by this document are broad and sweeping. They are defined in Connecticut Statutory Short Form Power of Attorney Act, sections 1-42 to 1-56, inclusive, of the general statutes, which expressly permits the use of any other or different form of power of attorney desired by the parties concerned

KNOW ALL MEN BY THESE PRESENTS, which are intended to constitute a GENERAL POWER OF ATTORNEY pursuant to Connecticut Statutory Short Form Power of Attorney Act:

That I, JULIE DILLON RIPLEY MILLER

(Insert name and address of the principal)

do hereby appoint Barry Newman

(Insert name and address of the agent, or each agent. If more than one is designated)

my attorney(s)-in-fact TO ACT:

(If more than one agent is designated and the principal wishes each agent alone to be able to exercise the power conferred. Insert in this blank the word severally. Failure to make any insertion or the insertion of the word "jointly" shall require the agents to act jointly.)

**First:** In my name, place and stead in any way which I myself could do, if I were personally present, with respect to the following matters as each of them is defined in the Connecticut Statutory Short Form Power of Attorney Act to the extent that I may be permitted by law to act through an agent:

(Strike out and initial in the opposite box any one or more of the subdivisions as to which the principal does NOT desire to give the agent authority. Such elimination of any one or more of subdivisions (A) to (L), inclusive, shall automatically constitute an elimination also of subdivision (M))

To strike out any subdivision the principal must draw a line through the text of that subdivision AND write initials in the box opposite

| | | |
|---|---|---|
| (A) real estate transactions; | ( ) | Approval of all contractor loan advances to Condon-Brown, Inc. JDRM |
| (B) chattel and goods transactions; | (JDRM) | |
| (C) bond, share and commodity transactions; | (JDRM) | |
| (D) banking transactions; | ( ) | |
| (E) business operating transactions; | (JDRM) | |
| (F) insurance transactions; | (JDRM) | |
| (G) estate transactions; | (JDRM) | |
| (H) claims and litigation; | (JDRM) | |
| (I) personal relationships and affairs; | (JDRM) | |
| (J) benefits from military service; | (JDRM) | |
| (K) records, reports and statements; | (JDRM) | |
| (L) health care decisions; (see definition on back) | (JDRM) | |
| (M) all other matters; | ( ) | Approval of all contractor loan advances to Condon-Brown, Inc. JDRM |
| Special provisions | ( ) | |

(Special provisions and limitations may be included in the statutory short form power of attorney only if they conform to the requirements of the Connecticut Statutory Short Form Power of Attorney Act.)

**Second:** With full and unqualified authority to delegate any or all of the foregoing powers to any person or persons whom my attorney(s)-in-fact shall select.

**Third:** Hereby ratifying and confirming all that said attorney(s) or substitute(s) may do or may cause to be done

SURVIVAL OF AUTHORITY UPON DISABILITY AND INCOMPETENCE OF PRINCIPALS

This Power of Attorney SHALL NOT be affected by the subsequent disability or incompetence of the principal

Witness    hand    and seal    this    2    day of December, 199_
SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF

Nancy Borchetta    Julie Dillon Ripley Miller
_____ Witness    _____ Signature of Principal
Theresa M Marsan    JULIE DILLON RIPLEY MILLER
_____ Witness

RECORDED AS RECEIVED

VOL 3836 PG 231

STATE OF CONNECTICUT
COUNTY OF Fairfield } ss. Rowayton

The foregoing POWER OF ATTORNEY with provision for SURVIVAL OF AUTHORITY was acknowledged before me this 2 day of December, 1999,

by ~J Pexcey Pontielle

Notary Public
My Commission Expires Oct. 31, 2002
Notary Public
Commissioner of the Superior Court

*HEALTH CARE DECISIONS*

In this power of attorney, the language conferring general authority with respect to health care decisions shall be construed to mean that the principal, who, in the judgment of the attending physician, is unable to receive and effectively evaluate information pertaining to any health care decision, or to effectively and rationally communicate such decisions, authorizes the agent to consent to, refuse to consent to, or withdraw consent to any medical treatment other than that designed solely for the purpose of maintaining physical comfort, the withdrawal of life support systems or the withdrawal of nutrition or hydration.

**Power of Attorney**

TO

Dated _____ 19 ___

Julie Dillon Dipley Miller
21 Point Road
Norwalk, CT 06854

PROOFED

RECEIVED FOR RECORD
NORWALK LAND RECORDS
2:30 PM
DEC 20 99
VOL 3836 PAGE 280
TOWN CLERK

Hillside

15




# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT

---------------------------------------------------------------x
JULIE DILLON RIPLEY MILLER,                :
                                           :    Case No. 03-CV-1016 (WWE)
             Plaintiff,                    :
                                           :    **THIRD AMENDED**
     – against –                           :    **COMPLAINT**
                                           :
MERRILL LYNCH CREDIT CORPORATION,          :
                                           :
             Defendant.                    :
---------------------------------------------------------------x

Plaintiff, Julie Dillon Ripley Miller, by her attorneys, Begos & Horgan, LLP, hereby amends her complaint to conform to the Court's ruling on the parties' summary judgment motions, as directed in the Court's December 6, 2005 Order:

### COUNT I - CONVERSION

**The Parties**

1. Plaintiff is a natural person residing at 21 Point Road, Norwalk, Connecticut.

2. Upon information and belief, Defendant, Merrill Lynch Credit Corporation ("MLCC") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware and authorized to transact and transacting the business of lending money in the State of Connecticut.

**The Account**

3. This action arises out of MLCC's conversion of approximately $5 million of Plaintiff's stocks held by MLCC's affiliate, Merrill Lynch, Pierce, Fenner & Smith ("MLPFS"). MLCC has claimed that its sale of those assets and seizure of the proceeds was authorized pursuant to a Pledge Agreement executed as part of a $7.5 million construction loan transaction (the "Loan"). However,

plaintiff never executed that Pledge Agreement, and, specifically withheld authority from her purported attorney-in-fact to sign it on her behalf.

4.  Plaintiff has a brokerage account with MLPFS (the "Account") and the bulk of the stocks in the Account were acquired by Plaintiff's family before 1950. When Plaintiff inherited these stocks in 1996, she acquired her ancestors' cost basis in them for capital gains tax purposes.

5.  Plaintiff's MLPFS stock broker, Jay Falini ("Falini"), knew that the Account was Plaintiff's primary source of income and that liquidating the stocks would expose Plaintiff to substantial capital gains tax liability.

**The Loan**

6.  Plaintiff began renovating a house on a piece of property that she owns on Wilson Point on the Norwalk waterfront. In or about the Fall of 1999, Falini arranged for Plaintiff to take the Loan from MLCC. Falini never disclosed to Plaintiff that the Loan involved a pledge of Plaintiff's Account. Falini's actions in arranging the Loan, obtaining documents necessary to close, and orchestrating the closing demonstrate that, at all relevant times, he had actual, implied and/or apparent authority to act as MLCC's agent.

7.  Thereafter, Falini advised Plaintiff that the Loan had been scheduled to close on December 7, 1999. Falini knew that Plaintiff was going to be in Africa from December 2 through December 22, 1999 but advised her that she did not need to have a lawyer present at the closing. Falini later asked Plaintiff to sign a document waiving her right to have a lawyer at the closing.

**The Power of Attorney**

8.  Falini advised Plaintiff that, because her contractors purportedly needed to be paid while she was away, she needed to give Barry Newman ("Newman") (the accountant to whom Falini

had referred Plaintiff in 1998) power of attorney to use the Loan money to pay them. Falini sent Plaintiff a blank Connecticut Statutory Short Form Power of Attorney ("POA") form and told her that he would come up from his office in Philadelphia to pick it up on December 2, 1999, the day she was leaving for Africa.

9. On or about December 2, 1999, Plaintiff took the blank POA form that she received from Falini to her local bank to have it notarized. The POA as signed by Miller, and as witnessed and acknowledged, did not identify an attorney in fact, and did not authorize anyone to borrow money or pledge securities.

10. After Plaintiff signed the power of attorney in front of two witnesses and a notary public at the bank, she gave it to Falini, who "whited out" some of Plaintiff's markings on the form. The changes made by Falini after the POA had been signed and acknowledged, which purported to expand the authority delegated by Plaintiff, left it not in compliance with the Connecticut Statutory Short Form Power of Attorney Act, and invalidated it.

11. Falini did not alter Plaintiff's elimination of the power to act with respect to "bond, share and commodity transactions" because, he said, Newman should not have authority to sell Plaintiff's stock. Therefore, to the extent the POA is a valid document, it specifically withholds from Plaintiff's purported attorney-in-fact, Barry Newman, the power to act for the Plaintiff with respect to, *inter alia*, "bond, share and commodity transactions".

12. The POA specifically provides that the definitions of the Connecticut Statutory Short Form Power of Attorney Act apply to the subdivisions of the POA. Thus, as executed, the POA specifically withheld authority to "pledge . . . any bond, share [or] instrument of similar character," CGS § 1-46.

**The Closing**

13.  Upon information and belief, the Loan purportedly closed on or about December 7, 1999 and Newman, Falini, a closing agent and other as-yet-unidentified representative or representatives of MLCC were in attendance. Newman purported to obligate Plaintiff on an agreement with MLCC whereby Newman purportedly pledged Plaintiff's Account as security for the Loan ("Pledge Agreement"). MLCC accepted the POA as evidencing Newman's authority to enter the Pledge Agreement on behalf of Plaintiff and ignored the changes to the document and Plaintiff's clear and unambiguous withholding of authority to pledge securities.

**The Conversion**

14.  In or about February 2003, pursuant to a right it claimed by virtue of the Pledge Agreement, MLCC had the Account, which at the time had a value of approximately $5,000,000, liquidated and the proceeds frozen to the exclusion of Plaintiff.

15.  In addition to the loss of the stocks and cash in the Account, the liquidation damaged the Plaintiff including exposure to substantial tax liability.

16.  Newman was not authorized to enter into the Pledge Agreement for Plaintiff. Therefore, MLCC was not authorized to assume and exercise the right of ownership over the Account to the exclusion of Plaintiff.

17.  Plaintiff has been damaged by MLCC's conversion of Plaintiff's Account, in an amount to be determined at trial, but in excess of $7 million.

WHEREFORE, Plaintiff demands:

(i)   Money Damages;

(ii)  Punitive Damages;

(iii)   Attorney's Fees;

(iv)   Statutory Interest; and

(v)   Costs of Suit.

                                   THE PLAINTIFF
                                   JULIE DILLON RIPLEY MILLER

By: _____
     Patrick W. Begos (ct19090)
     Christopher G. Brown, Esq. (ct 18216)
     Begos & Horgan, LLP
     327 Riverside Avenue
     Westport, CT 06880
     (203) 226-9990

## CERTIFICATE OF SERVICE

This certifies that on January 4, 2006, a copy of the foregoing Third Amended Complaint was delivered via first-class mail to:

Douglas C. Conroy, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

Jonathan Bowman, Esq.
Cohen and Wolf, P.C.
115 Broad Street
Bridgeport, CT 06604

Christopher G. Brown

# EXHIBIT E

**SECTION 2.**         **RELEASE**

        **2.1**          Claimant, for herself and her family members, successors in interest, heirs and assigns (the "Miller Releasors"), releases and forever discharges MLPFS, its past, present and future parents and subsidiaries, divisions, affiliates, partners, joint venturers, employees, Financial Advisors, members, officers, directors, administrators, insurers, representatives, agents and attorneys including, without limitation, Falini (but excluding the Merrill Mortgagee) (the "Miller Releasees"), from any and all claims, demands, obligations, losses, causes of action, damages, penalties, attorneys' fees, liabilities and indemnities of any nature whatsoever (hereinafter collectively referred to as the "Miller Claims"), whether based on contract, tort, statute, or any other legal or equitable theory of recovery, whether known or unknown, which as of the date of this Agreement, the Miller Releasors had, now have, or claim to have against the Miller Releasees, including but not limited to any and all Miller Claims that were included in the Statement of Claim in the Arbitration and all claims which were, could have been, or may have been asserted against the Miller Releasees in connection with or arising out of the transactions which formed the basis for the Statement of Claim in the Arbitration or any other transactions involving the Claimant's accounts at MLPFS and/or any transactions involving Claimant and MLCC from the inception of the accounts through the date hereof, including without limitation Account Nos. 881-32569, 881-32513/891-31R02/5AX-12860, 881-32781/891-31R03, 877-59396, 881-33218, 881-33217, 881-81K03/857-85328/5AX-81324 and 881-32512 and any predecessor and successor accounts (the "Accounts").

        2.1(a) Notwithstanding anything to the contrary in this Agreement, the Miller Releasors specifically and expressly do *not* release the Merrill Mortgagee and any of their past, present and future employees, members, officers, directors, administrators, insurers,

3

representatives, agents and attorneys from the claims or defenses asserted in the Litigation, or from any action or actions, cause or causes of action in law or in equity, suits, debts, liens, contracts, agreements, promises, liability, claims, demands, damages, losses, costs or expenses, of any nature whatsoever, whether past, present or future, known or unknown, fixed or contingent.

2.1(b)  Notwithstanding anything to the contrary in this Agreement, nothing in this release or in this Agreement is intended, or shall be construed, as a waiver of Miller's rights to, or ownership of, the funds (and interest accruing thereon) in account no. 5AX-12860 at MLPFS, entitled "Julie DR Miller f/b/o MLCC and/or assigns" ("Pledge Account"), which Account is presently subject to competing claims of ownership in the Litigation, or a waiver of the Merrill Mortgagee's rights to, or ownership of, the funds (and interest accruing thereon) in the Pledge Account.

2.1(c)  **REDACTED**

**2.2**  MLPFS, for itself and its past, present and future parents and subsidiaries, divisions, affiliates, partners, joint venturers, employees, Financial Advisors, members, officers, directors, administrators, insurers, representatives, agents and attorneys, but excluding the Merrill Mortgagee (the "MLPFS Releasors"), releases and discharges Claimant, her predecessors and successors in interest, heirs, assigns, attorneys, trustees, representatives, employees and agents present and former (the "MLPFS Releasees"), from any and all claims, demands, obligations, losses, causes of action, damages, penalties, attorneys' fees, liabilities and indemnities of any nature whatsoever (hereinafter collectively referred to as the "MLPFS Claims"), whether based on contract, tort, statute, or any other legal or equitable theory of recovery, whether known or unknown, which as of the date of this Agreement, the MLPFS Releasors had, now have, or claim to have against the MLPFS

4

Releasees in connection with the Accounts and the Arbitration which formed the basis for the Statement of Claim in the Arbitration or any other transactions involving the Accounts and/or any transactions involving Claimant and MLCC, from the inception of the Accounts through the date hereof.

**2.3** Falini, for himself and his family members, successors in interest, heirs and assigns (the "Falini Releasors"), releases and forever discharges Claimant, her predecessors and successors in interest, assigns, attorneys, trustees, representatives, employees and agents present and former (the "Falini Releasees"), from any and all claims, demands, obligations, losses, causes of action, damages, penalties, attorneys' fees, liabilities and indemnities of any nature whatsoever, whether based on contract, tort, statute, or any other legal or equitable theory of recovery, whether known or unknown, which as of the date of this Agreement, the Falini Releasors had, now have, or claim to have against the Falini Releasees, in connection with the Accounts and the Arbitration which formed the basis for the Statement of Claim in the Arbitration or any other transactions involving the Accounts and/or any transactions involving Claimant and MLCC, from the inception of the Accounts through the date hereof.

**2.4** This Agreement constitutes a full, complete, and final resolution of all disputed claims between and among Claimant, MLPFS and Falini (specifically excluding the claims and defenses asserted by the parties in the Litigation). Neither this Agreement, nor any statement made, action taken, or document prepared in connection with the negotiation, execution or implementation of the Agreement, shall be deemed or construed as an admission of liability, fault, wrongdoing, misconduct or breach of duty of any kind by any party, which all parties expressly deny.

**2.5** Subject to the limitations in sections 2.1(a) and 2.1(b), the Releases set forth in SECTIONS 2.1, 2.2 and 2.3 specifically include any and all claims described in such SECTIONS whether or not now known or suspected to exist and whether or not specifically or particularly described therein. The parties expressly waive any right or claim of right to assert hereafter that any claim, demand, obligation and/or cause of action has, through ignorance, oversight or error, been omitted from the terms of this Agreement, and further expressly waive any right or claim of right, that they may have under the law of any jurisdiction, that releases such as those herein given, do not apply to unknown or unstated claims. It is the express intent of the parties to waive any and all claims they have against each other as those claims are described in SECTIONS 2.1, 2.2 and 2.3, including any which are presently unknown, unsuspected, unanticipated or undisclosed (subject to the limitations in sections 2.1(a) and 2.1(b)).

**2.6** The parties acknowledge that there is a risk that, subsequent to the execution of this Agreement, they may incur damage or loss which they may deem in some way attributable to the prior actions of another party to whom a release is being given, but which are unknown and unanticipated at the time this Agreement is signed, or that damages presently known may be progressive, greater or more serious than is now known, expected or anticipated, or that facts alleged in the Statement of Claim in the Arbitration are found hereafter to be different from the facts now believed by them to be true. The parties expressly accept such risks and agree that this Agreement is and will remain effective notwithstanding such risks, if they occur.

**2.7** The parties certify that they are not aware of any other claims they now have against any party to whom a release is being given.

**2.8**     The parties certify and acknowledge that nothing in this Agreement is intended to impair, restrict or influence in any way Claimant's or the Merrill Mortgagee's rights, claims and defenses in the Litigation.